Page 1

1                  UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF FLORIDA
2

3

4

 IN RE:                          CASE NO. 22-12790-EPK
5
 EXCELL AUTO GROUP, INC.,
6
                 Debtor.
7   _____/

8              ECF #87, 92, 99, 100, 105, 117

9                      June 1, 2022

10          The above-entitled cause came on for hearing

11   before the Honorable Erik P. Kimbell, one of the Judges

12   in the UNITED STATES BANKRUPTCY COURT, in and for the

13   SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Dr.,

14   West Palm Beach, Palm Beach County, Florida, on June 1,

15   2022, commencing at or about 9:30 a.m., and the following

16   proceedings were had.

17

18

19

20

21

22

23

24          Transcribed from a digital recording by:
                Cheryl L. Jenkins, RPR, RMR
25

Page 2

1
                          APPEARANCES:
2
3                       FURR & COHEN, by
                       ALAN CRANE, Esquire
4                     JASON RIGOLI, Esquire
               On behalf of Nicole Testa Mehdipour
5
6               WEISS HANDLER & CORNWELL, by
                HARRY WINDERMAN, Esquire (via Zoom)
7                   On behalf of the Debtor
8
9                       WERNICK LAW, by
                     AARON A. WERNICK, Esquire
               On behalf of Scott and Kristen Zankl
10
11          RAPPAPORT OSBORNE & RAPPAPORT, by
                JORDAN RAPPAPORT, Esquire (via Zoom)
12     On behalf of Stefano Riga and Richard Applegate
13
                       SHRAIBERG PAGE, by
14          BRADLEY SHRAIBERG, Esquire (via Zoom)
          On behalf of Franklin Capital Funding, LLC
15
16              FENDER BOLLING & PAIVA, by
                     STEVEN FENDER, Esquire
17         On behalf of Integrated Vehicle Leasing, Inc.
18
                       MELAND BUDWICK, by
19             JAMES C. MOON, Esquire (via Zoom)
   On behalf of Chapford Specialty Finance, LLC and Chapford
20             Credit Opportunities Fund, LP
21
                       AKERMAN, LLP, by
22             BRETT MARKS, Esquire (via Zoom)
          On behalf of Ed Brown and Millco-Atwater, LLC
23
24
25

Page 3

1

CONTINUED APPEARANCES:

2

3                          NASON YEAGER, by
                     IVAN J. REICH, Esquire
4        On behalf of the DCG 2008 Irrevocable Wealth Trust

5

                    JAMES MILLER, Esquire (via Zoom)
6        On behalf of Auto Wholesale of Boca, MMS Ultimate and
                              Moshe Farache

7

8               LIEBLER GONZALEZ & PORTUONDO, by
                   JAMES LIEBLER, Esquire (via Zoom)
9                  MARK STEINER, Esquire (via Zoom)
            On behalf of Westlake Flooring Company, LLC

10

                          SEYFARTH SHAW, by
11               JAMES SOWKA, Esquire (via Zoom)
                   On behalf of Karma Automotive

12

13

                            ALSO PRESENT

14

                      Scott Zankl (via Zoom)

15

                     Kristen Zankl (via Zoom)

16

                      Ken Goodman (via Zoom)

17

        ECRO - Electronic Court Reporting Operator

18

19                         - - - - - - -

20

21

22

23

24

25

1                    THE COURT:   All right.   Let's move on to a

2     case that apparently has a lot of appearances.   Excell

3     Auto Group.

4                    Good morning.   We'll start with Mr. Crane

5     because you're approaching the podium.

6                    MR. CRANE:   Good morning, your Honor.

7     Alan Crane, special counsel to the Chapter 7 Trustee,

8     Nicole Testa Mehdipour.

9                    THE COURT:   Good morning.

10                    Just a moment, gentlemen.   My notes just

11     left, so that I can read nothing at this point.   If you'd

12     -- all right.   You can make an appearance as well.   Good

13     morning.

14                    MR. WERNICK:   Good morning.   Aaron Wernick

15     on behalf of Scott Zankl, also on behalf of Kristen Zankl.

16                    THE COURT:   Very good.   Good morning.

17                    I'm just going to go down the list.   I

18     realize some of you may not be on Zoom, but I can't see

19     all of you simultaneously.

20                    Mr. Rigoli.

21                    He's here, that's right, I keep forgetting.

22     He's actually here.   He's there.   I apologize.

23                    Mr. Miller.

24                    MR. MOON:   Your Honor, Mr. Miller actually

25     just contacted me.   He's got a hearing in front of

1    Judge Mora, so he had to pop out, and will be joining us

2    again when he's done.

3                  THE COURT:  So Judge Mora is more important.

4                  Mr. Moore.

5                  (No verbal response.)

6                  THE COURT:  Mr. Moore?  Okay.  Whoever in

7    the courtroom is typing and causing OneNote to leap,

8    please stop typing because I just lost everything again.

9                  All right.  Let's see, next, Mr. Cianciulli.

10                 (No verbal response.)

11                 THE COURT:  Maybe not.  I see Mr. Moon.

12   Good morning.

13                 MR. MOON:  Thank you, your Honor.

14   James Moon, M-o-o-n, on behalf of creditor Chapford

15   Specialty finance, LLC and Chapford Credit Opportunities

16   Fund, LP.

17                 THE COURT:  Mr. Rappaport.

18                 MR. RAPPAPORT:  Good morning, your Honor.

19   Jordan Rappaport, R-a-p-p-a-p-o-r-t, representing

20   creditors Stefano Riga, R-i-g-a, and Richard Applegate.

21                 THE COURT:  Thank you.

22                 Mr. Goodman.

23                 MR. GOODMAN:  Can you hear me?

24                 THE COURT:  I can.  Good morning,

25   Mr. Goodman.

Page 6

```
 1                    MR. GOODMAN:  Good morning.  I had it on
 2    mute.  Thank you.
 3                    THE COURT:  And that's Ken Goodman, correct,
 4    for?
 5                    MR. REICH:  Your Honor, this is Mr. Reich.
 6    Mr. Goodman is observing, he's my client.  So if I may
 7    introduce him?
 8                    THE COURT:  Please.
 9                    MR. REICH:  Your Honor, this is Ivan Reich,
10    on behalf of DCG 2008 Irrevocable Wealth Trust, Reich,
11    R-e-i-c-h, for the court reporter.  With me also is
12    Mr. Ken Goodman, who is the trustee of that trust.
13                    THE COURT:  Very good.
14                    MR. REICH:  Thank you, your Honor.
15                    MR. WERNICK:  Your Honor, I'd also --
16    Aaron Wernick.  I'd also like to mention that both
17    Kristen Zankl and Scott Zankl are present on Zoom.
18                    THE COURT:  Very good, and good morning to
19    each of you.
20                    Let's see, I have Mr. Silver.
21                    (No verbal response.)
22                    THE COURT:  Maybe not.
23                    I have Mr. Wernick here.
24                    Mr. Fender, good morning.
25                    MR. FENDER:  Yes, good morning, your Honor.
```

1   This is Steven Fender, and I'm here representing

2   Integrated Vehicle Leasing, Inc.

3              THE COURT:  Brett Marks.

4              MR. MARKS:  Good morning, your Honor.

5   Brett Marks, with Akerman, on behalf of an entity called

6   Millco-Atwater, and Ed Brown, individually.

7              THE COURT:  Let's see, Mr. Liebler.

8              MR. LIEBLER:  Good morning, your Honor.

9   James Liebler on behalf of Westlake Flooring Company.

10  Also with me is Mark Steiner, from my firm.

11             THE COURT:  Very good, and good morning

12  Mr. Steiner as well.

13             Mr. Shraiberg.

14             MR. SHRAIBERG:  Good morning again,

15  your Honor.  Brad Shraiberg on behalf of secured creditor

16  Wing Lake Capital Partners, formerly known as Franklin

17  Capital Group.

18             THE COURT:  Thank you.

19             Mr. Sowka.

20             MR. SOWKA:  Good morning, your Honor.

21  James Sowka on behalf of Karma Automotive, LLC.

22             THE COURT:  Is there anybody who would like

23  to make an appearance who I have not called out?

24             MR. MILLER:  Yes, your Honor.

25             MR. WINDERMAN:  Yes, your Honor.

```
 1                    THE COURT:  Okay.  Let's see, that was
 2      Mr. Miller, I think.
 3                    MR. MILLER:  Yes, your Honor.  I apologize,
 4      I just reconnected.  I had problems with my computer.
 5      James Miller, M-i-l-l-e-r, on behalf of Auto Wholesale of
 6      Boca, LLC, your Honor.
 7                    THE COURT:  Thank you.
 8                    Anyone else?
 9                    MR. WINDERMAN:  Yes, Harry Winderman,
10      your Honor, on behalf of Excell Auto.
11                    THE COURT:  Very good.
12                    Anyone else?
13                    (No verbal response.)
14                    THE COURT:  Okay.  So there are a number of
15      motions set today, and I just want to give a little bit of
16      an overview of where I think some of the problems are, and
17      then I'll try to hear them one at a time.
18                    ECF 92 is a motion requesting abandonment,
19      and really access to three, I think three Karma vehicles.
20      99 is a similar motion, addressing only a single vehicle.
21      There is an emergency motion to withdraw, which I'll skip
22      over for just a moment.  There is a motion for turnover,
23      this is seven vehicles, that is 100.  There is a request
24      for a Rule 2004 Exam, a motion to compel Mr. Zankl to
25      appear, and then there is a motion for relief from stay
```

Page 9

1    having to do with a Mercedes Benz Sprinter.

2                    The motions that address vehicles, there is

3    one with one vehicle, and several with multiple vehicles,

4    there is a lot of overlap on those vehicles.  In fact,

5    there are a couple parties who believe they are the only

6    people with a right in vehicles, and they're the same

7    vehicles.

8                    It will be useful to hear from the trustee's

9    counsel first.  The trustee, with regard to the motions

10   that are at, let's see, 92, that's Westlake Flooring; 99,

11   and that's Ms. Zankl, and that's the 2019 Camaro alone;

12   100, which includes the Camaro and six other vehicles,

13   that is a motion filed by Karma -- it looks like Karma of

14   Broward, Inc.

15                   Does the trustee -- I believe the trustee

16   has abandoned all of those vehicles, and the estate has no

17   interest in them whatsoever.

18                   MR. CRANE:  That's correct, your Honor.

19   Alan Crane on behalf of the trustee again.  That's

20   correct.

21                   Do you want background and flavor or --

22                   THE COURT:  From the trustee, that would be

23   very helpful.

24                   MR. CRANE:  Okay.  So, when approaching this

25   case, your Honor, the vehicles that are at issue today

1  were on the showroom floor of the premises leased by

2  Excell Auto Group.

3            There is no distinguishing between what is,

4  or what belonged to Karma of Palm Beach, that operated,

5  apparently, out of the same premises.  There were no

6  schedules filed.  Even when schedules were filed, and the

7  Statement of Financial Affairs, it does not list property

8  held for another.

9            So, the lease was fast expiring, and we

10 needed to get out of there, and so the trustee took

11 possession of the vehicles so she could keep them safe and

12 not incur unnecessary endless administrative rent, and has

13 them safely in a storage facility with an auctioneer.

14           The books and records were kept the same

15 way.  There is no distinguishing, you know, from one to

16 the other.

17           She did an investigation and determined that

18 the vehicles were overly burdensome to the estate, or

19 possibly didn't belong to the estate.

20           Because this is a car dealership, and

21 because some of the cars were held on consignment, the

22 normal rules of what's title and what's on the lien on the

23 title, or whose name the title is in, doesn't necessarily

24 apply, at least from the trustee's point of view; that if

25 there is a car there under the right circumstances, and it

1    is titled in the name of the prior owner, and they bring

2    the vehicle to the dealership and put it on consignment,

3    then it is possible that that becomes inventory of one or

4    more -- either the debtor or the nondebtor entity, Karma

5    of Palm Beach.

6                So, if it's a vehicle that is financed, and

7    there is a floor plan, and the car goes to a third party,

8    then even what is on the lien doesn't -- and shows on the

9    lien doesn't necessarily apply, and also to perfect a

10   secured interest in a car with a car dealership, it

11   doesn't have to be on the title, it can be through the UCC

12   filing.

13                So, we don't know -- we took possession of

14   the vehicles.  We don't believe that there is an interest

15   in the vehicles --

16                UNIDENTIFIED:  Have you heard of this --

17                THE COURT:  Whoever is speaking, whoever is

18   speaking right now you need to put yourself on mute.

19                Go ahead.

20                MR. CRANE:  So the trustee has looked at

21   this, and believes that, again, either the cars don't

22   belong to her, to the estate, or are overly burdensome

23   because they're probably subject to secured creditors, but

24   she has them, and she needs a court order to know who to

25   give them to.  We don't want to be accused later of

1    choosing the wrong party.

2              So, that's on the -- all of the vehicle

3    issues, that's the dilemma that we're in, that's how we

4    got here, and that's where we are right now.

5              THE COURT:  Physically where are they, and

6    what is the nature of the location?

7              MR. CRANE:  It is -- I don't have the --

8              THE COURT:  I don't need the address, but is

9    it a --

10             MR. CRANE:  She hired an auctioneer, and

11   it's with the auctioneer.  The auctioneer has a facility

12   that she's put them in.

13             So, my belief -- and I know that Westlake, I

14   think, made arrangements to actually take a look at them,

15   but -- so the trustee hired an auctioneer.  The auctioneer

16   has physical -- took physical possession, and it's in some

17   sort of storage facility.

18             THE COURT:  Who leased the premises where

19   the cars were previously located, was it the debtor or

20   somebody else?

21             MR. CRANE:  We believe it was the debtor.

22   The only lease that I have seen was the debtor.  My

23   understanding afterwards is that maybe Karma of Palm Beach

24   entered into some sort of other lease.

25             Mr. Miller, I think, sent me something

Page 13

```
 1    yesterday that I have not, candidly, reviewed because of
 2    other matters that I was attending to, that may have a
 3    Karma lease to it, but so far -- and Mr. Miller can
 4    actually address that.  Mr. Miller also represents the
 5    landlord in the case.
 6                    But when we looked at the lease, what we saw
 7    was only Excell Auto.
 8                    THE COURT:  All right.  I think I have three
 9    requests that seek release of vehicles, excluding the
10    Sprinter van, which is a motion for relief from stay.
11                    So maybe it would be useful for me to hear
12    from one of those.  Let's start with Westlake, that's 92.
13    Who would like to speak on behalf of Westlake?
14                    MR. STEINER:  Good morning, your Honor.
15    Mark Steiner of Liebler Gonzalez & Portuondo on behalf of
16    Westlake Flooring.  I will (inaudible) --
17                    THE COURT:  Okay.  Your sound is terrible,
18    Mr. Steiner.  You sound like you're under water.  If it's
19    a bandwidth issue, I have no problem with you turning off
20    the camera.
21                    MR. STEINER:  I don't think it is.
22                    THE COURT:  Okay.  It might be the room.
23                    MR. STEINER:  Is (inaudible) --
24                    THE COURT:  It might be the room.  No, it's
25    not particularly good, but let's see if we can address it.
```

1            So you have three vehicles, they're all

2    Karma vehicles.

3            MR. STEINER:  Yes, your Honor.  All three

4    vehicles are Karma vehicles.  They were initially financed

5    by the debtor by itself under a floor plan financing

6    agreement with Westlake, but they were subsequently

7    transferred in December of 2021 to Karma of Palm Beach,

8    which also has a floor plan financing agreement with

9    Westlake.

10            Westlake is the undisputed first lienholder

11    on those vehicles.  We've declared Karma of Palm Beach in

12    default on the governing loan and security agreement, and

13    we have given notice of that default, and a demand for

14    surrender of the vehicles.

15            The loan and security agreement, which we've

16    attached to the motion, does provide upon default that

17    Westlake has the right to repossess and remove those

18    vehicles, and the notice of default has gone uncured, and

19    I would note that based on the debtor's testimony at the

20    341 Meeting recently, he's also testified that the Karma

21    entities are not currently operating.  So, it's not clear

22    why those Karma entities would want to take those vehicles

23    for themselves.

24            The three vehicles that we've requested

25    turnover, those three Karma vehicles are also requested on

Page 15

1    Karma of Broward's motion for turnover at --

2                    THE COURT:  Right, ECF 100, right.

3                    MR. STEINER:  Yes, sir, and we filed a

4    response at Docket Entry 112 to that motion for turnover

5    as well.

6                    Obviously, we do claim an interest in those

7    vehicles, and as I noted, the vehicles were under a floor

8    plan financing agreement with Karma of Palm Beach, which

9    is a different entity than Karma of Broward.  We're not

10   aware of any interest that Karma of Broward would have in

11   those vehicles.

12                   So, as I mentioned, we do have a first lien.

13   We -- the Karma entity is in default.  Excell no longer

14   has an interest in the vehicles, and it's been abandoned,

15   obviously, and we believe that Westlake is the first

16   lienholder, who is entitled to turnover and possession of

17   those vehicles.

18                   THE COURT:  So I think maybe this is the

19   right time to hear from Mr. Sowka, your view on ECF 92.

20   ECF 92 addresses three Karma vehicles, with the VINs

21   ending in 0060, 0070 and 0129, which are included in your

22   motion, filed at ECF 100.

23                   MR. SOWKA:  Your Honor, I represent Karma

24   Automotive, which is the manufacturer.

25                   THE COURT:  Ah, okay.

Page 16

1          MR. SOWKA:  And I believe Mr. Winderman

2   actually filed Docket Entry 100 and he (inaudible) --

3          THE COURT:  I apologize.

4          MR. SOWKA:  Mr. Winderman, great, then,

5   Mr. Winderman, it seems like I should hear from you, your

6   view on 92.

7          MR. WINDERMAN:  Yes, your Honor.  We believe

8   that those cars are inventory of Karma Broward.  Karma

9   Broward needs those cars to be able to get back up and

10  operating.  They have not been operating because the

11  trustee decided to take possession and control of vehicles

12  that were clearly Karma's.

13          I don't know if the Court is familiar but --

14          THE COURT:  I think the difficulty with that

15  sentence is the word "clearly", because if they were

16  "clearly Karma's", it seems very unlikely that the trustee

17  would have removed the vehicles from the lot.

18          Let me point out to all of you that the

19  trustee --

20          MR. CRANE:  Your Honor --

21          THE COURT:  -- has abandoned all of these

22  vehicles, which means that the bankruptcy estate does not

23  include them, and I have, I'm pretty sure, no jurisdiction

24  over your disputes.

25          And so if you're unable to reach agreement

1    during this hearing, I'm going to authorize the trustee to

2    park them on a public street, as close as possible to

3    where they are being stored, and you may go and fight over

4    them.  So is that what you would like, Mr. Winderman?

5                    MR. WINDERMAN:  No.  What we would like,

6    your Honor, is to go back into business to place these

7    three cars in the Karma Broward showroom.

8                    THE COURT:  Excellent, then the state courts

9    of Florida are available for you to litigate your dispute.

10                   MR. WINDERMAN:  Your Honor, we just --

11                   THE COURT:  Does the trustee have any

12   objection to me entering an order saying that all the

13   vehicles may be placed on a public street?  Yes.

14                   MR. WERNICK:  If I may quickly, your Honor?

15                   THE COURT:  You may.

16                   MR. WERNICK:  I think this one is an easy

17   one, your Honor.  Aaron Wernick on behalf of

18   Kristen Zankl.

19                   The Camaro was included --

20                   THE COURT:  I'm not getting to the Camaro

21   yet.  I'll come back to that.  That one is just special,

22   that one is also claimed by two people.

23                   MR. WERNICK:  All right.

24                   THE COURT:  Let's go -- right now I'm

25   talking about 92 and the remaining Karma vehicles.

Page 18

```
 1                    Sorry about that.
 2                    MR. WINDERMAN:  The remaining --
 3                    UNIDENTIFIED:  Your Honor?
 4                    THE COURT:  I'll come back to other people
 5     in a moment.
 6                    Yes.
 7                    MR. CRANE:  No, your Honor, we will -- if
 8     you tell us where to place them, or give us a roundabout,
 9     we will happily deliver them wherever instructed.
10                    THE COURT:  Right.  Gentlemen, I want
11     someone to explain to me why the Bankruptcy Court should
12     be involved in the dispute among parties who claim an
13     interest in assets that are not property of the bankruptcy
14     estate and, in fact, how my order could be binding on any
15     of you.
16                    MR. WINDERMAN:  I understand, your Honor,
17     and we'll work -- between Westlake and Excell -- not
18     Excell, but Karma of Broward, we'll work out the details.
19                    Thank you, your Honor.
20                    THE COURT:  Is the trustee willing to let me
21     continue the motion a week and see if everybody has an
22     agreement before I permit the vehicles to be placed on a
23     public street?
24                    MR. CRANE:  Yes, your Honor.
25                    THE COURT:  Excellent.
```

```
1              Then what I'm doing is I'm going to continue
2   92 one week, let's see, all of 100, except for the Camaro,
3   which we're going to address in a moment, and then there
4   is the one that has the Camaro.  Which one is that?
5              MR. CRANE:  That's ECF 99, your Honor.
6              THE COURT:  99, which I'm going to take
7   next.  We're going to hear that one today.
8              So, the others -- the other two, except for
9   the Camaro, will be continued to next week, and let's
10  address 99.
11             MR. WERNICK:  Thank you, your Honor.
12             Very briefly, your Honor, this was
13  mistakenly included in ECF 100.  I have communicated with
14  Mr. Winderman, and he did confirm to me that it mistakenly
15  was put in ECF 100.  It's not being claimed by Karma of
16  Broward or Karma of Palm Beach.  It is Ms. Zankl's
17  personal vehicle, but I can let Mr. Winderman --
18             THE COURT:  Okay.  Mr. Winderman.
19             MR. WINDERMAN:  I concur, your Honor, it
20  belongs --
21             THE COURT:  All right.
22             MR. WINDERMAN:  It actually belongs to the
23  son, and we'd like him to get his car back as soon as
24  possible.
25             THE COURT:  Alrighty then, 99 is granted.
```

Page 20

1    If you could please tender an order.

2                    MR. WERNICK:  I will.  Thank you,

3    your Honor.

4                    THE COURT:  When you come back for the

5    hearing next week, it will be helpful if the trustee is

6    able to give me an idea of the physical location of this

7    property, and the public streets nearby where cars can be

8    legally parked, because if I have to enter an order, I

9    will describe the streets where the cars can be parked.

10   There aren't that many, we can line them up.  Maybe seven

11   Karma's, which are, I think, worth more than $100,000

12   each.  So I'm confident that you all will reach agreement.

13                   Is there anything else I should hear on the

14   two motions addressing the vehicles, that's 92 and all of

15   100, other than the Camaro?

16                   MR. MILLER:  Your Honor.

17                   THE COURT:  Yes, who is that?

18                   MR. MILLER:  Miller speaking, your Honor.

19                   THE COURT:  Yes, sir.

20                   MR. MILLER:  I did want to follow up, just

21   to let the Court know, Mr. Crane was correct, there were

22   several tenants in the premises that were being leased to

23   the debtor, and Karma had part of a unit there, and I can

24   understand the trustee's difficulty in determining what to

25   do with those automobiles, given the loose -- and given

1    the fact that the two entities apparently kept the cars in

2    the same location, on the same floor room.

3                    I would add one other thing, I'm just a

4    little confused, because I see Mr. Winderman is now

5    appearing for what may be a creditor, Karma of Broward.

6    He's also the one that filed this bankruptcy case, with

7    the incomplete schedules that trustee's counsel Crane was

8    referring to.  So I'm not sure if he's wearing two hats,

9    or if he's acting for the benefit of the debtor, who he's

10   supposed to be representing.

11                   THE COURT:  And would that matter in any

12   regard for today's hearing?  I'm trying to figure out why

13   I would have an interest in that today.

14                   MR. MILLER:  I don't know that he -- well, I

15   would just bring that up because he was -- Mr. Winderman

16   was arguing for turnover of cars, that obviously he had

17   knowledge of, representing the debtor, in regards to the

18   fact that Mr. Crane also addressed that, saying there was

19   confusion over who owned those cars.

20                   THE COURT:  Well, I don't think

21   Mr. Winderman is appearing on behalf of the debtor,

22   correct?

23                   MR. WINDERMAN:  Yes.

24                   THE COURT:  And the debtor is a Chapter 7

25   debtor, so it's not a lot -- it's a corporate Chapter 7

```
 1    debtor, usually not a lot happening for the Chapter 7
 2    debtor.
 3                 MR. CRANE:  Well, Mr. Winderman is actively
 4    participating on behalf of the Chapter 7 debtor
 5    including --
 6                 THE COURT:  Okay.
 7                 MR. CRANE:  -- including the response filed
 8    at 114 on the motion to compel today.
 9                 THE COURT:  All right, and so is there
10    something else I should take note of, Mr. Miller?
11                 MR. MILLER:  I was just bringing up there
12    may be a conflict issue, but allow your Honor to move
13    forward.
14                 THE COURT:  I think I will.
15                 All right.  Let's go to the next matter.  We
16    have -- should I go to -- what should I go to next?
17                 MR. CRANE:  Your Honor, I would suggest that
18    you go to the motion to withdraw on behalf of Mr. -- by
19    Mr. Wernick, of Mr. Scott Zankl, and then --
20                 THE COURT:  Very good.  Mr. Wernick.
21                 MR. WERNICK:  Yes, your Honor.  Thank you.
22    This is ECF 87, this is my motion to withdraw as counsel
23    to Mr. Scott Zankl.
24                 As I put in my motion, I would remain as
25    counsel to Ms. Kristen Zankl, and I did include the
```

Page 23

1    address for notice purposes in the motion, and this is

2    based on irreconcilable differences.

3                    THE COURT:  Any objections?

4                    MR. CRANE:  No, your Honor.

5                    THE COURT:  It's granted.

6                    MR. WERNICK:  Thank you.

7                    THE COURT:  If you could please include a

8    service address in the order?

9                    MR. WERNICK:  I will, your Honor.  Thank

10   you.

11                   THE COURT:  Where should I go to next,

12   Mr. Crane?

13                   MR. CRANE:  Your Honor, I would suggest that

14   you take up the motion to compel the attendance of

15   Scott Zankl as the officer of Excell Auto, the debtor, to

16   appear for his Rule 2004 Examination at 105, and the

17   response at 114.

18                   THE COURT:  All right.

19                   MR. CRANE:  Okay.  Thank you, your Honor.

20                   Prior to our filing of this motion, the

21   trustee coordinated June 6th at 9:30 as a date and time to

22   take Mr. Zankl's Rule 2004 Examination.

23                   Subsequent to that, and I attached the

24   emails going back and forth, Mr. Zankl, through

25   Mr. Winderman, stated that he would not, no longer sit for

Page 24

```
 1    his 2004 Examination until such time as he had an

 2    opportunity to review records, some of the records that

 3    may be held by the trustee, some that may be held by a

 4    third party.

 5                    Again, one of Mr. Miller's clients,

 6    Moshe Farache, and in my experience, your Honor, that's

 7    just not the way it works.

 8                    And so we had a meet and confer to try to

 9    resolve the issue.  It was unsuccessful.  Mr. Winderman

10    stated that he was on vacation, when he got back from

11    vacation, he'd be filing a motion for protective order, in

12    such time where we would not be able to have a hearing

13    before the Court, to have a hearing to go forward with the

14    deposition as scheduled.  So we filed our motion at 105.

15                    If you look at the response at 114, it

16    states, basically, two things, that our motion for

17    protective order is premature, you should deny it so that

18    he can turn around and go ahead and file a motion for

19    protective order, thereby canceling the hearing --

20                    THE COURT:  Which under our Local Rules has

21    immediate effect until a hearing can happen, which means

22    you wouldn't have the examination.

23                    MR. CRANE:  Exactly.  So we think that the

24    Court should deal with all of the issues today.

25                    The schedules in this case were -- it was an
```

Page 25

1    emergency petition.  There were actually no creditors

2    listed with the initial petition.

3                    I believe that the schedules have been

4    amended, at least filed, and amended either once or twice.

5    They're still woefully deficient.  There are no bank

6    accounts listed.  There is no income listed.  There is --

7    we've recovered bank account statements that show, just in

8    March of 2022 and February of 2022, $19 million flowing

9    through the accounts of Chase in the name of the debtor.

10                    Therefore, not only is the fact that there

11   are no bank accounts incorrect, but the debtors -- that

12   the debtor had no -- that there was no income was also

13   incorrect.

14                    There are numerous -- the fact that there

15   were very few creditors listed, if you look at the public

16   records of the Florida UCC transaction registry, you would

17   see more creditors on there than are listed.  If you did a

18   public records search of Palm Beach County, and then put

19   in Excell for open cases, you would see that there are

20   creditors that are not listed.

21                    In the Rule 2004 Examination (sic),

22   Mr. Zankl testified that he does not have access, or did

23   not have access, and was not the responsible person for

24   much of the financial information that was put into a

25   system called Dealertrack, and that's what they use.

1    Dealertrack kept track of the actual transactions, but

2    also had an accounting/financial part of it, and Mr. Zankl

3    testified at his 341 Meeting that we -- you know, that he

4    had no access, that it was an employee named Teddi and

5    Nadia or Nidia, they had access to it, he really didn't.

6                   We also recovered boxes of records that are

7    held by Mr. Barbee's office.  So we have a couple of

8    rooms, I think, full of boxes.  It would be impossible for

9    Mr. Zankl to actually study all of the information, not

10   knowing what questions I'm going to ask.  This is a stall

11   tactic, and this is some game-playing that I believe is

12   going on.

13                  We went through this process once before at

14   the 341 Meeting.  As we were headed towards the

15   341 Meeting, Mr. Zankl, through Mr. Winderman, said that

16   they were going to file a motion for protective order for

17   the 341 Meeting unless Mr. Zankl had access to his books

18   and records, and I sent Mr. Winderman an email saying

19   because the computer was available at the Broward

20   location, which is separate and apart from the Palm Beach

21   location, that Mr. Zankl could testify, because it was

22   being done by Zoom, from the Broward location, access to

23   his financial --

24                  THE COURT:  Which is still an operating

25   dealership or not?

Page 27

1              MR. CRANE:  I don't believe it's operating,

2    but it is --

3              THE COURT:  There is --

4              MR. CRANE:  -- owned by a company that --

5    the landlord is owned by another company owned by

6    Mr. Zankl.  So, Mr. Zankl had full and complete access to

7    that, and the computers are still there.

8              How active it is, I can't tell you.  There

9    are some cars that are sitting there, but I don't know the

10   actual business that is going on, but certainly he had

11   access to it.

12             We offered in an email, and I've attached

13   the email to the motion --

14             THE COURT:  I saw it.

15             MR. CRANE:  -- that said either go to the

16   office, identify what document you're referring to, if

17   you're asked a question, and then answer.  Okay.  That's

18   fine.  Or if you're not, and usually this is -- you know,

19   I've not seen a debtor at a 341 have access to many of the

20   books and records, other than the basic schedules and

21   things like that, and they could testify that way, and

22   then if you couldn't answer a question, do your best to

23   identify what that document might be so we can look for it

24   later.

25             THE COURT:  Or who would know.

1                    MR. CRANE:  Or who would know, and

2    Mr. Winderman -- or Mr. Zankl, through Mr. Winderman,

3    chose not to take the trustee up on her offer to have

4    Mr. Zankl have those records before him, and his computer

5    program before him.  He just did it at Mr. Winderman's

6    office.

7                    THE COURT:  And this was a limited purpose

8    2004 Exam, I think you're referring to now, or is this --

9                    MR. CRANE:  No, no, no.

10                   THE COURT:  -- the 341?

11                   MR. CRANE:  This is the actual 341 Meeting

12   of Creditors.

13                   THE COURT:  Okay.

14                   MR. CRANE:  We did a prior limited

15   341 Meeting --

16                   THE COURT:  2004 Exam.

17                   MR. CRANE:  -- or 2004 Examination, that was

18   because Mr. Zankl wanted us to release certain vehicles,

19   including the Camaro, and so we, under certain caveats, we

20   agreed to do that so we could release -- or figure out how

21   to release or abandon, and there was another Land Rover

22   that was Mr. Zankl's son's roommate, and so we took the

23   deposition based upon those two vehicles, and another one

24   that has no consequence at this point in time, and so it

25   was a limited purpose deposition that we took at the

1  Broward location, but that was suiting Mr. Zankl's purpose

2  for that.

3            Again, when we get to the 341 Meeting, when

4  we offer him to go through and testify from his records,

5  he declines, and if you look through -- I filed the

6  deposition, or the 341 transcript, and he repeatedly said,

7  I don't know and, you know, that he didn't know he needed

8  his documents, whatever, to answer, but at a

9  2004 Examination, I can present the document that I want

10  him to answer questions about and I'd have to show him the

11  questions -- the document if that's what is needed, but he

12  doesn't get to have that, in my opinion and our position,

13  to have that in advance.  He doesn't get to take the

14  discovery before and study for the examination.

15            The case that Mr. Winderman cites in his

16  motion, let's see, is the Perney (phonetic) case, and that

17  stands not for the proposition that Mr. Winderman cites it

18  for, in that case it was a debtor-in-possession that was

19  looking to take a Rule 2004 Examination, and there was

20  some controversy as to whether or not that debtor should

21  be in possession, should be entitled to certain documents.

22  It wasn't the person who the deposition was being taken

23  of, it was the actual debtor-in-possession looking to take

24  the deposition, and the question that was raised there.

25  There is a difference here, and that case, it's a

Page 30

1    Chapter 11, so the debtor-in-possession is in the position

2    of the trustee, where in this case we are the trustee, and

3    the debtor, the debtor should just be answering questions

4    as is their responsibility to do so, and not dictating

5    terms to the trustee as to what documents the trustee must

6    have in possession, or give him possession of especially,

7    you know, before we take the deposition or the

8    Rule 2004 Examination of Mr. Zankl.

9              So we ask the Court to overrule their

10   objection and allow us to go forward on June 6th at 9:30.

11   It will probably last all day, and I would expect that it

12   will be a multiple-day deposition based upon the financial

13   transactions that will go on, we'll set the second day at

14   another time.

15             THE COURT:  And that was otherwise an agreed

16   date, correct?

17             MR. CRANE:  Yes, the date was agreed.

18             THE COURT:  Which is five days from now.

19             Are there any other persons who would

20   potentially be identified as management of the debtor and,

21   if so, what offices do they hold?

22             MR. CRANE:  The only other person is

23   Kristen Zankl, but I don't believe that -- Kristen Zankl

24   was initially the owner of Excell, and it looks like the

25   sole owner of Excell, and then somewhere along the line we

Page 31

1    believe it became 50 percent Kristen, and 50 percent

2    Scott Zankl.

3              We believe that Mr. Zankl ran the day-to-day

4    operations of Excell Auto, that Ms. Zankl came in later on

5    and did some administrative or human resource work.

6              But at this point in time, and we haven't

7    done our full investigation, but at this point in time it

8    appears that she has had a much more limited role, but the

9    person in charge of the day-to-day operations of the

10   company was Scott Zankl.

11             THE COURT:  Mr. Winderman.

12             MR. WINDERMAN:  Yes, your Honor.  Let me see

13   if I can back up through all of this.

14             First of all, I believe Mr. Crane would have

15   to admit that Mr. Zankl has expended an extreme amount of

16   time in going over the available information with the

17   trustee and with Mr. Crane.  He's given himself over to

18   Mr. Crane on multiple occasions to answer questions.  He

19   has dealt directly with the trustee, and tried to provide

20   her with information.  He was a -- he wasn't in charge of

21   day-to-day operations.  He was a general manager.  He had

22   staff running the books and records.

23             And the reason for the bankruptcy is that in

24   the still of the night, Moshe Farache came in and took

25   several cars, probably in excess of 50 or 60, took books

1   and records, and made it almost impossible to create

2   meaningful schedules, and we've been working very hard,

3   with the trustee's cooperation to this point, and having

4   access to Dealertrack, that we could advise her as to

5   which cars were which, and which ones belonged to Excell,

6   and which ones did not.

7                   It's quite clear that the reason that Excell

8   had no income, and this has been explained to the trustee,

9   is that Excell had stopped doing business a year before

10  the bankruptcy, and had paid for all of Excell's

11  inventory, and we have proof of that, and we've been

12  willing to share that with the trustee on multiple

13  occasions.

14                  We don't mind going forward on the 6th.  I

15  don't know where Mr. Crane got that impression.  All we

16  ask for is access to the bank records that the trustee has

17  access to, and to the accounting side of Dealertrack,

18  which, again, the trustee should have access to, so that

19  when Mr. Zankl does sit for a 2004 Examination, that he

20  will be able to give full and complete answers as to every

21  transaction and every vehicle that's involved in this

22  bankruptcy.  That can be done today or tomorrow,

23  your Honor, and we'll be ready to go on the 6th.

24                  Why Mr. Crane believes that he needs

25  multiple days for a 2004 Examination is because he's not

Page 33

1    willing to give Mr. Zankl the opportunity to look at

2    the books and records and get prepared so that he can

3    answer all of Mr. Crane's questions fully and

4    completely.

5                    And if you read the 341 Meeting, that's

6    exactly what he said, he needs access to the bank records,

7    which the trustee has, and Dealertrack, both sides, the

8    vehicle side and the accounting side, so that when

9    Mr. Crane asks his questions about a particular vehicle,

10   and I imagine that's what he intends to do, that he can

11   respond meaningfully and completely, and this will not

12   take 14, or 18, or 20 hours, but can be accomplished in a

13   meaningfully shorter period of time.

14                    Thank you, your Honor.

15                    THE COURT:  All right.  So he focused on two

16   things, the Dealertrack data, which I assume is entirely

17   electronic, and perhaps can be accessed from anywhere, I'm

18   not sure, maybe it's on a server, and the other is bank

19   records.

20                    Would it facilitate the trustee's

21   questioning to have the witness have access to those

22   things or not?

23                    MR. CRANE:  No, your Honor, and if we have

24   questions about specific vehicles, then we will provide

25   Mr. Zankl with the documents that either come from

Page 34

```
 1    Dealertrack, or come from the bank records regarding
 2    specific vehicles.
 3                    Most of this case is really not about
 4    vehicles.  It's a lot about transfer of funds and fraud
 5    that went on, and so we have questions, and some of it
 6    overlaps with vehicles, but we'll provide that information
 7    as we take the deposition.
 8                    We should not be required to provide
 9    documents or anything else in advance of the
10    Rule 2004 Examination.
11                    THE COURT:  The motion currently before me,
12    I don't think it asks for the Court to pre-approve more
13    than the usual time period for an examination, correct?
14                    MR. CRANE:  It has not, so we will probably
15    come back on a separate motion and a separate day if that
16    needs to be worked out, if that's unable to be worked out
17    between the parties.
18                    THE COURT:  Understood.
19                    Mr. Winderman, now I noticed that ECF 114 is
20    signed by you on behalf of both the debtor and Mr. Zankl,
21    and there was another -- counsel earlier raised a concern
22    about whether that would result in a conflict.  Would you
23    like to address that?
24                    MR. WINDERMAN:  I don't believe so,
25    your Honor.  Mr. Zankl and Excell Auto are one in the
```

1    same.

2                        It is his time and effort that's gone into

3    being able to reconstruct the records, and if the Court

4    finds it to be a conflict, I'm happy to make the

5    application solely on behalf of Excell Auto, that is the

6    entity that will be burdened by multiple days of

7    depositions.  All we need are the -- we're very close,

8    your Honor, to having a full and complete accounting to

9    give to the trustee in advance of the 2004 Examination,

10   and all we need is a couple of days to look at the rest

11   of the bank records that the trustee has.  I don't see

12   that that's burdensome on the trustee.  I see that

13   that's in the interest of this Court, and due process for

14   Excell Auto, in being able to give full and complete

15   answers.

16                       And the reason for that, your Honor, is not

17   necessarily the bankruptcy proceeding, but as you can see,

18   there are multiple creditors and multiple other issues,

19   and the answers that should be given at the 2004, as they

20   should have been at the 341, should be full and complete

21   to satisfy not only the trustee, but multiple other

22   creditors that will be lining up to take additional

23   2004 Examinations.

24                       THE COURT:  Interesting -- yes, you wanted

25   to speak?

Page 36

1                    MR. WERNICK:  Just a very brief comment,

2    your Honor.

3                    THE COURT:  Yes.

4                    MR. WERNICK:  Aaron Wernick.

5                    Just because Mr. Winderman had brought up

6    representation, I don't think this will have an effect on

7    your ruling today, but I do want to put something on the

8    record, in the motion to compel, in Footnote 1, it says

9    counsel for Mr. Zankl did not want to wait until the 341

10   to have that mini-2004.  It actually should have read

11   counsel for the debtor did not want to wait.  At that time

12   there was no appearance on behalf of Mr. Zankl, not until

13   I came in, and that was after the fact, and Mr. Crane has

14   agreed on that.

15                   MR. CRANE:  Yes.

16                   THE COURT:  Okay.

17                   MR. CRANE:  Those conversations on all of

18   this were between me, the trustee, and Mr. Winderman, not

19   Mr. Wernick.

20                   THE COURT:  Okay.  Maybe this is more

21   interesting than I thought.

22                   All right.  Well, let's go back to the

23   motion that I have today.  Mr. Winderman, if it was useful

24   for the party taking the examination, in this case the

25   trustee, to provide documents to the deponent ahead of

Page 37

```
 1   time, then, of course, they are welcome to do that, but
 2   they are not required to do that.
 3                   Oh, Mr. Shraiberg wanted to be heard, I
 4   think.  Sorry.
 5                   MR. SHRAIBERG:  Yes, your Honor.  I
 6   apologize, and I don't know if this is a typo, or if it
 7   should be part of his explanation, in Docket Entry 114,
 8   even the "comes now" paragraph is the debtor, Excell Auto
 9   Group, and Scott Zankl.  The signature block is the
10   attorney for Karma of Broward, Inc.
11                   MR. WINDERMAN:  That's a mistake.
12                   MR. SHRAIBERG:  Okay.
13                   MR. WINDERMAN:  As everyone knows, I was on
14   vacation.  I asked for additional time.
15                   Your Honor, this case just started on
16   April 8th, and my vacation was planned well in advance.  I
17   apologize for the state of the pleading.
18                   THE COURT:  Okay.
19                   MR. SHRAIBERG:  But my question is, okay, if
20   that's a typo, but is he also counsel for Karma of
21   Broward --
22                   MR. WINDERMAN:  Yes.
23                   MR. SHRAIBERG:  -- and (inaudible) conflict.
24                   MR. WINDERMAN:  I don't believe so, and I
25   don't think that it creates any conflict.
```

1          Excell Auto is represented by the trustee

2    and trustee's counsel, and Karma of Broward has an

3    interest in many things in this case.

4               THE COURT:  I think this is getting worse

5    every moment, actually.

6               MR. MOON:  Your Honor, if I may be heard?

7    This is --

8               THE COURT:  And who is that?

9               MR. MOON:  -- James Moon.

10              This is James Moon.

11              THE COURT:  Mr. Moon, please.

12              MR. MOON:  Yes, your Honor, just a couple of

13   things.

14              I share the concerns with respect to

15   conflict that Mr. Miller and Mr. Shraiberg have raised.

16   First off, to hear the statement that Excell and Mr. Zankl

17   are one in the same is astonishing.

18              Number one, Excell has multiple

19   shareholders.  So to the extent that this shareholder was

20   acting in a way that was in breach of its fiduciary duty

21   to the company, that is a conflict.

22              Moreover, to suggest that he also

23   represents Broward -- or Karma of Broward, and yet

24   you've heard no representation of Karma of Palm Beach,

25   which is at the center of all of this, is another

1    astounding issue.

2                   You also heard counsel say that Excell

3    stopped doing business a year before the petition was

4    filed, and yet was filing financing, or getting financing

5    right before this bankruptcy was filed.

6                   Your Honor, there is amazing fraud that has

7    been going on in this case.  We need to get to the 2004 of

8    Mr. Zankl, he is the center of all of this.  To suggest

9    that he needs time to look at documents in his time and

10   under his terms --

11                  THE COURT:  Well, Mr. Moon --

12                  MR. MOON:  -- is ridiculous.

13                  THE COURT:  -- Mr. Moon, I was getting to

14   that.

15                  MR. MOON:  Thank you, your Honor.

16                  THE COURT:  And, Mr. Miller, perhaps I

17   should have paid more attention to the issues you raised

18   earlier because this gets more and more interesting every

19   minute.

20                  Mr. Winderman, it seems to me that you've

21   entered a thicket, and there is a substantial likelihood,

22   there is a substantial likelihood that you may not end up

23   representing anyone, given the number of concerns that

24   would be raised, not only by representing the debtor

25   entity in its current state as Chapter 7 debtor, which is

Page 40

1    not represented by the trustee, the trustee is the

2    trustee, the trustee obtains the powers, rights and

3    property of that entity, but the entity can still have

4    separate counsel, although under the circumstances one

5    would think that it would be Mr. Zankl's counsel that is

6    responding to the current motion, and not the debtor, who

7    has now a fiduciary duty to all creditors, which one would

8    think in most instances should be aligned with the estate,

9    but that's another matter.

10            You did sign, or you did present the

11   response on behalf of Mr. Zankl, and so I'll take it as

12   such.  So, I do caution you to review closely who your

13   clients are, and also who might be paying you, because I'm

14   confident the debtor is not, at least I hope the debtor is

15   not doing so, or debtor funds, and take into account all

16   of those issues to decide how you will move forward, if at

17   all, in this case.

18            I'm going to, however, rule on the current

19   motion.  The motion will be granted without any specific

20   provision requiring the trustee to provide anything to the

21   deponent ahead of the examination, which is scheduled to

22   take place on the 6th, I believe you said, beginning at

23   9:30.

24            MR. CRANE:  Yes.

25            THE COURT:  It is not the duty of the party

Page 41

1    noticing an examination, whether it be under Rule 2004, a

2    deposition, or elsewhere, here or in any federal court,

3    for that matter, to provide the deponent with documents

4    ahead of time.

5              There are certainly circumstances where

6    there is ongoing discovery, and it would be useful for

7    someone to have requested and obtained documents from an

8    opposing party ahead of time.  Here, the trustee is the

9    party who has noticed the examination, and trustee has

10   determined that it would not be helpful for the

11   examination for that to take place, and that is a

12   discretionary matter.

13             The motion to compel is granted.  The

14   response and objection is overruled.  Let me also add that

15   if there is a motion for protective order filed by

16   Mr. Zankl ahead of the 6th, it is my view that all issues

17   were or should have been raised today, and any such motion

18   will be denied immediately without a hearing.

19             You may tender --

20             MR. WINDERMAN:  None will be filed,

21   your Honor.

22             THE COURT:  Well, it will be filed, or none

23   will be --

24             MR. WINDERMAN:  No, none will be filed.

25             THE COURT:  Okay.  This is the time to

Page 42

1   address those issues.  Given the state of the

2   back-and-forth between the parties, the matter is, in

3   fact, ripe for ruling.  You may tender an order on 105.

4                 MR. CRANE:  Thank you, your Honor.

5                 MR. WINDERMAN:  Thank you, your Honor.

6                 THE COURT:  Okay.  Let's see what else, if

7   anything, do I have left?  Oh, relief from stay at 117,

8   and that is Integrated Vehicle Leasing.  Who would like to

9   present that?

10                 MR. FENDER:  Yes, your Honor, this is

11  Steven Fender for Integrated Vehicle Leasing.

12                 Integrated Vehicle Leasing owns a Mercedes

13  Sprinter 3500.  I've identified the VIN number.  The

14  trustee does not have possession of this vehicle.  I have

15  attached the title.  My client does actually own it.

16  There is a first lienholder, Santander, and the lease is

17  actually between my client and the debtor.

18                 At this point the allegations of default

19  were a little -- were not super clear.  To clarify that in

20  the meantime, January and February payments were missed,

21  March was made, April has been missed going forward.  Any

22  rights to this vehicle and this lease would be to the

23  trustee.  She is not going to seek to assume this lease.

24  She's got about another week.  The trustee agrees to

25  relief from stay.  We don't know where the car is.  We're

1    trying to track it down now with a repo man.

2                    I'm not here asking the Court to determine

3    who owns it or anything else, though I do have the title.

4    I'm just asking for relief from the stay with the 14 days

5    waived so that my client can repossess the car and

6    exercise its right under state law.

7                    MR. CRANE:  The trustee has no objection,

8    your Honor.

9                    THE COURT:  Would anybody else like to be

10   heard on 117?

11                    (No verbal response.)

12                    THE COURT:  The motion is granted for

13   obvious reasons.  There is cause for relief from stay

14   based on the unopposed allegations in the motion.  The

15   request for waiver of the 14-day stay is granted.  This is

16   a movable item.  It appears that the movant actually has

17   title to the item.  We don't know where it is.  We also

18   don't know whether it's insured.

19                    You may tender a proposed order,

20   Mr. Fender.

21                    MR. FENDER:  Thank you, your Honor.  I'll

22   do so today.

23                    THE COURT:  Do I have anything else to

24   address in Excell?

25                    MR. CRANE:  I don't believe so, but --

1          THE COURT:  I think I've got everything.

2     Very good.  Thank you all very much.

3          MR. WINDERMAN:  Thank you, your Honor.

4

5

6

7          (Thereupon, the hearing was concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 45

1

2

3                           CERTIFICATION

4

5   STATE OF FLORIDA        :

6   COUNTY OF MIAMI-DADE   :

7

8              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9   Reporter and Notary Public in and for the State of Florida

10  at Large, do hereby certify that the foregoing proceedings

11  were transcribed by me from a digital recording held on

12  the date and from the place as stated in the caption

13  hereto on Page 1 to the best of my ability.

14             WITNESS my hand this 10th day of June, 2022.

15

16

17  _____

18         CHERYL L. JENKINS, RPR, RMR

19         Court Reporter and Notary Public
         in and for the State of Florida at Large
20              Commission #HH 170910
                December 27, 2025

21

22

23

24

25