# 1001 CLINT MOORE ROAD

## LEASE

Premises:   1001 Clint Moore Road
            Unit B
            Boca Raton, FL 33487

U:\WpDocs\Farache-Clint Moore Road\Lease-CLEAN 6-21-12

**INDENTURE OF LEASE** ("Lease") made as of May, ~~22~~, 2012, by and between **1001 Clint Moore, LLC, a Florida limited liability company,** having a mailing address at 17626 Middlebrook Way, Boca Raton, FL 33496 ("Landlord") and **Excell Auto Group, ~~LLC, a Florida limited liability company,~~** having a mailing address at ___ ("Tenant") and Scott Zankl and Kristen Zankl (collectively, "Guarantors").

## WITNESSETH:

## ARTICLE 1

### Definitions: Basic Provisions

Section 1.01. The term "Premises" shall mean the space shown ___**hatched**___ on the floor plan attached hereto as Exhibit "A" and made a part hereof, which floor plan is provided for reference purposes only commonly described as Unit B located at 1001 Clint Moore Road, Boca Raton, FL 33487 (the "Building").

Section 1.02. The term "Building Project" shall mean all of the buildings and structures, including the land under Building (the "Land").

Section 1.03. The "Tenant" entity's Florida Secretary of State's document number is PO9000009701 and its FEI/EIN Number is ___.

Section 1.04. The term "rentable" lease space shall mean the aggregate of the net square feet of the Premises occupied by Tenant plus the product obtained by multiplying the net square feet of the Common Area (as hereinafter defined) by a fraction, the numerator of which is the net square feet of Tenant's Premises and the denominator of which is the net square feet of all premises in the Building reserved for lease to tenants.

Section 1.05. This Lease confers no rights on Tenant with respect to the Building or the Land other than tenancy of the Premises and the non-exclusive license to use, in common with others authorized by Landlord, the parking facilities of the Building as allocated by the Landlord and as provided in the Condominium Documents (hereinafter defined).

Section 1.06. By taking possession of the Premises, Tenant accepts the Premises as being in the condition in which Landlord is obligated to deliver them. Tenant acknowledges that it has thoroughly inspected the Premises with the assistance of such experts as it deems necessary and accepts the Premises on the Commencement Date in its then "as is" condition, except for Landlord's Work (as hereinafter defined) as set forth in Schedule B. Tenant also acknowledges that neither the Landlord nor any agent or representative of Landlord has made any representation or warranty whatsoever with respect to the condition of the Premises or Building, or that any utility services provided to

1

the Premises are in a form or amount suitable for Tenant's use.

Section 1.07. Tenant acknowledges that any plan of the Building or the Land which may have been displayed or furnished to Tenant is tentative. Landlord may, in its sole discretion, change the shape, size, location, number, and extent of the improvements shown on any such plans, and eliminate from or add to the Land any buildings or other improvements and eliminate from or add to the Building any improvements or floors, provided the same shall not materially adversely affect Tenant's access to or use of the Premises.

Section 1.08. Tenant acknowledges that the Building and the Land are subject to that certain Declaration of Condominium as recorded in Official Records Book 22047, Page 181 of the public records of Palm Beach County, Florida ("Condominium"). Tenant agrees to be bound by the terms, conditions, rules and regulations of the Condominium as such rules and regulations may be amended.

Section 1.09  Scott Zankel and Christine Zankl are jointly and severally the Guarantors of the Lease in accordance with the terms of the Guaranty attached hereto as Exhibit "B".

## ARTICLE 2

### Commencement of Term

Section 2.01. This Lease shall be effective on the date hereof (the "Commencement Date"). The term of this Lease ("Term") shall commence on the Commencement Date, unless sooner terminated as provided in this Lease, and shall end five (5) years after the Rent Commencement Date (as hereinafter defined), plus the number of days required, if any, to have such Term expire on the last day of the calendar month in which such date occurs (the "Expiration Date"). The payment of the Base Rent and Additional Rent hereunder shall commence on the date that Tenant is open for business but in no event later than September 30, 2012.

Provided that (i) Tenant is not in default under the terms and provisions of the Lease and (ii) the Landlord hereunder has not sold the Building prior to the exercise of the Option, Tenant shall have and is hereby granted one (1) option ("Option") to extend the Term and Expiration Date of the Lease for a period of five years ("Option Term"). The Option must be exercised by notice thereof in writing to Landlord by certified or registered mail, return receipt or overnight mail, giving not more than twelve (12) months, nor less than six (6) months' notice prior to the expiration of the Term. All of the terms and conditions of the original lease shall remain in full force and effect during the Option Term except as to Base Rent which shall be as set forth in Section 3.01 hereof.

Section 2.02. The Premises shall be deemed substantially completed when

2

Landlord has substantially performed the work required to be performed pursuant to Exhibit "C" annexed hereto ("Landlord's Work"), and Landlord shall deliver possession of the substantially completed Premises on the Rent Commencement Date. Except as set forth on Schedule B, Landlord shall have no obligation to perform any other work in connection with preparing the Premises for Tenant's occupancy. Landlord's Work shall be deemed to be substantially completed even though minor details or adjustments, none of which materially interfere with Tenant's access to and use of the Premises may not then have been completed, however Landlord, at its sole cost and expense, shall promptly thereafter complete any unfinished Landlord's Work.

Section 2.03. Tenant may enter the Premises prior to the Rent Commencement Date for purposes of installing furniture systems, telephone equipment and similar functions to facilitate Tenant's move-in and start-up, subject to the provisions of this Lease, including the provisions of Article 9, and provided Tenant delivers to Landlord the insurance policies set forth in Article 12, and further provided that such earlier entry shall not affect the Rent Commencement Date nor shall Tenant be liable for the payment of any rent prior to the Rent Commencement Date. Landlord shall have no liability or obligation for the care or preservation of Tenant's property. If Landlord cannot deliver possession of the Premises to Tenant on the Rent Commencement Date, this Lease shall not be void or voidable, nor shall Landlord be liable to Tenant for any loss or damage resulting therefrom. However, if Tenant enters into the possession of the Premises and commences the conduct of its business, the Rent Commencement Date shall be the date of such entry regardless of whether the foregoing events shall have occurred.

Section 2.04. Promptly after the Rent Commencement Date, upon the request of Landlord, Landlord and Tenant will execute a statement confirming the Rent Commencement Date and the Expiration Date of this Lease, in accordance with the foregoing provisions, provided, however, that the execution of such statement shall not be necessary for the Rent Commencement Date to occur.

## ARTICLE 3

### Rent

Section 3.01. Tenant shall pay, as base rent ("Base Rent") for the Premises from and after the Rent Commencement Date, the following:

| Period | Annual Base Rent | Monthly Base Rent |
|--------|------------------|-------------------|
| Year 1 | $87,000.00 | $7,250.00 |
| Year 2 | $93,000.00 | $7,750.00 |
| Year 3 | $99,000.00 | $8,250.00 |
| Year 4 | $105,000.00 | $8,750.00 |
| Year 5 | $111,000.00 | $9,250.00 |

If the Option is exercised pursuant to Section 2.01 hereof, then Tenant shall pay, as Base Rent during the Option Term, the following:

| Period | Annual Base Rent | Monthly Base Rent |
|--------|------------------|-------------------|
| Year 6 | $117,500.00 | $9,750.00 |
| Year 7 | $123,000.00 | $10,250.00 |
| Year 8 | $129,000.00 | $10,750.00 |
| Year 9 | $135,000.00 | $11,250.00 |
| Year 10 | $141,000.00 | $11,750.00 |

If the Rent Commencement Date is other than the first day of a calendar month, "Year 1" shall begin on the Rent Commencement Date and shall end on the last day of the twelfth (12th) full calendar month after the Rent Commencement Date. If the Rent Commencement Date is on the first day of a calendar month, "Year 1" shall be the twelve (12) month period beginning on the Rent Commencement Date. Each subsequent twelve calendar month period shall be a "Year".

Section 3.02. Tenant shall pay the amount of $16,500.00 plus applicable sales tax upon Tenant's execution of this Lease, which payment shall be applied to the first month's (1st) Base Rent hereunder following the Rent Commencement Date and the last month's Base Rent. Thereafter, Tenant shall pay Base Rent in advance on or before the first day of each and every calendar month during the Term (other than the last month's rent). In the event the Term ends on a day other than the last day of a calendar month, then the monthly rental for the last fractional month of the Term shall be appropriately prorated.

Section 3.03. All payments of any kind (other than Base Rent) payable by Tenant to Landlord under the terms of this Lease shall be collectively referred to in this Lease as "Additional Rent". Base Rent and Additional Rent are collectively referred to in this Lease as "Rent" and may be designated as such in any statutory notice to pay rent or quit the Premises. Except as specifically set forth in this Lease, RENT SHALL BE PAID TO LANDLORD WITHOUT DEDUCTION, OFFSET, PRIOR NOTICE OR DEMAND, in lawful money of the United States of America at the Building office, or to such other person or at such other place as Landlord may, from time to time, designate in writing.

Landlord and Tenant agree that Tenant shall pay all Rent and other amounts now due or hereafter to become due to Landlord or its agents as provided for in this Lease, (as and when due) directly to the following address:

1001 Clint Moore Road, LLC
17626 Middlebrook Way

4

Boca Raton, FL 33496

All Rent checks shall be made payable to 1001 Clint Moore Road, LLC unless otherwise designated in writing by Landlord.

Section 3.04. Failure by Landlord to collect Rent due under this Lease during any portion of the Term shall not preclude Landlord from commencing the collection of such Rent at any subsequent time. If this Lease shall terminate on a day other than the last day of a calendar month, such termination shall not affect the obligations of Tenant under this Lease with respect to Rent attributable to the period prior to such termination.

## ARTICLE 4

## ADDITIONAL RENT

Section 4.01. In addition to the Base Rent, Tenant shall pay as additional rent (hereinafter referred to as "Additional Rent") its proportionate share (hereinafter referred to as "Tenant's Proportionate Share") of the Operating Expenses (hereinafter defined) of the Building and the Land. Additional Rent shall be paid to Landlord in accordance with the following provisions:

(a)     Landlord shall furnish to Tenant prior to thirty (30) days after the beginning of each calendar year, including the first calendar year, Landlord's estimate of Operating Expenses for the upcoming year. The Operating Expenses shall be determined as though the Building were 100% occupied. Tenant shall pay to Landlord, on the first day of each month starting with the Rent Commencement Date, as Additional Rent, an amount equal to one-twelfth (1/12th) of Tenant's Proportionate Share of Landlord's estimate of the Operating Expenses for that calendar year. If there shall be any increase or decrease in the Operating Expenses for any year, whether during or after such year, Landlord shall furnish to Tenant a revised estimate and the Operating Expenses shall be adjusted and paid or refunded, as the case may be. If a calendar year ends after the expiration or termination of this Lease, the Additional Rent payable hereunder shall be prorated to correspond to that portion of the calendar year occurring within the Term of this Lease.

(b)     Within 120 days after the end of each calendar year, Landlord shall furnish to Tenant a statement showing a summary of the actual Operating Expenses incurred for the preceding calendar year. Tenant shall either receive a refund (in the manner set out below) or be assessed an additional sum based upon the difference between Tenant's Proportionate Share of the actual Operating Expenses and the Additional Rent payments made by Tenant during said year. Any additional sum owed by Tenant to Landlord shall be paid within 10 days of receipt of assessment. Any refund owed by Landlord to Tenant shall be credited toward the next month's rental payment. Each statement of Operating Expenses given by Landlord shall be conclusive and binding upon Tenant unless, within 30 days after Tenant's receipt thereof, Tenant shall notify Landlord that it disputes the accuracy of said statement and describe in reasonable detail what Operating Expenses are being disputed. Failure of Landlord to submit the written statement referred to herein shall not waive any rights of Landlord nor

5

excuse Tenant's obligation to pay the difference of actual Operating Expenses hereunder at the time said statement is actually delivered to Tenant.

(c) "Operating Expenses" shall mean expenses relating to the operation and maintenance of the Building and the Property, and all amenities and appurtenances relating thereto as further defined by the Building Owners and Managers Association (hereinafter referred to as "BOMA"), and shall include, without limitation, the following:

(i)     wages, salaries, social security and other taxes, medical and general benefits of the Building manager;

(ii)     administrative expenses and charges;

(iii)     all insurance premiums required to be maintained by Landlord for the Building;

(iv)     stand-by sprinkler charges, water charges and sewer charges;

(v)     electricity and fuel used in the heating, ventilation, air-conditioning, lighting and all other operations of the common areas of the Building;

(vi)     trash removal and recycling expenses;

(vii)     painting of all common areas in the Building and Land, including painting, striping and the provision of signage on all pavement, curbs, walkways, driveways and parking areas in the Building and upon the Land;

(viii)     window cleaning, janitorial services and related equipment and supplies;

(ix)     cleaning, maintenance and repair of the Building and Land;

(x)     maintenance and service contracts;

(xi)     tools, equipment and supplies necessary for the performance of repairs and maintenance (which are not required to be capitalized for federal income tax purposes);

(xii)     maintenance and repair of all mechanical, electrical and intrabuilding network cabling equipment in the Building;

(xiii)     cleaning, maintenance and repair of common areas of the Building;

(xiv)    cleaning, maintenance and repair of pavement, curbs, walkways, lighting facilities, landscaping, driveways, parking areas and drainage areas upon and adjacent to the Building;

(xv)    personal property taxes (excluding property owned by tenants);

(xvi)    real estate taxes assessed against the Building and the Land. The term "real estate taxes" shall mean any tax or assessment levied, assessed or imposed at any time by any governmental authority upon or against the Building or Land or any part thereof, any tax or assessment levied, or any franchise, income, profit or other tax or governmental imposition levied, assessed or imposed against or upon Landlord in substitution in whole or in part for any tax or assessment against or upon the Building and the Land or any part thereof;

(xvii)    current portion of any assessments for public improvements imposed against the Building and the Land;

(xviii)    all other costs and expenses which would be considered as an expense of cleaning, maintaining, operating or repairing the Building and the Land, including, without limitation, any expense associated with administering, managing and providing a government mandated transportation demand management program.

(xix)    a reasonable amortization cost due to any capital expenditures incurred to reduce or limit operating expenses of the Property and Land;

(xx)    the amortized portion of any cost or expenses for any capital expenditure which may be required by government authority for any reason, including, without limitation, compliance with laws referred to herein, or which may be required by Landlord's insurance carrier;

(xxi)    a reasonable amortization cost due to any capital expenditures incurred to provide electronic security for the Building.

The estimated Operating Expenses for 2012 are currently $N/A per rentable square foot, plus applicable sales tax and use taxes, provided, however, Landlord and Tenant acknowledge that this is only an estimate and the actual Operating Expenses may vary. Tenant acknowledges that the estimated Operating Expenses are inclusive of janitorial service during normal business hours. Tenant also acknowledges that electricity is separately metered and shall be separately paid by Tenant. In no event will Tenant's payment of Tenant's Proportionate Share of Controllable Operating Expenses (as hereinafter defined) for any year of the Term after the first Lease Year increase by more than five percent (5%) over Tenant's Proportionate Share of Operating Expenses payable for the immediately preceding year on a cumulative basis. "Controllable

7

Operating Expenses" shall mean all Operating Expenses other than taxes, insurance, utilities and refuse.

Section 4.02  "Tenant's Proportionate Share" shall, at any given time, be defined as that fraction having as a numerator the total rentable square footage (10,000 sq. ft.) leased hereunder at said time, and having as a denominator the total rentable square footage of the Building (17,000 sq. ft.) as determined by Landlord using the standard for square footage calculation at said time (to wit: 10,000/59%).  The amounts to be included in Tenant's Proportionate Share as described shall be based upon the actual cost per rentable square foot paid by Landlord for those items of expense.  Operating Expenses shall not include leasing commissions and expenses or Tenant improvements incurred for other Building tenants.

Section 4.03.  The examples set forth in Subparagraph 4.01 (c) above are not intended to limit the operating expenses for which Tenant is responsible, it being the intention of the parties for Tenant to pay Tenant's Proportionate Share of all expenses of Landlord in the operation, maintenance, cleaning and repair of the Building and the Land.

Section 4.04.  Notwithstanding anything contained within Article 4 to the contrary, during the years One through the end of year Five, Tenant's proportionate share of the Additional Rent shall be a flat fee of $3,750.00 per month plus sales tax ("Flat Fee"), if applicable.  The Flat Fee is based upon real estate taxes, liability and hazard insurance in effect for the year 2012 ("Base Year").  The Flat Fee shall be adjusted by Landlord and Tenant for any increases or decreases in taxes and insurance from the Base Year.  In such event, the Flat Fee shall be either increased or decreased by Tenant's proportionate share of such increase or decrease in such items.

## ARTICLE 5

### Late Charge - Interest

Section 5.01. If Rent is not paid within five (5) days from the date due, Tenant shall pay to Landlord a late charge of four (4%) percent of the amount delinquent. Landlord and Tenant recognize that the expenses and damages which Landlord would suffer as a result of Tenant's failure to pay Rent to Landlord promptly when due are difficult to ascertain and that said late charge represents a fair and reasonable estimate of the expenses and damages which Landlord would suffer or incur in the event of Tenant's late payment.  The provisions of this Section 5.01 shall not relieve Tenant from payment of Rent at a time and in the manner specified in this Lease, nor shall this Section 5.01 affect the rights of Landlord under Section 5.02 (Interest) or Article 21 (Remedies).

Section 5.02. If Tenant fails to pay any Base Rent within ten (10) days after its due date, Tenant shall pay interest thereon from the date due until the date paid at the rate that is the lower of 1-1/2% per month or the highest rate permitted by applicable law.  If any

8

check of Tenant in payment of any sum due under this lease, including but not limited to Rent, fails to clear the bank, Tenant shall pay a charge of $300.00.

## ARTICLE 6

### Security Deposit

Section 6.01. Tenant shall, upon Tenant's execution of this Lease, deposit with Landlord the amount of $9,250.00 plus tax as a security deposit for the performance by Tenant of the provisions of this Lease. It is expressly understood and agreed that the aforesaid security deposit is not an advance rental deposit and may not be applied to the last month's Rent, nor is the security deposit a measure of Landlord's damages in the event of Tenant's default. If Tenant is in default in its obligations under this lease, Landlord may use the security deposit, or any portion of it, to cure the default or compensate itself for all damage resulting from Tenant's default. Tenant hereby waives to the extent applicable, all provisions of law, now or hereafter in force, which provide limitations on what a Landlord may claim from a security deposit, it being agreed that Landlord may, in addition, claim those sums reasonably necessary to compensate Landlord for any other loss or damage, foreseeable or unforeseeable, caused by the act or omission of Tenant or any officer, employee, agent or invitee of Tenant. Tenant shall pay to Landlord upon demand a sum equal to the portion of the security deposit expended or applied by Landlord so as to maintain the security deposit in the sum of $9,250.00 plus tax at all times during the Term of this Lease unless the Option is exercised, in which event the Security Deposit shall be increased to $11,750.00 plus applicable sales tax. If Tenant is not in default at the Expiration Date or sooner termination of this Lease, and provided Tenant is not holding over as provided in Article 18, Landlord shall return the security deposit without interest to Tenant after calculation and deduction of all sums due under this Lease. Landlord's obligations with respect to the security deposit are those of a debtor and not a trustee and Landlord may commingle the security deposit with Landlord's other funds. Tenant shall not earn any interest on any security deposit held by Landlord pursuant to this Lease.

Section 6.02. In the event Landlord's estate is sold or assigned, Landlord shall have the right to transfer the cash security deposit then held by Landlord to the vendee or assignee, and Landlord shall thereupon be released by Tenant from all liability for the return of such cash security deposit. In such event, Tenant agrees to look solely to the new Landlord for the return of said cash security deposit. It is agreed that the provisions hereof shall apply to every transfer or assignment made of the cash security deposit to a new Landlord.

Section 6.03. Tenant covenants that it will not assign or encumber, or attempt to assign or encumber, the monies deposited hereunder as security deposit, and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment, or attempted encumbrance.

9

Section 6.04. The use of the security deposit, as provided in this Article, shall not be deemed or construed as a waiver of Tenant's default or as a waiver of any other rights and remedies to which Landlord may be entitled under the provisions of this Lease by reason of such default, it being intended that Landlord's rights to use the whole or any part of the security deposit shall be in addition to but not in limitation of any such other rights and remedies; and Landlord may exercise any of such other rights and remedies independent of or in conjunction with its rights under this Article.

## ARTICLE 7

### Use of Premises and Building

Section 7.01. Tenant shall use and occupy the Premises only for general office and warehouse uses in connection with a company that markets vehicles in compliance with all applicable laws, rules and regulations and for no other purpose. Access to the Premises shall be permitted by Tenant only to Tenant and its employees, agents, invitees and contractors.

Section 7.02. Notwithstanding the provisions of Section 7.01, Tenant shall not use or allow the use of the Premises or any part thereof (1) for the cooking (other than microwave warming and coffee makers for employee use in a break room) and/or sale of food; (2) for storage for sale of any alcoholic beverage in the Premises and; (3) any use inconsistent with the zoning for the Building. Furthermore, the Premises shall not be used for any purpose that would, in Landlord's reasonable judgment, impair or interfere with any of the Building operations or the proper and economic heating, air-conditioning, cleaning or any other services of the Building, or interfere with the use of the other areas of the Building by any other tenants. Neither Tenant nor any person within Tenant's control shall use, generate, store, treat and/or dispose of any Hazardous Materials (as hereinafter defined) in, on, under or about the Premises.

Section 7.03. If any governmental license or permit, other than a Certificate of Occupancy or any license or permit is required for the proper and lawful conduct of Tenant's business in the Premises, or any part thereof, and if failure to secure such license or permit would in any way affect Landlord, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection by Landlord. Tenant shall at all times comply with the terms and conditions of each such license or permit.

Section 7.04. Tenant shall not place a load upon any floor of the Premises which exceeds the load per square foot which such floor was designed to carry and which is allowed by law.

10

Section 7.05. Tenant shall not paint or install any signs on the interior or exterior doors or windows of the Premises or any other surface visible to a common or public area, or install anything inside the exterior windows of the Premises that is visible from the outside of the Building, or otherwise install any electrically lighted signs in the Premises, without the prior written consent of Landlord, which may be granted or withheld in Landlord's sole and absolute discretion. Subject to the approval of the Landlord, the Condominium Association and governmental authority, Tenant shall have the right to install signage at the Building, at Tenant's expense. Tenant, at Tenant's expense, shall have the right to install any signs on the interior of the Premises that are not visible from the outside of the Building. No fixtures or objects shall be placed in any location other than within the Premises. Upon request of Landlord, Tenant shall immediately remove any sign, advertising material or lettering which Tenant has placed or permitted to be placed in or about the Premises or Building contrary to the provisions of this Section and, if Tenant fails to do so, Landlord may enter the Premises and remove the same at Tenant's expense.

Section 7.06. All approved signs and lettering on the Premises shall be printed, painted, inscribed, lighted, or affixed at Tenant's expense or by a person selected or approved by Landlord, in the quantity, size, style, location, content, color, and material acceptable to Landlord and the Condominium Association.

Section 7.07. The Premises shall be used solely for the purposes set forth in this Article and for no other use or purpose. Tenant shall not do or permit anything to be done in or about the Premises, nor shall Tenant bring or allow anything to be brought into the Premises, which will in any way increase the rate of any fire insurance or other insurance in any manner. Tenant also shall not do or suffer anything to be done in or about the Premises which will in any way obstruct or interfere with the rights of other occupants of the Building or injure or annoy said occupants, nor shall Tenant use or suffer the Premises to be used for any immoral, unlawful or objectionable purposes. In no event shall Tenant cause or suffer to be caused any nuisance in or about the Premises, and no loudspeakers or similar devices shall be used without the prior written approval of Landlord. Tenant further agrees not to commit or suffer to be committed any waste in or upon the Premises. Tenant shall not vacate or abandon the Premises while in default of the Rent. The provisions of this paragraph are for the benefit of Landlord only and shall not be construed to be for the benefit of any other tenant or occupant of the Building.

Section 7.08. Tenant shall not do or permit to be done in or about the Premises, nor bring or keep or permit to be brought or kept in or about the Premises, anything which is prohibited by or will in any way conflict with any law, statute, ordinance or other governmental rule, regulation or requirement now in force or which may hereafter be enacted or promulgated. Tenant shall, at its sole cost and expense, promptly comply with all of said governmental measures and also with the requirements of any building codes, health and safety codes, and board of fire underwriters, or other similar body now or hereafter constituted, insofar as any of the aforesaid requirements relate to or affect the condition, use or occupancy of the Premises, excluding structural changes not related to or

11

affected by Tenant's alterations, additions or improvements. Without limiting the generality of the foregoing, Tenant shall be responsible for making any alterations or improvements to the Premises and for providing any auxiliary aids or services that may be required pursuant to the terms of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101-12213, all regulations issued thereunder and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto, together with similar Federal, state and local laws, as the same are in effect on the date hereof and may be hereafter modified, amended or supplemented (collectively referred to as "Disability Laws" and "ADA"). The judgment of any court of competent jurisdiction or the admission of Tenant in any judicial action, regardless of whether Landlord is a party to such action, that Tenant has violated any governmental measures or requirements shall be conclusive of that fact as between Landlord and Tenant. Tenant shall indemnify, defend and hold Landlord harmless from any and all demands, claims, losses, costs or damages, including, without limitation, reasonable attorneys' fees, suffered or incurred by Landlord as a result of Tenant's failure to perform the covenants contained in this Section. Tenant's failure to comply with any applicable law, order, ordinance, rule or regulation shall be a material event of default under this Lease if such failure continues beyond a reasonable time after Tenant has Notice thereof. The provisions of this Section shall survive the Expiration Date or earlier termination of this Lease with respect to any noncompliance occurring prior to such Expiration Date or such earlier termination of this Lease. If any lender or governmental agency shall ever require testing to ascertain whether or not there has been any release of Hazardous Materials, then the reasonable costs thereof shall be reimbursed by Tenant to Landlord upon demand as additional charges if such requirement applies to the Premises.

              Section 7.09. Tenant agrees that during the Term, there shall be no use, presence, disposal, storage, generation, leakage, treatment, manufacture, import, handling, processing, release, or threatened release of Hazardous Materials (as defined below) on, from or under the Premises or the Building or Land (individually and collectively, "Hazardous Use") except to the extent that, and in accordance with such conditions as, Landlord may have previously approved in writing in its sole and absolute discretion and in compliance with Environmental Laws (as defined below). It is further agreed that Tenant shall be entitled to use and store only those Hazardous Materials which are (i) set forth in a list prepared by Tenant and approved in writing by Landlord, (ii) necessary for Tenant's business, but then only in the amounts and for the purposes previously disclosed in writing to and approved in writing by Landlord, and (iii) in full compliance with all Environmental Laws and all judicial and administrative decisions pertaining to such Environmental Laws. For the purposes of this Article, the term Hazardous Use shall include Hazardous Use(s) on, from or under the Premises by any of the Tenant Parties described in Article 12, whether known or unknown to Tenant. "Environmental Laws" means 33 U.S.C. Section 1251 et seq., 42 U.S.C. Section 6901 et seq., 42 U.S.C. Section 7401 et seq., 42 U.S.C. Section 9601 et seq., or any successor(s) thereto, and all other local, state and federal laws, judgments, ordinances, orders, rules, regulations, codes and other governmental restrictions, guidelines and requirements, any amendments and successors thereto, replacements thereof and publications promulgated pursuant thereto, which deal with or

otherwise in any manner relate to, air or water quality, air emissions soil or ground conditions or other environmental matters of any kind. Tenant, at its expense, shall comply with all such Environmental Laws. Tenant shall inform Landlord of any actual, suspected or threatened violation of any Environmental Law with respect to the Premises or any actual, suspected, or threatened Hazardous Material activity on, at, in, under or above the Premises and any litigation, claim, demand, proceeding, enforcement action, regulatory action or investigation arising from any actual, suspected or threatened condition arising from any other environmental matter, or any such litigation, claim, proceeding or investigation that is suspected or threatened. "Hazardous Materials" means any wastes, materials or substances (whether in the form of liquids, solids or gas, and whether or not air-borne), which are or are deemed to be (1) pollutants or contaminants, or which are or are deemed to be hazardous, toxic, ignitable, reactive, corrosive, dangerous, harmful, injurious, noxious or a nuisance, or which present a risk to public health or to the environment, or which are or may become regulated by or under the authority of any applicable local, state or federal laws, judgments, ordinances, orders, rules, regulations, codes or other governmental restrictions, guidelines or requirements, any amendments or successor(s) thereto, replacements thereof or publications promulgated pursuant thereto, including, without limitation, any such items or substances which are or may become regulated by any of the Environmental Laws; or (2) a pesticide, petroleum (including crude oil or any fraction thereof), asbestos or any asbestos-containing material, a polychlorinated biphenyl, radioactive material, or urea formaldehyde. If any lender or governmental agency shall ever require testing to ascertain whether or not there has been any release of Hazardous Materials, then the reasonable costs thereof shall be reimbursed by Tenant to Landlord upon demand as additional charges if such requirement applies to the Premises. In addition, Tenant shall execute affidavits, representations and the like from time to time at Landlord's request concerning Tenant's best knowledge and belief regarding the presence of Hazardous Substances or Materials on the Premises. In all events, Tenant shall indemnify Landlord in the manner elsewhere provided in this Lease from any release of Hazardous Materials on the Premises occurring while Tenant is in possession, or elsewhere if caused by Tenant or persons acting under Tenant. Tenant's obligations and liabilities under this Section shall survive the Expiration Date or earlier termination of this Lease. In no event shall Tenant be liable for any costs, losses or claims due to the presence of Hazardous Materials in the Premises (i) which were placed in the Premises prior to Tenant's occupancy (other than as a result of Tenant's acts or omissions), or (ii) placed in the Premises due to the acts or omissions of Landlord or Landlord's contractors.

Section 7.10. Tenant shall faithfully comply with the rules and regulations for the Building and the Condominium Association ("Rules and Regulations"), together with all modifications and additions to such Rules and Regulations as may be adopted by Landlord or the Condominium Association, as the case may be, from time to time in writing. Landlord shall not be responsible for the non-performance by any other tenant or occupant of the Building of any of said Rules and Regulations. Landlord agrees to enforce the Rules and Regulations in a reasonably non-discriminatory manner.

13

Section 7.11. During the term of this Lease, Tenant shall have access to the Premises twenty-four (24) hours a day, seven (7) days a week, subject to emergencies, security and governmental requirements.

## ARTICLE 8

### Services and Utilities

Section 8.01.

(a)     The Premises are separately metered for electrical services and water. Tenant shall make arrangements to have service established with all applicable utility companies in the name of Tenant and Tenant shall indemnify and hold Landlord harmless from and against any claim, loss, cost, damage or expenses arising out of such utilities or any damage Tenant may ever suffer or incur as a result of the loss of such services;

(i)     Tenant shall obtain and pay for Tenant's entire separate supply of electric current (including without limitation, that which is used by the air handlers servicing the Premises) by direct application to and arrangement with the public utility company servicing the Building and shall be responsible for the payment of all bills and billings therefor.  Landlord will permit its electric feeders, risers and wiring serving the Premises to be used by Tenant to the extent available and safely capable of being used for such purpose.

(ii)     Any additional risers, feeders, electrical meters or other equipment or service proper or necessary to supply Tenant's electrical requirements, upon written request of Tenant, will be installed by Landlord, at the sole cost and expense of Tenant, if in Landlord's reasonable judgment, the same are necessary and will not cause permanent damage or injury to the Building or the Premises or cause or create a dangerous or hazardous condition or entail excessive or unreasonable alterations, repairs or expense or interfere with or disturb other tenants or occupants.  Rigid conduit only will be allowed.

(iii)     Tenant agrees not to connect any electrical equipment of any type to the Building electric distribution system, beyond that on Tenant's approved plans for initial occupancy, other than lamps, typewriters, personal computers, communications equipment, photocopiers and other small office machines which consume comparable amounts of electricity, without the Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed.  In no event shall Tenant use or install any fixtures, equipment or machines the use of which in conjunction with

14

other fixtures, equipment and machines in the Premises would result in an overload of the electrical circuits servicing the Premises.

(iv)    Tenant covenants and agrees that at all times its use of electric current shall never exceed the capacity of the then existing feeders to the Building or the risers or wiring installation, such capacity being five (5) watts per usable square foot connected load, including lighting.

(v)    Landlord shall not be liable or responsible in any way to Tenant for any loss, damage or expense which Tenant may sustain or incur if either the quantity or character of electric energy is changed or is no longer available or suitable for Tenant's requirements. Tenant shall furnish, install and replace, as required and at its own cost and expense, all lighting fixtures, tubes, lamps, bulbs, ballasts and outlets required in the Premises, other then the initial installation which will be done at Landlord's expense. All such fixtures, tubes, lamps, bulbs, ballasts and outlets so installed shall become Landlord's property upon the expiration or sooner termination of this Lease.

(b)    Tenant shall provide its own janitorial services. Tenant shall cause the Premises to be cleaned in a manner commensurate with the Building. If such cleaning is performed by Landlord because Landlord has determined it is required in order to avoid an unsanitary or unsightly condition and Tenant has not performed the required cleaning on or before the third day after Landlord has notified Tenant in writing or by e-mail of the need for such cleaning, Tenant shall pay for the removal from the Premises and the Building of any refuse, garbage and rubbish of Tenant and for any receptacles for the storage of same until its removal from the Building. Receptacles shall be kept only in such areas as are designated by Landlord. Cleaning of the Premises and removal of trash, garbage and rubbish shall be done in a manner reasonably satisfactory to Landlord and no one other than persons approved by Landlord shall be permitted to enter the Premises or the Building for such purpose. Tenant, at its own cost, may utilize its own employees or award a contract to outside contractors approved by Landlord to perform cleaning and/or carting services in the Premises provided such employees or outside contractors do not cause any labor disruption or dispute. Tenant shall also obtain and provide to Landlord evidence of a heating, ventilation and air conditioning ("HVAC") maintenance contract whereby the HVAC system shall be regularly maintained (no less than twice a year) by a duly licensed and reputable HVAC contractor. In addition, Tenant shall be solely responsible for the maintenance and repair of all operating systems within the Premises including but not limited to plumbing, electrical, HVAC and all appliances.

## ARTICLE 9

### Alterations

15

Section 9.01.  Tenant shall not make or suffer to be made any alterations, additions or improvements to the Premises or any part thereof, including the attachment of any fixtures or equipment, without obtaining Landlord's prior written consent, which consent shall not be unreasonably withheld with respect to non-structural interior work.  When applying for such consent, Tenant shall furnish complete plans and specifications for such alterations, additions or improvements.

Section 9.02.  All alterations, additions, track lighting, fixtures and improvements, whether temporary or permanent in character and regardless of whether made or installed pursuant to this Article or otherwise, that are made in or upon the Premises either by Landlord or Tenant, shall at once become part of the Premises and belong to Landlord and, at the end of the Term, shall remain on the Premises without compensation of any kind to Tenant except as otherwise provided in this Lease.  Movable furniture, trade fixtures and equipment shall remain the property of Tenant.  Upon the Expiration Date or earlier termination of this Lease, Tenant shall surrender the Premises to Landlord, together with all alterations, additions, fixtures, improvements and repairs which have been made thereto in the same condition as delivered, ordinary wear and tear (other than that which could have been avoided by Tenant's proper maintenance and repair of the Premises) and damage by fire, acts of God or the elements excepted.

Section 9.03.  Except for Landlord's Work as set forth in Exhibit "C", Tenant shall provide to the Premises, at its sole cost and expense, all interior partitions, lighting fixtures, wall and floor coverings, painting and other interior improvements suitable for a first class Building, all of which shall be of the highest quality and design consistent with the standards generally observed by Landlord. All such improvements shall be made by a licensed and insured general contractor approved in writing by Landlord pursuant to plans and specifications prior to the commencement of any work.  Landlord's approval of such plans and specifications shall not constitute an opinion or warranty that same are suitable, practical or in conformity with applicable building codes. Tenant shall, at its sole cost and expense, obtain all necessary governmental or quasi-governmental permits, licenses and approvals associated with the alterations to be performed by or on behalf of Tenant. Landlord agrees, without cost to Landlord, to cooperate reasonably with Tenant in Tenant's efforts in obtaining all necessary Building permits with respect to any work to be performed by Tenant in the Premises.

Section 9.04.  Landlord shall provide Tenant with a Tenant Improvement Allowance in the amount of Fifty Thousand Dollars ($50,000.00) ("Allowance").  All costs of completing the Tenant's Work in excess of the Allowance shall be paid by Tenant (and evidence thereof delivered to Landlord) prior to any funds from the Allowance being paid by Landlord.  Once Tenant has established, to the reasonable satisfaction of Landlord, that the Tenant's Work can be completed in full upon payment of the Allowance, Landlord shall pay directly to the Tenant's contractor, the allocable amount due such contractor provided that (i) there are no other outstanding change orders; (ii) the contractor executes an affidavit and lien waiver for all work performed previously; (iii) there are no liens on the

16

Premises or Building; and (iv) all work performed is in substantial accordance with the approved plans and applicable governmental codes. Except as set forth above, all cost of construction shall be borne by Tenant. Construction costs shall include all direct and indirect costs of construction including, without limitation, costs of obtaining necessary permits, contractors' fees, costs of materials, architects' fees, utilities fees and charges, the costs associated with any additional heating, ventilating or air conditioning capacity required by Tenant, costs of complying with applicable building codes, including without limitation, compliance with ADA, and all other costs associated with improving the Premises from their present state or making any other change or improvement to the Building or its services required by Tenant's use or improvements. Without limiting the generality of the foregoing, in the event that, because the Premises and/or the Building as initially constructed do not comply with current building codes or other laws, including, without limitation, laws in connection with life-fire safety, physical handicap (including without limitation ADA), and/or hurricane safety, and Tenant incurs increased design or construction costs that it would not have incurred had the Premises and/or the Building been in compliance with such laws applicable to new construction as of the Rent Commencement Date, such additional costs shall nonetheless be borne by Tenant.

Section 9.05. Landlord has no obligation to alter, add to, improve, repair, remodel or paint the Premises except as specifically set forth in this Lease. Tenant shall, at all times during the Term of this Lease, at its sole cost and expense, keep the Premises and every part thereof in good and sanitary order, condition and repair, damage thereto by fire, earthquake, Act of God or the elements excepted. Without limiting the generality of the foregoing, Tenant shall, at Tenant's sole expense, keep, maintain and replace as necessary, all floor coverings, interior exposed plumbing, exposed electrical wiring, fixtures and equipment and any other items located in the Premises, and shall procure any necessary service maintenance contracts for same, regardless of whether any of said items were installed or paid for by Landlord or Tenant. Tenant hereby waives all benefits of and rights under Florida Statute § 83.201 and under any similar law, statute, or ordinance now or hereafter in effect. All repairs shall include replacement or substitution where necessary and shall be at least equal to quality, class and value of the property repaired, replaced, or substituted and shall be done in a good and workmanlike manner.

Section 9.06. To the fullest extent permitted by law, Tenant waives all claims it may have against Landlord for injury or damage to person or property sustained by Tenant or by any occupant of the Premises, or by any other person, resulting from any part of the Building or any equipment or appurtenances being out of repair, or resulting, directly or indirectly, from any accident in or about the Building or from any act or neglect of any tenant or occupant of any part of the Building or of any other person, unless such damage is a result of the gross negligence or intentional tortious act of one or more of the Landlord Parties. All personal property belonging to Tenant or any occupant of the Premises that is located in or on any part of the Building shall be the sole risk and responsibility of Tenant or of such other person, and Landlord shall not be liable for any damage to such property or from the theft or misappropriation of such property, unless such damage, theft or

17

misappropriation is a result of the gross negligence or intentional tortious act of the Landlord. Without limiting the generality of the foregoing, Landlord shall not be liable for any damage to any property, or person, at any time in the Premises or the Building, from gas or electricity, or from water or rain, whether they may leak into, issue or flow from, any part of the Building, or from the pipes or heating or air conditioning apparatus of the same, if any, or from any other place.

Section 9.07. Landlord shall, at Landlord's sole expense, perform all maintenance and repairs, structural and otherwise, to the exterior and public portions (including the Common Areas) of the Building (including the roof) so that all such items are in good condition and repair, the ventilation, air conditioning, electrical, plumbing, sprinkler, elevator and fire alarm systems of the Building, so that all such items are fully operational, so as to provide the services stubbed at or delivered to a perimeter point to the Premises, unless required to repair any damage or injury to the Building or any Building system or equipment caused by Tenant moving property in and out of the Building, or by installation or removal of personalty or resulting in damage from negligence of Tenant or contractors, customers, invitees, and visitors of Tenant, in which event, such repairs shall be made by Tenant at Tenant's expense to the reasonable satisfaction of Landlord. Landlord shall have no liability to Tenant by reason of any inconvenience, annoyance, interruption or injury to business arising from Landlord's making any repairs or changes which Landlord is required or permitted by this Lease, or required by law, to make in or to all or any portion of the interior or exterior of the Building or the Premises, or in or to the fixtures, equipment or appurtenances of the Building or the Premises. However, except in the case of an emergency, Landlord will provide to Tenant reasonable prior notice before undertaking any such action and will use reasonable efforts not to interfere with Tenant's business.

## ARTICLE 10
### Liens

Section 10.01. Tenant shall not permit any mechanics', materialmen's or other liens to be filed against the real property of which the Premises form a part, nor against the Tenant's leasehold interest in the Premises, arising out of any work performed, materials furnished or obligations incurred by Tenant. Without limiting the generality of the foregoing, Tenant shall, within fifteen (15) days of Tenant's receipt of any bills, invoices or statements from Tenant's contractors or subcontractors, pay the same in full directly to the contractor(s) or subcontractor(s) to whom payment is due. Tenant shall also take all steps reasonably necessary to obtain appropriate mechanic's lien releases when making such payments; provided, however, that Tenant shall have the right to reasonably contest the accuracy or legitimacy of such bills, invoices and statements by refusing to make payment when Tenant in good faith determines that payment is not due in whole or in part. In the event that Tenant does dispute or contest such bills, Tenant shall, promptly upon the written request of Landlord, record at Tenant's sole cost and expense, a Mechanic's Lien Release Bond to free the Premises from the applicable mechanic's lien. If, because of any act or omission (or alleged act or omission) of Tenant any mechanic's or other lien, charge

18

or order for the payment of money shall be filed against the Premises or the Building or Landlord's estate in the Project (whether or not such lien, charge or order is valid or enforceable as such), for work claimed to have been for, or materials furnished to, Tenant, Tenant, at Tenant's expense, shall cause it to be canceled or discharged of record by bonding or otherwise within twenty (20) days after such filing, and Tenant shall indemnify Landlord against and save Landlord harmless from and shall pay all reasonable costs, expenses, losses, fines and penalties, including, without limitation, reasonable attorneys' fees, resulting therefrom. Any bond posted by Tenant shall comply with the requirements set forth in Florida Statute §713.24, as amended from time to time. If Tenant fails to do so, Landlord may, without waiving its rights and remedies based on such breach by Tenant and without releasing Tenant from any obligations, cause such liens to be released by any means it deems proper, including payment in satisfaction of the claim giving rise to such lien. Tenant shall pay to Landlord, upon demand, any sum paid by Landlord to remove such liens together with Landlord's costs and attorneys' fees and interest on said sums at the rate allowed by law.

Tenant shall notify all contractors constructing improvements or supplying labor and/or materials that no mechanics' lien filed by Tenant's contractors shall extend to Landlord's interest in the Premises in accordance with Section 713.10, Florida Statutes. Tenant agrees to indemnify and hold harmless Landlord from all liens, claims, expenses and damages to persons or property (including the Premises) stemming in manner from Tenant's Work.

Section 10.02. Subject to Section 10.01, Tenant may contest any claim of lien provided, however, that Tenant's right to contest shall apply only until a final judgment is rendered in any proceeding brought to enforce or foreclose the lien. If any judgment is obtained for a foreclosure of the lien, Landlord shall have the right to apply the bond or funds furnished by Tenant in satisfaction of the judgment.

## ARTICLE 11

### Indemnification

Section 11.01. For purposes of this Article, the term "Tenant Parties" refers singularly and collectively to Tenant and Tenant's officers, directors, shareholders, members, managers, partners, agents, employees and independent contractors, as well as to all persons and entities claiming through any of these persons or entities. The term "Landlord Parties" refers singularly and collectively to Landlord, its mortgagees, and the partners, venturers, trustees, officers, directors, shareholders, members, managers, parents, subsidiaries and any other affiliated entities, representatives, assigns, licensees, beneficiaries, agents and employees of Landlord and its mortgagees.

Section 11.02. To the fullest extent permitted by law, Tenant shall, at

19

Tenant's sole expense and with counsel reasonably acceptable to Landlord, indemnify, defend and hold harmless the Landlord Parties from and against all claims, demands, costs, losses, liabilities and damages, including without limitation, reasonable attorneys' fees (individually, a "Claim" and collectively, "Claims"), from any cause arising out of or relating, directly or indirectly, to this Lease, the tenancy created under this Lease, or the Premises, including without limitation:

(a)    The use or occupancy, or manner of use or occupancy, of the Premises or Building by the Tenant Parties;

(b)    Any act, error, omission or negligence of any of the Tenant Parties or of any invitee, guest or licensee of Tenant in, on or about the Premises, the Building or the real property underlying same;

(c)    Tenant's conduct of its business;

(d)    Any alterations, activities, work or things done, omitted, permitted, allowed or suffered by any of the Tenant Parties in, at or about the Premises or Building, including the violation of or failure to comply with any applicable laws, statutes, ordinances, standards, rules, regulations, orders, decrees or judgments in existence on the date of this Lease or enacted, promulgated or issued after the date of this Lease; and

(e)    Any breach or default in performance of any obligation on Tenant's part to be performed under this Lease, whether before or during this Lease Term or after the Expiration Date or earlier termination.

Section 11.03.  This indemnification shall extend to and include Claims for:

(a)    Injury to any persons, including without limitation, death at any time resulting from such injury; and

(b)    Loss of, injury or damage to, or destruction of, tangible property, including without limitation all loss of use resulting from such loss, injury damage or destruction.

Section 11.04.  The indemnification provided in this Article shall apply, regardless of the active or passive negligence of any of the Landlord Parties and regardless of whether liability without fault or strict liability is imposed or sought to be imposed on any of the Landlord Parties.    Notwithstanding the foregoing, the indemnification provided in this Article shall not apply to any of the Landlord Parties to the extent that a final judgment of a court of competent jurisdiction establishes that a Claim against any such Landlord Party was proximately caused by the negligence or willful misconduct of such Landlord Party.

20

Section 11.05.  Tenant's agreement to indemnify Landlord is not intended to and shall not:

(a)    Restrict, limit or modify Tenant's insurance and other obligations under this Lease, such indemnity covenants being independent of Tenant's insurance and other obligations;

(b)    Be restricted, limited or modified by Tenant's compliance with the insurance requirements and other obligations under this Lease; or

(c)    Relieve any insurance carrier of its obligations under policies required to be carried under this Lease, to the extent that such policies cover, or if carried would have covered, the matters subject to Tenant's indemnification obligations.

Section 11.06.  Landlord Parties shall not be liable for any damage to property of Tenant or of others entrusted to employees of the Building, nor for the loss of or damage to any property of Tenant by theft or otherwise, except if due to the negligence or willful act of Landlord Parties.  Landlord Parties shall not be liable for any injury or damage to persons or property resulting from fire, explosion, falling plaster, gas, electricity, water, rain or leaks from any part of the Building or from the pipes, appliances or plumbing works or from the roof, street or sub-surface or from any other place or by dampness or by any other cause of whatsoever nature, except if due to the negligence or willful act of Landlord Parties; nor shall Landlord Parties be liable for any such damage caused by other tenants or persons in the Building or caused by operations in construction of any public or quasi-public work; nor shall Landlord parties be liable for any latent defect in the Premises or in the Building.  If, at any time any windows of the Premises are permanently closed, darkened or bricked up by reason of the requirements of law or temporarily closed or darkened by reason of repairs, alterations or maintenance by Landlord Parties, Landlord Parties shall not be liable for any damage Tenant Parties may sustain thereby and Tenant Parties shall not be entitled to any compensation therefor nor abatement of Rent nor shall the same release Tenant Parties from its obligations hereunder nor constitute an eviction.

Section 11.07.  The provisions of this Article shall survive the Expiration Date or earlier termination of this Lease until all claims against the Landlord Parties involving any of the indemnified matters are fully, finally and absolutely barred by the applicable statutes of limitations.

## ARTICLE 12

### Insurance

21

Section 12.01.  Tenant shall purchase at its own expense and keep in force during the Term of this Lease (i) a policy of commercial general liability insurance, including blanket contractual liability, naming Landlord (and Landlord's designees) as additional insureds, protecting and indemnifying Landlord and Tenant against any and all claims for public liability, bodily injury, personal injury, death, bodily injury and property damage occurring upon, in or about the Premises, and the public portions of the Building in connection with any act of Tenant, its employees, agents, contractors, customers, invitees and visitors, including, without limitation, personal injury, death and property damage resulting from any work performed by or on behalf of Tenant, in the amount of not less than $2,000,000.00 combined single limit for personal injury, death, bodily injury and property damage arising out of one occurrence or accident, (ii) all risk property insurance utilizing the special form including sprinkler damage, vandalism and malicious mischief and theft insurance, insuring of Tenant's work, and the personal property, furniture, furnishings and fixtures belonging to Tenant located on the Premises for not less than one hundred percent (100%) of their full replacement value and including business income (business interruption) insurance; (iii) workers' compensation insurance, with coverage as required by the State of Florida; and (iv) plate glass insurance insuring all plate glass in its full replacement value.  The aforesaid policies of insurance shall: (a) be issued by an insurance company which is reasonably acceptable to Landlord, licensed to do business in the State of Florida and rated not less than Best's Rating "A-VIII"; (b) provide that said insurance shall not be canceled unless thirty (30) days' prior written notice shall have been given to Landlord; and (c) be primary with respect to Landlord and provide that any other insurance maintained by Landlord is excess and non-contributing with such insurance. All deductibles and self-insured retentions under Tenant's policies are subject to Landlord's prior written approval.  A duplicate of said policy or a certificate thereof, together with a copy of the additional insured endorsement, shall be delivered to Landlord by Tenant by the Rent Commencement Date and upon each renewal of said insurance.  The coverage afforded to Landlord must be at least as broad as that afforded to Tenant and may not contain any terms, conditions, exclusions or limitations applicable to Landlord that do not apply to Tenant.  Landlord may require Tenant to increase the amount of such coverage if, in Landlord's opinion, the amount of such coverage is no longer equal to prevailing standards.  Tenant's failure to procure and maintain the insurance required by this Article shall constitute a material default by Tenant under this Lease.  Tenant may procure the required coverages under blanket or master policies, provided that the coverage afforded thereby otherwise complies in all respects with the requirements set forth in this Section.

Section 12.02.  Landlord and Tenant hereby waive any right that each may have against the other on account of any loss or damage arising in any manner which is covered by all risk property insurance utilizing a special form, including sprinkler damage, vandalism and malicious mischief and theft.  The parties each agree to have their respective insurance companies waive any rights of subrogation that such companies may have against Landlord or Tenant, as the case may be, and to provide written evidence of such agreement to the other party upon request.  If and to the extent that such waiver or permission can be obtained only upon payment of an additional charge, then, the party

22

benefiting from the waiver or permission shall pay such charge upon demand, or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions hereof relating to such waiver or permission.

       Section 12.03.  Tenant shall not do or permit to be done any act or thing in or upon the Premises which will invalidate or be in conflict with the Certificate of Occupancy for the Building or the Premises or the terms of the insurance policies covering the Building and the property and equipment therein; and Tenant, at its expense, shall comply with all rules, orders, regulations and requirements of any underwriting body having jurisdiction, and of the insurance carriers, and shall not knowingly do or permit anything to be done in or upon the Premises in a manner which increases the rate of insurance for the building or any property or equipment therein over the rate in effect on the Rent Commencement Date.  Landlord represents that Tenant's permitted uses as set forth in this Lease will not violate provisions of this Section.

       Section 12.04.  If, by reason of Tenant's failure to comply with the provisions of Section 12.03 or any of the other provisions of this Lease, the rate of insurance for the Building or the property and equipment of Landlord shall be increased to an amount higher than on the Rent Commencement Date, Tenant shall pay to Landlord any additional or increased insurance premiums to the extent resulting therefrom thereafter paid by Landlord, and Tenant shall make such payment within ten (10) days after demand of Landlord.

## ARTICLE 13

### Assignment and Subletting

       Section 13.01.  Tenant shall not sell, assign, encumber or otherwise transfer by operation of law or otherwise, this Lease or any interest herein, sublet the Premises or any part thereof, or permit any other person to occupy or use the Premises or any portion thereof, without the prior written consent of Landlord.  In the event Tenant seeks Landlord's consent to an assignment or subletting, Tenant shall give Landlord written notice of such request.  In connection with each consent requested by Tenant, Tenant shall submit to Landlord a conformed or photostatic signed copy of the proposed assignment or sublease together with an abstract of the material terms of the assignment or sublease, the identity of the parties to the transaction, the proposed documentation for the transaction, a check for Landlord's legal and administrative costs in connection with the assignment or subletting and all other information reasonably requested by Landlord concerning the proposed transaction and the parties involved.  Landlord may, upon written notice to Tenant, elect to terminate this Lease if an assignment or if a sublease terminated as to the space so affected.  If Landlord so terminates this Lease if an assignment or a sublease terminates with respect to such space, Landlord may, if it elects, enter into a new lease with the intended assignee or subtenant or any other person on such terms as Landlord

23

and such person may agree. Tenant shall not be entitled to any portion of the profit, if any, which Landlord may realize on account of such termination and reletting. Landlord's exercise of its aforesaid rights shall not be construed to impose any liability upon Landlord with respect to any real estate brokerage commission(s) or any other costs or expenses incurred by Tenant in connection with its proposed subletting or assignment. Without limiting the other instances in which it would be reasonable for Landlord to withhold its consent to a proposed assignment or subletting, Tenant acknowledges and agrees that it would be reasonable for Landlord to withhold its consent if, in Landlord's opinion, the proposed assignee or subtenant does not have, in Landlord reasonable business judgment, sufficient net worth, operating income or creditworthiness to fulfill the obligations of Tenant under this Lease.

Section 13.02.  Any subletting or assignment by Tenant shall not result in Tenant being released or discharged from any liability under this Lease. The acceptance of rental by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision of this Lease. In the event of default by any assignee of Tenant or any successor of Tenant in the performance of any of the terms of this Lease, Landlord may proceed directly against Tenant without the necessity of exhausting remedies against such assignee or successor.   Landlord may consent to subsequent assignments or sublettings or to amendments of or modifications to this Lease with assignees of Tenant without notifying Tenant, or any successor of Tenant, and without obtaining its or their consent to such amendments or modifications, and such action shall not relieve Tenant of liability under this Lease. As a condition to Landlord's prior written consent as provided for in this Article, assignee shall agree in writing to comply with and be bound by all of the terms, covenants, conditions, provisions and agreements of this Lease, and Tenant shall deliver to Landlord, within ten (10) days prior to its effective date, an executed copy of each sublease or assignment, as the case may be, and in the case of an assignment, an agreement by the assignee to perform and be bound by all of the terms and provisions of this Lease.  Said documents shall be in form reasonably satisfactory to Landlord. Landlord's consent to any one sale, assignment, encumbrance, subletting, occupation or other transfer shall not be deemed to be a consent to any subsequent such occurrence and any such transaction which does not comply with the provisions of this Article shall be void and shall constitute a material event of default under this Lease.

Section 13.03.  With respect to each and every sublease or subletting authorized by Landlord under the provisions of this Lease, it is further agreed:

(a)    No subletting shall be for a term ending later than one day prior to the expiration date of this Lease;

(b)    No sublease shall be valid, and no subtenant shall take possession of the Premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord;

24

(c)    Each sublease shall provide that it is subject and subordinate to this Lease and to the matters to which this Lease is or shall be subordinate, and that in the event of termination, re-entry or dispossess by Landlord under this Lease Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor, under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (i) be liable for any previous act or omission of Tenant under such sublease, (ii) be subject to any offset, not expressly provided in such sublease, which thereto accrued to such subtenant against Tenant, or (iii) be bound by any previous modification of such sublease or by any previous prepayment of more than one month's rent.

## ARTICLE 14

### Landlord: Rights and Limitations

Section 14.01.  Upon reasonable advance notice to Tenant, which notice may be oral and shall not be required in an emergency, Landlord shall have the right to enter the Premises to: (a) inspect them, (b) supply any service to be provided to Tenant under this Lease, (c) show the Premises to prospective purchasers, lenders or tenants, and, during the last one hundred eighty (180) days of the Term, post "for lease" signs at the Premises, (d) determine whether Tenant is complying with all of its obligations under this lease; and (e) erect scaffolding and other necessary structures, where required by the work to be performed, all without reduction of Rent.  Tenant hereby waives any claims for damages in connection with any injury to or interference with Tenant's business or quiet enjoyment of the Premises or any other loss occasioned by such entry.  However, Landlord shall use reasonable efforts to perform any work in a manner to minimize interference with the normal conduct of Tenant's business in the Premises.  Landlord shall at all times have a key to unlock all of the doors in and about the Premises, excluding Tenant's vaults and safes, and Landlord shall have the right to use any means which Landlord deems proper to open said doors in an emergency, and any such entry to the Premises shall not, under any circumstances, be construed or deemed to be a forcible or unlawful entry into the Premises, a detainer of the Premises or an eviction of Tenant from any portion of the Premises.  Tenant shall not change any entry locks to the Premises without Landlord's prior written consent, which shall not be unreasonably withheld so long as Landlord can continue to gain entry to the Premises using one of Landlord's pass keys subsequent to such change.

Section 14.02.  All covenants and agreements to be kept or performed by Tenant under the terms of this Lease shall be kept or performed by Tenant at Tenant's sole cost and expense and without any reduction of Rent.  If Tenant shall be in default on its obligations under this Lease to pay any sum of money other than payment of Rent or perform any other act under this Lease, and if such default is not cured within any

25

applicable grace period, Landlord may, but shall not be obligated to, make such payment or perform any such act on Tenant's part without waiving its right based upon default of Tenant and without releasing Tenant from any obligations under this Lease. All sums so paid by Landlord and all incidental costs, together with interest thereon at the rate set forth in Article 6 of this Lease, from the date of such payment or the incurring of such cost by Landlord, whichever occurs first, shall be deemed Additional Rent and paid to Landlord on demand. In the event of nonpayment by Tenant, Landlord shall have, in addition to any other rights or remedies under this Lease, the same rights and remedies as in the case of default.

Section 14.03. In the event that Landlord sells or conveys the Building, Landlord shall be released from any liability arising thereafter based upon any of the terms, covenants or conditions, express or implied, which are contained in this Lease and the purchaser at such sale or any subsequent sale of the Building, or any successor-in-interest to Landlord (such purchaser or successor-in-interest being referred to hereafter as the "Purchaser"), shall be deemed without any further agreement between the parties or their successors in interest or between the parties and any such Purchaser, to have assumed and agreed to carry out any and all of the covenants and obligations of the Landlord under this Lease arising after the date of such sale. In addition, provided the Purchaser expressly assumes, in writing, all of Landlord's obligations under this Lease existing prior to the date of such sale, Landlord shall be entirely freed and relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease arising out of any act, occurrence or omission occurring prior to the consummation of such sale or otherwise based upon any of the terms, covenants or conditions, express or implied, which are contained in this Lease. In such event, Tenant agrees to look solely to the Purchaser for any liability existing on the part of Landlord under this Lease prior to the date of such sale. Except as set forth in this Section, this Lease shall not be affected by any sale or conveyance of the Building by Landlord, and Tenant agrees to attorn to the Purchaser.

Section 14.04. Anything contained in this Lease to the contrary notwithstanding, Tenant agrees that it shall look solely to the estate and property of Landlord in the Building and the real property on which it is located, subject to any and all leases and encumbrances on the Land, for the collection, satisfaction or enforcement of any judgment (or other judicial, administrative or arbitration proceeding) requiring the payment of money, or the performance or non-performance of any acts by Landlord, in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of this Lease to be observed or performed by Landlord. No other assets of the Landlord or of any general partner, limited partner, shareholder, director, officer, member, manager, affiliate or agent of Landlord will be subject to levy, execution or other procedures for the satisfaction of any remedy, judgment or order of Tenant. Tenant agrees that the foregoing limitations shall be applicable to any obligation or liability of Landlord, whether expressly contained in this Lease or imposed by statute or at common law.

Section 14.05. Landlord may, without abatement of rentals, enter the

26

Premises for alteration, renovation or decoration during the last thirty (30) days of this Lease Term if Tenant has removed substantially all of Tenant's property. Any such entry or work shall not be deemed an eviction or disturbance of Tenant's use and occupancy.

Section 14.06. Landlord shall not be in default under this Lease unless Tenant shall have given Landlord written notice of the breach, and, within thirty (30) days after notice, Landlord has not cured the breach or, if the breach is such that it cannot reasonably be cured under the circumstances within thirty (30) days, has not commenced diligently to prosecute the cure to completion.

# ARTICLE 15

## Casualty

Section 15.01. In the event the Building or Premises are damaged by any casualty which is covered under fire and extended coverage insurance carried by Landlord, then Landlord shall promptly repair such damage provided the insurance proceeds are available to pay for such repair and provided such repair in Landlord's opinion can be completed within one hundred twenty (120) days after the commencement of the work. In such event, this Lease shall continue in full force and effect, except that Tenant shall be entitled to an abatement of Rent for that portion of the Premises that is rendered unusable by Tenant in the conduct of its business (the "Untenantable Space") during the Abatement Period, as defined below, unless the damage or destruction is due to the fault or neglect of Tenant. Notwithstanding the foregoing, Landlord shall have the right to terminate this Lease in the event that twenty five (25%) percent or more of the Premises are damaged during the last year of the Term of this Lease, or if the Building or Premises cannot be repaired as required by this Section under applicable laws and regulations, notwithstanding the availability of insurance proceeds, or if the Building shall be so damaged that Landlord shall decide to demolish it or to rebuild it (whether or not the Premises shall have been damaged). For purposes of this Section, the "Abatement Period" shall mean the period from the date of the casualty until the earlier of (i) the date on which the untenantable space is usable for the ordinary conduct of Tenant's business, other than details or adjustments that do not materially interfere with Tenant's ability to use and occupy such untenantable space for such purpose, and (ii) the date that Tenant or any other occupant of the Premises takes possession of all or any portion of the untenantable space.

Section 15.02. In the event that sufficient insurance proceeds are not available, or if the restoration in Landlord's opinion cannot be completed within one hundred twenty (120) days after the commencement of the work, then Landlord shall have the option either to (1) repair or restore such damage, this Lease continuing in full force and effect, but the Rent to be proportionately abated as provided in this Article, or (2) give notice to Tenant at any time within thirty (30) days after the event giving rise to such damage terminating this Lease as of a date to be specified in such notice, which date shall

27

be not less than thirty (30) nor more than sixty (60) days after giving such notice. In the event of the giving of such notice, this Lease shall expire and all interest of Tenant in the Premises shall terminate on the date specified in Landlord's notice and the Rent, reduced by any proportionate abatement as provided in this Article, shall be paid through the date of such termination. Landlord shall refund to Tenant any Rent previously paid in advance for any period of time subsequent to the date of termination.

Section 15.03. In the event the Building is totally destroyed or is so damaged that Landlord decides not to repair or rebuild the same, this Lease shall be terminated effective as of the date of the damage.

Section 15.04. Landlord shall not be required to repair any injury or damage by fire or other cause or to make any restoration or replacement of any property of Tenant or any alterations, additions, fixtures or improvements installed on the Premises by or at the expense of Tenant, or any paneling, decorations, partitions, railings, floor coverings, fixtures or any other improvements or property installed in the Premises by Tenant or at the direct or indirect expense of Tenant. Tenant shall be required to restore or replace all of such items in the event of damage. Except for abatement of Rent, if any, Tenant shall have no claim against Landlord for any damage suffered by reason of any such damage, destruction, repair or restoration, nor shall tenant have the right to terminate this Lease pursuant to any statutory provision now or hereafter in effect pertaining to the damage and destruction of the Premises or the building, all of which provisions are hereby expressly waived by Tenant.

Section 15.05. Provisions herein to the contrary notwithstanding, in the event (i) more than 25% of the Building is damaged by any casualty, (ii) a material portion of the Building is damaged or (iii) any damage to the Premises or Building in Landlord's reasonable opinion cannot be restored within 120 days, Tenant will have the right to terminate the Lease within 30 days after the Landlord's determination which shall be made promptly after the casualty. If Tenant terminates the Lease as aforesaid, all interest of Tenant in the Premises shall terminate on the date specified in its notice and the Rent reduced by any proportionate abatement as provided in this Article shall be paid subsequent through the date of such termination.

## ARTICLE 16

### Eminent Domain

If ten (10%) percent or more of the Building or the Premises shall be taken or appropriated under the power of eminent domain or conveyed in lieu thereof, then this Lease shall immediately, automatically and unconditionally terminate effective as of the date of the taking. In such event, Landlord shall receive any and all compensation, damages, income, rent, awards, or any interest therein whatsoever which may be paid or

28

made in connection with such taking, and Tenant shall have no claim against Landlord for the value of the unexpired portion of the Term or otherwise. If less than ten (10%) percent of the Building or the Premises shall be so taken or appropriated or conveyed and the Premises have been damaged as a consequence of such partial taking or appropriation or conveyance, the Landlord shall restore the Building and the Premises continuing under this Lease at the Landlord's cost and expense; provided, however, that Landlord shall not be required to repair or restore any injury or damage to the property of Tenant or to make any repairs or restoration of any alterations, additions, fixtures or improvements installed on the Premises, regardless of whether any of such items were initially installed or paid for by Landlord or Tenant. Thereafter, the Rent to be paid under this Lease for the remainder of its Term shall be proportionately reduced, such reduction to be based upon the extent to which the partial taking or appropriation or conveyance shall interfere with the business carried on by Tenant on the Premises.

## ARTICLE 17

### Surrender of Premises

Section 17.01. Tenant shall, upon the termination of this Lease or on the expiration of the Term, surrender the Premises broom clean, trash free, and in good condition, reasonable wear and tear excepted.

Section 17.02. Tenant shall remove all trade fixtures and furniture upon the termination of this Lease or the expiration of the Term, and shall immediately repair all damage to the Premises and the Building caused by such removal. Any trade fixtures or furniture remaining after termination or expiration will be deemed abandoned. If, within ten (10) days after written demand by Landlord, Tenant fails to remove the trade fixtures or furniture or, if removed by Landlord, fails to pay the removal expenses, the trade fixtures or furniture may be deemed abandoned property by Landlord and may be disposed of as Landlord deems appropriate.

## ARTICLE 18

### Holdover

Section 18.01. Any holding over after the Expiration Date with the written consent of Landlord shall be a tenancy from month-to-month upon the same terms, covenants and conditions contained in this Lease, except that the monthly Base Rent shall be determined by Landlord and contained in the written consent. Landlord or Tenant may thereafter terminate such tenancy on thirty (30) days written notice. Acceptance by Landlord of Rent after the Expiration Date shall not result in any other tenancy or any renewal of the Term of this Lease, and the provisions of this Article shall be in addition to

and shall not affect Landlord's right of re-entry or other rights provided under this Lease or by applicable law.

Section 18.02.  In the event of any holding over after the Expiration Date without Landlord's written consent, then Tenant be a tenant at sufferance, and shall pay to Landlord for each month of such retention, or any portion thereof, two hundred percent (200%) of the amount of the monthly Base Rent in effect for the last month prior to the Expiration Date or earlier date of termination.  Tenant shall also indemnify, defend and hold Landlord harmless from any loss, cost, damage, claim, demand or liability resulting from Tenant's delay in surrendering the Premises, including, without limitation, any claims made by any succeeding tenant based on such delay.

Section 18.03.  Tenant's obligation to pay Additional Rent shall continue in accordance with the terms of this Lease.

Section 18.04.  Any tenancy pursuant to this Article shall be subject to all terms and provisions of this Lease as were applicable when the Term was in effect excepting only the amount of Base Rent determined pursuant to the provisions of this Article.

## ARTICLE 19

### Insolvency or Bankruptcy

Section 19.01.  At Landlord's option, Landlord may declare a breach of this Lease:

(a)     if Tenant shall (i) make a general assignment for the benefit of creditors, (ii) become insolvent or admit in writing its inability to pay its debts as they become due, (iii) file a petition in bankruptcy, (iv) be adjudicated as bankrupt or insolvent, (v) file a petition in any proceeding seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, (vi) file an answer admitting or failing timely to contest the material allegations of a petition filed against it in any such proceeding, or (vii) seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Tenant or any material part of its properties; or

(b)     if (i) within ninety (90) days after the commencement of any proceeding against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed, or (ii) within ninety (90) days after the appointment without

the consent or acquiescence of Tenant, of any trustee, receiver or liquidator of Tenant or of any material part of its properties, such appointment shall not have been vacated; or

      (c)    if this Lease or any estate of Tenant under this Lease shall be levied upon under any attachment or execution and such attachment or execution is not vacated within five (5) days.

Section 19.02.  Notwithstanding any cure periods otherwise set forth in this Lease on the happening of any such event or at anytime thereafter, this Lease shall terminate five (5) days after written notice of termination from Landlord to Tenant (which five (5) day period shall include the three (3) day notice period provided in Florida Statute § 83.20 et seq.  In no event shall this Lease be assigned or assignable by operation of law or by voluntary or involuntary bankruptcy proceedings or otherwise and in no event shall this Lease or any rights or privileges under this Lease be an asset of Tenant under any bankruptcy, insolvency, or reorganization proceedings. Nothing contained in this Article shall be construed as altering or waiving Landlord's rights under Article 13 above (Assignment and Subletting) in the event that any provisions of this Article are not enforceable as a matter of law.

Section 19.03.  Tenant agrees that if Tenant files a petition for reorganization under the provisions of 11 U.S.C. §101 et. seq. (the "Bankruptcy Code"), as may be amended from time to time, and if Tenant does not within one hundred twenty (120) days from the entry of an order for relief by the Bankruptcy Court assume or reject this Lease pursuant to the terms of §365 of the Bankruptcy Code, then, effective immediately, the Base Rent due under this Lease shall increase at a rate of ten percent (10%) per month. Tenant may subsequently reduce the amount of Base Rent due to the amount of the Base Rent in effect prior to any such escalation under this Article 22.03 by either: (i) assuming this Lease pursuant to §365 (if such right exists), or (ii) by assuming and assigning Tenant's interest in this Lease to a third party pursuant to §365.

## ARTICLE 20

## Default

The failure by Tenant to perform or honor each term, covenant, condition, representation and/or warranty made under this Lease shall constitute a default under this Lease by Tenant upon expiration of the appropriate grace period hereinafter provided. Tenant shall have a period of five (5) days from the date of written notice from Landlord within which to cure any default in the payment of Rent or any other sums due under this Lease.  Tenant shall have a period of twenty (20) days from the date of written notice from Landlord within which to cure any other default under this Lease; provided, however, that with respect to defaults which cannot be reasonably cured within twenty (20) days, the

31

default shall not be deemed to be uncured if Tenant commences to cure such default within twenty (20) days from the date of Landlord's notice and continues to prosecute diligently the curing thereof within thirty (30) days. The written notices referred to in this Article shall constitute those required under Florida Statute §83.20.

## ARTICLE 21

### Remedies

Section 21.01. Landlord's Remedies. If any one or more events of default set forth in Article 20 occurs, then Landlord has the right, in addition to all other rights and remedies available to Landlord in law or equity or under any other provisions of this Lease, at its election, to:

(a)    Without further demand or notice, through summary proceedings or any other lawful method, to re-enter and retake possession of the Premises or any part of the Premises, expel Tenant and those claiming through or under Tenant, and remove the effects (or foreclose its lien on said property or retain said property) or both or either, without being liable for trespass, forcible entry, detainer, or damages, and Tenant hereby waives any right to claim damages for such entry and expulsion. No such re-entry or taking possession of the Premises by Landlord shall be construed as a waiver of any right to recover damages for Tenant's default or a termination of this Lease; or

(b)    To give Tenant written notice of Landlord's intention to terminate this lease on or at any time after the earliest date permitted by law, in which case Tenant's right to possession of the Premises will cease and this lease will be terminated, and Tenant shall vacate and surrender the Premises as of the termination date. If Tenant fails to vacate the Premises as of such termination date, then Landlord may, at its option, exercise its rights available under Article 18 of this Lease, or such other rights and remedies permitted by law.

Section 21.02. Damages.

(a)    Should Landlord elect to take possession of the Premises pursuant to Article 21.01 (a) above, Landlord may, but need not, relet the Premises or any part thereof for such rent and upon such terms as Landlord, in its sole discretion, shall determine (including the right to relet the Premises for a greater or lesser term than that remaining under this Lease, the right to relet the Premises as a part of a larger area, and the right to change the character or use made of the Premises). In connection with or in

32

preparation for any reletting, Landlord may, but shall not be required to, make repairs, alterations and additions in or to the Premises and redecorate the same to the extent Landlord deems necessary or desirable, and Tenant shall, upon demand, pay the cost thereof, together with Landlord's expenses of reletting, including, without limitation, any commission incurred by Landlord. If Landlord decides to relet the Premises or a duty to relet is imposed upon Landlord by law, Landlord and Tenant agree that nevertheless Landlord shall at most be required to use only the same efforts Landlord then uses to lease Premises in the Building generally and that in any case that Landlord shall not be required to give any preference or priority to the showing or leasing of the Premises over any other space that Landlord may be leasing or have available and may place a suitable prospective tenant in any such other space regardless of when such other space becomes available. Landlord shall not be required to observe any instruction given by Tenant about any reletting or accept any tenant offered by Tenant unless such offered tenant has a credit-worthiness acceptable to Landlord and leases the entire Premises upon terms and conditions including a rate of rent (after giving effect to all expenditures by Landlord for tenant improvements, broker's commissions and other leasing costs) all no less favorable to Landlord than as called for in this Lease, nor shall Landlord be required to make or permit any assignment or sublease for more than the current term or which Landlord would not be required to permit under the provisions of Article 13.

(b) Should Landlord elect to take possession of the Premises pursuant to Article 21.01 (a) above, Tenant will pay to Landlord monthly rent and other sums as provided in this lease that would be payable under this lease if such repossession had not occurred, less the net proceeds, if any, of any reletting of the Premises after deducting all of Landlord's reasonable expenses in connection with such reletting, including without limitation all repossession costs, brokerage commissions, attorneys' fees, expenses of employees, alteration and repair costs, and expenses of preparation for such reletting. If, in connection with any reletting, the new lease term extends beyond the existing term, or the Premises covered by such new lease include other Premises not part of the Premises, a fair apportionment of the rent received from such reletting and the expenses incurred in connection with such reletting as provided in this Section will be made in determining the net proceeds from such reletting. Tenant will pay such rent and other sums to Landlord on the day on which such rent would have been payable under this lease if possession had not been retaken, and Landlord will be entitled to receive such rent and other sums from Tenant on each such day.

(c) Notwithstanding any of the foregoing, in the event of

33

default, and without regard to whether or not possession shall have been surrendered to or taken by Landlord, Landlord shall have the right, at its option, to declare the rent for the entire remaining term immediately due and payable, and may commence action immediately thereupon and recover judgment therefor. If such accelerated sums are required by law to be reduced to present value, then the present value shall be calculated using a discount rate equal to the current interest rate in effect as of the date of default established pursuant to Section 55.03 Florida Statutes for judgments.

(d)     Notwithstanding any of the foregoing, in the event of default, Landlord shall have the right, at its option, without further demand or notice, to cure any event of default and to charge Tenant for the cost of effecting such cure, including without limitation reasonable attorneys' fees and interest on the amount so advanced, provided that Landlord will have no obligation to cure any such event of default of Tenant.

(e)     If this lease is terminated by Landlord on account of the occurrence of an event of default pursuant to Article 20 above, Tenant will remain liable to Landlord for all damages which have accrued under this Lease until the date of termination.

Section 21.03.  Cumulative Remedies. Any suit or suits for the recovery of the amounts and damages set forth in Article 21.02 may be brought by Landlord, from time to time, at Landlord's election, and nothing in this lease will be deemed to require Landlord to await the date upon which this lease or the term would have expired had there occurred no event of default. Each right and remedy provided for in this lease is cumulative and is in addition to every other right or remedy provided for in this Lease or now or after this Lease date existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Landlord of any one or more of the rights or remedies provided for in this lease or now or after this Lease date existing at law or in equity or by statute or otherwise will not preclude the simultaneous or later exercise by Landlord of any or all other rights or remedies provided for in this lease or now or after this Lease date existing at law or in equity or by statute or otherwise. All costs incurred by Landlord in collecting any amounts and damages owing by Tenant pursuant to the provisions of this lease or to enforce any provision of this lease, including reasonable attorneys' fees from the date any such matter is turned over to an attorney, whether or not one or more actions are commenced by Landlord, will also be recoverable by Landlord from Tenant.

Section 21.04.  Waiver of Redemption. Tenant waives any right of redemption arising as a result of Landlord's exercise of its remedies under this Article 21.

34

## ARTICLE 22

### Estoppel Certificate

Within ten (10) days after notice from Landlord, Tenant shall execute and deliver to Landlord a certificate stating that this Lease is unmodified and in full force and effect, or in full force and effect as modified, and stating the modifications. The certificate also shall state the amount of Base Rent and Additional Rent, the dates to which the Rent has been paid in advance, the amount of any security deposit or prepaid Rent, the fact that there are no current defaults under this Lease by either Landlord or Tenant, except as specified in such statement, and all such other matters as may reasonably be requested by Landlord or any Purchaser or lender of Landlord. Tenant acknowledges that any statement delivered pursuant to this paragraph may be relied upon by any mortgagee, beneficiary, Purchaser or prospective Purchaser of the Building or any interest therein. Failure to deliver the certificate within said ten (10) day period shall be deemed a conclusive admission by Tenant that this lease is in full force and effect and has not been modified except as may be represented by Landlord. If Tenant fails to deliver the certificate within the ten (10) day period, Tenant irrevocably constitutes and appoints Landlord as its special attorney-in-fact to execute and deliver the certificate to any third party. Within ten (10) days after notice from Tenant, Landlord shall execute and deliver to Tenant a certificate stating that this Lease is unmodified and in full force and effect, or in full force and effect as modified, and stating the modifications, and such other information in respect of the Lease as Tenant may reasonably request.

## ARTICLE 23

### Subordination and Attornment: Lease Modifications

Upon the written request of Landlord or any mortgagee or beneficiary of Landlord, Tenant will in writing attorn to any such mortgagee or beneficiary. Said agreement of attornment shall provide, among other things, (a) that this Lease shall remain in full force and effect, (b) that Tenant shall pay Rent to said mortgagee or beneficiary from the date of said attornment, (c) that mortgagee or beneficiary shall not be responsible to Tenant under this Lease except for obligations accruing subsequent to the date of such attornment, and (d) that Tenant, in the event of foreclosure or deed in lieu thereof, will enter into a new lease with the mortgagee or beneficiary acquiring title on the same terms and conditions as the existing Lease and for the balance of the Term hereof. In the event that Tenant fails to deliver such writing within ten (10) days after demand by Landlord, Tenant irrevocably appoints Landlord as its special attorney-in-fact to execute such document for Tenant.

35

## ARTICLE 24

### Waiver of Jury Trial

LANDLORD AND TENANT HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM, OR CROSS-COMPLAINT IN ANY ACTION, PROCEEDING, AND/OR HEARING BROUGHT BY EITHER LANDLORD AGAINST TENANT OR TENANT AGAINST LANDLORD ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE PREMISES, OR ANY CLAIM OF INJURY OR DAMAGE, OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY LAW, STATUTE OR REGULATION, EMERGENCY OR OTHERWISE, NOW OF HEREAFTER IN EFFECT.

## ARTICLE 25

### Legal Limitations

Section 25.01.  The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subleases or subtenancies, or may, at the option of Landlord, operate as an assignment to it of any or all such subleases or subtenancies.

Section 25.02.  If legal action is brought by either party to enforce this Lease or to interpret any provision of this Lease, the prevailing party shall receive, in addition to court costs (including but not limited to taxable costs), an amount determined by the Court for attorneys' fees, which may be part of the judgment and which shall be considered as an item of costs.  In addition, the prevailing party shall be entitled to recover all reasonable attorneys' fees and costs incurred by the prevailing party in enforcing any judgment against the other party in such action.  The foregoing provision relating to post-judgment attorneys' fees and costs is intended to be severable from all other provisions of this Lease, and shall survive and not be deemed merged into any judgment obtained.

Section 25.03.  No party other than Landlord and Tenant and their successors and assigns shall be entitled to the benefits of this Lease.  There are no third party beneficiaries to this Lease.  Tenant is not a third party beneficiary of any other lease to which Landlord is a party.  It is expressly understood that Landlord is not, in any way or for any purpose, a partner of Tenant in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Tenant.

Section 25.04.  Venue for all legal proceedings concerning this Lease shall be in Palm Beach County, Florida.

Section 25.05.  Time is of the essence of this Lease and all of its provisions.

36

This Lease shall in all respects be governed by the laws of the State of Florida.

Section 25.06.  No diminution of light, air or view by any structure which may hereafter be erected (whether or not by Landlord) shall entitle Tenant to any reduction of Rent under this Lease, result in any liability of Landlord to Tenant, or in any other way affect this Lease or Tenant's obligations under this Lease.

Section 25.07.  Tenant shall not vacate or abandon the Premises at any time during the Term of this Lease.  If Tenant shall abandon or surrender the Premises, or be dispossessed by process of law or otherwise, any personal property belonging to Tenant and left on the Premises shall, at the option of Landlord, be deemed to be abandoned, in which event Landlord may retain, sell or otherwise dispose of such property at Tenant's expense.  If Landlord does not elect to treat such property as being abandoned, Landlord may, at Landlord's option, store such property at Tenant's expense.

Section 25.08.  In the event any claim is made by Landlord or Tenant relating to any conflict, omission or ambiguity in this Lease, no presumption or burden of proof or persuasion shall be implied in favor of or against either party by virtue of the fact that this Lease was drafted by or on behalf of Landlord.  Tenant acknowledges that it has conferred, or has been provided an opportunity to confer, with counsel of Tenant's choosing. Accordingly, the language of this Lease shall be construed as a whole according to its fair meaning, and not strictly for or against either party.

Section 25.09.  Any claim, demand, right or defense of any kind by Tenant which is based upon or arises in connection with this Lease or the negotiations prior to its execution, shall be barred unless Tenant commences an action thereon, or interposes in a legal proceeding a defense by reason thereof, within one (1) year after the date of the inaction or omission or the date of the occurrence of the event or of the action to which the claim, demand, right or defense relates, whichever applies.  Tenant acknowledges that the provisions of this Section shorten the time provided by applicable statutes of limitation for commencing certain actions.

## ARTICLE 26

### Broker

Each of Landlord and Tenant covenants and represents to the other that it has not dealt with any real estate broker or agent in connection with this Lease.  Each agrees to indemnify and hold  the other harmless against any claims of any broker for a brokerage commission arising out of any conversations or negotiations had by  such indemnifying party with any broker.

37

## ARTICLE 27

### Covenant of Quiet Enjoyment

Landlord covenants that upon Tenant paying the Base Rent and Additional Rent and observing and performing all the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Premises, subject nevertheless to the terms and conditions of this Lease. Waiver by Landlord of any term, covenant or condition contained in this Lease must be in writing and signed by Landlord.

## ARTICLE 28

### Waiver

Failure by Landlord to enforce any of the terms, covenants or conditions of this Lease for any length of time shall not be deemed to waive or to decrease the right of Landlord to insist thereafter upon strict performance by Tenant of each of the terms, covenants and conditions of this Lease. Waiver by Landlord of any term, covenant or condition contained in this Lease must be in writing and signed by Landlord. If Landlord waives the performance of any term, covenant or condition contained in this Lease in the aforesaid manner, such waiver shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition contained in this Lease. Furthermore, the acceptance of Rent by Landlord shall not constitute a waiver of any preceding breach by Tenant of any term, covenant or condition of this Lease, regardless of Landlord's knowledge of such preceding breach at the time Landlord accepted such Rent.

## ARTICLE 29

### Miscellaneous

Section 29.01.  This Lease, together with its Schedules and Riders, if any, contains all the agreements of the parties hereto and supersedes any previous negotiations or discussions between the parties.  There have been no representations made by Landlord or any agent of Landlord, nor any understandings between the parties with respect to the subject matter of this Lease or any other matter other than those set forth in this Lease and its Schedules and Riders, if any.  This Lease may not be modified except by a written instrument duly executed by both Landlord and Tenant.

Section 29.02.  If any provision of this Lease or the application thereof to any

person or circumstance shall be invalid or unenforceable to any extent, the remainder of this lease and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law. If any payments under this Lease shall at anytime be in violation of any Florida or other usury laws, they shall be reduced to an amount equal to the maximum permitted under applicable law.

Section 29.03.  Preparation of this Lease by Landlord or Landlord's agent and submission of same to Tenant shall not be deemed an offer to lease. This Lease shall become binding upon Landlord and Tenant only when fully executed by Landlord and Tenant.

Section 29.04.  Except for Tenant's obligations to pay Rent and other charges, performance by either party hereunder shall be excused for any period of delay in performance if such delay is due to force majeure, including without limitation strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials (or reasonable substitutes), governmental regulations or controls, enemy or hostile governmental action, riot, civil commotion, fire or other casualty, and other causes beyond the reasonable control of the obligated party.

Section 29.05.  Tenant shall not record this Lease nor any short form memorandums hereof.

Section 29.06.  Upon written request by Landlord, Tenant shall supply the Landlord with reasonable financial information concerning the Tenant's business operations including but not limited to tax returns and financial statements prepared for lenders.  Tenant hereby warrants that all financial statements delivered by Tenant to Landlord prior to (or in accordance with) the execution of this Lease by Tenant are true, correct, and complete in all material respects.  Tenant acknowledges and agrees that Landlord is relying on such financial statements in accepting this Lease, and that a breach of Tenant's warranty as to such financial statements shall constitute a Default by Tenant pursuant to this Article.

Section 29.07.  Tenant acknowledges and agrees that the terms of this Lease are confidential and constitute proprietary information of Landlord.  Tenant agrees that it and its partners, officers, directors, employees, brokers, and attorneys, if any, shall not disclose the terms and conditions of this Lease to any other person or entity without the prior written consent of Landlord which may be given or withheld by Landlord, in Landlord's sole discretion.

Section 29.08.  All notices and demand which may or are required to be given by either party to the other under this Lease shall be deemed to have been delivered upon the sooner of personal delivery or forty-eight (48) hours after they have been deposited in the United States mail, postage prepaid, registered or certified mail, return

receipt requested, or overnight, receipted courier, addressed to the Tenant prior to the Rent Commencement Date at _____, and after the Rent Commencement Date at the Premises and to Landlord at the mailing address set forth above and to either of them at such other places as they may from time to time designate by written notice.

    Section 29.09.  In consideration of the mutual benefits arising under this Lease, other than automobile inventory, Tenant hereby grants to Landlord a first and unsubordinated lien and security interest on all property of Tenant now or hereafter placed in or upon the Premises, and such property shall be and remains subject to such lien and security interest of Landlord for payment of all rent, and to secure payment of any damage or loss which Landlord may suffer by reason of the breach by Tenant of any covenant, agreement or condition contained herein.  The provisions of this section relating to said lien and security interest shall constitute a security agreement under the Florida Uniform Commercial Code ("the Code") so that Landlord shall have and may enforce a security interest on all property of Tenant now or hereafter placed in or on the Premises, including but not limited to all trade fixtures, and all goods, wares, fixtures, equipment, furniture, and other articles of personal property now or hereafter placed in or upon the Premises by Tenant, and all proceeds therefrom, and such property shall not be removed therefrom without the consent of Landlord until all arrearages in rent then due to Landlord hereunder shall first have been paid and discharged and all the covenants, agreements and conditions hereof have been fully complied with and performed by Tenant.  Upon the occurrence of an event of default, Landlord may, in addition to any other remedies provided herein or under law, enter upon the Premises and take possession of any trade fixtures and all goods wares, equipment, fixtures, furniture, improvements and other personal property of Tenant situated in the  Premises, without liability for trespass or conversion, and sell the same at public or private sale with or without having such property at the sale, after giving Tenant reasonable notice of the time of any public sale or of the time after which any private sale is to be made, at which sale Landlord or its assigns may purchase unless otherwise prohibited by law.  Unless otherwise provided by applicable law, and without intending to exclude any other manner of giving Tenant reasonable notice, the requirement of reasonable notice shall be met if such notice is given in the manner prescribed in this Lease at least five (5) days before the time of sale.  The proceeds from any such disposition, less any and all expenses connected with the taking of possession, holding and selling of the property (including attorney's fees and other expenses), shall be applied as a credit against the indebtedness secured by the security interest granted herein.  In the event the proceeds from any such disposition exceed the indebtedness secured by the security interest granted herein, then such surplus shall be paid as required by law.  Tenant agrees to execute as debtor such financing statement or statements as Landlord may now or hereafter reasonably request in order that such security interest or interests may be perfected pursuant to said Code.  Landlord is authorized to excuse and file all instruments appropriate to the perfection of this lien, including (without limitation) financing statement and amendments pursuant to the Uniform Commercial Code.  Landlord, at is election at any time, may file a copy of this Lease (or a copy of the first page

40

and this section) as a financing statement. Landlord, as secured party, shall be entitled to all of the rights and remedies afforded a secured party under said Code, in addition to and cumulative of the Landlord's liens and rights provided by law or by the other terms and provisions of this Lease.

Section 29.10. Radon is naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from the county public health unit.

Section 29.11. Should Tenant consist of two or more persons or entities, then each person or entity signing below as Tenant shall be jointly and severally liable for all of Tenant's obligations under this Lease.

Section 29.12. Wherever Tenant is required to pay Landlord any Base Rent, Additional Rent, or any other charge or amount, Tenant shall not only pay Landlord such amount but shall additionally pay Landlord all sales, use, occupancy and/or other taxes then applicable on such amount.

## ARTICLE 30

### Disputes

In the event of any dispute arising out of this Lease, the dispute shall be resolved by filing an action in the appropriate court of competent jurisdiction in Palm Beach County, Florida. The prevailing party in any such dispute shall be entitled to receive its reasonable attorney's fees, court costs, expert fees and the costs of appeal.

[The remainder of this page has been left blank intentionally]

41

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease on the day and year first above written.

_Lisa J Montano_
Witness

**LANDLORD:**

**1001 Clint Moore, LLC**

By: _____    _Gary S. Dunay,_
　　　Lisa Farache, Manager    _Authorized_
　　　　　　　　　　　　　　　　　　　　_Agent_

_Donnie J Phillips_
Witness

_[signature]_
Witness

_[signature]_
Witness

**TENANT:**

**Excell Auto Group, LLC**

By: _Kristen Zankl_
　　Name: _Kristen Zankl_
　　Title: _President_

Guarantors:
The Guarantors are signing this Lease solely for the purpose of acknowledging their Guaranty.

_Scott Zankl_
Scott Zankl

_Kristen Zankl_
Kristen Zankl

42

**CERTIFICATE OF ACKNOWLEDGMENT**

STATE OF FLORIDA
COUNTY OF PALM BEACH

*Gary E. Dunay, as authorized agent*

On the 28th day of ____June____ in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared ~~Lisa Farache, Manager~~ of 1001 Clint Moore, LLC, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

BONNIE J. PHILLIPS
Comm# DD0010141
Expires 8/22/2013
Florida Notary Assn., Inc.

STATE OF FLORIDA
COUNTY OF PALM BEACH

On the 22nd day of ____JUNE____ in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared KRISTEN ZANKL PRESIDENT of Excell Auto Group, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

TEYA DAWSON
MY COMMISSION # EE 155928
EXPIRES: February 5, 2016
Bonded Thru Notary Public Underwriters

43

STATE OF FLORIDA
COUNTY OF PALM BEACH

On the 22nd day of JUNE in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared Scott Zankl, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

TEYA DAWSON
MY COMMISSION # EE 155228
EXPIRES: February 5, 2016
Bonded Thru Notary Public Underwriters

STATE OF FLORIDA
COUNTY OF PALM BEACH

On the 22nd day of JUNE in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared Kristen Zankl, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

TEYA DAWSON
MY COMMISSION # EE 155228
EXPIRES: February 5, 2016
Bonded Thru Notary Public Underwriters

44

## EXHIBIT "A"

**Floor Plan**

## EXHIBIT "B"

## GUARANTY

THIS IS A GUARANTY OF THE LEASE DATED _June 28_ , 2012 , BY AND BETWEEN 1001 CLINT MOORE, LLC, A FLORIDA LIMITED LIABILITY COMPANY, LANDLORD, AND EXCELL AUTO GROUP, LLC, A FLORIDA LIMITED LIABILITY COMPANY, TENANT.

The undersigned, Scott Zankl and Kristen Zankl, whose address is _990 S Rogers Cir #4_ _Boca Raton FL 33487_ , in consideration of the leasing of the premises described in the annexed Lease ("Lease") to the above named Tenant ("Tenant"), do hereby covenant and agree as follows:

A.    The undersigned does hereby guarantee the full, faithful and timely payment and performance by Tenant of all of the payments, covenants and other obligations of Tenant under or pursuant to the Lease.  If Tenant shall default at any time in the payment of any rent or any other sums, costs or charges whatsoever, or in the performance of any of the other covenants and obligations of Tenant, under or pursuant to the Lease, the undersigned, at its cost and expense, shall, on demand of the Landlord ("Landlord"), fully and promptly and well and truly, pay all rent, sums, costs and charges to be paid by Tenant, and perform all the other covenants and obligations to be performed by Tenant, under or pursuant to the Lease.  In addition, the undersigned shall, on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due obligations of Tenant, costs advanced by Landlord and damages and all expenses (including attorneys' fees and litigation costs) that may arise as a consequence of Tenant's default.  The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or non-performance by Tenant.

B.    The obligations of the undersigned hereunder are independent of,  but shall not exceed, the obligations of Tenant.  A separate action or actions may, at Landlord's option, be brought and prosecuted against the undersigned, whether or not any action is first or subsequently brought against Tenant, or whether or not Tenant is joined in any such action, and the undersigned may be joined in any action or proceeding commenced by Landlord against Tenant arising out of, in connection with or based upon the Lease.  The undersigned waives any right to require Landlord to proceed against Tenant or pursue any other remedy in Landlord's power whatsoever, any right to complain of delay in the enforcement of Landlord's rights under the Lease, and any demand by Landlord and/or prior action by Landlord of any nature whatsoever against Tenant, or otherwise. The undersigned may assert against Landlord all defenses available to Tenant, excepting only any defenses arising on account of Tenant's bankruptcy.

C.    This Guaranty shall remain and continue in full force and effect and shall not be discharged in whole or in part notwithstanding (whether prior or subsequent of the execution hereof) any alteration, renewal, extension, modification, amendment or assignment of, or subletting, concession, franchising, licensing or permitting under, the Lease.  The undersigned hereby waives notices of any of the foregoing, and agree that the liability of the undersigned hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, renewed, extended, modified, amended or assigned.  For the purpose of this Guaranty and the obligations and liabilities of the undersigned hereunder, "Tenant" shall be deemed to include any and all concessionaires, licensees, franchises, department operators, assignees, subtenants, permittees or others directly or

46

indirectly operating or conducting a business in or from the leased premises, as fully as if any of the same were the named Tenant under the Lease.

D.    The undersigned's obligations hereunder shall remain fully binding although Landlord may have waived one or more defaults by Tenant, extended the time of performance by Tenant, released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease.

E.    This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant, of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of nay nature, or the disaffirmance of the lease in any such proceedings or otherwise.

F.    If this Guaranty is signed by more than one party, their obligations shall be joint and several and the release of one of such guarantors shall not release any other of such guarantors.

G.    This Guaranty shall be applicable to and binding upon the heirs, executors, administrators, representatives, successors and assigns of Landlord, Tenant and the undersigned, Landlord may, without notice, assign this Guaranty in whole or in part.

H.    In the event that Landlord shall institute any suit against the undersigned for (i) violation of or to enforce any of the covenants or conditions of this Guaranty; or (ii) to enforce any right of Landlord hereunder; (iii) should the undersigned institute any suite against Landlord arising out of or in connection with this Guaranty; (iv) should either party institute a suit against the other for a declaration of rights hereunder; (v) should either party intervene in any suit in which the other is a party, or enforce or protect its interest or rights hereunder, the prevailing party in any such suit shall be entitled to the fees of its attorney(s) in the reasonable amount hereof, to be determined by the court and taxed as a part of the costs therein.

I.    The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of Guarantor(s) hereunder.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty this 22nd day of JUNE , 2012.

WITNESSES:

_____

_____

_____
Scott Zankl

_____
Kristen Zankl

47

STATE OF FLORIDA
COUNTY OF PALM BEACH

    The foregoing Guaranty was acknowledged before me this 22nd day of JUNE,
2012 by Scott Zankl.

Notary Public

TEYA DAWSON
MY COMMISSION # EE 165228
EXPIRES: February 5, 2016
Bonded Thru Notary Public Underwriters

STATE OF FLORIDA
COUNTY OF PALM BEACH

    The foregoing Guaranty was acknowledged before me this 22nd day of JUNE,
2012 by Kristen Zankl.

Notary Public

TEYA DAWSON
MY COMMISSION # EE 165228
EXPIRES: February 5, 2016
Bonded Thru Notary Public Underwriters

48

**EXHIBIT "C"**

**Landlord's Work**

Between

**1001 Clint Moore, LLC**

**Landlord,**

and

**Excell Auto Group, LLC**

**Tenant**.

Relating to Unit B at 1001 Clint Moore Road
Boca Raton, FL 33487

       1.     Landlord, at Landlord's expense, will provide materials, work and services to build the installation in the Premises, as follows:

NONE

[The remainder of this page has been left blank intentionally]

49

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease on the day and year first above written.

**LANDLORD:**

**1001 Clint Moore, LLC**

By: _____
Lisa Farache, Manager
Gary S. Dincy, Authorized Agent

Accepted and Agreed:

**TENANT:**

**Excell Auto Group, LLC**

By: _Kristen Zankl_____

Name: _Kristen Zankl_____
*(Please print)*

Title: _President_____
*(Please print)*

50