**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 22-12790-EPK |
| | Chapter 7 |
| EXCELL AUTO GROUP, INC., | |
|     Debtor. | |
| _____/ | |

**NOTICE OF FILING**

NICOLE TESTA MEHDIPOUR, the Chapter 7 Trustee for the above-referenced estate, by and through undersigned counsel, hereby gives notice of the filing of the attached ***Lease Agreement between Karma Palm Beach Inc. and 1001 Clint Moore, LLC***, in connection with the Trustee's *Motion to Reject Lease of Real Property Effective as of April 30, 2022* [ECF No. 95].

Date: June 14, 2022

                                                 **LAW OFFICE OF NICOLE TESTA MEHDIPOUR, P.A.**
                                                 *Counsel for Chapter 7 Trustee*
                                                 6278 N. Federal Highway, Suite 408
                                                 Fort Lauderdale, FL 33308
                                                 Tel: (954) 858-5880   Fax: (954) 208-0888

                                                 /s/ Nicole Testa Mehdipour
                                                 Nicole Testa Mehdipour
                                                 Florida Bar No. 177271
                                                 Nicole.Mehdipour@ntmlawfirm.com

*Via CM/ECF*

- **Joaquin J Alemany**   joaquin.alemany@hklaw.com, jose.casal@hklaw.com
- **Paul A Avron**   pavron@bergersingerman.com, efile@bergersingerman.com;efile@ecf.inforuptcy.com;mmorgan@bergersingerman.com
- **Zachary J Bancroft**   zbancroft@bakerdonelson.com, achentnik@bakerdonelson.com,bkcts@bakerdonelson.com
- **Eyal Berger**   eyal.berger@akerman.com, jeanette.martinezgoldberg@akerman.com
- **Stephen C Breuer**   stephen@breuer.law, genna@breuer.law,stephen@ecf.courtdrive.com
- **Alan R Crane**   acrane@furrcohen.com, rrivera@furrcohen.com;ltitus@furrcohen.com;staff1@furrcohen.com
- **Mitchell A Dinkin**   mdinkin@madlegal.net, lucyd@madlegal.net
- **Travis A Harvey**   tharvey@bakerdonelson.com

- **Dana L Kaplan** dana@kelleylawoffice.com, cassandra@kelleylawoffice.com;debbie@kelleylawoffice.com;craig@kelleylawoffice.com;kelleycr75945@notify.bestcase.com;scott@kelleylawoffice.com
- **Mark A Levy** mark.levy@brinkleymorgan.com, sandra.gonzalez@brinkleymorgan.com;brinkleymorganecf@gmail.com
- **James Randolph Liebler** jrlii@lgplaw.com, mkv@lgplaw.com
- **Nathan G Mancuso** ngm@mancuso-law.com
- **David B Marks** brett.marks@akerman.com, charlene.cerda@akerman.com
- **Nicole Testa Mehdipour** nicolem@ntmlawfirm.com, cm_ecf_service@ntmlawfirm.com;atty_mehdipour@bluestylus.com;cmecfservice@gmail.com;mehdipournr85783@notify.bestcase.com
- **Nicole Testa Mehdipour** Trustee@ntmlawfirm.com, TRUSTEE_CMECF_Service@ntmlawfirm.com;FL80@ecfcbis.com;ntm@trustesolutions.net;BCasey@ntmlawfirm.com
- **James B Miller** bkcmiami@gmail.com
- **James C. Moon** jmoon@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Office of the US Trustee** USTPRegion21.MM.ECF@usdoj.gov
- **John E Page** jpage@slp.law, dwoodall@slp.law;pmouton@slp.law;pmouton@ecf.courtdrive.com;jpage@ecf.courtdrive.com
- **Eric S Pendergraft** ependergraft@slp.law, dwoodall@slp.law;dlocascio@slp.law;bshraibergecfmail@gmail.com;pmouton@slp.law
- **Hampton Peterson** legalservices@PBCTax.com
- **Jordan L Rappaport** office@rorlawfirm.com, 1678370420@filings.docketbird.com
- **David A Ray** dray@draypa.com, sramirez.dar@gmail.com,cm_ecf_service@ntmlawfirm.com
- **Ivan J Reich** ireich@nasonyeager.com, msmith@nasonyeager.com
- **Jason S Rigoli** jrigoli@furrcohen.com, rrivera@furrcohen.com;staff1@furrcohen.com
- **Harry J Ross** hross@hjrlaw.com, jerri@hjrlaw.com
- **John D. Segaul** john@segaul.com, court@segaulstoll.com;melissa@segaul.com;segaullawfirmpa@jubileebk.net
- **Zach B Shelomith** zbs@lss.law, info@lss.law;zshelomith@ecf.inforuptcy.com
- **Bradley S Shraiberg** bss@slp.law, dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law
- **Eric J Silver** esilver@stearnsweaver.com, jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com
- **David R. Softness** david@softnesslaw.com
- **Christian Somodevilla** cs@lss.law, info@lss.law;cs@ecf.courtdrive.com
- **Peter D Spindel** peterspindel@gmail.com, peterspindelcmecf@gmail.com
- **Mark E Steiner** MES@lgplaw.com, pm@lgplaw.com
- **Aaron A Wernick** awernick@wernicklaw.com, awernick@ecf.courtdrive.com;crubin@wernicklaw.com;dkariotis@wernicklaw.com;mlaverriere@wernicklaw.com
- **Paul E Wilson** pwilson@paulwilsonesq.com
- **Harry Winderman** harry4334@hotmail.com, lynoramae@gmail.com,lm@whcfla.com,filings@whcfla.com
- **Thomas G Zeichman** tzeichman@bmulaw.com, G67999@notify.cincompass.com

# ACKNOWLEDGEMENT OF BASIC TERMS AND PROVISIONS OF LEASE

THIS ACKNOWLEDGEMENT ("Acknowledgement") is to be incorporated in and made a part of that certain Lease dated as set forth below (the "Lease") by and between Landlord ("Landlord"), whose address is as set forth below, and Tenant ("Tenant"), whose address is set forth below, regarding the leasing of the below identified Premises ("Premises") as set forth below, and Landlord and Tenant further agree as follow:

Defined Terms. All terms and definitions defined and set forth in the Lease or in any exhibits or addenda attached hereto shall be applicable to those terms and provisions as used herein, unless the context herein specifically requires otherwise.

| | |
|---|---|
| **LEASE DATE:** | *AUGUST 1, 2020* |
| **LANDLORD:** | 1001 Clint Moore, LLC., a Florida Limited Liability Company |
| **LANDLORD ADDRESS:** | 6560 West Rogers Circle, Suite 27<br>Boca Raton, FL 33487 |
| **TENANT:** | KARMA OF PALM BEACH, INC. DBA KARMA PALM BEACH |
| **BUILDING:** | 1001 Clint Moore Road<br>Boca Raton, FL 33487 |
| **PREMISES:** | Unit that is approximately 3,200 square feet Known as 1001 Clint Moore Road, Suite 103<br>Boca Raton, FL 33487 |
| **MONTLY RENT PAYMENT SENT TO:** | **Payable to: 1001 Clint Moore, LLC.**<br>6560 West Rogers Circle, Suite 27<br>Boca Raton, FL 33487 |
| **TERM:** | Twenty four (24) months |
| **COMMENCEMENT DATE:** | August 1, 2020 |
| **EXPIRATION DATE:** | August 31, 2022 |
| **SECURITY DEPOSIT:** | NA |
| **RENT:** | See rent schedule |
| **TOTAL DUE ON LEASE EXECUTION:** | $0 |
| **FLORIDA STATE SALES TAX:** | 7% |
| **LATE PAYMENT SERVICE CHARGE:** | 5% |
| **ANNUAL INCREASES:** | 3% |
| **USE:** | Showroom |
| **ASSIGNED PARKING SPACES:** | Four (4) spaces |
| **TENANT'S PRO RATA SHARE OF OPERATING COSTS:** | Gross Lease |
| **HOLDOVER PERCENTAGE:** | 150% |
| **TENANT IMPROVEMENTS:** | Tenant is leasing and taking possession of the Premises "As-Is" |

**RENT SCHEDULE:**

**TERM**

| Year | Start | Expire |
|---|---|---|
| 1 | 08/01/2020 | 08/31/2021 |
| 2 | 08/01/2021 | 08/31/2022 |

| Rent | Tax | Total | Monthly Total |
|---|---|---|---|
| 74,400.00 | 5,208.00 | 79,608.00 | 6,634.00 |

**EXHIBITS:**

| Exhibit A: | Floor Plan |
| Exhibit B: | Building Rules and Regulations |
| Exhibit C: | Work Agreement |
| Exhibit D: | Sign Criteria |

ACKNOWLEDGEMENT OF RECEIPT: Tenant acknowledges that it has received the above listed exhibits. The foregoing terms and conditions are hereby acknowledged and accepted by Tenant and Landlord as a true and correct summary of the lease. In the event of any conflict or inconsistency between

the terms and provisions of this Acknowledgement and those of the Lease or any previous amendments to

the Lease, the terms, conditions and covenants set forth in this Acknowledgement shall prevail and govern.

LANDLORD
1001 CLINT MOORE LLC
A Florida Limited Liability Company

Signature: [signed]

Print Name: MOSHE FARACHE

Title: Manager

Date: 8-1-2020

TENANT
KARMA OF PALM BEACH INC. DBA KARMA PALM BEACH
A Florida Corporation

Signature: [signed]

Print Name: Scott Zunkel

Title: V.P.

Date: Aug 1 2020

## LEASE

This Lease, which includes and incorporates the Acknowledgement of Basic Terms and Provisions of Lease (the "Acknowledgment") attached hereto (collectively, the "Lease"), is entered into between Landlord and Tenant; and

Now, therefore, in consideration of the Premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by both parties, Landlord and Tenant hereby covenant and agree as follows:

### WITNESSETH:

**Section 1:** **PREMISES**

For the Rent and upon the agreements contained in this Lease, including the Acknowledgement, Landlord leases to Tenant and Tenant rents from Landlord the Premises as defined in the Acknowledgement (the "Premises"). The gross rentable area of the Premises as shown on the Acknowledgment: (i) is an approximation of area and includes a common area factor as determined by Landlord in Landlord's sole and absolute discretion, and (ii) shall be binding on the Tenant and shall not, under any circumstances, be subject to re-computation. Tenant acknowledges and agrees with Landlord that, except as may be expressly set forth elsewhere in this Lease, neither Landlord, nor any employee of Landlord, nor any other party claiming to act on Landlord's behalf has made any representation, warranty, estimation, or promise of any kind or nature whatsoever relating to the physical condition of the Building housing the Premises or the land under the Building ("Real Property"), including, by way of example only, the fitness of the Premises for Tenant's intended use or the actual dimensions of the Premises or Building.

**Section 2:** **WORK AGREEMENT**

Landlord and Tenant agree that improvements (the "Tenant Improvements") are to be made to the Premises by the Landlord in accordance with the Work Agreement attached hereto as Exhibit "C". Title to the Tenant Improvements shall vest in the Landlord immediately upon installation on the Premises.

**Section 3:** **TERM AND POSSESSION**

The term of this Lease shall be for the time as set forth in the Acknowledgement unless sooner terminated or extended as may be hereinafter provided. (Such term and any extensions thereof is hereinafter referred to as the "Term"). At any time during the term of this Lease, Landlord shall have the unilateral right to terminate this Lease. Landlord will provide ninety (90) day advance written notice.

**Section 4:** **GROSS RENT, PREPAID RENT, GENERAL RENT PROVISIONS AND SECURITY DEPOSIT**

(a) During the Term, as "Rent," Tenant shall pay to Landlord without demand and without any deduction or setoff, the respective sums for the suite(s) and for each year as set forth in the Acknowledgement, subject to said increases as set forth in the Acknowledgment, plus all applicable sales and use taxes thereon, in equal (except for the first payment, if prorated) monthly installments in advance, beginning on the respective Rent Commencement Dates set forth in the Acknowledgement and, thereafter, on the first day of each and every month during the Term. Rent for a partial month shall be due and payable on a pro rata daily basis on the first day that said rent accrues in said month.

(b) All installments of Gross Rent (as defined hereinafter) not paid within five (5) days of when due shall bear interest at the rate of eighteen percent (18%) per annum from the due date (i.e., the first day of the month) until paid; provided, however, that in no event shall such rate exceed the maximum rate allowable by law. Without limiting the rights of Landlord under this paragraph and paragraph 19, for each payment required hereunder that is not received on or before the fifth (5th) day after the same is due, Tenant shall immediately pay a late payment service charge ("Late Payment Service Charge") equal to the amount set forth on the Acknowledgment multiplied by the amount overdue. This paragraph, however, shall not be construed to extend the date for any payment required hereunder, and notwithstanding the imposition of such service charge, Landlord shall retain all of its rights under paragraph 19 if any payment required to be made by Tenant is not made by Tenant when due, and neither the demand for, nor collection by Landlord of such service charge shall be construed as a cure of such failure of Tenant.

(c) Upon execution of this Lease, Tenant shall deposit with Landlord (i) a security deposit (the "Security Deposit") in the amount set forth in the Acknowledgement, to be held by Landlord during the Term. The Security Deposit shall be held by the Landlord, without liability for interest, as a security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of Gross Rent or a measure of Tenant's damages in case of default by Tenant. Landlord may, in its sole discretion, from time to time without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any default under this Lease or to satisfy any other covenant or obligation of Tenant hereunder; provided however that no portion of the Security Deposit shall be

applied to the last month's rent obligation hereunder. Following any such application of the Security Deposit, Tenant shall pay to the Landlord, upon demand, the amount so applied in order to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of the Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant after deducting there from any unpaid obligation of the Tenant to the Landlord as may arise under this Lease including, without limitation, the obligation to restore the Premises pursuant to Section 25. If the Landlord transfers its interest in the Premises during the term of the Lease, Landlord may assign the Security Deposit to the transferee and thereafter Landlord shall have no further liability for the return of such Security Deposit.

**Section 5:    ADDITIONAL RENT**

N/A

**Section 6:    COMMON AREAS – BUILDING AND BUILDING SITE**

(a) Landlord hereby grants to Tenant and Tenant's employees, agents, customers and invitees, the right to use, during the Term, along with other tenants in the Building, the common areas of the Building ("Building Common Areas") consisting of corridors, foyers and shafts, restrooms, mechanical rooms and systems, vending areas, building stairs and other similar facilities provided for the common use of tenants generally and/or the public.

(b) Landlord hereby grants to Tenant and Tenant's employees, agents, customers and invitees, the right to use, during the Term, along with other tenants in the Building or any other tenants on the Building Site, the common areas on the Building Site ("Building Site Common Areas") consisting of the parking areas, access roads and facilities which may be furnished by the Landlord and which are located adjacent to the Building, employee parking areas, the truck ways, driveways, loading docks and areas, sidewalks, ramps, landscaped and planting areas, and any other areas and improvements which may be provided from time to time by Landlord for the general use in common of the Building tenants and their officers, agents, employees, and customers, and all lighting facilities incident thereto, as such areas and facilities may be changed from time to time by Landlord. Landlord reserves the right to change or modify the design or layout of the parking areas.

**Section 7:    RESTRICTIVE COVENANTS AND PARK ASSOCIATION**

The Tenant acknowledges that the Premises are subject to all the covenants, conditions, restrictions, easements, assessments and possible liens, terms and other provisions of Declaration of Condominium of Boca Commercial Industrial Condominium #2 and Exhibits thereto, a copy of which is available at Landlord's office for Tenant's review, recorded July 11, 1989; in Official Records Book 6126, page 1126, as amended by First Amendment to Declaration of Condominium recorded in Official Records Book 6855, page 800, of the Public Records of Palm Beach County, Florida, including, but not limited to one or more of the following: provisions for private charges or assessments; liens for liquidated damages; and/or option, right of first refusal or prior approval of a future purchaser or occupant. Under the Declaration, a not-for-profit corporation known as Boca Commercial Industrial Condominium Association #2, Inc. (the "Association") has been formed to enforce the Declaration and to operate and maintain the common areas of the Park referred to in the Declaration. Landlord grants to Tenant and Tenant's employees, agents, customers and invitees, the right to use the Park, during the Term, in connection with other tenants in the Building and the other members of the Association, to the extent Landlord is permitted to use the Park by virtue of its interest in the Association as an owner of a portion of the Park. The Association shall impose certain maintenance or other assessments ("Association Expenses") on the Landlord as owner of the Building Site, which Tenant acknowledges are items of Operating Expenses as described in Section 5 hereof. Tenant shall abide by all the restrictions and rules described I the Declaration.

**Section 8:    USE**

(a) The Premises may be occupied and used only for the purposes of Tenant's business as set forth in the Acknowledgment, substantially as existing or as contemplated by the parties hereto as of the date hereof and for such other uses, if any, as may be expressly provided for in the Acknowledgement, and for no other purpose.

(b) Tenant shall use and occupy the Premises in accordance with all governmental laws, ordinances, rules, and regulations. Tenant shall not use, or allow the Premises to be used, for any purpose other than as specified herein and shall not use, or permit the Premises to be used, for any unlawful, disreputable, or immoral purpose or in any way that will injure the reputation of the Building Site. Tenant shall pay for any and all costs incurred to ensure that Tenant's activities comply with all current and future applicable laws, ordinances, rules and regulations.

**Section 9:    RULES AND REGULATIONS**

Tenant's occupancy shall be subject to, and Tenant shall abide by, the rules and regulations of general application ("Building Rules"), which shall be modified by Landlord at its sole discretion, governing the conduct of tenants in the Building, the use of the Building Common Areas and the Building Site Common Areas, all as set forth in Exhibit "B".

**Section 10:**     **ALTERATION AND INSTALLATIONS**

Tenant shall not make alterations, changes, and improvements to the Premises or the Building, including any roof or exterior wall penetration, or any other structural alterations, changes, or improvements, without the prior written approval of Landlord, which approval may not be unreasonably withheld. Landlord may impose any conditions or requirements upon the making of such alterations, changes and improvements, including requiring Tenant to furnish evidence satisfactory to Landlord that such alterations will comply with all applicable codes and regulations. Further, Tenant shall repair any damage done to the Premises, the Building, the Park or other areas in connection with such alterations. Any such alterations, changes and improvements shall become and be the property of Landlord upon commencement or installation thereof.

**Section 11:**     **SERVICES TO BE FURNISHED BY LANDLORD**

Landlord agrees to furnish to Tenant the following services:

(a) Standard routine maintenance and electric lighting service for all Building Common Areas, as determined by Landlord to be necessary.

(b) Refuse removal consistent with normal office/warehouse usage.

(c) The failure by Landlord to any extent to furnish, or the interruption, cessation or termination of services in whole or in part, or any curtailment in the use of the Premises resulting from any of the matters and things herein referred to, shall not render Landlord liable in any respect nor be construed as an eviction (constructive or otherwise) of Tenant, nor work an abatement of rent, nor relieve Tenant from the obligation to fulfill any covenant or agreement of this Lease. If any of the equipment or machinery used to provide the foregoing services does not function properly, Tenant shall have no claim for offset or abatement of rent or damages on account of any resulting interruption in service.

**Section 12:**     **TENANT'S CARE OF PREMISES**

(a) Tenant shall keep the Premises and fixtures in good order, make repairs and replacements to the Premises and pay Landlord for the repairs or replacements to the Building if any such repairs or replacements are needed because of Tenant's misuse or negligence except to the extent that a claim for such repairs or replacements is waived under Section 14(d).

(b) Upon commencement of the lease, Tenant shall be responsible for maintaining the interior of their space. This shall include the changing of any and all light bulbs, ballasts, maintaining and dealing with any plumbing problems, updating and certifying all fire extinguishers and contracting for pest control services.

(c) Tenant shall be responsible for maintaining the HVAC system. Tenant shall be required to provide Landlord with a copy of the HVAC service maintenance agreement utilized to maintain the HVAC systems in the space within thirty (30) days after Tenant moves into the space. If Tenant does not provide Landlord with the HVAC service maintenance agreement within said thirty (30) day period, then Landlord shall engage a licensed HVAC maintenance contractor on behalf of Tenant to perform such work and will invoice Tenant accordingly as additional rent. Should the HVAC system be in disrepair, Tenant shall pay the costs of repair up to the amount of $1,000.00. Any repairs or replacements that are over $1,000.00 shall be paid by the Landlord.

**Section 13:**     **WAIVER OF LIABILITY BY TENANT**

Neither Landlord nor any of its agents, officers, principals or employees shall be liable for, and Tenant waives all claims against such parties, or any of them, for damage to person or property sustained by Tenant or any person claiming through Tenant resulting from any accident or occurrence in, about, or upon the Premises, the Building, or any other part of the Building Site or the Park unless due to the negligence, gross negligence or willful misconduct of Landlord or their respective agent(s), employee(s), officer(s) or principal(s).

**Section 14:**     **INDEMNIFICATION AND INSURANCE**

(a) Tenant will indemnify Landlord and save Landlord harmless from and against any and all claims, actions, damages, liability, and expense in connection with loss, damage, or injury to persons or property occurring in, on, or about, arising out of the Premises, or occasioned wholly or in part by any act or omission of Tenant, Tenant's agents, contractors, customers, or employees.

(b) Tenant shall, at all times during the Term and during any other period that Tenant actually occupies any portion of the Premises, at its own expense, keep in full force and effect public liability insurance and property insurance. The insurance carrier and the form and substance of the Policy shall be satisfactory to the Landlord. The insurance carrier shall be a responsible insurance carrier authorized to issue the relevant insurance, and authorized to do business in Florida. It shall have a policyholders' rating of no less than "A" in the most current edition of **Best's Insurance Reports**, providing for

coverage no less than $500,000.00 each occurrence and $1,000,000 general aggregate for public liability (including bodily injury or death) and $1,000,000.00 each occurrence and $1,000,000.00 general aggregate for property damage. In each case, such policy shall name Landlord and Landlord's Mortgagee as additional insured. Tenant shall deliver to Landlord, prior to the Commencement Date, a certificate of insurance evidencing each type of coverage required herein. The policies shall provide that the insurer cannot cancel the policy without at least thirty (30) days' prior written notice to Landlord.

(c) Tenant shall not carry on any activity in or about the Premises which will in any way cause an increase in the insurance rates on the Premises and/or the Building. Tenant shall pay as Additional Rent, upon demand, any increases in such insurance rates resulting from the use of the Premises.

(d) Each party waives any right of recovery against the other party and releases all claims arising in any manner in its Injured Party's favor and against the other party for any loss or damage to the Injured Party's property (real or personal) located within or constituting a part of or all of the Building. The parties further agree to have their respective insurers waive any rights of subrogation that such insurers may have against the other party. This waiver and release apply to the extent the loss or damage is covered by: (i) the Injured Party's insurance; or (ii) the insurance of the Injured Party is required to carry under this Section, whichever is greater. The waiver and release also apply to each party's, directors, officers, employees, shareholders, and agents. The waiver and release do not apply to claims caused by a party's willful misconduct.

**Section 15:    SIGNS**

Tenant shall not erect or install any sign without the prior written consent of Landlord which may be arbitrarily withheld. Landlord may determine type, location and content of any sign for Tenant but will follow the Signage Criteria (Exhibit "D") on record with the applicable municipality which may be amended from time to time in Landlord's sole and absolute discretion.

**Section 16:    ASSIGNMENT AND SUBLETTING**

(a) This Lease shall not be mortgaged, pledged, encumbered, assigned, or otherwise transferred by Tenant, voluntarily, involuntarily, by operation of law, or otherwise, or the Premises or any part thereof sublet, used, or occupied for the conduct of any business by any other party or for any purpose other than herein authorized without the express prior written consent of the Landlord and the Landlord's present mortgagee ("Mortgagee"), or if required, any future mortgagees of Landlord.

(b) In the event the Tenant seeks the Landlord's consent pursuant to this Section 16, the Tenant shall furnish the Landlord with such information regarding the prospective assignee or sublessee as the Landlord may require, including without limitation information regarding financial ability and business experience relating to the uses permitted hereunder. Any consent to any assignment or subletting shall not constitute a waiver of the necessity for consent to any subsequent assignment or subletting. Such consent may be granted or withheld in the Landlord's sole and absolute business judgment, but such consent will not be unreasonably withheld.

(c) For the purposes of this Lease, and if the Tenant is a corporation or partnership, the sale, transfer, pledge, leveraged buy-out, or other disposition during the term hereof, aggregating fifty-one percent (51%) or more of the outstanding shares of stock or other ownership interests of Tenant, the corporate guarantor of the Tenant, or any general partner in the case of a limited partnership, whether such sales, transfers, pledges or other dispositions take place at one time or at intervals so that in the aggregate over the term of this Lease, such transfers of stock or partnership interests shall have occurred, shall be deemed to be an assignment of this Lease within the meaning of this Section 16.

(d) In the event that Tenant receives a bona fide written offer from a third party for the sublease or assignment of the Premises, Tenant shall forthwith notify Landlord in writing, attaching a copy of said offer, of Tenant's desire to sublet or assign this Lease upon terms of said offer, whereupon Landlord shall have thirty (30) days to accept or reject said assignment or sublease, or at Landlord's sole option, to cancel and terminate this Lease, in which case Landlord may elect to enter into a direct lease with the proposed assignee or subtenant. The failure of Landlord to either accept or reject said assignment or sublease within the said thirty (30) day period shall be deemed a rejection of said assignment or sublease.

(e) In the event of any permitted assignment or other transfer of this Lease by Tenant, (i) Tenant shall remain liable for performance of all obligations of the assignee or transferee of Tenant hereunder, and Tenant hereby agrees to absolutely and unconditionally guarantee the performance hereunder of such assignee or transferee; and (ii) any rent which Tenant receives pursuant to any sublease in excess of the Base Rent and the Additional Rent shall be paid by Tenant to Landlord. Tenant specifically agrees to pay all of Landlord's costs, charges and expenses, including attorneys' fees, incurred in connection with the sublease and/or assignment upon submission of bills therefore, and that the failure to pay the same upon demand shall be a default under the Lease.

(f) If Tenant shall purport to assign this Lease, or sublet all or any portion of the Premises, or permit any person or person other than Tenant to occupy the Premises, Landlord may collect rent from the person or persons then or thereafter occupying the Premises and apply the net amount collected to the rent reserved herein, but no such collection shall be deemed a waiver of this

Section 16, or the acceptance as tenant of any such purported assignee, subtenant or occupant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained.

(g) Landlord shall have the right to sell, convey, transfer or assign all or part of its interest in the real property and the buildings of which the Premises are a part or its interest in this Lease. All covenants and obligations of Landlord under this Lease shall cease upon the execution of such conveyance, transfer or assignment, but such covenants and obligations shall run with the land and shall be binding upon the subsequent owner or owners thereof or of this Lease.

### Section 17: CASUALTY

(a) If the Premises shall be destroyed or so injured by any cause as to be unfit, in whole or in part, for occupancy and such destruction or injury (i) is not the result of the gross negligence or willful misconduct of Tenant or any of its employees, officers, agents or contractors, and (ii) could reasonably be repaired within six (6) months from the date the repair work is commenced (as determined by Landlord and Landlord's Mortgagee, in their sole discretion), Landlord shall notify Tenant within thirty (30) days after the happening of such destruction or injury whether or not Landlord will repair or rebuild. If Landlord elects to repair, then Tenant shall not be entitled to surrender possession of the Premises nor shall Tenant's liability to pay rent under this Lease cease without the mutual consent of the parties hereto; and Landlord shall repair the damage or injury with all reasonable speed and shall complete such repairs within six (6) months from the date Landlord receives the insurance proceeds paid on account of such damage or destruction. If during such period Tenant shall be deprived of the use of all or any portion of the Premises, a proportionate allowance shall be made to Tenant from the Base Rent and the Additional Rent corresponding to the time during which and to the portion of the Premises of which Tenant shall be so deprived.

(b) If such destruction or injury cannot reasonably be repaired within six (6) months from the date the repair work commences (as determined by Landlord and Landlord's Mortgagee, in their sole discretion), Landlord shall notify Tenant within thirty (30) days after the happening of such destruction or injury whether or not Landlord will repair or rebuild. If Landlord elects not to repair or rebuild, this Lease shall be terminated. If Landlord shall elect to repair or rebuild, Landlord shall specify the time within which such repairs or reconstruction will be completed, and Tenant shall have the option within thirty (30) days after the receipt of such notice to elect either to terminate this Lease and any further liability hereunder or to extend the term of the Lease by a period of time equivalent to the time from the happening of such destruction or injury until the Premises are restored to their former condition. In the event Tenant elects to extend the Term of the Lease, Landlord shall restore the Premises to the condition as originally delivered to Tenant within the time specified in such notice, and Tenant shall not be liable to pay rent for the period from the time of such destruction or injury until the Premises are so restored to their former condition.

(c) In addition to all rights to cancel or terminate this Lease given to the parties in Sections 17 (a) and (b) hereof, if the Premises and/or Building are destroyed or damaged during the last year of the Term, to the extent of fifty percent (50%) or more of the then value of the Premises and/or the Building, then Landlord shall have the right to cancel and terminate this Lease as of the date of such damage or destruction by giving notice thereof within thirty (30) days after the date of said damage or destruction.

(d) Notwithstanding anything to the contrary contained in Sections 17 (a), (b) or (c) hereof, Landlord may cancel this Lease with no further liability to Tenant in the event that following destruction or injury to the Premises, Landlord's Mortgagee elects to require Landlord to apply any insurance proceeds paid to Landlord as a result of the casualty to reduce any debt secured by the Building Site.

### Section 18: CONDEMNATION

(a) In the event the entire Premises shall be taken by condemnation or right of eminent domain, this Lease shall terminate as of the day possession shall be taken by the taking authority, and Landlord and Tenant shall be released from any further liability hereunder thereafter accruing. In the event only a portion of the Premises shall be taken by condemnation or right of eminent domain and the portion so taken renders the balance unsuitable for the purpose of this Lease, either the Landlord or the Tenant shall be entitled to terminate this Lease, such termination to become effective as of the day possession shall be taken, provided thirty (30) days' notice in writing of such termination is given. If, in such case, this Lease is not terminated, Landlord agrees to restore the Premises with reasonable speed to an architectural unit as nearly like its condition prior to such taking as shall be practicable, and if during and/or after the work of restoration, Tenant is deprived of the use of all or a part of the Premises, an appropriate reduction of rent, depending upon the time during which and the portion of said Premises of which Tenant is so deprived, shall be granted.

(b) All damages awarded in connection with the taking of the Premises, whether allowed as compensation for diminution in value to the leasehold or to the fee of the Premises, shall belong to the Landlord. Notwithstanding the foregoing, Tenant shall be entitled to make a separate claim against the condemning authority for damage to merchandise and fixtures, and removal, re-installation and moving expenses.

(c) Notwithstanding anything to the contrary contained in Section 18 (a) or (b) hereof, Landlord may cancel this Lease with no further liability to Tenant in the event that following a taking by condemnation or right of eminent domain, Landlord's Mortgagee

elects to require Landlord to apply any proceeds paid to Landlord as a result of the condemnation or eminent domain proceedings to reduce the debt secured by the Building Site.

### Section 19:   LANDLORD'S REMEDIES UPON DEFAULT

(a) If Tenant shall at any time (i) be in default in the payment of Base Rent, Additional Rent, or other sums of money required to be paid by Tenant and Tenant shall fail to remedy such default within five (5) days of the due date; (ii) violate any restriction or rule in the Building Rules or the Declaration and fail to remedy such violation within thirty (30) days after receipt of written notice thereof; (iii) be in default in the performance of any other covenant, term, condition, provision, rule or regulation of this Lease, and Tenant shall fail to remedy such default within fifteen (15) days after receipt of written notice thereof; (iv) commit waste upon the Premises; (v) vacate the Premises; (vi) fail to continuously occupy and conduct Tenant's business on the Premises without continuing to pay Base Rent, Additional Rent or other sums due hereunder; or (vii) become insolvent or make an assignment for the benefit of creditors, or if a receiver or trustee of Tenant's property shall be appointed, or if proceedings under any chapter of the United States Bankruptcy Code shall be instituted by or against Tenant and shall not be dismissed within sixty (60) days after being filed, or if any event shall happen which, aside from this provision, would cause any assignment or devolution of Tenant's interest or occupancy hereunder by operation of law; then, in any such event, Landlord, in addition to all other remedies given to Landlord in law or in equity, may by written notice to Tenant, terminate this Lease, or without terminating this Lease, re-enter the Premises by summary proceedings or otherwise. In any event Landlord may dispossess the Tenant, it being the understanding that under no circumstances is this Lease to be an asset for Tenant's creditors by operation of law or otherwise.

In the event of such re-entry Landlord shall use due diligence to relet the Premises as any other vacant space. However, Tenant's Premises will not be treated as a priority over any other vacant space. In the event of a reletting Landlord shall apply the rent there from first to the payment of Landlord's expenses, including attorneys' fees incurred by reason of Tenant's default, and the expense of reletting, including repairs to the Premises and leasing commissions, and then to the amount of Base Rent, Additional Rent, and all other sums due from Tenant hereunder, Tenant remaining liable for all other sums due from Tenant hereunder and for any deficiency. Any and all such deficiencies shall be payable by the Tenant monthly on the date herein provided for the payment of Base Rent.

(b) In the event of a default by Tenant of any of the terms, provisions, covenants, conditions, rules and regulations of this Lease, Landlord shall have the right to invoke any remedy permitted to Landlord in law or in equity, including the right to terminate this Lease. Such remedies shall include the right to sue immediately for any and all damages, including immediate payment of the present value (using the Prime Rate at that time) of all Base Rent and Additional Rent owing for the remainder of the term hereof. No termination of this Lease and no taking or recovering of possession of the Premises shall deprive Landlord of any of its remedies or actions against Tenant and Tenant shall remain liable for all past or future Base Rent, Additional Rent, and all other charges payable by Tenant under this Lease, during and for the balance of the term hereof, unless otherwise specifically provided for by this Lease. The bringing of any action for rent or other default shall not be construed as a waiver of the right to obtain possession of the Premises.

(c) If suit shall be brought for recovery of possession of the Premises, for the recovery of rent, or any other amount due under the provisions of this Lease, or because of the breach of any other covenant herein contained on the part of Tenant to be kept or performed, and breach shall be established, Tenant shall pay to Landlord all expenses incurred therefore, including attorneys' fees.

(d) All rights and remedies provided herein or otherwise existing at law or in equity are cumulative, and the exercise of one or more rights or remedies by either party shall not preclude or waive its right to the exercise of any or all of the others.

### Section 20:   DISCHARGE OF LIENS

Tenant shall not do or suffer anything to be done whereby the Premises, Building, or Building Site may be encumbered by any liens of mechanics, laborers, or material men, chattel mortgages or any other liens. If any mechanic's lien shall be filed or claim of lien made for work or materials furnished to Tenant, then Tenant shall at its expense within ten (10) days thereafter either discharge or contest the lien or claim. If Tenant contests the lien or claim, then Tenant shall (i) within such ten (10) day period, provide Landlord adequate security for the lien or claim, (ii) contest the lien or claim in good faith by appropriate proceedings that operate to stay its enforcement, and (iii) pay promptly any final adverse judgment entered in any such proceeding. If Tenant does not comply with these requirements, Landlord may discharge the lien or claim, and the amount paid, as well as attorney's fees and other expenses incurred by Landlord, shall become Additional Rent payable by Tenant on demand. If so requested by the Landlord, the Tenant shall execute a short form or memorandum of this Lease, which may, in the Landlord's discretion be recorded in the Public Records for the purpose of protecting the Landlord's estate from mechanics' claims of lien, as provided in Florida Statutes Section 713.10. The security deposit paid by the Tenant may be used by the landlord for the satisfaction or transfer of any mechanics' claim or lien. This Paragraph shall survive the termination of the Lease.

**Section 21:**        **LIABILITY OF LANDLORD**

If Landlord shall fail to perform any covenant, term, or condition of this Lease upon Landlord's part to be performed and, as a consequence of such default, Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levy thereon against the right, title, and interest of Landlord in the Building as the same may then be encumbered, and neither Landlord, nor any of its partners, shall be liable for any deficiency. It is understood and agreed that in no event shall Tenant have any right to levy execution against any property of Landlord other than its interest in the Building. Such right of execution shall be subordinate and subject to any mortgage or other encumbrance upon the Building. In the event of the sale or other transfer of Landlord's right, title, and interest in the Premises or the Building, Landlord shall be released from all liability and obligations hereunder accruing after the date of such sale or other transfer.

**Section 22:**        **RIGHT OF LANDLORD**

(a) Landlord reserves the right at all reasonable times, by itself or its duly authorized agents, to go upon and inspect the Premises and every part thereof, and at its option to make repairs, alterations, and additions to the Premises, the Building, or the Building Site, with prior verbal notice to Tenant, except in the case of an emergency, in which event Landlord may enter at any time without notice.

(b) If Landlord shall make any payments on behalf of Tenant which are Tenant's obligation in order to fulfill Tenant's covenants, then any amounts so paid by Landlord are agreed and declared to be items of Additional Rent and shall be due and payable to Landlord from Tenant with the next installment of Base Rent due thereafter under this Lease. Any such amounts which shall be paid by Landlord on behalf of Tenant shall bear interest at the rate of eighteen percent (18%) per annum, provided in no event shall such rate to be charged to Tenant be in excess of that otherwise permitted by law.

(c) Tenant specifically agrees to pay all of Landlord's costs, charges and expenses, including Landlord's attorneys' fees, in connection with Tenant's request of Landlord to execute documents relating to the Lease, including but not limited to, Subordinations and Tenant Estoppels and Landlord Consents. The failure to pay the same upon demand shall be a default under the Lease.

**Section 23:**        **MORTGAGE SUBORDINATION AND ESTOPPEL LETTER**

(a) Tenant understands, acknowledges and agrees that this Lease is and shall be subordinate to any mortgage, ground lease or other lien now existing or hereafter placed on or affecting the Premises, the Building, or the Building Site, or any part thereof, and to any renewals, refinancing or extensions and to all advances made or hereafter to be made upon the security thereof. This shall be self-operative and no further instrument of subordination shall be required by any mortgagee or lender hereof. Further, Tenant agrees upon demand or request of any party in Interest, to execute promptly such further instruments or certificates, in a form acceptable to Landlord and Landlord's Mortgagee, to carry out the intent hereof.

(b) Notwithstanding the provisions of Section 23(a) hereof, any mortgagee may at any time subordinate the lien of its mortgage to the operation and effect of this Lease without obtaining the Tenant's consent thereto, by giving the Tenant written notice thereof, in which event this Lease shall be deemed to be senior to such mortgage without regard to their respective dates of execution, delivery, and/or recordation among the land records of the county in which the Building is located, and thereafter such mortgagee shall have the same rights as to this Lease as it would have had, were this Lease executed and delivered before the execution of such mortgage.

(c) Tenant shall, within ten (10) days from request by Landlord, execute and deliver, to such persons as Landlord shall request, a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same are in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord or its mortgagee(s) shall reasonably require.

**Section 24:**        **NO WAIVER BY LANDLORD**

No waiver of any of the terms, covenants, provisions, conditions, rules, and regulations imposed or required by this Lease, and no waiver of any legal or equitable relief or remedy shall be implied by the failure of Landlord to assert any rights or to declare any forfeiture, or for any other reason. No waiver of any of said terms, provisions, covenants, rules, and regulations shall be valid unless it shall be in writing signed by the Landlord. No waiver or forgiveness of performance by Landlord in respect to one or more tenants of the Building shall constitute a waiver or forgiveness of performance in favor of Tenant herein, or any other tenant. No waiver of any pledge of this Lease or the forgiveness of performance of any one or more of the terms, provisions, conditions, rules, and regulations of this Lease may be claimed or pleaded by Tenant to excuse a subsequent pledge or failure of performance of any other terms, provisions, conditions, covenants, rules, and regulations of this Lease. This provision does not, however, discharge or release the Landlord from the timely completion of its obligations under the terms of this Lease.

**Section 25:**  **VACATION OF THE PREMISE**

Tenant shall deliver and surrender to Landlord possession of the Premises, including all Tenant improvements (and all replacements thereof) and all fixtures permanently attached to the Premises during the Term, upon the expiration of the term or the termination of this Lease in any other way in as good condition and repair, ordinary wear and tear and insured casualty excepted; provided, however, that upon Landlord's request made at least thirty (30) days prior to the end of the Term or the date Tenant is otherwise required to vacate the Premises, Tenant shall remove all fixtures and equipment affixed to the Premises by Tenant, and restore the Premises to good condition, ordinary wear and tear and insured casualty excepted, at Tenant's sole expense. Such removal shall be performed prior to the earlier of the end of the Term, or the date Tenant is required to vacate the Premises.

**Section 26:**  **LANDLORD'S LIEN**

In addition to any statutory lien, Tenant hereby grants to Landlord a lien against and a security interest in all of Tenant's personal property and fixtures now or hereafter located within the Premises as security for performance of all of Tenant's obligations under this Lease. Tenant may replace such personal property and fixtures with items of equal or better quality, but shall not otherwise remove them from the Premises without the consent of Landlord until all of the obligations of Tenant under this Lease have been performed. This Lease constitutes a security agreement creating a security interest in such property in favor of Landlord, subject only to the liens of existing creditors, and Landlord may at any time file this Lease as a financing statement under the Uniform Commercial Code of the state in which the Project is located. Alternatively, if requested to do so by Landlord, Tenant shall execute and deliver to Landlord within ten (10) days of such request a Form UCC-1 Financing Statement wherein Landlord is the secured party and Tenant is the Debtor.

**Section 27:**  **NO INCOME PARTICIPATION**

Neither Tenant nor any other person having an interest in the possession, use, occupancy or utilization of the Premises shall enter into any lease, sublease, license, concession or other agreement for use, occupancy or utilization of the Premises which provides for rental or other payment for such use, occupancy or utilization based in whole or in part on the net income or profits derived by any person from the Premises or portion thereof leased, used, occupied or utilized (other than an amount based on a fixed percentage or percentages of receipts or sales), and that any such purported lease, sublease, license, concession or other agreement shall be absolutely void and ineffective as a conveyance of any right or interest in the possession, use, occupancy or utilization of any part of the mortgaged Premises.

**Section 28:**  **NON-RECORDATION OF LEASE**

Tenant shall not record this Lease or any notice of this Lease on the land records of any county. If it does so, Landlord may terminate this Lease by recording a Notice of Termination of this Lease on the land records of the County in which the Memorandum of Lease is recorded, which shall be effective with Landlord's signature solely appearing on such Notice of Termination.

**Section 29:**  **RENT DEMAND**

After the service of any notice or commencement of any suit, or final judgment therein, Landlord may receive and collect any rent due, and such collection or receipt shall not operate as a waiver of or otherwise affect such notice, suit, or judgment.

**Section 30:**  **NOTICES**

Unless otherwise provided for herein, any notices or consents required to be given by or on behalf of either party upon the other shall be in writing and shall be given by mailing such notices or consents by registered or certified United States mail, postage prepaid, return receipt requested, or overnight mail, addressed to the parties at the addresses set forth in the Acknowledgment, or in any such case at such other address as may be specified from time to time. The time of the rendition of such notice shall be deemed to be the earlier of the delivery date thereof or the date three (3) days following the date such notice is deposited in an official United States Post Office, properly addressed and postage prepaid. Notices required hereunder by Landlord may be given by either an agent or an attorney acting on behalf of Landlord.

**Section 31:**  **APPLICABLE LAW AND CONSTRUCTION**

The laws of the State of Florida shall govern the validity, performance, enforcement, and interpretation of this Lease. The invalidity or unenforceability of any provision of this Lease shall not affect or impair any other provision. The submission of this document for examination does not constitute an offer to lease, or a reservation of or option for the Premises and becomes effective only upon execution and delivery thereof by Landlord and Tenant. All negotiations, considerations, representations,

and understandings between the parties are incorporated herein and may be modified or altered only by agreement in writing between the parties. Tenant shall have no right to quit the Premises or cancel or rescind this Lease except as expressly granted herein.

**Section 32:**   **AMERICANS WITH DISABILITY ACT**

Tenant represents and covenants that it shall conduct its occupancy and use of the Premises in accordance with the ADA (including, but not limited to, modifying its policies, practices and procedures, and providing auxiliary aids and services to disabled persons). If the Lease provides that the Tenant is to complete certain alterations and improvements to the Premises in conjunction with the Tenant taking occupancy of the Premises, Tenant agrees that all such work shall comply with the ADA. Furthermore, Tenant covenants and agrees that any and all future alterations or improvements made by Tenant to the Premises shall comply with the ADA.

**Section 33:**   **HAZARDOUS MATERIALS**

(a) Tenant shall not use, generate, manufacture, produce, store, release, discharge or dispose of on, in or under the Premises or the property of which the Premises are a part (the "Property"), or transport to or from the Premises or the Property, any Hazardous Materials (as defined below), or allow any other person or entity to do so.

(b) Tenant shall comply with all local, state or federal laws, ordinances or regulations relating to Hazardous Materials on, in under or about the Premises.

(c) Tenant shall promptly notify Landlord should Tenant receive notice of or otherwise become aware of any (i) pending or threatened environmental regulatory action against Tenant, the Premises or the Property; (ii) claims made or threatened by any third party relating to any loss or injury resulting from any Hazardous Material; or (iii) release or discharge or threatened release or discharge of any Hazardous Material in, on, under or about the Premises or the Property.

(d) Tenant shall protect, indemnify and hold harmless Landlord, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including attorney's fee and costs) directly or indirectly out of or attributable to Tenant's failure to comply with this section, including without limitation (i) all foreseeable consequential damages; and (ii) the costs of any required or necessary repair, cleanup, or detoxification of the Premises or, the Property and the preparation and implementation of any closure, remedial or other required plans. This indemnity shall survive termination or cancellation or this Lease for any reason.

(e) Upon 24 hours prior verbal notice, Tenant shall permit Landlord or its agents to inspect the Premises in order to confirm Tenant's compliance with this Section 33. Tenant shall also provide Landlord copies of all notices it may receive concerning the environmental condition of the Premises (or the Property) from any governmental agency.

(f) "Hazardous Materials" shall mean any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials", or "toxic substances", under any applicable federal or state laws or regulations.

**Section 34:**   **FORCE MAJEURE**

In the event that Landlord shall be delayed, hindered in, or prevented from the performance of any act required hereunder by reason of strikes, lockouts, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war, or any other reason of a like nature not the fault of the Landlord, then such performance shall be excused for the period of the delay and the period of performance shall be extended for a period equivalent to the period of such delay.

**Section 35:**   **NO PARTNERSHIP**

Landlord does not, in any way or for any purpose, become a partner of Tenant in the conduct of Tenant's business or otherwise, or joint venturer, or a member of a joint enterprise with Tenant.

**Section 36:**   **QUIET ENJOYMENT**

Landlord hereby covenants and agrees that if Tenant shall perform all of the covenants and agreements herein stipulated to be performed on Tenant's part, Tenant shall at all times during the continuance hereof have peaceable and quiet enjoyment and possession of the Premises without any manner of hindrance from Landlord or its mortgagee.

**Section 37:**   **HOLDING OVER**

If at the expiration of the Term of this Lease, or any renewal thereof, Tenant continues to occupy the Premises with the Landlord's consent, such holding over shall not constitute a renewal of this Lease, but Tenant shall be a Tenant from month to

month. The Base Rent during any month-to-month tenancy shall be the percentage as set forth on the Acknowledgment multiplied by the Base Rent at the time of expiration of this Lease.

**Section 38:** **BROKERS**

Landlord and Tenant each represent, warrant and covenant to the other that it has not dealt in any way with any Broker in connection with the Premises, the Building or this Lease, except with the brokers set forth on the Acknowledgment. Tenant shall indemnify Landlord against, and hold it harmless from, all liabilities and costs arising from any claim resulting from Tenant's contacts with any Broker in connection with this Lease, the Premises or the Building. Landlord shall indemnify Tenant against, and hold it harmless from, all liabilities and costs arising from any claim resulting from Landlord's contacts with any Broker in connection with this Lease, the Premises or the Building. Landlord shall be responsible for paying the Leasing Brokerage Commission ("Commission") to Brokers via a separate agreement.

**Section 39:** **ACCESS**

Landlord, its real estate agents, co-brokers and prospective tenant representatives shall have access to the Premises during business hours upon 24-hour advance prior verbal notice to Tenant.

**Section 40:** **CAPTIONS**

Any paragraph or section titles or captions contained in this Lease are for convenience only and shall not be deemed part of the context of this Lease.

**Section 41:** **WAIVER OF JURY TRIAL**

OWNER AND TENANT WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS LEASE. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY TENANT, AND TENANT ACKNOWLEDGES THAT NEITHER OWNER NOR ANY PERSON ACTING ON BEHALF OF OWNER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.

**Section 42:** **VARIATION IN PRONOUNS OR SINGULAR OR PLURAL USAGE**

All the terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any paragraph or clause herein may require, the same as if such words had been fully and properly written in the number and gender so required.

**EXECUTION PAGE TO FOLLOW**

IN WITNESS WHEREOF, the parties hereto, intending to be bound hereby, have each had this Lease executed and delivered on their behalf by their duly authorized and appointed office or representative as of the dates set forth below.

Signed in the presence of:

_____
Signature

Print Name _MICHELE MARTIN_

LANDLORD:
1001 Clint Moore LLC.
A Florida Limited Liability Company

By: _____

Its': Manager

Date: _8-1-2020_

Signed in the presence of:

_____
Signature

Print Name _Nidia Leiva_

TENANT:
KARMA OF PALM BEACH INC. DBA
KARMA PALM BEACH
A Florida Corporation

By: _____

Its': _President_

Date: _Aug 1 2020_

EXHIBIT "A"
FLOOR PLAN



Page 14 of 18

## EXHIBIT B

## BUILDING RULES AND REGULATIONS

1. The sidewalks, entrances, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered, nor shall they be used for any purpose other than ingress or egress to and from the Premises, the Building Common Areas, or the Building Site Common Areas. No showcases or other articles shall be put in front of or affixed to any part of the exterior of the Building, nor placed in the halls, corridors or vestibules without the prior written consent of the Landlord.

2. No awnings or other projections shall be attached to the outside walls of the Building without the Landlord's prior written consent. No curtains, blinds, shades or screens shall be attached to or hung in, or used in connection with, any window or door of the Premises, without the prior written consent of the Landlord. Such awnings, projections, curtains, blinds, shades, screens or other fixtures must be of a quality, type, design and color, and attached in the manner approved by the Landlord. The Building Standard Interior Window Treatment is an Ivory PVC vertical blind.

3. No sign, interior window treatment, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed on any part of the outside or inside of the Premises or Building without the Landlord's prior written consent. In the event of the violation of the foregoing, Landlord may remove same without any liability, and may charge the expense incurred by such removal to the Tenant or Tenants violating this rule.

4. The toilets, urinals and other plumbing fixtures in the Building Common Areas or in tenant spaces shall not be used for any purposes other than those for which they were constructed, and no sweeping, rubbish, rags, or other substances shall be thrown into them. All damages resulting from any misuse of the fixtures shall be borne by the Tenant who, or whose servants, employees, agents, or licensees, shall have caused the same. Waste and excessive or unusual use of water is prohibited.

5. Tenant shall not mark, paint, drill into or in any way deface any part of the Premises or the Building. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of the Landlord, and as Landlord may direct. Any breakage, stoppage or damage resulting from a violation of this Rule by Tenant shall be borne by the Tenant.

6. No bicycles, vehicles or animals of any kind shall be brought into or kept in or about the Premises, and no cooking shall be done or permitted by Tenant on the Premises. Tenant shall not cause, suffer or permit any unusual or objectionable odors or any nuisance to be produced upon or permeate from the Premises.

7. Tenant shall not make, or permit to be made, any unusual or disturbing noises, or disturb or interfere with occupants of this or neighboring buildings or premises or those having business with them.

8. Neither Tenant nor any of Tenant's servants, employees, agents, visitors or licensees, shall at any time bring or keep upon the Premises any flammable, combustible or explosive fluid, chemical or substance, or any matter forbidden or regulated by any insurance company at risk with respect to all or any part of the Building or the Building Site without the prior written consent of Landlord which consent shall be at Landlord's sole discretion.

9. No additional locks or bolts of any kind shall be placed upon any of the doors or windows, nor shall any changes be made in existing locks or the mechanisms thereof. Each Tenant must, upon the termination of its Lease, return to Landlord all keys, either furnished by Landlord to, or otherwise procured by Tenant, and in the event of the loss of any keys so furnished, the Tenant shall pay to Landlord the cost thereof. Neither Tenant, nor its agents or employees, shall make any duplicate keys.

10. When electric wiring of any kind is introduced, it must be connected as directed by the Landlord and no boring or cutting for wires will be allowed except with Landlord's consent. The location of telephones, telegraph instruments, electric appliances, call boxes, etc., shall be prescribed by the Landlord. No apparatus of any kind shall be connected with the electric wiring without the prior written consent of Landlord. The Tenant shall not use or connect with the electric wires any more lights than are provided for in each room, or any electric lamp of higher candlepower than provided, or any fan, motor or other apparatus without Landlord's prior written consent. Tenant shall not connect with the water pipes any apparatus using water, without the prior written consent of Landlord.

11. Landlord shall have the right to prohibit any advertising by Tenant which, in Landlord's opinion, tends to impair the reputation of the Building or its desirability as a building for offices, and upon written notice from Landlord, Tenant shall refrain from or discontinue such advertising.

12. The Premises shall not be used for lodging or sleeping or for any illegal purpose.

13. The requirements of Tenants will be attended to only upon written notice to Landlord delivered via mail or fax at the address and phone numbers listed in the Notice section of the Lease. Employees of Landlord shall not perform any work or do anything outside of their regular duties, unless under special instructions from Landlord.

14. Canvassing, soliciting and peddling in the Building or on the Building Site is prohibited and Tenant shall cooperate to prevent same.

15. Landlord reserves the right to make such other and further Rules and Regulations as in its judgment may from time to time be necessary for the safety and cleanliness of, and for the preservation of good order in, the Building and the Building Site.

## EXHIBIT C

## WORK AGREEMENT

Landlord will deliver space in AS IS condition

## EXHIBIT D

### SIGN CRITERIA

Tenant shall be allowed to install a sign on the façade of the building but sign must be approved by Landlord and Association and must comply with the building standards. Sign must be permitted and installed by a licensed and insured signed company.