UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

EXCELL AUTO GROUP, INC.

      Debtor.
_____/

Case No.: 22-12790-EPK
Chapter 7

**EMERGENCY MOTION TO ENFORCE THE
<u>AUTOMATIC STAY AGAINST HI BAR CAPITAL, LLC</u>**

Exigent Circumstances

There is litigation pending in the Supreme Court of the State of New York, Kings County, in which Hi Bar Capital, LLC, sued the Debtor and 16 other defendants. The substance of the litigation is centered upon the same contractual relationships, transactions, and occurrences and there is currently a hearing set for October 26, 2022, in which the New York could make rulings on issues the directly impact claims of the Trustee. Accordingly, the Trustee respectfully requests that a hearing on this Motion be set before October 26, 2022.

Nicole Testa Mehdipour, Chapter 7 trustee (the "**Trustee**") for the estate (the "**Estate**") of Excell Auto Group, Inc., by and through undersigned counsel, files this *Emergency Motion to Enforce the Automatic Stay Against Hi Bar Capital, LLC* (the "**Motion**"), and states:

1. On October 27, 2021, Hi Bar Capital, LLC ("**Hi Bar**"), on the one hand, and, on the other hand, the Debtor, along with 14 non-debtor persons, which are the same 13 non-debtor entities, with Karma of Palm Beach being duplicated, entered a "Revenue Purchase Agreement."

2. On December 19, 2021, after threatening litigation, Hi Bar, on the one hand, and the Debtor and 14 Non-Debtor Persons, on the other hand, entered a "Settlement Agreement."

3. On January 28, 2022, Hi Bar filed a complaint in Supreme Court of the State of New York, Kings County, instituting the case *Hi Bar Capital, LLC v. Excell Auto Group, Inc., et al.*, Index No. 502846/2022 (the "**New York Litigation**"), suing on the December 19th contract.

4. On or about February 1, 2022, a "Stipulation of Settlement Pursuant to CPLR 3215(i)" was signed by Hi Bar, the Debtor and 13 Non-Debtor Persons, and Scott Zankl and Kristen Zankl as guarantors, however, the New York Litigation continued.

5. The Debtor filed bankruptcy on April 8, 2022 and filed a suggestion of bankruptcy. Hi Bar has acknowledged and agreed that the claim against the Debtor is stayed by operation of 11 U.S.C. § 362.

6. The Trustee contends that each contract referenced above constitutes a loan agreement that at minimum violated New York's criminal usury laws, and that notwithstanding all the other entities being listed as "co-obligors," the only entity that was truly a party to any of the contracts was the Debtor. From these contracts the bankruptcy estate has substantial claims and defenses against Hi Bar, its principals, and related entities.

7. There is a hearing scheduled for October 26, 2022, in the New York Litigation to hear arguments on a Motion for Summary Judgment filed by Hi Bar, a Motion to Dismiss filed by the non-debtor defendants, and a Motion for Default Judgment, from which any ruling could adversely impact the claims of the Bankruptcy Estate and the Trustee.

8. Accordingly, the stay should be enforced to stay the New York Litigation, which is proceeding as a sham against the other entities, who neither received nor paid any monies to Hi Bar under any contract at issue. However, the New York Court is being asked to interpret the rights of the Debtor under the terms of three agreements.

**Basis for Granting Relief**

9. A trustee in bankruptcy succeeds to all causes of action held by the Debtor at the time the bankruptcy petition is filed, including actions "arising from contract" *Miller v. Shallowford Cmty. Hosp., Inc.*, 767 F.2d 1556, 1559 (11th Cir. 1985). The Trustee succeeds to all causes of action held by a debtor at the time of the bankruptcy is filed, this includes all claims, including counterclaims, and defenses. *See Cohen v. Ernst & Young, LLP (In re Friedman's, Inc.)*, 372 B.R. 530, 540 (Bankr. S.D. Ga. 2007); *In re Larkin*, 468 B.R. 431, 434 (Bankr. S.D. Fla. 2012) (As with other pre-petition claims, a debtor's pre-petition counterclaims are property of the estate … Such counterclaims remain property of the estate, and the trustee has exclusive standing to pursue them, unless abandoned pursuant to section 554.") (citations and footnotes omitted)).

10. Central to the claims asserted by Hi Bar Capital, LLC is whether the underlying Revenue Purchase Agreement entered on October 27, 2021; the Settlement Agreement entered on December 19, 2021; and the Stipulation of Settlement Pursuant to CPLR §3215(i) entered on January 28, 2022, are agreements to purchase the future revenues or receivables of the Debtor or, are in fact, loans subject to criminal usury, under applicable law, and are otherwise void *ab initio* and subjects Hi Bar to counterclaims of the bankruptcy estate.

11. If the case is allowed to proceed, the Trustee is again concerned that any claims of the estate may be subject to arguments of estoppel under New York collateral estoppel law. Collateral estoppel under New York law, has no rigid rule basis:

> The equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules. Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]). The policies underlying its application are avoiding relitigation of a decided issue and the possibility of an inconsistent result ( *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990]).

*Buechel v. Bain*, 97 N.Y.2d 295, 303, 740 N.Y.S.2d 252, 257, 766 N.E.2d 914, 919 (N.Y. 2001)

12. New York collateral estoppel requires two elements and is determined on a case-by-case basis.

> Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling (*see, Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]). The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party (*see, id*.). The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination.
>
> The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. "In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of * * * fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings * * *" (*see, Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147, 153 [1988] [citations omitted]).
>
> Applying these principles, we conclude that defendants are barred from now once again litigating the validity of a trust agreement that was-- after extensive pretrial and trial proceedings involving them--found to be invalid. In determining whether collateral estoppel applies here, the initial question is whether defendants--parties in the *Rhodes* action who were not named in the plaintiffs' counterclaim- -should, nevertheless, be bound by the determination rescinding the trust. Because for purposes of collateral estoppel, defendants were in privity with their former law partner Rhodes as to the validity of the fee arrangements, we conclude they should be bound.
>
> In the context of collateral estoppel, privity does not have a single well-defined meaning ( *Matter of Juan C. v Cortines*, 89 NY2d 659, 667 [1997]). Rather, privity is " 'an amorphous concept not easy of application' * * * and 'includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] coparties to a prior

> action' " ( id., at 667-668 [citations omitted]). In addressing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances. Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate.

*Buechel*, 97 N.Y.2d at 303-305.

13. The amorphous concept and application of New York collateral estoppel along with relationship and true nature of the contract support enforcement of the automatic stay.

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an order: (i) granting this Motion; (ii) enforcing the automatic stay and determining that the entirety of the New York Litigation is stayed under 11 U.S.C. § 362(a); and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 20th day of October 2022.

FURR AND COHEN, P.A.
*Special Counsel for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, Fl 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

By: */s/ Alan R. Crane*
Alan R. Crane
Florida Bar No.: 0963836
E-Mail: Acrane@Furrcohen.com
Jason S. Rigoli, Esq.
Florida Bar No. 91990
E-mail: jrigoli@furrcohen.com

-and-

**LAW OFFICE OF NICOLE TESTA MEHDIPOUR, P.A.**
*Counsel for Chapter 7 Trustee*
6278 N. Federal Highway, Suite 408
Fort Lauderdale, FL 33308

Tel: (954) 858-5880
Fax: (954) 208-0888

/s/ Nicole Testa Mehdipour
Nicole Testa Mehdipour
Florida Bar No. 177271
Nicole.Mehdipour@ntmlawfirm.com