UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRIC OF FLORIDA
West Palm Beach Division

IN RE.

EXCELL AUTO GROUP, INC.

Case No.: 22-12790-EPK
Chapter 7

Debtor.

_____/

## CREDITOR, THE DCG 2008 IRREVOCABLE WEALTH TRUST'S MOTION, PURSUANT TO 11 U.S.C. §362(A)(3) FOR (I) ENFORCEMENT OF THE AUTOMATIC STAY, (II) SANCTIONS AGAINST SCOTT AND KRISTNE ZANKL, AND THEIR COUNSEL, AND (III) CONTEMPT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

Kenneth J. Goodman ("Goodman"), an individual, who as Trustee of Creditor, the DCG 2008 Irrevocable Wealth Trust ("DCG"), by and through undersigned counsel, and pursuant to 11 U.S.C. §105(a)[1], §362(a)(3)[2] & §362(k)(1)[3] and Fed. R. Civ. P. 9011 & 9020, hereby files this its request for entry of an Order from this Court (i) enforcing the automatic stay, (ii) awarding damages, (iii) imposing sanctions against Debtor's principals, Scott Zankl ("Scott") and Kristen Zankl ("Kristen") (collectively the "Zankls"), and their counsel, Harry Winderman, and the law firm of Weiss & Handler (collectively the "Zankls' Counsel), and (iv) finding the Zankls and Zankls' Counsel, in contempt for their willful violation of the automatic stay, for seeking to assert a proposed counterclaim in pending state court litigation between DCG and the Zankls, which proposed counterclaim, if such grounds as stated therein were true, which they are

---

[1] 11 U.S.C. §105(a) states "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[2] 11 U.S.C. §362(a)(3) states in pertinent part that "a petition filed under … this title, … operates as a stay, applicable to all entities, of … any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate".

[3] 11 U.S.C. §362(k)(1) states in pertinent part that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

not, is property of Debtor, Excell Auto Group, Inc.'s ("Debtor" or "Excell") Chapter 7 Bankruptcy Estate (the "Excell Estate"), and in support thereof states:

1.   The Zankls are the owners, officers and directors of Debtor, Excell, which filed this Chapter 7 bankruptcy on April 8, 2022 (the "Petition Date") under this Case No. 22-12790-EPK, in this Bankruptcy Court for the Southern District of Florida (the "Excell Bankruptcy Case").

2.   As the owners, operators, and managers of Excell, the Zankls have personal knowledge as to the assets and property of Excell.

3.   Zankls' Counsel in the Zankl Guarantee Action are also Debtor's counsel in the Excell Bankruptcy Case, and are the counsel who filed the Excell Bankruptcy Case on Excell's behalf, and as such have knowledge as to the assets and property of Excell.

4.   Excell's assets and other property, including potential causes of action, and the right to recover funds paid by Excell to its creditors and others, is owned by the Excell Estate.

5.   The Excell Estate's assets and property are owned by Excell's Chapter 7 Trustee, Nicole Testa Mehdipour ("Excell's Trustee").

6.   Excell is in the business of buying and selling for profit high end luxury automobiles for customers, either off the floor of Excell's showroom, or by locating and brokering the purchase and sale of high end vehicles at Excell's customer's request in the marketplace for such types of vehicles. When Excell sells a vehicle from dealer to deal it's a wholesale purchase (the "Wholesale Program"), and when it sells a vehicle by locating a vehicle for its customer it's a locate purchase (the "Locate Program").

7.   DCG lent money to Excell, as documented by a series of promissory notes, and also entered into with Excell two related Profit Participation Agreements under these two programs, and has filed three Proofs of Claims in this Excell Bankruptcy Case under Claims Nos. 5, 6 & 17 (collectively "DCG's Proofs of Claims"), in the respective amounts of the Amended Locate

2

Principal Amount of $1,500,000, the Wholesale Principal Amount of $1,850,000, and an additional amount owing from Excell to DCG of a $220,000.00 deposit (the "Deposit Amount") that Scott, on behalf of Excell confirmed to DCG (the "Excell Acknowledgement Letter"), for a total amount due and owing from Excell to it as of the Petition Date, before calculation of interest, of $3,570,000.00 (collectively the "Principal Excell Debt Amount"), as represented by the various documents supporting the same, that were attached as exhibits to those DCG's Proofs of Claims.

8. On May 24, 2022, DCG filed a two count Complaint[4] against the Zankls for breach of contract to enforce the absolute and unconditional personal guarantees that the Zankls executed in favor of DCG with respect to the debts owing to DCG from Debtor, Excell, in the Circuit Court in and for Palm Beach County, Florida (the "State Court") under Case No. 50-2022-CA-005035-XXXX-MB (the "Zankl Guarantee Action")[5].

9. On June 16, 2022, the Zankls, in the Zankl Guarantee Action, filed their Answer ("Answer") and asserted their First, and only Affirmative Defense of usury (the "Usury Defense")[6], as:

> "As a first affirmative defense, Defendants state that Plaintiff's loan is civilly and/or criminally "USURIOUS" pursuant to Chapter 687, including §687.02(1), §687.03, §687.04, §687.05, §687.06, §687.071, §687.08, §687.125, §687.145 and §687.146, Florida Statutes, and subject to the penalties set forth therein, including loss of interest, payment of double interest, and unenforceability of the Loan Agreement in the Florida courts. Interest charged in excess of the legal rate constitutes a usurious loan. The elements of a usurious loan are the following: A. A loan, either expressed or implied; B. An understanding that the money must be repaid; C. In consideration of the loan, a greater rate of interest than is allowed by law is paid or agreed to be

---

[4] DCG efiled the Complaint, with exhibits, in the Zankl Guarantee Action on May 24, 2022 at Efiling # 150220626.

[5] DCG requests that this Court take judicial notice, pursuant to Fed. R. Evid. 201, of the docket and pleadings in the State Court in the Zankl Guarantee Action, and in particular those referenced within this Motion. Rule 201 states that: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

[6] The Zankls efiled their Answer and Usury Defense in the Zankl Guarantee Action on June 16, 2022 at Efiling # 151607119.

paid by the borrower; and D. There is an intent to charge a usurious rate, sometimes referred to as corrupt intent."

10. On July 27, 2022, the State Court in the Zankl Guarantee Action entered an Order[7] compelling the Zankls to be scheduled and to appear for their depositions in the Zankl Guarantee Action by no later than August 10, 2022.

11. On August 5, 2022 @ 3:44 p.m., just prior to the scheduled and State Court ordered depositions of the Zankls were to occur respectively on August 8 & 9, 2022 in the Zankl Guarantee Action[8], Zankls' Counsel sent to DCG's counsel the following email, threatening to file a counterclaim against DCG if the Zankls' scheduled and State Court ordered depositions went forward as scheduled on August 8 & 9, 2022:

> **From:** Harry Winderman <hw@whcfla.com>
> **Sent:** Friday, August 5, 2022 3:44:50 PM
> **To:** Noah Tennyson <NTennyson@nasonyeager.com>
> **Cc:** Ivan J. Reich <IReich@nasonyeager.com>; Stacey Janowitz
> <SJanowitz@nasonyeager.com>; Henry B. Handler <hbh@whcfla.com>
> **Subject:** RE: DCG v. Zankl - depo reset dates for Zankls
>
> Hi Noah and Ivan.  Just wanted to provide preliminary evidence of your client's usurious interest payments.  We intend to file a counterclaim to recover the over $1,000,000 in interest paid over the life of this illegal loan.  If the depositions go forward next week we will move to file the counterclaim.
>
> **Harry Winderman, Esq.**
> **WEISS, HANDLER & CORNWELL, P.A.**
> **2255 Glades Road, Suite 205E**
> **Boca Raton, Florida 33431**
> **(561) 997-9995 (Boca)**
> **(561) 997-5280 (Fax)**
> **HW@whcfla.com**

12. Despite such threat possibly constituting criminal blackmail or extortion under federal

---

[7] Entered on July 27, 2022 by the State Court in the Zankl Guarantee Action under Efiling # 154173552.

[8] See notices of taking deposition of Kristen and Scott respectively for August 8 & 9, 2022 efiled by DCG on July 29, 2022 in the Zankl Guarantee Action under Efiling # 154356351.

or state law [9], those depositions nonetheless did go forward on August 8 & 9, 2022, as Kristen and Scott's respective depositions were taken in the Zankl Guarantee Action. During those depositions the Zankls each swore under oath that all monies paid from DCG to Excell (which were all paid pursuant to the Profit Participation Agreements) were paid by Excell, and that neither nor both of the Zankls ever paid any money to DCG, including any monies paid under either the promissory notes, guarantees or Profit Participation Agreements.[10]

13. Thereafter, on August 26, 2022, DCG, moved, in the Zankl Guarantee Action, pursuant to Fla. R. Civ. P. 1.510, and Fla. Stat. §687.03(4), for summary judgment against the Usury Defense (the "Summary Judgment Motion")[11], the hearing of which was set by the State Court to be heard on October 19, 2022[12], and then reset to be heard on October 24, 2022[13].

14. The basis for the Summary Judgment motion was that despite Defendant, Scott's testimony at his depositions in this Excell Bankruptcy Case and the Zankl Guarantee Action, that any "profits" ***paid to Plaintiff by the borrower, Excell***, under the agreed upon Transaction Documents with DCG, including the Profit Participation Agreements between Plaintiff and Excell,

---

[9] Blackmail is a crime under 18 U.S.C. §873 ("Whoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than one year, or both").

Extortion is a crime under Fla. Stat. § 836.05 ("Threats; extortion.—Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree").

[10] See pgs. 172, ln. 10 through pg. 191, ln. 4 in the excerpts of the deposition transcript of Kristen's deposition on August 8, 2022 in the Zankl Guarantee Action, attached as Exhibit D hereto, and pg. 121, lns. 4-11, pg. 174, ln. 10 through pg. 175, ln. 11, pg. 190, ln. 23 through pg. 191, ln. 21, and pg. 258, lns. 18-24, in the deposition transcript of Scott's deposition on August 9, 2022 in the Zankl Guarantee Action, attached as Exhibit E hereto.

[11] Efiled in the Zankl Guarantee Action under Efiling # 156231117.

[12] Efiled in the Zankl Guarantee Action under Efiling # 159027105 & 156888764.

[13] Efiled in the Zankl Guarantee Action under Efiling # 159067054 & 159520211.

attached as exhibits to DCG's Proofs of Claims in this Excell Bankruptcy Case, were actually "interest" despite what any of those documents might say to the contrary, and that Fla. Stat. §687.03(4)[14], nonetheless specifically exempts such payments for profits received from the calculation of interest under Florida's Usury Statute, Fla. Stat. Chapter 687.

15. On October 4, 2022, the Zankls, in an untimely[15] attempt to counter the Summary Judgment Motion, moved, in the Zankl Guarantee Action, to amend their Answer, Affirmative Defense, and to assert a Counterclaim against DCG, based upon the same Usury Defense, which was the subject of the pending Summary Judgment Motion (the "Amendment Motion"), which

---

[14] Fla. Stat. §687.03(4), cited by the Zankls in their Usury Defense, goes on to state in pertinent that:

> "If, as provided in subsection (3), a loan, advance of money, line of credit, forbearance, or other obligation exceeds $500,000, then, for the purposes of this chapter, *interest on* that loan, advance of money, line of credit, forbearance, or other obligation *shall not include* the value of property charged, reserved, or taken as an advance or forbearance, *the value of which substantially depends on the success of the venture in which are used the proceeds* of that loan, advance of money, line of credit, forbearance, or other obligation. ... *[I]nterests in profits,* ... are examples of the type of property the value of which *would be excluded from calculation of interest under the preceding sentence.*" (*emphasis added*).

Florida's Third District Court of Appeal, in a case almost exactly on point, in *Bailey v. Harrington*, 462 So. 2d 861, 862 (Fla. 3d DCA 1985), interpreted Fla. Stat. §687.03(4), and stated in pertinent part: "The *note in question charged an interest rate of* 24.99% *which was plainly not usurious as the amount of money loaned herein was in excess of $500,000.* §§ 687.03(1), 687.071, Fla. Stat. (1983). The *profit participation provision of the loan agreement did not,* as the trial court found, *charge any additional interest on the loan. It provided that the lender was entitled to share in 43% of the profits, if any, from the construction project which the loan financed. This payment cannot constitute additional interest on the loan as it was not payable at all if no profits were realized from the project.* Indeed, no profits were realized as the project entirely failed and all agree that no payment whatever is due under the profit participation provision. *Moreover, this profit participation provision is expressly authorized by our usury statutes as not constituting additional interest,* § 687.03(4), Fla. Stat. (1983), *and has long been approved by well-established principles of usury law. Schwab v. Quitoni,* 362 So.2d 297 (Fla. 3d DCA 1978)." (*emphasis added*). The conclusion reached in *Bailey* has been cited approvingly by Florida's Fourth District Court of Appeal in *Kraft v. Mason*, 668 So. 2d 679, 684 (Fla. 4th DCA 1996), and by Florida's Fifth District Court of Appeal in *Oregrund,* 873 So. 2d at 455-57[14]. Thereafter, the conclusions on this issue reached in both *Bailey* and *Kraft* were cited approvingly by Florida's Supreme Court in *Valliappan v. Cruz,* 917 So. 2d at 259-60. Furthermore, the United States District and Bankruptcy Courts for the Southern District of Florida have also interpreted Fla. Stat. §687.03(4) in the same manner. *In re Transcapital Financial Corporation,* 433 B.R. 900, 907-909 (Bankr. S.D. Fla. 2010); *Video Trax, Inc. v. NationsBank, N.A.,* 33 F. Supp. 2d 1041, 1055 (S.D. Fla. 1998); *Markwood Invs. Ltd. v. Neves (In re Neves),* 638 B.R. 220, 233 (Bankr. S.D. Fla. 2014).

[15] Fla. R. Civ. P. 1.510(c)(5) requires that responses to the Summary Judgment Motion must have been filed no later than 20 days prior to the scheduled summary judgment hearing.

attached the proposed Counterclaim against DCG as an exhibit to that Amendment Motion[16]. The Amendment Motion with attached proposed Counterclaim against DCG is attached as Exhibit A to this Motion.

16. However, a review of the exhibit attached to the Amendment Motion, and which purported to amend the Zankls' Answer and Affirmative Defense, including their first and only Affirmative Defense of Usury do neither, and recite verbatim the exact same language of the Usury Defense in the original Answer and Affirmative Defense, to which the Summary Judgment Motion was directed.

17. The only difference in what the Zankls proposed in their Amendment Motion was a proposed counterclaim against DCG to recover for themselves the allegedly usurious payments made by Excell, not themselves, to DCG[17]. However, while not only would this proposed counterclaim fail, and be subject to summary judgment for the same reasons cited in the Summary Judgment Motion, because of Fla. Stat. §687.03(4), this Amendment Motion was nothing more than an egregious tactic to delay the entry of summary judgment in the Zankl Guarantee Action, because as a result of the Excell Bankruptcy Case, the Zankls lacked standing to pursue such a counterclaim.

18. While for all the reasons cited in the Summary Judgment Motion, such a claim lacks merit, however, if such a claim were meritorious, it would belong to, and is the exclusive property of the Excell Estate, through Excell's Trustee, who has as of yet, not decided whether to pursue such a cause of action. This counterclaim has never been assigned from Excell, to the Zankls, nor abandoned to them, by Excell's Trustee, nor have the Zankls provided proof that either have occurred.

---

[16] Efiled by the Zankls on October 4, 2022, 15 days prior to the scheduled summary judgment hearing in the Zankl Guarantee Action, under Efiling # 158552301.

[17] See prayer for relief in the proposed Counterclaim at A "declaring ... all money collected by Plaintiff be refunded, including principal, interest, and other charges to Defendants."

19. The very act of filing the Amendment Motion is unto itself a violation by the Zankls, and their counsel (who himself is also representing both the Zankls and Excell in Excell's Bankruptcy Case), of the automatic stay in bankruptcy as set forth in 11 U.S.C. §362(a)(3).

20. Each of the Zankls in their depositions taken in the Zankl Guarantee Action on August 8 & 9, 2022, confirmed that all the payments were made by Excell, and not the Zankls personally[18]. As such the Zankls' Amendment Motion to add this counterclaim against DCG constitute a willful violation of the automatic stay under 11 U.S.C. §362(a)(3) as an "***act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate***", in that to the extent Excell is entitled to those monies back as usurious interest payments (which they clearly are not), then they would belong to Excell, and not the Zankls, and as such are property of the Excell Estate.

21. On October 10, 2022, undersigned counsel for DCG sent an email to Zankls' Counsel at 12:30 p.m. which stated in relevant part:

> "Dear Harry:
> …
> Also in the DCG Trust v. Zankl guarantee case on October 4, 2022 you filed the attached motion for leave to amend which asserts the same usury affirmative defense which is the subject of the pending summary judgment motion, and you also seek to assert a counterclaim on the Zankls behalf which does not belong to your clients, but rather, even if such counterclaim were viable it would belong solely to the Trustee on behalf of the Excell estate, and Nicole and her counsel (who are copied on this email) have assured me that she has not assigned the same to your clients, nor would she do so.
>
> Such an action on the Zankls (and your part) is a clear violation of 11 U.S.C. §362(a)(3) as an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". If you do not promptly withdraw the motion for leave to add a counterclaim then I am shall be forced to file a motion for violation of the automatic stay injunction against the Zankls and yourself in the Excell bankruptcy case.
>
> Sincerely,

---

[18] See fn. 10 herein above.

Ivan"

22. Not only did neither the Zankls nor the Zankls' Counsel withdraw such Amendment

Motion, but rather on October 14, 2022, attempted to set the Amendment Motion for hearing before

the State Court to be heard at the same time as the hearing on the Summary Judgment Motion[19].

23. At the October 24, 2022 hearing on the Summary Judgment Motion, the Zankls'

Counsel misrepresented to the State Court, on pg. 4, lns 5-8 that: "Now, it is also clear that the

reason the trustee is here, is that the trustee wants to bring the usury claim and will bring the usury

claim for the same reasons", and on pg. 6, lns 5-6 that: "So you have the trustee who's ready to

move forward and will move forward on usury." A transcript of the excerpts from the Summary

Judgment Hearing are attached hereto as Ex. C to this Motion.

24. However, on October 26, 2022, Excell's Trustee's counsel sent an email to Zankls'

Counsel, copying undersigned counsel, making it clear that was not the case, and stating that:

> **From:** Michael Foster [mailto:michael@youngfoster.com]
> **Sent:** Wednesday, October 26, 2022 4:25 PM
> **To:** Harry Winderman <hw@whcfla.com>; Ivan J. Reich
> <IReich@nasonyeager.com>
> **Cc:** Nicole Testa Mehdipour, Esquire <nicolem@ntmlawfirm.com>
> **Subject:** Excell Auto Group, Inc.
>
> Gentlemen –
>
> I want to make clear that the Chapter 7 Trustee has not determined whether to
> assert any claims against the DCG 2008 Irrevocable Wealth Trust (the "DCG
> Trust") for usury, or otherwise. It is true that the Chapter 7 Trustee is
> investigating various claims against the DCG Trust and others, but the Chapter 7
> Trustee has made no decision as to the viability of any such potential claim and
> has not made any representation (publicly or privately) that any such claim would
> or should be pursued. Please refrain from making any statements (in any forum)
> to the contrary.
>
> Thanks,
>
> Michael

---

[19] The Zankls efiled a Notice of Hearing in the Zankl Guarantee Action on October 14, 2022 at Efiling # 159265067,
a copy of which is attached as Ex. B to this Motion.



Michael C. Foster, Esq.

Young Foster PLLC

1600 S Federal Highway, Suite 570

Pompano Beach, Florida 33062

+1 954.866.3570 (O)

+1 954.736.9066 (C)

michael@youngfoster.com

www.youngfoster.com

25. As is evident by the deposition excerpts, the Amendment motion, the proposed counterclaim attached thereto, Zankls' Counsel's correspondence sent and received by him, his argument to the State Court at the Summary Judgment hearing, that the Zankls and their counsel's conduct and acts were a willful violation of the automatic stay, Goodman, and DCG, have been injured, and are entitled to recover actual damages including costs and attorneys' fees, and if appropriate, may also recover punitive damages, pursuant to 11 U.S.C. §362(k).

26. A violation of the automatic stay is willful if the party knew the automatic stay was invoked and intended the actions which violated the stay. *In re Jove Engineering, Inc.*, 92 F.3d 1539, 1555 (11th Cir. 1996).[20] A person must not only cease the act that would violate the stay, "it must also take all necessary affirmative action to stop the proceedings which are in violation of the automatic stay." *In re Briskey*, 258 B.R. 473, 477 (Bankr.M.D.Ala. 2001). To avoid a violation,

---

[20] "A violation is willful if a [party]'s conduct was intentional (as distinguished from inadvertent) and committed with knowledge of the pendency of the bankruptcy case." *Laboy v. Doral Mortg. Corp. (In re Laboy)*, 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the [party] need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). In *McMullen*, the First Circuit Court of Appeals limited "technical" violations of the automatic stay to violations where the violating party acted without notice of the pendency of a bankruptcy case. 386 F.3d at 330. That is clearly not the case here.

the post-petition action must fall under an exception to 11 U.S.C. §362(b) or else the party must obtain relief from the stay under 11 U.S.C. §362(d). *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1268 (11th Cir. 2014). Neither have occurred. The Amendment Motion, and proposed counterclaim, were clearly a stay violation under 11 U.S.C. §362(a)(3), and it was a willful violation because the Zankls and their counsel not only knew about the bankruptcy filing and intended to engage in acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, in particular any potential affirmative claims of Excell against DCG for allegedly usurious payments that Excell may have made to DCG. They were warned by undersigned counsel for DCG to not pursue such claim, and not only did they not withdraw said claim, they double downed and proceeded to move forward with the same, knowing full well that they did not own such claims, including making misrepresentations to the State Court regarding the Estate Trustee's intentions with respect to said potential claim.

27. The Eleventh Circuit has held that the actual damages recoverable by a party who has suffered damages from a creditor's stay violation under section 362(k) include those attorney's fees incurred not only in stopping the violation, but also attorney's fees and costs incurred in prosecuting a damages action and defending the damages on appeal. *Mantiply v. Horne (In re Horne)*, 876 F.3d 1076, 1081 (11th Cir. 2017)("This explicit, specific, and broad language permits the recovery of attorney's fees incurred in stopping the stay violation, prosecuting a damages action, and defending those judgments on appeal."). An award of attorney's fees may be awarded as actual damages even if a party has not suffered other actual damages for the stay violation. *Parker v. Credit Central South, Inc.,* 634 Fed.Appx. 770 (11th Cir. 2015).

28. Goodman, and DCG, while not the Debtor, have nonetheless been damaged by the Zankls and Zankls' Counsel's action, in that their entitlement to summary judgment has been delayed, and the Zankls and Zankls' Counsel have interfered with the business relationship

between DCG, as a creditor in this action, and Excell's Trustee, with respect to their discussions and resolution of any and all issues that there might be between then with respect to DCG's claims against the Excell Estate, and any potential claims the Excell Estate, may have against DCG (which DCG submits does not exist).

WHEREFORE, for the foregoing reasons, Goodman and DCG respectfully requests this Honorable Court enter an Order, pursuant to 11 U.S.C. §105(a), §362(a)(3) & §362(k)(1) and Fed. R. Civ. P. 9011 & 9020, (a) enforcing the automatic stay by voiding and prohibiting the prosecution of the Amendment Motion and the proposed counterclaim thereto, (ii) awarding actual damages, including costs and attorneys' fees, and punitive damages[21] to DCG against the Zankls, and the Zankls' Counsel, pursuant to 11 U.S.C. §362(k)(1) (iii) imposing sanctions against the Zankls, and the Zankls' Counsel, (iv) entering an Order to Show Cause as to why the Zankls and Zankls' Counsel should not be held in contempt of this Bankruptcy Court for their willful violation of the automatic stay, and (v) granting Goodman and DCG such further relief as this Bankruptcy Court deems just and proper.

Dated: November 10, 2022

/s/ Ivan J. Reich
Ivan J. Reich (FBN: 778011)
NASON, YEAGER, GERSON, HARRIS
& FUMERO, P.A.
750 Park of Commerce Blvd, Suite 210
Boca Raton, FL 33487
Tel: (561) 982-7114
Fax: (561) 982-7116
Email: ireich@nasonyeager.com
msmith@nasonyeager.com
*Attorneys for Creditor,*
*the DCG 2008 Irrevocable Wealth Trust*

---

[21] See fn. 1.

12

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that on this 10th day of November, 2022, a true and accurate copy of the foregoing has been furnished to the Clerk of the Court using CM/ECF electronic service. I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and to the Zankls and the Zankls' Counsel via email through the Zankls' Counsel at **HW@whcfla.com**.

_/s/  Ivan J. Reich_
Attorney

Filing # 158552301 E-Filed 10/04/2022 12:50:32 PM                    EXHIBIT "A"

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

KENNETH J. GOODMAN AS TRUSTEE OF           CASE NO.: 502022CA005035XXXXMB
THE DCG 2008 IRREVOCABLE WEALTH
TRUST,                                     Division: AJ

        Plaintiff,

v.

SCOTT L. ZANKL and KRISTEN ZANKL,

        Defendants.

_____/

## DEFENDANTS' MOTION FOR LEAVE TO AMENDED ANSWER
## AND AFFIRMATIVE DEFENSES AND TO FILE COUNTERCLAIM

Defendants, SCOTT ZANKL and KRISTEN ZANKL, through undersigned counsel and pursuant to Fla. R. Civ. P. 1.140 and 1.190(a), file this their Motion for Leave to Amend Defendants' Answer and Affirmative Defenses and to File their Counterclaim and, as grounds in support hereof, state:

1.      Plaintiff filed this action on May 24, 2022, for various causes of action.

2.      Defendants filed their Answer and Affirmative Defenses ("**Answer**") on June 16, 2022. (DE #9).

3.      Attached hereto as "**Exhibit A**" is Defendants' proposed Amended Answer and Affirmative Defenses and Counterclaim.

4.      Fla. R. Civ. P. 1.190(a) provides that leave to amend "shall be given freely when justice so requires." *See*, *Dryden Waterproofing, Inc. v. Bogard*, 488 So.2d 672, 673 (Fla. 4th DCA 1986) (citations omitted) (leave to amend a complaint should be freely granted when justice so requires, and it should not be denied unless the privilege has been abused). The Fourth District explained that:

Page 1 of 3

*** FILED: PALM BEACH COUNTY, FL  JOSEPH ABRUZZO, CLERK. 10/04/2022 12:50:32 PM ***

> [R]efusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile.

*Hutson v. Plantation Open MRI, LLC*, 66 So. 3d 1042, 1044-45 (Fla. 4th DCA 2011) (citations and internal quotation marks omitted).

5.      Indeed, when ruling on a motion for leave to amend, "all doubts should be resolved in favor of allowing an amendment." *Quality Roof Servs., Inc. v. Intervest Nat. Bank*, 21 So. 3d 883, 885 (Fla. 4th DCA 2009) (granting leave to amend answer to assert additional affirmative defense). "Courts should be especially liberal when leave to amend is sought at or before a hearing on a motion for summary judgment." *Thompson v. Bank of N.Y.*, 862 So. 2d 768, 770 (Fla. 4th DCA 2003) (citation and internal quotation marks omitted).

6.      This case is not set for trial. Plaintiff will not suffer any prejudice by the Court granting leave to amend. Finally, Defendants have not abused the privilege to amend.

7.      Accordingly, the Court should grant this Motion.

WHEREFORE, Defendants respectfully request that the Court grant leave for Defendants to file their Amended Answer and Affirmative Defenses, to file their Counterclaim, and grant any other relief the Court deems just and proper.

WEISS, HANDLER & CORNWELL, PA
*Attorneys for Defendants*
One Boca Place, Suite 205E
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 997-9995

By: _____
      HENRY B. HANDLER, ESQ.
      Florida Bar No. 259284
      hbh@whcfla.com
      filings@whcfla.com
      jn@whcfla.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished in compliance with Fla. R. Jud. Admin. 2.516 via eService Portal to all registered parties and counsel, on this ___3d___ day of October 2022.

WEISS, HANDLER & CORNWELL, PA
*Attorneys for Defendants*
One Boca Place, Suite 205E
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 997-9995

By: _____
HENRY B. HANDLER, ESQ.
Florida Bar No. 259284
hbh@whcfla.com
filings@whcfla.com
jn@whcfla.com
HARRY WINDERMAN, ESQ.
Florida Bar No. 209562
dkf@whcfla.com
ak@whcfla.com
gg@whcfla.com

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

KENNETH J. GOODMAN AS TRUSTEE OF
THE DCG 2008 IRREVOCABLE WEALTH
TRUST,

                    Plaintiff,

v.

SCOTT L. ZANKL and KRISTEN ZANKL,

                    Defendants.

_____/

CASE NO.: 502022CA005035XXXXMB

Division: AJ

## DEFENDANTS' AMENDED ANSWER AND AFFIRMATIVE DEFENSES

Defendants, SCOTT L. ZANKL and KRISTEN ZANKL, through undersigned counsel,
file this their Amended Answer and Affirmative Defenses to the Complaint and state:

### ANSWER

1.     Defendants admit the allegations contained in paragraphs 1, 2, 3, 4, 5, 8, 9, 14, 15,
and 16 of the Complaint.

2.     Defendants are without knowledge as to the allegations contained in paragraphs 6,
7, and 11, of the Complaint and therefore deny same.

3.     Defendant, KRISTEN ZANKL, denies the allegations contained in paragraph 10 of
the Complaint. Defendant, SCOTT ZANKL, admits the allegations contained in paragraph 10 of
the Complaint.

4.     Defendants deny the allegations contained in paragraphs 12, 13, 20, 21, 22, 24, 25,
26, 27, 28, 29, and 30 of the Complaint.

5.     Defendant, KRISTEN ZANKL, denies the allegations contained in paragraph 17 of
the Complaint. Defendant, SCOTT ZANKL, admits the allegations contained in paragraph 17 of
the Complaint.



Page 1 of 7

6.      Defendant, KRISTEN ZANKL, denies the allegations contained in paragraph 18 of the Complaint.  Defendant, SCOTT ZANKL, admits the allegations contained in paragraph 18 of the Complaint.

7.      Defendant, KRISTEN ZANKL, denies the allegations contained in paragraph 19 of the Complaint.  Defendant, SCOTT ZANKL, admits the allegations contained in paragraph 19 of the Complaint.

8.      Defendants deny all allegations of the Complaint not specifically admitted.

## AFFIRMATIVE DEFENSES

9.      As a First Affirmative Defense, Defendants state that Plaintiff's loan is civilly and/or criminally "USURIOUS" pursuant to Chapter 687, including §687.02(1), §687.03, §687.04, §687.05, §687.06, §687.071, §687.08, §687.125, §687.145 and §687.146, Florida Statutes, and subject to the penalties set forth therein, including loss of interest, payment of double interest, and unenforceability of the Loan Agreement in the Florida courts.  Interest charged in excess of the legal rate constitutes a usurious loan.  The elements of a usurious loan are the following:

A.      A loan, either expressed or implied;

B.      An understanding that the money must be repaid;

C.      In consideration of the loan, a greater rate of interest than is allowed by law is paid or agreed to be paid by the borrower; and

D.      There is an intent to charge a usurious rate, sometimes referred to as corrupt intent.

WHEREFORE, Defendants, SCOTT L. ZANKL and KRISTEN ZANKL, respectfully request that the Court enter an order, as follows:

A. declaring the loans made by Counter-Defendant usurious, unlawful, and void and

directing all money collected by Plaintiff be refunded, including principal, interest, and other charges to Counter-Plaintiffs;

B. ordering Counter-Defendant to forfeit all interest and refund two times the interest collected;

C. awarding judgment for damages against Counter-Defendant;

D. awarding judgment for three-fold damages against Counter-Defendant;

E. awarding judgment for punitive damages against Counter-Defendant;

F. awarding judgment for attorneys' fees and litigation costs against Counter-Defendant;

G. voiding all collection efforts on the usurious loans and voiding all illegal liens against real and personal property in connection with said usurious loans;

H. ordering Counter-Defendant to notify all credit reporting agencies that the loans are invalid and that all reports or scores reflecting such loans be corrected;

I. granting Defendants/Counter-Plaintiffs a trial by jury of all issues so triable; and

J. awarding judgment all other relief that this Court deems just and proper.

## COUNTERCLAIM

Defendants/Counter-Plaintiffs, SCOTT ZANKL and KRISTEN ZANKL (hereinafter collectively referred to as "Counter-Plaintiffs"), sue Plaintiff/Counter-Defendant, KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST (hereinafter referred to as "Counter-Defendant"), for abuse of process and alleges:

1. This is an action for damages in excess of $30,000.00.

2. Counter-Defendant is a Florida trust under the Florida Trust Code and is *sui juris*.

3. Counter-Plaintiffs reside in Palm Beach County, Florida and are *sui juris*.

4. All conditions precedent have been performed or have occurred.

5.      Counter-Plaintiffs adopt the factual allegations admitted by them in their Amended Answer.

6.      Counter-Defendant is involved a usurious loan as more thoroughly described hereinafter that is express or implied, with an understanding that the money lent shall be returned. It appears that a greater rate of interest than is allowed by law has been or is about to be paid or was agreed to be paid.  There exists an intent, a corrupt intent, to willfully and knowingly take more than the legal rate of interest for the use of the money loaned.  *See, Bermil Corp. v. Sawyer*, 353 So.2d 579, 583 (Fla. 3rd DCA 1977) citing *Sharp v. Dixon*, 252 So.2d 805 (Fla. 4th DCA 1971).  Furthermore, there are four requisites of usurious transactions that apply to Counter-Defendant as more specifically described hereinafter of (1) there are loans express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loans, a greater rate of interest than is allowed by law shall be paid or agreed to be paid; and (4) there is a corrupt intent to take more than the legal rate for the use of the money loaned, and Counter-Defendant had and has a corrupt intent in the lender's mind to get more than legal interest for money lent on all of the usurious loans described in this pleading.  *See, Dixon v. Sharp*, 276 So.2d 817, 819 (S. Ct. 1973).  Counter-Defendant did knowingly and willfully with a corrupt intent charge or accept more than the amount of the interest prohibited determined from all circumstances surrounding the lending transactions.  The usurious lending transactions complained of are not represented by the documents attached to the Complaint but by the actions of the parties in that the documents served as a mere artifice to hide the criminal usury charged by the Counter-Defendant.  Pursuant to the Florida Criminal Usury statute, Chapter 687.071(7), a contract that seeks a criminally usurious rate is void, and it cannot be enforced in the courts of Florida, which is specifically directed by the statute to refuse to enforce this illegal contract: "No extension of

credit made in violation of the provisions of this section shall be an enforceable debt in the courts of this state." Fla. Sta. § 687.071(7).

10.    Counter-Plaintiffs are obligated to pay their attorneys a reasonable fee for their services, and Counter-Defendant is obligated to pay all of those attorneys' fees and costs incurred based upon the attorneys' fees clause in the documents attached to the Complaint.

11.    Counter-Defendants, knowing that the funds advanced and the collection of criminally usurious interest was improper, filed this lawsuit to use the courts to obtain enforcement of criminally usurious lending contracts. This is (1) an illegal, improper, and/or perverted use of process by the Counter-Defendant; (2) with an ulterior motive or purpose in exercising the illegal, improper, or perverted process which is to seek the improper favorable adjudication and enforcement of void criminally usurious lending contracts; and (3) the Counter-Plaintiffs have been and are being damaged as a result of Counter-Defendant's abuse of process. *See, Valdes v. GAB Robins N. Am. Inc.*, 924 So. 2d 862 (Fla. 3d DCA 2006).

WHEREFORE Defendants/Counter-Plaintiffs respectfully request that this Court enter an Order as follows:

A.  declaring the loans made by Plaintiff/Counter-Defendant usurious, unlawful, and void and all money collected by Plaintiff/Counter-Defendant be refunded, including principal, interest, and other charges to Defendants/Counter-Plaintiffs;

B.  ordering Plaintiff/Counter-Defendant to forfeit all interest and refund two times the interest collected;

C.  awarding judgment for damages against Plaintiff/Counter-Defendant;

D.  awarding judgment for three-fold damages against Plaintiff/Counter-Defendant;

E.  awarding judgment for punitive damages against Plaintiff/Counter-Defendant,

F. awarding judgment for attorneys' fees and litigation costs against Plaintiff/Counter-Defendant;

G. voiding all collection efforts on the usurious loans and voiding all illegal liens against real and personal property in connection with said usurious loans;

H. ordering Plaintiff/Counter-Defendant to notify all credit reporting agencies that the loans are invalid and that all reports or scores reflecting such loans be corrected;

I. granting Defendants/Counter-Plaintiffs a trial by jury of all issues so triable; and

J. awarding judgment all other relief that this Court deems just and proper.

### JURY TRIAL DEMAND

Defendants/Counter-Plaintiffs demand trial by jury on all issues herein that are so triable.

WEISS, HANDLER & CORNWELL, PA
*Attorneys for Defendants/Counter-Plaintiffs*
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Telephone: (561) 997-9995

By: _____
HENRY B. HANDLER, ESQ.
Florida Bar No. 259284
hbh@whcfla.com
jn@whcfla.com
filings@whcfla.com
HARRY WINDERMAN, ESQ.
Florida Bar No. 209562
hw@whcfla.com
gg@whcfla.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished in

compliance with Fla. R. Jud. Admin. 2.516 via eService Portal to all registered parties and counsel,

on this _____ day of October 2022.

WEISS, HANDLER & CORNWELL, PA
*Attorneys for Defendants/Counter-Plaintiffs*
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Telephone: (561) 997-9995

By: _____
　　HENRY B. HANDLER, ESQ.
　　Florida Bar No. 259284
　　hbh@whcfla.com
　　jn@whcfla.com
　　filings@whcfla.com
　　HARRY WINDERMAN, ESQ.
　　Florida Bar No. 209562
　　hw@whcfla.com
　　gg@whcfla.com

Filing # 159265067 E-Filed 10/14/2022 01:47:29 PM                    EXHIBIT "B"

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

KENNETH J. GOODMAN AS TRUSTEE OF          CASE NO.: 502022CA005035XXXXMB
THE DCG 2008 IRREVOCABLE WEALTH
TRUST,                                    Division: AJ

       Plaintiff,

v.

SCOTT L. ZANKL and KRISTEN ZANKL,

       Defendants.

_____/

## DEFENDANTS' NOTICE OF HEARING

PLEASE TAKE NOTICE that the undersigned has called up for hearing the following:

**DATE/TIME:**    **Monday, October 24, 2022, at 1:15 p.m.**

**JUDGE:**    **Honorable Maxine Cheesman**

**LOCATION:**    **Zoom Videoconference**
https://us02web.zoom.us/j/85452103883
Meeting ID: 854 5210 3883
Dial-in Information
+1 877-853-5257 US Toll-Free
+1 888-475-4499 US Toll-Free

**MATTER:**    **DEFENDANTS' MOTION FOR LEAVE TO AMENDED
ANSWER AND AFFIRMATIVE DEFENSES AND TO FILE
COUNTERCLAIM**

                  WEISS, HANDLER & CORNWELL, PA
                  *Attorneys for Defendants*
                  One Boca Place, Suite 205 East
                  2255 Glades Road
                  Boca Raton, FL 33431
                  Telephone: (561) 997-9995

                  By: /s/Harry Winderman
                      HENRY B. HANDLER, ESQ.
                      Florida Bar No. 259284
                      hbh@whcfla.com
                      filings@whcfla.com

NOT A CERTIFIED COPY

*** FILED: PALM BEACH COUNTY, FL  JOSEPH ABRUZZO, CLERK. 10/14/2022 01:47:29 PM ***

jn@whcfla.com
HARRY WINDERMAN, ESQ.
Florida Bar No. 209562
dkf@whcfla.com
gg@whcfla.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished in compliance with Fla. R. Jud. Admin. 2.516 via eService Portal to all registered parties and counsel, on this 14th day of October 2022.

WEISS, HANDLER & CORNWELL, PA
*Attorneys for Defendants*
One Boca Place, Suite 205 East
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 997-9995

By: /s/Harry Winderman
HENRY B. HANDLER, ESQ.
Florida Bar No. 259284
hbh@whcfla.com
filings@whcfla.com
jn@whcfla.com
HARRY WINDERMAN, ESQ.
Florida Bar No. 209562
dkf@whcfla.com
gg@whcfla.com

NOT A CERTIFIED COPY

EXHIBIT "C"

Page 1

1    IN THE CIRCUIT COURT OF THE FIFTEENTH
     JUDICIAL CIRCUIT IN AND FOR
2    PALM BEACH COUNTY COUNTY, FLORIDA
3
     CASE NO.:   502022CA005035XXXXMB
4
5
6    KENNETH J. GOODMAN AS TRUSTEE OF THE
     DCG 2008 IRREVOCABLE WEALTH TRUST,
7
             Plaintiff,
8
     vs.
9
     SCOTT L. ZANKL and KRISTEN ZANKL,
10
             Defendants.
11   _____/
12            HEARING BEFORE THE HONORABLE
                  MAXINE CHEESMAN
13
             EXCERPT OF PROCEEDINGS
14
               Pages 1 through 20
15
     VIA ZOOM TELECONFERENCE PLATFORM
16
               October 24, 2022
17
18             State of Florida
19
20
21
22
23       Stenographically Reported By:
             PATRICIA SAUCEDO
         Florida Professional Reporter
24
25

Page 2

1       APPEARANCES:
2
    On Behalf of the Plaintiff:
3    NASON YEAGER GERSON HARRIS & FUMERO, PA
        3001 Pga Blvd
4    Suite 305
        Palm Beach Gardens, FL 33410-2896
5    BY: IVAN J. REICH, ESQUIRE
6    On Behalf of the Defendant:
        WEISS, HANDLER & CORNWELL, PA
7    One Boca Place
        Suite 205 East
8    2255 Glades Road
        Boca Raton, FL 33431
9    BY: HARRY WINDERMAN, ESQUIRE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

```
1              * * * * * * *
2        MR. WINDERMAN:  Thank you, your Honor.
3    First of all, let's deal with the simpler
4    situation here.
5        What Mr. Reich fails to point out is
6    that he really represents two plaintiffs in a
7    related case.  Both of them received payments
8    from Excell that equaled virtually the same
9    amount every year, and that's what the Mr.
10   Zankl's affidavit points out, that no sale of
11   any cars on a risk-basis would have provided
12   the exact return to both of Mr. Reich's
13   clients at 32 percent.
14       The interest in the promissory note was
15   a joke.  The profit participating agreement
16   was a joke.
17       We will be able to show through e-mails
18   and through text messages that Mr. Goodman
19   knew that the "sale of cars" was an artifice
20   to hide the usury, and this will be very
21   clear when I take his deposition tomorrow,
22   because I will show him the artifice in real
23   time that both of these entities were
24   receiving the same list of cars to justify
25   the profit participation agreement and that
```

Page 4

```
1    Mr. Goodman along with a number of other
2    people, as Mr. Reich points out, were all
3    receiving usurious interest rate payments
4    from Mr. Zankl.
5        Now, it is also clear that the reason
6    the trustee is here, is that the trustee
7    wants to bring the usury claim and will bring
8    the usury claim for the same reasons.
9        But let's go back to the easier things.
10       First of all, 510(e)(2)(e)(1) has a
11   savings clause just in case the exact days
12   aren't met or there are some failure of the
13   evidence or in our case, and I'll explain to
14   the Court in a minute, we haven't had enough
15   time to develop all of the evidence.
16       E 1 says that the Court can give an
17   properly to properly support or address the
18   facts.  All I can tell, your Honor, is that
19   there are hundreds of files, they're called
20   Deal Jackets, that show the actual sale and
21   purchase of automobiles by Excell Auto.
22       Those files have virtually been gone
23   over by forensic accountants and the
24   trustee's office and they will demonstrate
25   that Mr. Goodman in either entity never
```

Page 5

```
1    received a profits participation in any
2    particular vehicle.  Those are facts.
3        The profit participation agreement and
4    the promissory note were mere artifice.
5        Mr. Zankl's affidavit as to the summary
6    of the payments is obviously not hearsay.  We
7    attached the bank records.  We attached and
8    we'll show tomorrow when I ask Mr. Goodman if
9    he received those payments and you will see
10   from those payments that they are consistent
11   every single month, year after year.
12       This isn't something that took place for
13   six months.  This is something that went on
14   for years where Mr. Goodman and his two
15   entities, not just one, two entities,
16   received the same interest payments at
17   thirty-two and a half percent year after
18   year.
19       If it was a pure profits participation
20   agreement, then there would be particular
21   cars.  Those particular cars would be laid
22   out that there would be purchase agreements
23   that would go along with them, that Mr.
24   Goodman would have audited somewhere along
25   the line to make sure he was actually
```

2 (Pages 2 - 5)

Page 6

1  receiving a profits participation in these
2  cars.
3      He never did and that will come up in
4  deposition tomorrow too.
5      So you have the trustee who's ready to
6  move forward and will move forward on usury.
7      You have the mere artifice and we've
8  established at least the beginnings of that,
9  and yes, we apologize that we didn't bring
10  all of this sooner, but we are literally
11  talking about hundreds of thousands of pages
12  of documents that Excell turned over to the
13  trustee and that the trustee has just
14  recently allowed outside parties to be able
15  to review so that she can complete her
16  review.
17      As to the motion to amend, it's too
18  early. Even if the counterclaim gets
19  stricken, there is an opportunity, and I
20  believe we can set forth in more detail when
21  the facts are developed, that the affirmative
22  defense of usury can be established by
23  additional facts, and since Florida law
24  requires liberal amendment, that the motion
25  to amend the answer and affirmative defenses

Page 7

1  should be granted.
2      It's quite clear that discovery is not
3  over. If we had had the documents from the
4  trustee, from the bank records, which have
5  just been obtained, of course we would have
6  moved forward on discovery. But that
7  discovery will be very clear tomorrow that
8  Mr. Goodman knew that he was receiving over
9  30 percent return, which was pure interest,
10  for each of his entities in almost the exact
11  same amount and that the agreements,
12  "agreements" by the parties as Mr. Reich
13  points out, was, in fact, a mere artifice.
14      I don't know what else to say, your
15  Honor, but there couldn't be any more clearly
16  a dispute of the facts that will be
17  established either by Mr. Reich presenting to
18  the jury the vehicles that he claims his
19  client received profit participation in,
20  which he hasn't produced to this Court, or
21  Mr. Zankl will be successful because he will
22  show that none of the payments for years was
23  ever tied to a profit participation.
24      And as to the merger clause, the merger
25  clause goes to representations in the

Page 8

1  agreements that took place before.
2      The merger clause doesn't apply here.
3  The documents themselves were an artifice.
4  They had no legal meaning ever.
5      The promissory note, the profits
6  participation agreement was done with both of
7  Mr. Goodman's entities and several other
8  entities, and all of that will be hashed out
9  in the bankruptcy court.
10      I would ask the Court for more time so
11  that we can get the forensic accountant's
12  report over the deal jackets, so that we can
13  have that forensic accountant go through the
14  "deals," the vehicles that Mr. Goodman
15  alleges he received profits on -- I take that
16  back. I don't think he's alleged which
17  vehicles he received profits on, only that he
18  received profits.
19      Once that is developed and we can
20  present it to the Court, there will be more
21  than sufficient facts.
22      As a matter of fact, we think that we
23  will prevail at the state Court level or in
24  the bankruptcy court in establishing usury.
25  I don't know what else there is to say, your

Page 9

1  Honor.
2      We've provided the record of payments.
3  We've provided a summary and the bank records
4  as Mr. Zankl had them in his possession.
5      687.034 does not apply because it was an
6  artifice. It was always meant to be a more
7  than 30 percent return on people's monies not
8  tied to any profits participation, and Mr.
9  Reich's client will not be able to establish
10  one vehicle over many years where the actual
11  profits participation amount was paid to
12  them.
13      Obviously, I don't expect Mr. Goodman to
14  admit to receiving usurious interest, but I
15  think he will admit that he had no idea what
16  cars he was actually getting profits in or
17  if, in fact, those payments were profits
18  instead of pure interest.
19      I think it's quite clear, your Honor,
20  that if the Court doesn't feel that we've
21  produced enough evidence to overcome summary
22  judgment, you should allow additional time
23  under E 1 to establish those facts and I
24  would purport that that will be done when we
25  take Mr. Goodman's deposition for both

3 (Pages 6 - 9)

Page 10

1    entities tomorrow.
2        Thank you, your Honor.
3        THE COURT: Why wasn't that done
4    before?
5        MR. WINDERMAN: Your Honor, we're
6    waiting to develop the documents.
7        You're talking about hundreds and
8    hundreds of deal jackets that go to the
9    actual sales of cars that Mr. Reich's client
10   is claiming a profit in.      Until
11   we got ahold of those deal jackets and can
12   look at the actual car sales as opposed to
13   what Mr. Zankl was giving these people, and
14   he was giving them the same list. Everybody
15   was getting the same list, your Honor; they
16   all were in on it, and we've just now been
17   able to develop that level of evidence and
18   we'll be able to use that in presenting more
19   evidence to the Court to establish the usury.
20   And if we don't, the trustee will.
21       THE COURT: The issue is that today
22   we are having the motion for summary
23   judgement and you have no evidence.
24       MR. WINDERMAN: No, your Honor,
25   that's not true.

Page 11

1        THE COURT: You have nothing to
2    support the fact that you have a -- that this
3    was a usurious situation.
4        MR. WINDERMAN: That's incorrect,
5    your Honor.         We have Mr. Zankl's
6    affidavit that Mr. Goodman received --
7        THE COURT: Which was received after
8    the fact pursuant to 1.510. You're supposed
9    to get it in within 20 days.
10       MR. WINDERMAN: That's true, your
11   Honor, but E 1 makes it clear that such
12   technical problems, especially under these
13   circumstances, shouldn't be used to block a
14   usurious claim, a criminal usurious claim
15   against Mr. Goodman.
16       THE COURT: Mr. Foster, do you have
17   anything to add?
18       MR. FOSTER: Your Honor, I can
19   confirm that the trustee has been acting as a
20   traffic police and producing documents and
21   that has slowed down the process for a number
22   of parties.
23       I know that we received and have
24   requested through subpoenas because of the
25   volume of documents that are involved, so

Page 12

1    that is indeed an accurate statement.
2        On the actual substantive issues, your
3    Honor, we're not a party to these proceedings
4    and I don't think it's proper for me to
5    comment. I would confirm, again, that these
6    are issues that the trustee at least believes
7    are -- ought to be more properly adjudicated
8    in the bankruptcy court but that is not for
9    today.
10       THE COURT: All right.
11       MR. REICH: Your Honor, this is Mr.
12   Reich. May I very briefly touch on a couple
13   of points please that --
14       THE COURT: Go ahead.
15       MR. REICH: I gotta correct the record,
16   your Honor, and I think that Mr. Winderman is
17   saying things that are just not true.
18       There's another litigation between
19   myself and Mr. Winderman that involves
20   similar parties, but they're not the same
21   parties; okay?
22       There's a company called Interface.
23   It's a company called Interface and the
24   defendant in that case is called Car Lot of
25   Palm Beach.

Page 13

1        It is not the Zankls; okay? It is not
2    DCG; okay?
3        Car Lot of Palm Beach is a company, it's
4    a case in front of Judge Gilman. We've filed
5    a civil motion for summary judgment on the
6    same grounds.
7        We're not gonna get into the fact that
8    Mr. Winderman has (unintelligible) about
9    trying to set that for hearing, which the
10   plaintiff has been able to set for hearing,
11       It is not the same parties, okay? And I
12   think it's a misrepresentation to the Court
13   to say so.
14       The second thing is, the testifying that
15   Mr. Winderman just did, is not evidence.
16       If your Honor looks at the affidavit, it
17   should be stricken. The language that he put
18   in his affidavit, he says there's a list of
19   usurious payments. That's what he says.
20   That's entirely what the affidavit says;
21   okay?
22       That's not evidence; okay? That's not
23   evidence. That's self-serving conclusory
24   statements. Your Honor is to decide whether
25   it's usurious; okay?

4 (Pages 10 - 13)

Page 14

1  The other thing is, and your Honor very
2  much kind of pointed out, they have taken
3  their time -- they have not taken Mr.
4  Goodman's depo as part of the discovery. He
5  didn't do so and now they're talking -- they
6  put an affidavit saying, hey, we need to step
7  on the trustee --
8  THE COURT REPORTER: Counsel, I am
9  not --
10  MR. REICH: -- Mr. Zankl owns an active
11  business.
12  He claims to be working and filed an
13  affidavit based upon a document. He said
14  he's the records custodian. Mr. Zankl is not
15  the records custodian.
16  Mr. Zankl submits an affidavit that says
17  he's the records custodian. He knows that is
18  not true because the trustee has been the
19  records custodian since the filing itself but
20  he claims it in an affidavit submit under 1.5
21  (unintelligible ) this is an affidavit
22  submitted in bad faith, your Honor, and I
23  don't mean to belabor this but your Honor
24  should sanction Mr. Winderman and Mr. Zankl
25  for filing a false affidavit as well.

Page 15

1  Now let's talk about the issue of -- Mr.
2  Winderman made some very strong statements to
3  the Court saying that the trustee
4  determined -- that she's gonna be filing a
5  suit against DCG for the return of interest
6  payments.
7  You've spoken to Mr. Foster who spoke to
8  the trustee herself and he didn't have
9  anything like that to say. I think Mr.
10  Foster is very careful with his words.
11
12  What you heard is that no determination
13  has been made, but if there was a claim Steve
14  would know it and that's all. There's been
15  no determination to go into my client and
16  return money; okay?
17  There's been no assignment to restore
18  Mr. Winderman's clients; okay. She's doing
19  what a good trustee should do, she's
20  evaluating whether civil claims are available
21  or not; okay?
22  And I think Mr. Foster is taking the
23  appropriate posture.
24  Lastly, 687.034, your Honor. The
25  defense under that is making a claim of

Page 16

1  usury.
2  The documents are clear. The case law
3  starting with the Bailey decision of the
4  Third. The Kraft v. Mason decision of
5  Florida's Fourth DCA; okay?
6  Another reason why it's not usurious is
7  that it can be characterized as the funds to
8  be received for participating in an uncertain
9  transaction where payments depends on a
10  contingency.
11  Mr. Winderman just told you in his
12  testimony, we'll give him credit and say
13  maybe it's an argument, said that nobody knew
14  what cars there were determined.
15  In Mr. Zankl's own testimony, which is
16  in Exhibit E to this motion and repeatedly is
17  discussing e-mails and texts from his
18  client -- from Mr. Goodman on behalf of the
19  trust, specifically identifying the vehicles
20  where profits are gonna be paid. Profit was
21  paid here. Profit wasn't paid here. When's
22  that car gonna be sold. It's all part of the
23  record, your Honor, that --
24  COURT REPORTER: Counsel, I'm having a
25  hard time following you Counsel. I'm so

Page 17

1  sorry.
2  I think you're too close to the
3  microphone. Your voice is muffled and --
4  MR. REICH: So I hope, I hope your Honor
5  was able to hear me, but the record that
6  we've entered into evidence, when you look at
7  specific transactions (unintelligible) of
8  both parties extensibly; okay; talking about
9  what was paid, what was not paid, the profits
10  participation, when are we gonna get the
11  profit, things like that.
12  So Mr. Zankl through Mr. Winderman is
13  saying just look at it across the board. Any
14  profit participation that happened with Mr.
15  Goodman in this case or in his other company
16  in another case is automatically usurious and
17  interest, only disregards 687.034, which the
18  Florida Supreme Court and the state and
19  federal courts of this state and the federal
20  courts interpreting this, including this
21  circuit Court determining this, have all
22  said, he was given --
23  And this is the language I quoted, your
24  Honor, here when the loan was given, any talk
25  of recovery was pure speculation.

5 (Pages 14 - 17)

Page 18

1    Quite possibly, there will be no
2  successful recovery from the antitrust
3  litigation and Mason might have collected
4  nothing beyond the pay back of the loan.
5    This is contingent nature of any
6  interest to Mason makes the agreement
7  non-usurious; okay.
8    The Hurley case from the Fourth DCA
9  that's cited on a footnote in my brief, also
10  excluded from the usury are transactions in
11  which a portion of the investment is at
12  speculative risk.
13    And then Bailey points from the Third,
14  this principle has been statutorily validated
15  when the venture exceeds 500,000.  That's
16  687.034.
17    So your Honor, 687.034 and for all the
18  reasons I said before, Mr. Winderman has
19  changed nothing.  The motion for leave to
20  amend should be denied.  The affidavits and
21  the responses should be stricken and most
22  importantly, partial summary judgment should
23  be entered on the first affirmative defense
24  of defendants based on 687.034.
25    The evidence of Mr. Goodman's testimony,

Page 19

1  Mr. Zankl's testimony on two different
2  occasions, Mrs. Zankl's testimony on a third
3  occasion as well as all the documents that
4  are attached to the motion and the complaint
5  and the proof of claim that was filed in the
6  bankruptcy case.  That's it, your Honor.
7    THE COURT:  Okay.  I will take it up
8  under advisement and I will reset a brief
9  hearing to give you the ruling.  Thank you.
10    MR. WINDERMAN:  Thank you, your Honor.
11    (The hearing concluded at 2:19 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 20

1    CERTIFICATE OF STENOGRAPHIC REPORTER
2
3  STATE OF FLORIDA    )
4              ) SS.
5  COUNTY OF MIAMI-DADE )
6
7    I, PATRICIA SAUCEDO, Stenographic Reporter,
8  Notary Public, do hereby certify that I was
9  authorized to and did stenographically report the
10  foregoing proceedings and that the transcript is a
11  true and correct transcription of my stenotype notes
12  of the proceedings.
13
14    Dated this 28th Day of October of 2022.
15
16
17
18
19    _P. Saucedo_____
20    PATRICIA SAUCEDO
     Stenographic Reporter
21
22
23
24
25

6 (Pages 18 - 20)

[& - characterized]

| & | a | | |
|---|---|---|---|
| **&** 2:3,6 | **able** 3:17 6:14 9:9 | allowed 6:14 | **basis** 3:11 |
| **1** | 10:17,18 13:10 | amend 6:17,25 | **beach** 1:2 2:4 |
| **1** 1:14 4:10,16 | 17:5 | 18:20 | 12:25 13:3 |
| 9:23 11:11 | **accountant** 8:13 | amendment 6:24 | beginnings 6:8 |
| **1.5** 14:20 | **accountant's** | amount 3:9 7:11 | behalf 2:2,6 |
| **1.510.** 11:8 | 8:11 | 9:11 | 16:18 |
| **2** | **accountants** 4:23 | answer 6:25 | belabor 14:23 |
| **2** 4:10 | accurate 12:1 | antitrust 18:2 | believe 6:20 |
| **20** 1:14 11:9 | acting 11:19 | apologize 6:9 | believes 12:6 |
| **2008** 1:6 | active 14:10 | appearances 2:1 | beyond 18:4 |
| **2022** 1:16 20:14 | actual 4:20 9:10 | apply 8:2 9:5 | block 11:13 |
| **205** 2:7 | 10:9,12 12:2 | appropriate | blvd 2:3 |
| **2255** 2:8 | add 11:17 | 15:23 | board 17:13 |
| **24** 1:16 | additional 6:23 | argument 16:13 | boca 2:7,8 |
| **24820** 20:19 | 9:22 | artifice 3:19,22 | brief 18:9 19:8 |
| **28th** 20:14 | address 4:17 | 5:4 6:7 7:13 8:3 | briefly 12:12 |
| **2:19** 19:11 | adjudicated 12:7 | 9:6 | bring 4:7,7 6:9 |
| **3** | admit 9:14,15 | assignment 15:17 | business 14:11 |
| **30** 7:9 9:7 | advisement 19:8 | attached 5:7,7 | c |
| **3001** 2:3 | affidavit 3:10 5:5 | 19:4 | called 4:19 12:22 |
| **305** 2:4 | 11:6 13:16,18,20 | audited 5:24 | 12:23,24 |
| **32** 3:13 | 14:6,13,16,20,21 | authorized 20:9 | car 10:12 12:24 |
| **33410-2896** 2:4 | 14:25 | auto 4:21 | 13:3 16:22 |
| **33431** 2:8 | affidavits 18:20 | automatically | careful 15:10 |
| **5** | affirmative 6:21 | 17:16 | cars 3:11,19,24 |
| **500,000** 18:15 | 6:25 18:23 | automobiles 4:21 | 5:21,21 6:2 9:16 |
| **502022ca0050...** | agreement 3:15 | available 15:20 | 10:9 16:14 |
| 1:3 | 3:25 5:3,20 8:6 | b | case 1:3 3:7 4:11 |
| **510** 4:10 | 18:6 | back 4:9 8:16 | 4:13 12:24 13:4 |
| **6** | agreements 5:22 | 18:4 | 16:2 17:15,16 |
| **687.034** 9:5 15:24 | 7:11,12 8:1 | bad 14:22 | 18:8 19:6 |
| 17:17 18:17 | ahead 12:14 | bailey 16:3 18:13 | certificate 20:1 |
| **687.034.** 18:16,24 | ahold 10:11 | bank 5:7 7:4 9:3 | certify 20:8 |
| | alleged 8:16 | bankruptcy 8:9 | changed 18:19 |
| | alleges 8:15 | 8:24 12:8 19:6 | characterized |
| | allow 9:22 | based 14:13 | 16:7 |
| | | 18:24 | |

[cheesman - extensibly]

cheesman 1:12
circuit 1:1,1
  17:21
circumstances
  11:13
cited 18:9
civil 13:5 15:20
claim 4:7,8 11:14
  11:14 15:13,25
  19:5
claiming 10:10
claims 7:18 14:12
  14:20 15:20
clause 4:11 7:24
  7:25 8:2
clear 3:21 4:5 7:2
  7:7 9:19 11:11
  16:2
clearly 7:15
client 7:19 9:9
  10:9 15:15 16:18
clients 3:13 15:18
close 17:2
collected 18:3
come 6:3
comment 12:5
company 12:22
  12:23 13:3 17:15
complaint 19:4
complete 6:15
concluded 19:11
conclusory 13:23
confirm 11:19
  12:5
consistent 5:10
contingency
  16:10

contingent 18:5
cornwell 2:6
correct 12:15
  20:11
counsel 14:8
  16:24,25
counterclaim
  6:18
county 1:2,2 20:5
couple 12:12
course 7:5
court 1:1 4:14,16
  7:20 8:9,10,20,23
  8:24 9:20 10:3,19
  10:21 11:1,7,16
  12:8,10,14 13:12
  14:8 15:3 16:24
  17:18,21 19:7
courts 17:19,20
credit 16:12
criminal 11:14
custodian 14:14
  14:15,17,19

### d

dade 20:5
dated 20:14
day 20:14
days 4:11 11:9
dca 16:5 18:8
dcg 1:6 13:2 15:5
deal 3:3 4:20 8:12
  10:8,11
deals 8:14
decide 13:24
decision 16:3,4
defendant 2:6
  12:24

defendants 1:10
  18:24
defense 6:22
  15:25 18:23
defenses 6:25
demonstrate 4:24
denied 18:20
depends 16:9
depo 14:4
deposition 3:21
  6:4 9:25
detail 6:20
determination
  15:12,15
determined 15:4
  16:14
determining
  17:21
develop 4:15 10:6
  10:17
developed 6:21
  8:19
different 19:1
discovery 7:2,6,7
  14:4
discussing 16:17
dispute 7:16
disregards 17:17
document 14:13
documents 6:12
  7:3 8:3 10:6
  11:20,25 16:2
  19:3
doing 15:18

### e

e 3:17 4:10,10,16
  9:23 11:11 16:16

16:17
early 6:18
easier 4:9
east 2:7
either 4:25 7:17
entered 17:6
  18:23
entirely 13:20
entities 3:23 5:15
  5:15 7:10 8:7,8
  10:1
entity 4:25
equaled 3:8
especially 11:12
esquire 2:5,9
establish 9:9,23
  10:19
established 6:8
  6:22 7:17
establishing 8:24
evaluating 15:20
everybody 10:14
evidence 4:13,15
  9:21 10:17,19,23
  13:15,22,23 17:6
  18:25
exact 3:12 4:11
  7:10
exceeds 18:15
excell 3:8 4:21
  6:12
excerpt 1:13
excluded 18:10
exhibit 16:16
expect 9:13
explain 4:13
extensibly 17:8

[fact - level]                                                                    Page 23

### f

fact   7:13 8:22
  9:17 11:2,8 13:7
facts   4:18 5:2
  6:21,23 7:16 8:21
  9:23
fails   3:5
failure   4:12
faith   14:22
false   14:25
federal   17:19,19
feel   9:20
fifteenth   1:1
filed   13:4 14:12
  19:5
files   4:19,22
filing   14:19,25
  15:4
first   3:3 4:10
  18:23
fl   2:4,8
florida   1:2,18,24
  6:23 17:18 20:3
florida's   16:5
following   16:25
footnote   18:9
foregoing   20:10
forensic   4:23
  8:11,13
forth   6:20
forward   6:6,6 7:6
foster   11:16,18
  15:7,10,22
fourth   16:5 18:8
front   13:4
fumero   2:3
funds   16:7

### g

gardens   2:4
gerson   2:3
getting   9:16
  10:15
gilman   13:4
give   4:16 16:12
  19:9
given   17:22,24
giving   10:13,14
glades   2:8
go   4:9 5:23 8:13
  10:8 12:14 15:15
goes   7:25
gonna   13:7 15:4
  16:20,22 17:10
good   15:19
goodman   1:6
  3:18 4:1,25 5:8
  5:14,24 7:8 8:14
  9:13 11:6,15
  16:18 17:15
goodman's   8:7
  9:25 14:4 18:25
gotta   12:15
granted   7:1
grounds   13:6

### h

half   5:17
handler   2:6
happened   17:14
hard   16:25
harris   2:3
harry   2:9
hashed   8:8
hear   17:5

### heard   15:12
hearing   1:12 13:9
  13:10 19:9,11
hearsay   5:6
hey   14:6
hide   3:20
honor   3:2 4:18
  7:15 9:1,19 10:2
  10:5,15,24 11:5
  11:11,18 12:3,11
  12:16 13:16,24
  14:1,22,23 15:24
  16:23 17:4,24
  18:17 19:6,10
honorable   1:12
hope   17:4,4
hundreds   4:19
  6:11 10:7,8
hurley   18:8

### i

idea   9:15
identifying   16:19
importantly
  18:22
including   17:20
incorrect   11:4
interest   3:14 4:3
  5:16 7:9 9:14,18
  15:5 17:17 18:6
interface   12:22
  12:23
interpreting
  17:20
investment   18:11
involved   11:25
involves   12:19

irrevocable   1:6
issue   10:21 15:1
issues   12:2,6
ivan   2:5

### j

j   1:6 2:5
jackets   4:20 8:12
  10:8,11
joke   3:15,16
judge   13:4
judgement   10:23
judgment   9:22
  13:5 18:22
judicial   1:1
jury   7:18
justify   3:24

### k

kenneth   1:6
kind   14:2
knew   3:19 7:8
  16:13
know   7:14 8:25
  11:23 15:14
knows   14:17
kraft   16:4
kristen   1:9

### l

l   1:9
laid   5:21
language   13:17
  17:23
lastly   15:24
law   6:23 16:2
leave   18:19
legal   8:4
level   8:23 10:17

[liberal - promissory]

liberal   6:24
line   5:25
list   3:24 10:14,15
  13:18
literally   6:10
litigation   12:18
  18:3
loan   17:24 18:4
look   10:12 17:6
  17:13
looks   13:16
lot   12:24 13:3

**m**

mails   3:17 16:17
making   15:25
mason   16:4 18:3
  18:6
matter   8:22
maxine   1:12
mean   14:23
meaning   8:4
meant   9:6
mere   5:4 6:7 7:13
merger   7:24,24
  8:2
messages   3:18
met   4:12
miami   20:5
microphone   17:3
minute   4:14
misrepresentati...
  13:12
money   15:16
monies   9:7
month   5:11
months   5:13

motion   6:17,24
  10:22 13:5 16:16
  18:19 19:4
move   6:6,6
moved   7:6
muffled   17:3

**n**

nason   2:3
nature   18:5
need   14:6
never   4:25 6:3
non   18:7
notary   20:8
note   3:14 5:4 8:5
notes   20:11
number   4:1
  11:21

**o**

obtained   7:5
obviously   5:6
  9:13
occasion   19:3
occasions   19:2
october   1:16
  20:14
office   4:24
okay   12:21 13:1,2
  13:11,21,22,25
  15:16,18,21 16:5
  17:8 18:7 19:7
once   8:19
opportunity   6:19
opposed   10:12
ought   12:7
outside   6:14
overcome   9:21

owns   14:10

**p**

p.m.   19:11
pa   2:3,6
pages   1:14 6:11
paid   9:11 16:20
  16:21,21 17:9,9
palm   1:2 2:4
  12:25 13:3
part   14:4 16:22
partial   18:22
participating
  3:15 16:8
participation
  3:25 5:1,3,19 6:1
  7:19,23 8:6 9:8
  9:11 17:10,14
particular   5:2,20
  5:21
parties   6:14 7:12
  11:22 12:20,21
  13:11 17:8
party   12:3
patricia   1:23 20:7
  20:20
pay   18:4
payments   3:7 4:3
  5:6,9,10,16 7:22
  9:2,17 13:19 15:6
  16:9
people   4:2 10:13
people's   9:7
percent   3:13 5:17
  7:9 9:7
pga   2:3
place   2:7 5:12 8:1

plaintiff   1:7 2:2
  13:10
plaintiffs   3:6
platform   1:15
please   12:13
point   3:5
pointed   14:2
points   3:10 4:2
  7:13 12:13 18:13
police   11:20
portion   18:11
possession   9:4
possibly   18:1
posture   15:23
present   8:20
presenting   7:17
  10:18
prevail   8:23
principle   18:14
problems   11:12
proceedings   1:13
  12:3 20:10,12
process   11:21
produced   7:20
  9:21
producing   11:20
professional   1:24
profit   3:15,25 5:3
  7:19,23 10:10
  16:20,21 17:11
  17:14
profits   5:1,19 6:1
  8:5,15,17,18 9:8
  9:11,16,17 16:20
  17:9
promissory   3:14
  5:4 8:5

proof 19:5
proper 12:4
properly 4:17,17
  12:7
provided 3:11 9:2
  9:3
public 20:8
purchase 4:21
  5:22
pure 5:19 7:9
  9:18 17:25
purport 9:24
pursuant 11:8
put 13:17 14:6

**q**

quite 7:2 9:19
  18:1
quoted 17:23

**r**

rate 4:3
raton 2:8
ready 6:5
real 3:22
really 3:6
reason 4:5 16:6
reasons 4:8 18:18
received 3:7 5:1,9
  5:16 7:19 8:15,17
  8:18 11:6,7,23
  16:8
receiving 3:24
  4:3 6:1 7:8 9:14
record 9:2 12:15
  16:23 17:5
records 5:7 7:4
  9:3 14:14,15,17
  14:19

recovery 17:25
  18:2
reich 2:5 3:5 4:2
  7:12,17 12:11,12
  12:15 14:10 17:4
reich's 3:12 9:9
  10:9
related 3:7
repeatedly 16:16
report 8:12 20:9
reported 1:23
reporter 1:24
  14:8 16:24 20:1,7
  20:20
representations
  7:25
represents 3:6
requested 11:24
requires 6:24
reset 19:8
responses 18:21
restore 15:17
return 3:12 7:9
  9:7 15:5,16
review 6:15,16
right 12:10
risk 3:11 18:12
road 2:8
ruling 19:9

**s**

sale 3:10,19 4:20
sales 10:9,12
sanction 14:24
saucedo 1:23
  20:7,20
savings 4:11

saying 12:17 14:6
  15:3 17:13
says 4:16 13:18
  13:19,20 14:16
scott 1:9
second 13:14
see 5:9
self 13:23
serving 13:23
set 6:20 13:9,10
show 3:17,22
  4:20 5:8 7:22
signature 20:19
similar 12:20
simpler 3:3
single 5:11
situation 3:4 11:3
six 5:13
slowed 11:21
sold 16:22
sooner 6:10
sorry 17:1
specific 17:7
specifically 16:19
speculation 17:25
speculative 18:12
spoke 15:7
spoken 15:7
ss 20:4
starting 16:3
state 1:18 8:23
  17:18,19 20:3
statement 12:1
statements 13:24
  15:2
statutorily 18:14
stenographic
  20:1,7,20

stenographically
  1:23 20:9
stenotype 20:11
step 14:6
steve 15:13
stricken 6:19
  13:17 18:21
strong 15:2
submit 14:20
submits 14:16
submitted 14:22
subpoenas 11:24
substantive 12:2
successful 7:21
  18:2
sufficient 8:21
suit 15:5
suite 2:4,7
summary 5:5 9:3
  9:21 10:22 13:5
  18:22
support 4:17 11:2
supposed 11:8
supreme 17:18
sure 5:25

**t**

take 3:21 8:15
  9:25 19:7
taken 14:2,3
talk 15:1 17:24
talking 6:11 10:7
  14:5 17:8
technical 11:12
teleconference
  1:15
tell 4:18

testifying   13:14
testimony   16:12
  16:15 18:25 19:1
  19:2
text   3:18
texts   16:17
thank   3:2 10:2
  19:9,10
thing   13:14 14:1
things   4:9 12:17
  17:11
think   8:16,22
  9:15,19 12:4,16
  13:12 15:9,22
  17:2
third   16:4 18:13
  19:2
thirty   5:17
thousands   6:11
tied   7:23 9:8
time   3:23 4:15
  8:10 9:22 14:3
  16:25
today   10:21 12:9
told   16:11
tomorrow   3:21
  5:8 6:4 7:7 10:1
touch   12:12
traffic   11:20
transaction   16:9
transactions   17:7
  18:10
transcript   20:10
transcription
  20:11
true   10:25 11:10
  12:17 14:18
  20:11

trust   1:6 16:19
trustee   1:6 4:6,6
  6:5,13,13 7:4
  10:20 11:19 12:6
  14:7,18 15:3,8,19
trustee's   4:24
trying   13:9
turned   6:12
two   3:6 5:14,15
  5:17 19:1

**u**

uncertain   16:8
unintelligible
  13:8 14:21 17:7
use   10:18
usurious   4:3 9:14
  11:3,14,14 13:19
  13:25 16:6 17:16
  18:7
usury   3:20 4:7,8
  6:6,22 8:24 10:19
  16:1 18:10

**v**

v   16:4
validated   18:14
vehicle   5:2 9:10
vehicles   7:18 8:14
  8:17 16:19
venture   18:15
virtually   3:8 4:22
voice   17:3
volume   11:25
vs   1:8

**w**

waiting   10:6
wants   4:7

we've   6:7 9:2,3
  9:20 10:16 13:4
  17:6
wealth   1:6
weiss   2:6
went   5:13
when's   16:21
winderman   2:9
  3:2 10:5,24 11:4
  11:10 12:16,19
  13:8,15 14:24
  15:2 16:11 17:12
  18:18 19:10
winderman's
  15:18
words   15:10
working   14:12

**y**

yeager   2:3
year   3:9 5:11,11
  5:17,18
years   5:14 7:22
  9:10

**z**

zankl   1:9,9 4:4
  7:21 9:4 10:13
  14:10,14,16,24
  17:12
zankl's   3:10 5:5
  11:5 16:15 19:1,2
zankls   13:1
zoom   1:15

EXHIBIT "D"

## In the Matter Of:

## KENNETH J. GOODMAN vs SCOTT ZANKL

502022CA005035XXXXMB

## KRISTEN ZANKL

*August 08, 2022*



800.211.DEPO (3376)
*EsquireSolutions.com*

1    Q    Do you know if Teddy Sofoul would have put

2    together this document?

3    A    I don't know.

4    Q    Do you know when this document would have

5    been put together?

6    A    I don't know.

7         MR. WINDERMAN:  Why don't you ask me,

8    Ivan.  I'm happy to tell you.

9    BY MR. REICH:

10    Q    Let me go to the next part of this

11    document.  Are you familiar with Chase Bank account

12    number ending -- you see the numbers on here.  I

13    don't want to put it in the record.  It ends in

14    3181.  Do you see that, ma'am?

15    A    I see it.  Yes, I see it.

16    Q    Do you know whose account that is based

17    upon what is here?

18    A    No, I don't.  I did not handle that aspect

19    of the business.  We had hired a comptroller to

20    handle our banking, and this was not what I helped

21    out with.

22    Q    If you look at every one of these entries

23    which says the I.D. name Excell Auto Group, Inc.,

24    okay, would this be an Excell Auto Group account?

25         MR. WINDERMAN:  She has already testified

```
 1        about 1,000 times that she wasn't involved.
 2        You will get that answer from Scott tomorrow or
 3        you can get it from me off the record if you'd
 4        like.
 5             MR. REICH:  I'm just asking the witness
 6        the question.
 7             MR. WINDERMAN:  She has already said that
 8        she wasn't involved.
 9   BY MR. REICH:
10        Q    So you're not familiar with which bank
11   accounts belong to Excell -- let me ask you this
12   question.  Is this your personal bank account?
13        A    No.
14        Q    Is this Scott's personal bank account?
15        A    No.
16        Q    Is this one of your business's bank
17   accounts?
18        A    That would be my guess.
19        Q    Okay.  So you don't know.  But you do know
20   that's not either your personal bank account or
21   Scott's personal bank account?
22        A    That's correct.  Not a personal bank
23   account.
24        Q    Okay.  So none of these payments would
25   have come, these payments would have come from you
```



1    or Scott personally; correct?

2         A    That's correct.

3         Q    As referenced in this document; correct?

4         A    I personally never wrote a check to Kenny.

5         Q    Okay.  Did you ever wire any money to Ken

6    or any of the businesses or trust in his

7    involvement?

8         A    No.  I was, once again, not involved in

9    that aspect of the business.

10        Q    Okay.  The next page on Page 4 of 42 are

11   checks.  Do you see these checks?

12        A    I see the checks.  Yes, I see them.

13        Q    They're made out to various people and

14   entities.  Do you see the one that's highlighted to

15   DCG?  And I can make it larger if you like.  Do you

16   see that, ma'am?

17        A    I see it.

18        Q    Whose signature is that?

19        A    I believe that's Nidia's signature.

20        Q    And that is an Excell Auto Group check; is

21   that correct?

22        A    Excell Auto Group.  That is what it says.

23        Q    That's not a check from either you or

24   Scott; is that correct?

25        A    That's correct.  My name is Kristen.  Not



1  Excell Auto Group.

2       Q     I'm just checking with you.

3       A     Just clarifying.

4       Q     All right.  And you have no knowledge

5  about this particular transfer for 3543 on 10/12; is

6  that correct?

7       A     That's correct.

8       Q     I'm going to go back.  Do you have any

9  knowledge regarding the particular check, the

10 $37,000 check that I just mentioned to you on Page

11 4?

12      A     I have absolutely no knowledge.

13      Q     I'm going to go up here and there's a

14 November 9th transaction for $100,000, a wire

15 transfer.  Do you see that?

16      A     I do see that.

17      Q     Okay.  And do you have any knowledge

18 regarding that transaction?

19      A     Once again, I absolutely have no knowledge

20 about any of the transfers, any of the flow of money

21 with Kenny.  I was not involved in this aspect of

22 the business.

23      Q     Okay.  And then I'm going to take you

24 through, I'm going to enlarge that for you.  There

25 is a check here from Excell Auto Group.  Do you see

1    that on Page 6 for 36,965?

2        A    I see it highlighted.  Yes.  I see it.

3        Q    You see it's from Excell Auto Group?

4        A    I see that that's what it says, Excell

5    Auto Group.

6        Q    That's not a payment from you or Scott; is

7    that correct?

8        A    This says Excell Auto Group.  That's what

9    I would imagine is the bank account since that's

10   what it says.

11       Q    Do you have personal knowledge regarding

12   this transaction?

13       A    I have no personal knowledge.

14       Q    Okay.  Let's go down.  And this other

15   highlighted transaction on Page 7, do you have any

16   knowledge of that transaction?

17       A    I think you already asked me about that

18   one.  But I will tell you again.  No, I had

19   absolutely no knowledge.

20       Q    That is a different one.  This is on Page

21   6 of 22.  The one I asked you about before was on

22   Page 4 of 14.  Do you see that?

23       A    I see that.

24       Q    So regarding the latter one, you have no

25   knowledge of that one either?

1        A     I have no knowledge.

2        Q     Okay.  I'm going to go to another check

3    for 32,000 from Excell to the trust.  Do you see

4    that document on Page 8?

5        A     I see that.

6        Q     And that's from Excell Auto Group; is that

7    correct?

8        A     That's what it says at the top of the

9    check.

10       Q     That is not from either you or Scott; is

11   that correct?

12       A     That's correct.  My name is Kristen.  Not

13   Excell Auto Group.

14       Q     And you have no personal knowledge

15   regarding that transaction; is that correct?

16       A     I have no personal knowledge.

17       Q     Okay.  And the next document is a check on

18   Page 9 for 32,750 again payable to the trust by

19   Excell Auto Group.  Do you see that document?

20       A     I see that document.

21       Q     That is not a payment from either you or

22   Scott; is that correct?

23       A     That's correct.

24       Q     Who is it from?

25       A     The top of the check says Excell Auto



1   Group.

2       Q    Do you have any personal knowledge

3   regarding this transaction?

4       A    No personal knowledge.

5       Q    Okay.  Let's go on.  On 8/2, there's a

6   highlighted transaction for $34,000.  Do you have

7   any personal knowledge regarding this transaction?

8       A    I do not have any personal knowledge of

9   this transaction or any other transaction that may

10  have taken place with Mr. Goodman, Mr. Goodman's

11  trust or any other aspects of Mr. Goodman.  I have

12  absolutely no knowledge of any financial dealings

13  with Mr. Goodman.

14      Q    Like I said, so your answer to that

15  question would be you do not have any personal

16  knowledge with respect to this transaction?

17      A    No, I do not.

18      Q    Thank you.  I'm going to go to the next

19  page.  There is a check for 37,900 on Page 11 of

20  this document.  It purports to be from Excell to the

21  trust.  Do you see that, ma'am?

22      A    Yes.  I see it.

23      Q    Okay.

24           MR. WINDERMAN:  Let the record reflect,

25      Ivan, that you've highlighted these checks.



MR. REICH: These came over from your office today.

MR. WINDERMAN: And they were highlighted?

MR. REICH: Yes.

MR. WINDERMAN: No problem. Sorry.

MR. REICH: Do you want to know the time the checks came over to me?

MR. WINDERMAN: No. Go ahead. I know when they got there.

MR. REICH: Hold on. Now I'm missing a document. I can't find the document again.

BY MR. REICH:

Q Do you see the document? Let's go back to that document.

A Yes. I need to use the ladies' room.

Q Okay. That's fine.

MR. WINDERMAN: How much longer, Ivan?

MR. REICH: I'm going through this one and I'm going to the other one you sent me. Then I'll be done.

MR. WINDERMAN: Okay.

MR. REICH: The witness can go. We will stay on the record for this. I'm going to tell you exactly when they were sent over. They were sent at 11:50 a.m. from Jeanne Newman who



1   is a legal secretary, was sent to me two

2   documents.  The first one is this exhibit and

3   then the next exhibit which will be Plaintiff's

4   Exhibit 24 while the witness is away I will

5   note, but I'm not bringing it up yet.  Do you

6   see that, Harry?

7       MR. WINDERMAN:  I see it.  Did you do the

8   math on it yet, Ivan?

9       MR. REICH:  You did the math yourself,

10  Harry.  I saw it.  You did your own

11  calculations.

12      MR. WINDERMAN:  Thank you.  Did we get a

13  response back from you about whether we have

14  your consent to amend?

15      MR. REICH:  Are we off the record or on

16  the record?

17      MR. WINDERMAN:  Off the record.

18      MR. REICH:  Off the record.

19      (Discussion held off the record.)

20      MR. REICH:  All right.  Court Reporter,

21  what was the last question?

22      THE COURT REPORTER:  One second, please.

23      (A portion of the record was read by the

24       court reporter.)

25



1    BY MR. REICH:

2        Q     Did that check come from yourself or your

3    husband, ma'am?

4        A     No.

5        Q     Who is that check from?

6        A     It says Excell Auto Group.

7        Q     Do you have any personal knowledge

8    regarding that check or that transaction?

9        A     No.

10       Q     Okay.  Ma'am, do you have check-signing

11   capacity for Excell?

12       A     I do.

13       Q     Okay.  When did you first have

14   check-signing capacity?

15       A     I don't know.

16       Q     Ma'am, I'm assuming you no longer have it

17   since the company is in bankruptcy; is that correct?

18       A     That's correct.

19       Q     Okay.  But prior to then, how far back did

20   you first have check-signing capacity for Excell?

21       A     I don't know.

22       Q     Okay.  I'm going to go to the next page

23   where it says 12 of 42.  There's a highlighted

24   $32,750 transaction.  Do you see that document?

25       A     Yes.



1      Q     Do you have any personal knowledge

2   regarding that transaction or that check?

3      A     No.

4      Q     Did that money come from you or your

5   husband?

6      A     No.

7      Q     Do you have any reason to believe that

8   that money belonged to you or your husband?

9      A     It came from Excell Auto Group.

10     Q     Okay.  What about all these other checks

11  and transactions that we talked about?  Do they

12  belong to you and your husband?

13     A     From my knowledge, if the check was

14  written out of Excell Auto Group, that's where it

15  came from.

16     Q     Okay.  So you don't have any personal

17  claim to those funds; do you?

18     A     No.

19     Q     Do you know whether, do you know on any of

20  these transactions what portion of these monies were

21  for interest or otherwise?

22     A     I don't know.

23     Q     Okay.  Let's go to the next one.  We're

24  now on Page 13 of 42.  There's a check for $31,375.

25  And to make life easier for us, with respect to this



1   check, would your answer be the same as it relates

2   to every other check that I've shown you so far as

3   part of this document?

4        A    Yes.  I don't know anything about it.

5        Q    Okay.  So you have no personal knowledge

6   regarding this document?

7        A    That's correct.

8        Q    Or this transaction?

9        A    That's correct.

10       Q    That's an Excell check?

11       A    Yes.  It looks that way.

12       Q    Is that from Excell's funds?

13       A    Yes.

14       Q    It did not come from either you or your

15  husband; correct?

16       A    It came from Excell Auto Group.

17       Q    Did it come from you or your husband?

18       A    No.  It says Excell Auto Group right at

19  the top of the check.

20       Q    Did it come from you or your husband?

21       A    No.

22       Q    Thank you.  That's all I'm asking.  The

23  next document, Page 14 of 42, a $7900 check.  Do you

24  see signatures on that check?

25       A    I do.



1       Q      Who is that?

2       A      Well, with the first letter being S, it

3    could be Scott.  But, once again, I was not standing

4    over him when he was signing it.  So --

5       Q      Hold on a second.  Okay.  So is it your

6    testimony that it looks like Scott's signature to

7    you?

8       A      It could be, yes.

9       Q      Okay.  And do you have any personal

10   knowledge of this transaction or this check?

11      A      No.

12      Q      Do you have any knowledge as to how much

13   of this is interest?

14      A      I have no idea.

15      Q      And this check came from Excell Auto

16   Group?

17      A      Yes.  That's what it says.

18      Q      And the payments were made from Excell

19   funds?

20      A      That's what it looks like.

21      Q      Did any of these payments come from, did

22   this payment come from either you or your husband?

23      A      No.  It says, the check says clearly

24   Excell Auto Group.

25      Q      Did this money come from you or your



1    husband?

2          A    No.

3          Q    Thank you.  The next document, next page,

4    Page 15 of 42 is a transaction on June 18th for

5    3543.44.  Are you familiar with that transaction?

6          A    No.

7          Q    Do you have any personal knowledge

8    regarding the same?

9          A    No.  I don't know anything about it.

10         Q    Do you know the source of the funds of

11   that money?

12         A    No.  I don't know.  I did not read the

13   bank statements.  I don't know anything about that.

14         Q    Was that your money or your husband's

15   money?

16              MR. WINDERMAN:  We will be happy to

17         stipulate that none of these checks and none of

18         these payments came from Mr. or Mrs. Zankl's

19         personal account.  They all came out of Excell

20         Auto.  And as we discussed off the record, this

21         is an Excell Auto action and I've reached out

22         to the trustee to see if she'll assign it to us

23         for collection.

24              MR. REICH:  All right.  That's fine.

25         Let's go on.  On several occasions, Harry,

1       you've not said that you're not going to be

2       suing for these amounts on behalf of the Zankls

3       in this action as the counterclaim in this

4       case.  So, you know, we'll see about that.

5   BY MR. REICH:

6       Q    Let's go to the next document.  This is on

7   Page 16 for $31,500.  Do you see that check, ma'am,

8   that has been highlighted by your counsel?

9       A    I see it.

10      Q    Okay.  Do you have any knowledge regarding

11  this transaction or this check?

12      A    No.

13      Q    Do you have any knowledge whether any of

14  this amount is interest?

15      A    No.

16      Q    Okay.  And this memo came from Excell Auto

17  Group; is that correct?

18      A    That's what it says at the top of the

19  check.

20      Q    Since your counsel has already stipulated

21  and you agree with your counsel's stipulation, none

22  of this came from you or your husband; is that

23  correct?

24      A    Correct.

25      Q    With respect to the two checks on Page 17



1   of 42, one for 40,000 and one for 31,500, would your

2   answer be the same as it was to all the other

3   questions about these checks?

4        A     That's correct.  I have no knowledge and

5   nothing to do with them.

6        Q     Okay.  But I'm saying would your answer be

7   the same with respect to every other question that I

8   have asked you about all these other checks in this

9   document.

10        A     Yes, that would be correct.

11        Q     Okay.  And with respect to this

12   transaction on Page 18, which is on 0507, which is

13   highlighted for 3543.44, would your answer be the

14   same as it would be with respect to every one of

15   these other transactions?

16        A     Yes.

17        Q     And with respect to this check on Page 19

18   that has been highlighted for $36,500, would your

19   answer be the same as it was with respect to every

20   other check as it relates to this document?

21        A     Yes.

22        Q     And with respect to on Page 20, the check

23   for 35,900, would your answer be the same --

24        A     Yes.

25        Q     -- as it relates to every other check that



1   has been referenced in this document?

2       A    Yes.

3       Q    To every question that has been asked.

4   Thank you.  And with respect to -- I'll make it

5   easy.  With respect to every electronic withdrawal

6   payment on this document, would your answer be the

7   same?

8       A    Yes.

9       Q    With respect to every other check that is

10  highlighted on this document, would your answer be

11  the same?

12      A    Yes.

13      Q    Okay.  Okay.  So this document which is

14  Exhibit 23, all the payments referenced within this

15  document you have no personal knowledge of; is that

16  correct?

17      A    That's correct.

18      Q    All the payments came from Excell; is that

19  correct?

20      A    That's what it looks like.

21      Q    And none of those payments came from you

22  or Scott; is that correct?

23      A    That's correct.

24      Q    And you have no personal knowledge what

25  portion of any of these payments are interest or



1    anything else; is that correct?

2        A    That's correct.

3        Q    Okay.  I'm going to make your life a

4    little bit easier here and stop sharing this.  Hold

5    on a second.  Just give me one moment.  I'm going to

6    share a screen with you which is a payment log to

7    Goodman 2020 to IRGFMNLC4.pdf.  This is a 29-page

8    document.  Do you see that document, ma'am?

9        A    I see one page, yes.

10       Q    Okay.  And I'll scroll through it and

11   you'll see there is banking statements.  Do you see

12   that?

13       A    I see them.

14       Q    On this one-page document, have you seen

15   this document before?

16       A    No.

17       Q    Were you involved in the preparation of

18   this document?

19       A    No.

20       Q    This handwriting where it says additional

21   interest, do you know whose handwriting that is?

22       A    No.

23       Q    Is that Scott's?

24       A    I don't know.

25       Q    Okay.  I'm going to make life a little



1    easier with respect to this and this is the same

2    Account 3181 from Chase that we were referencing in

3    the last document which was Plaintiff's Exhibit 23.

4    This is now marked Plaintiff's Exhibit 24.

5             (The document was marked Plaintiff's

6             Exhibit Number 24 for identification.)

7        Q    Okay.  Would your answers be the same if I

8    showed you the various highlighted transactions as

9    they were to every one of the highlighted

10   transactions in Plaintiff's Exhibit 23?

11       A    Yes.  My answer would be the same.

12       Q    And that would be with respect to each

13   check that is highlighted, you have no have personal

14   knowledge of the check or the transaction itself;

15   correct?

16       A    That is correct.

17       Q    Or the calculation of how much of that is

18   interest and how much is not; is that correct?

19       A    That's correct.

20       Q    And that each of those funds came from

21   Excell?

22       A    That appears so, yes.

23       Q    And none of these payments came from you

24   or your husband?

25       A    No.



1      Q      And that's with respect to the checks and

2    with respect to the wires, the wire transfer

3    payments?  Would that be the same?

4      A      That would be the same.

5      Q      Do you know how many of these documents

6    relate to the profit sharing or profit participation

7    agreement that the Plaintiff had with Excell in this

8    case?

9      A      Could you repeat that question?

10     Q      Of all these transactions that have been

11   sent to me by your counsel that have been

12   highlighted Plaintiff's Exhibits 23 and 24, do you

13   know how many of these documents were related to the

14   profit participation agreement entered into that we

15   referenced earlier in this case?

16              MR. WINDERMAN:  Form.

17              THE WITNESS:  I couldn't answer that.  I

18         have no idea.  I was not involved in that

19         aspect of the business and I was not involved

20         in any type of agreement that Scott and Kenny

21         had.

22              MR. REICH:  Okay.  I have no further

23         questions for the witness, Harry.

24              MR. WINDERMAN:  Thank you.  What time are

25         we starting tomorrow?

EXHIBIT "E"

## In the Matter Of:

## KENNETH J. GOODMAN V. SCOTT ZANKL

502022CA005035XXXXMB

## SCOTT ZANKL

*August 09, 2022*



800.211.DEPO (3376)
*EsquireSolutions.com*

1   only question.  Yes or no?

2       A.    There were payments made to this -- to them

3   on or just after the 15th of each month, yes.

4       Q.    Did you make -- did Excell -- did you on

5   behalf of Excell or through employees of Excell make

6   the payments to the Trust as referenced in the

7   paragraph you just read?

8       A.    We -- I -- Excell -- I never did the

9   payments, but Excell did do the payments.  The office

10  did do the payments on or about the 15th of each month

11  to DCG.

12      Q.    As in accordance with the paragraph that you

13  just read?

14      A.    No.  Not in accordance, because there was no

15  Profit Participation.  It was interest.

16      Q.    Okay.  So, you're saying it was interest.

17  Was it calculated under this formula that's set forth

18  in this paragraph?

19      A.    I'm sorry?

20      Q.    Was the methodology for figuring out what was

21  paid to DCG according to the formula set forth in this

22  paragraph of this agreement?

23      A.    No.

24      Q.    How was it calculated?

25      A.    It was calculated based on an annual, not a



1       A.   Yes, sir.

2       Q.   Do you have an agreement to that effect in

3  writing?

4       A.   No.  We didn't have anything in writing.  I

5  wanted a side agreement with him in writing, but he

6  wouldn't do it.  And I understand why, because I'm

7  dealing with it today.  I never thought this was going

8  to happen, so I didn't protect myself like I should

9  have.

10      Q.   By the way, all these payments that went into

11 Excell from the Plaintiff in this case, the Trust, did

12 any of them go to you or your wife?

13      A.   No, sir.

14      Q.   Did any payments that went to the Trust, did

15 they go from you -- did they come from you or your

16 wife?

17      A.   The interest payments?  No?  They all came

18 from Excell.

19      Q.   They all came from Excell.  Got you.  So, all

20 payments, however they're characterized, whether the

21 characterization is profit on our side or interest on

22 your side, all payments came from Excell and not from

23 either Scott or Kristen Zankl; correct?

24      A.   Correct.  And not all the payments went to

25 DCG either, so...



SCOTT ZANKL
KENNETH J. GOODMAN V. SCOTT ZANKL

August 09, 2022
175

1       Q.   Well, I understand there's other litigation
2   and there's other cases and there's other parties, but
3   I'm just talking about with respect to --
4       A.   No.  No.  No.  No.  No.  I'm saying some
5   payments went to Kelsey.  Some went to Interface.  Some
6   went to DCG.  Some went to Kenny himself.
7       Q.   But none of them came from you or your wife?
8       A.   No.
9       Q.   And none of them -- and they all came from
10  Excell; correct?
11      A.   Yes.
12      Q.   Okay.  So, rather than going through this
13  document anymore, would you confirm anytime the
14  words -- it's your testimony anytime the word "profit"
15  is used it is a code word for "interest"?  Is that your
16  testimony?
17      A.   Yes, sir.
18      Q.   Okay.  We don't need to go through this
19  document anymore.
20      A.   Because at the time we did this deal I didn't
21  know what --
22      Q.   Sir, there's not a pending question.
23      A.   I thought I was --
24      Q.   There's not a pending question.  I'll ask you
25  a question.



1 | say the dates?

2 |     A.    '21 -- yeah.   It's January '21, through .

3 |     Q.    Right.   Okay.

4 |     A.     It goes from June '20 to March of '22 is the

5 | documents.

6 |     Q.    Right.   So, June 1, 2020, through the end of

7 | the year is Plaintiff's Exhibit 24.   And from

8 | January 7th through the end of 2021 is Exhibit 23;

9 | correct?

10 |     A.    Yes, sir.

11 |     Q.    And these documents, I'll start with 23,

12 | they're highlighted by you.   Did you do the

13 | highlighting?

14 |     A.    Yes.

15 |     Q.    Is there a reason for particular highlights

16 | on these transitions that you did?

17 |     A.    Well, go back up.

18 |          Yeah.   I started to highlight the consistency

19 | on the payments for the bulk of the interest to show

20 | the consistencies, and then I just stopped doing it

21 | after the -- I didn't finish it.   I mean, I ran out of

22 | time.

23 |     Q.    And then the backup to this is the Chase bank

24 | account 3181; is that correct?

25 |     A.    Yes.



1    Q.   And whatever was highlighted, those are the

2  payments that are reflected in the summary exhibit that

3  you were showing me?

4    A.   Yes, sir, and they match up to the dates.   If

5  you reference the dates with the summaries, they all

6  match.

7    Q.   And again, as I asked your wife yesterday,

8  all these payments were made from Excell to its

9  recipient, either DCG or Kelsey; is that correct?

10    A.   From Excell, yes.

11    Q.   Right.   Not from yourself or your wife;

12  correct?

13    A.   No.

14    Q.   And it's your testimony that every one of

15  these dollars that went from Excell to the Plaintiff in

16  this case, or to Kelsey for that matter, okay, is

17  interest?   And it's not principal?   It's not profit?

18  It's pure interest?   Is that your testimony?

19    A.   Yes, sir.   Now, there were payments that were

20  principal, but I didn't list those on the documents.   I

21  only listed on these documents the interest payments.

22    Q.   Okay.   I'm going to get it out, these two

23  documents, okay.   And again, you testified that no

24  1099-INTs were ever issued on these?   That's correct,

25  sir?



1   were never signed and delivered.  I never signed

2   anything and delivered anything to anybody, never

3   signed it in front of any witnesses.  None of the

4   recitals were ever performed.  None of the 1.85 percent

5   interest was ever paid, and it was not profit, it was

6   interest.  Other than that, those contracts are all

7   correct.

8        Q.   Thank you very much for the clarification,

9   Mr. Zankl.  I appreciate that.

10            And you said before that the Plaintiff

11  performed its obligations by providing the funding, as

12  reflected in those agreements; is that correct; sir?

13       A.   Yes.

14       Q.   And you said, is it your testimony that

15  Excell has been in default almost since the beginning?

16  Do you remember that, sir?

17       A.   I do.

18       Q.   And neither you nor yourself have made any

19  payments to the Trustee; correct?

20       A.   I'm sorry.  What?

21       Q.   Neither yourself nor your wife have made any

22  payments to the Plaintiff in this case; is that

23  correct?

24       A.   Personally, no.  No.

25       Q.   Now, you've also acknowledge in the other

