Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION


CASE NO. 22-12790-EPK

IN RE:

  EXCELL AUTO GROUP, INC.,

      Debtor.
_____/




    STATUS CONFERENCE RE:  MOTION FOR TURNOVER (207) AND
MOTION TO COMPEL TURNOVER OF ORIGINAL TITLE DOCUMENTS (277)

November 2, 2022

        The above-entitled cause came on for hearing

before the Honorable ERIK P. KIMBALL, one of the Judges of

the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN

DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm

Beach, Palm Beach, Florida on Wednesday, November 2, 2022,

commencing at or about 9:30 a.m., and the following

proceedings were had:

            Transcribed from a digital recording by:
            Anna M. Meagher, Stenographic Reporter

Page 2

```
 1                     APPEARANCES:
 2
                     Akerman LLP, by
 3               Amanda Klopp, Esquire
               On behalf of Edward Brown
 4          Email:  Amanda.klopp@akerman.com
 5
                  Via Video Conference:
 6
 7               Furr & Cohen, P.A., by
                 Alan R. Crane, Esquire
 8          On behalf of Nicole Mehdipour,
                   Chapter 7 Trustee
 9          Email:  Acrane@furrcohen.com
10
            Baron, Breslin & Sarmiento, by
11             Jerrell A. Breslin, Esquire
           On behalf of FVP Investments, LLC,
12            FVP Opportunity Fund III, LP,
                   FVP Servicing, LLC
13          Email:  Jb@richardbaronlaw.com
14
              David R. Softness, P.A., by
15              David R. Softness, Esquire
           On behalf of FVP Investments, LLC,
16            FVP Opportunity Fund III, LP,
                   FVP Servicing, LLC
17          Email:  David@softnesslaw.com
18
                Shraiberg Page, P.A., by
19             Bradley S. Shraiberg, Esquire
       On behalf of Franklin Capital Funding, LLC
20                Email:  Bss@slp.law
21
           Rappaport Osborne & Rappaport, PLLC
22             Jordan L. Rappaport, Esquire
               On behalf of Aaron Parkinson
23                and Frederick Middleton
               Email:  Jordan@rorlawfirm.com
24
                     - - - - - - -
25
```

1          THE COURT:  Next we have EXCEL Auto Group, Inc.  I

2     have a number of parties.

3          Let's start with Mr. Crane.  Good morning.

4          MR. CRANE:  Good morning, your Honor.  Alan Crane,

5     special counsel for Nicole Mehdipour, the Chapter 7 trustee.

6          THE COURT:  And Ms. Mehdipour is also here.  Good

7     morning.

8          MS. MEHDIPOUR:  Good morning, your Honor.  Nicole

9     Mehdipour, Chapter 7 trustee.

10         THE COURT:  All right.  Now, simply in the order

11    of my list, I have Brett Marks, and I don't see Mr. Marks.

12         Mr. Silver?  No.

13         Mr. Zeichman?  No.

14         Let's see, Mr. Softness, good morning.  I see you.

15         MR. SOFTNESS:  Good morning, Judge.  David

16    Softness, S-O-F-T-N-E-S-S.  I represent the various FVP

17    parties.  With us on the Zoom is Mr. Jerry Breslin, my

18    co-counsel.

19         THE COURT:  Very good.  Mr. Shraiberg, good

20    morning.

21         MR. SHRAIBERG:  Good morning, your Honor.  Brad

22    Shraiberg on behalf of Wing Lake Capital Partners, formerly

23    known as Franklin Capital.

24         THE COURT:  And Ms. Klopp.

25         MS. KLOPP:  Good morning, your Honor.  It's good

1    to be here in person.  I'm here representing Mr. Edward

2    Brown.

3              THE COURT:  Very good.

4              Is there anybody I failed to call who would like

5    to appear in EXCEL Auto.

6              Mr. Rappaport, good morning.

7              MR. RAPPAPORT:  Yes, your Honor.  Jordan Rappaport

8    here, appearing on behalf of Aaron Parkinson and Frederick

9    Middleton.

10             THE COURT:  Alrighty.  So we have a status

11   conference on the turnover on the Enzo Ferrari bike, and I

12   also have the motion to compel filed by Mr. Brown.

13             Mr. Crane, do you have a view on which one I

14   should take first?

15             MR. CRANE:  They are two separate.  Might as well

16   just take the Ferrari bike, since I know there's a

17   settlement in that.

18             THE COURT:  Great.  Go ahead.

19             MR. CRANE:  Again, Alan Crane on behalf of the

20   Chapter 7 trustee.

21             We have agreed that we'll do a 9019 motion to

22   solidify it, but there's going to be an auction.  The estate

23   and the client -- or Mr. Rappaport's clients will split the

24   net proceeds of the sale of the motorcycle after an auction.

25   The trustee will conduct the auction.  The net proceeds is

Page 5

1    the gross proceeds less the cost of the auction, retrieval,

2    and storage.  The trustee will seek approval of the costs of

3    the auction, retrieval, and storage.  Mr. Rappaport's client

4    is allowed to bid, but not credit bid on the motorcycle.

5              THE COURT:  Very good.

6              MR. CRANE:  And -- yeah.

7              THE COURT:  Mr. Rappaport, anything you wish to

8    add?

9              MR. RAPPAPORT:  No, that is correct.

10             Mr. Crane and I have worked hard to resolve this,

11   and I'm happy that we were able to reach a mutually

12   agreeable resolution.

13             THE COURT:  Excellent.

14             So what I'll do is, I'll put the status conference

15   on a future motion calendar, just so it's out there

16   someplace.

17             Somewhere near the end of January, Ms. Leonard.

18             Obviously, if the matter is -- if the settlement

19   is approved, which it seems quite likely, then in the order

20   you should just say that that hearing is canceled,

21   Mr. Crane.

22             MR. CRANE:  Thank you.

23             THE COURT:  Ms. Leonard, you can chose any date in

24   late September -- late January.

25             All right.  The other matter I have is the motion

1    to compel.  Would you like to address this?

2            MS. KLOPP:  Thank you, your Honor, yes.

3            And I just would like to kind of step back and

4    give you some background, because you haven't heard much

5    from me in this case yet or from our client, Mr. Brown.  So

6    I'd just like to start by giving you some context.

7            Mr. Brown is a business entrepreneur, and he was

8    the longstanding CEO of a well-known tequila brand called

9    Patron, which you may have enjoyed before.  He is a fan --

10           THE COURT:  Do I have to disqualify if I've ever

11   had Patron?  I think, it's been a very, very long time.

12           So, anyway, go ahead.

13           MS. KLOPP:  He is a fan of high performance

14   vehicles, and he was a customer of the Karma of Palm Beach

15   dealership and the EXCEL dealership, as well as a lender to

16   EXCEL.  Like other creditors, Mr. Brown was duped by Scott

17   and Christian Zankl and by EXCEL.  Mr. Brown is the single

18   largest creditor of the EXCEL estate.  Mr. Brown lent and

19   lost in excess of $12 million, and for context this is

20   double what any other creditor had filed a claim for,

21   almost.  And to this date he also is continuing to incur

22   legal fees and costs relating to vehicles that he purchased,

23   has remained in continuous possession of and has insured,

24   and which are now being disputed by various people, similar

25   to other disputes that you've heard in this case so far by

1    customers due to the fraud of the Zankles, EXCEL, and the

2    Karma dealership.

3              So as the largest victim of this fraud, Mr. Brown

4    has decided to file this motion for turnover of title

5    documentation to the Ferrari Roma that he purchased from

6    Karma.  The relief being sought, for clarity, is just

7    specifically the turnover of title documents from the EXCEL

8    trustee.

9              The EXCEL estate has never asserted an ownership

10   interest if the Ferrari Roma itself or to the title

11   documents of the Ferrari Roma, notably neither has the

12   debtor in the related case.  Auto Wholesale of Boca has

13   never asserted an interest in the Ferrari Roma or in the

14   title documents to the Ferrari Roma.  It is not listed on

15   their -- on EXCEL's schedules or on -- I'll call it AWB,

16   Auto Wholesale of Boca.  It's not listed on AWB's schedules,

17   either the vehicle or the title documents.  It's also not

18   listed in the adversary complaint that's currently pending

19   in the AWB case.  The Ferrari Roma is not the subject of any

20   complaint right now, either in state court or in federal

21   court, that we're aware of, and the EXCEL trustee is simply

22   in possession of these title documents that --

23             THE COURT:  Which are an original title, which

24   whose name shows on it?  A prior dealer, correct?

25             MS. KLOPP:  Correct.  We believe that, based on

1    what we can tell, the trustee holds title documents that

2    were in the name of a prior dealer, title documents that

3    show the assignment of title from the original dealer to

4    Karma of Palm Beach, a non-debtor, and the assignment of

5    title from Karma of Palm Beach to Mr. Brown, so --

6              THE COURT:  The kind of application that one would

7    normally fill out or have filled out by the dealer when you

8    acquire a vehicle from a dealer.

9              MS. KLOPP:  Right, exactly.

10             THE COURT:  Which is then submitted to cause the

11   title to be reissued in the name of the purchaser --

12             MS. KLOPP:  Right, exactly, so --

13             THE COURT:  -- which is an application form.

14             MS. KLOPP:  Exactly, there's an application form.

15             THE COURT:  So those are the three things that --

16             MS. KLOPP:  So those are the three --

17             THE COURT:  -- that you believe are -- hold on --

18             MS. KLOPP:  -- things, yeah.

19             THE COURT:  -- that are in possession of the

20   debtor in this case.

21             MS. KLOPP:  The trustee, correct.

22             THE COURT:  And this motion seeks turnover of

23   those three documents.

24             MS. KLOPP:  That's correct.

25             And just to briefly, you know, address objections.

1   There were no objections filed to this motion by the EXCEL

2   trustee, which presumably shows that they acknowledge this

3   is not property of the debtor at all.  It's not property of

4   EXCEL.  There were no objections filed by the other debtor,

5   AWB, presumably showing they also acknowledge -- and I note

6   they recently filed a plan of reorganization, which I don't

7   know if your Honor has had a chance to review yet, but there

8   is a schedule, Exhibit A, to that plan that shows all the

9   property that they claim.  The Ferrari Roma is not on that

10  schedule.  The Ferrari Roma title documents are not on that

11  schedule.  So AWB does not claim any interest in these

12  documents.  Karma of Palm Beach, who their counsel was

13  served with this motion, Karma has not filed an objection to

14  this motion.

15          The only objection was filed by another creditor

16  of Karma, FVP.  And the objection has the issue that it is

17  simply procedurally defective, because FVP has no standing

18  to object to another creditor's motion to obtain non-debtor

19  property.  So the objection complains of paperwork issues,

20  but your Honor does not have to regard the objection as

21  anything, because FVP doesn't have standing to claim that

22  the EXCEL trustee should hold these documents as an escrow

23  agent for a dispute between two non-debtors.

24          If FVP has a claim to this vehicle, which by the

25  way they haven't asserted in the adversary proceeding at

1   all, likely because Mr. Brown paid for the vehicle and it

2   was actually delivered to him and it was insured by him, all

3   circumstances indicating a purchase of the vehicle, FVP is

4   free to pursue those claims in the appropriate venue.  But

5   we submit that this is not the appropriate venue for a

6   creditor to object to a motion for turnover of non-debtor

7   property that the estate has claimed no interest in.

8                   THE COURT:  Thank you.

9                   Would you like to comment -- actually I don't care

10   if you'd like to.  I'd like to hear your comment, Mr. Crane.

11   Oh, you're hand is up, you want to comment.

12                   Go ahead.

13                   Are you -- you're on mute.

14                   MR. CRANE:  Yeah, again, Alan Crane on behalf of

15   the Chapter 7 trustee.

16                   Very simply we don't have the original documents.

17   I double checked with --

18                   THE COURT:  Okay.  So I want to be really clear.

19   So there's three things that have been identified in the

20   motion which Ms. Klopp just confirmed, a certificate of

21   title, which was allegedly in possession of the debtor,

22   which does not show as the title owner either her client or

23   your client; a form of assignment, which would show

24   assignment to Karma, not -- one of the Karma entities, I

25   don't remember, Karma of Palm Beach I think, not the debtor,

Page 11

```
 1   and then an application filled out so that if it was

 2   processed would result in transfer of the title to

 3   Ms. Klopp's client.

 4            You're saying the debtor does not have --

 5   Ms. Mehdipour does not have control of any of those three

 6   documents, they do not -- you've not seen them, no one has

 7   seen them, they are not there?

 8            MR. CRANE:  At least as -- I double checked as to

 9   the title this morning.  I did not check as to the other

10   documents.

11            The trustee's position is to the extent that we

12   have them, we will do whatever the Court orders us to do

13   with them.  We're not asserting any interest in it whatever,

14   but --

15            THE COURT:  You don't think they are there?

16            MR. CRANE:  But I don't think they are there.

17            But I --

18            THE COURT:  Interesting.  Let me --

19            MR. CRANE:  -- haven't double checked --

20            THE COURT:  -- hold on.  Let me just go --

21   Ms. Klopp, why do you believe that the debtor has them?

22            MS. KLOPP:  We believe that they have them because

23   we requested the files from the trustee's office concerning

24   this vehicle --

25            THE COURT:  And you got copies.
```

1          MS. KLOPP:  -- and we got copies, so I assume that

2    there were -- that originals do exist.  I understand the

3    dealer folders themselves are located at the trustee's

4    financial advisor office of B. Riley, who the trustee has

5    retained in this case.

6          THE COURT:  Okay.  So, Mr. Crane, she actually got

7    copies of them from some -- from who?

8          MR. CRANE:  We --

9          THE COURT:  Well, hold on.  I just want --  this

10   should be fairly simple.

11         MS. KLOPP:  From --

12         THE COURT:  Who sent them?

13         MS. KLOPP:  From B. Riley, who is kind of the

14   custodian of these hundred banker's boxes.

15         THE COURT:  Okay.  So they should be there some

16   place, Mr. Crane.

17         But, more importantly, you said the estate has no

18   interest in those three documents.

19         MR. CRANE:  Yes.  However, I want to make sure

20   it's clear, we have copies of lots of documents that we

21   don't have the originals for --

22         THE COURT:  Ah, so --

23         MR. CRANE:  -- so --

24         THE COURT:  -- that might be copies of copies,

25   Ms. Klopp.

Page 13

1          MS. KLOPP:  They may be copies of copies, but to

2    the extent -- then your Honor can order that to the extent

3    that the trustee has originals, that they can be -- they

4    would be delivered to us.

5          We believe that they were originals at some point

6    in time.  Of course, we were not the first person to go

7    through any of these boxes.  So I hope the originals are

8    there, and your Honor can certainly make a provision that to

9    the extent the trustee doesn't have the originals, there's

10   really, you know, nothing that can be done specifically

11   about that.

12         THE COURT:  Well, turnover the documents if --

13         MS. KLOPP:  Turnover what they have.

14         THE COURT:  -- they have them.

15         MS. KLOPP:  Correct.

16         THE COURT:  All right.  So, Mr. Softness,

17   everybody always says that your clients don't have standing.

18   It seems to be a trend.

19         So I read your response.  It would make a

20   wonderful novel, and so tell me, I have a situation where I

21   have an estate representative that holds, maybe, some pieces

22   of paper that the estate claims no interest whatsoever, and

23   I have somebody who wants them turned over, and you are

24   objecting.

25         And, by the way, what do you want me to do if I

Page 14

1    don't grant the motion?

2              MR. SOFTNESS:  Judge, if I might I'm going to

3    defer to Mr. Breslin --

4              THE COURT:  Okay.  Mr. Breslin.

5              MR. SOFTNESS:  -- to make the argument.

6              MR. BRESLIN:  Thank you, your Honor.

7              So, yes we did object, and I wanted to clarify the

8    record.  The Ed Brown automobiles, they were listed in the

9    Karma entity's motion to amend in the adversary case.  And I

10   have a final partial joint complaint that should have been

11   filed yesterday, but I'm waiting for some exhibits, and will

12   be filed in the hour, that names all four of the Brown

13   cars --

14             THE COURT:  Okay.  But all I care about --

15             MR. BRESLIN:  -- in the adversary case --

16             THE COURT:  -- is this Ferrari --

17             MR. BRESLIN:  -- complaint.

18             THE COURT:  All I care about at this very moment

19   is the Ferrari Roma where the last four digits are 3662.

20             MR. BRESLIN:  Right, that is --

21             THE COURT:  So the trustee --

22             MR. BRESLIN:  -- listed --

23             THE COURT:  Wait.  Hold on.  Let me interrupt you.

24             The estate claims -- let me just make sure.

25             Mr. Crane, does the estate claim any interest

Page 15

1    whatsoever in the Ferrari Roma?  It's a 2021 vehicle.  It's

2    a beautiful car by the way, if you've ever seen one, the VIN

3    ending is 3662.

4              Nobody my age can drive one, because I'm bald and

5    that's just -- it looks terrible.  Okay.  Mr. Crane is out.

6    Mr. Softness is out.  Mr. Shraiberg could probably drive

7    one.

8              All right.  So but does the estate claim any

9    interest in that Ferrari Roma?

10             MR. CRANE:  No.

11             THE COURT:  Great.

12             All right.  So why is it going to be added to a

13   complaint in this court, Mr. Breslin, when I have zero

14   subject matter jurisdiction over the vehicle or anything

15   related to it?

16             MR. BRESLIN:  Because it is the -- it is FVP

17   collateral, because it is owned by Karma, it remains

18   owned --

19             THE COURT:  Excellent --

20             MR. BRESLIN:  -- by Karma.

21             THE COURT:  -- good.  Sue Karma.

22             All right.  What else do you want to say about

23   this motion?

24             MR. BRESLIN:  Judge, we would -- are you saying,

25   Judge, that we can't make a claim in the adversary complaint

Page 16

1    to any vehicles that aren't held by the debtor?

2              THE COURT:  Well, if the debtor disclaims any

3    interest in a piece of property, we don't own it, we have no

4    interest in it, we have no claim related to it, it is not

5    property of the estate, are you going to tell me it is

6    property of the estate in spite of Ms. Mehdipour's position

7    that it is not?

8              MR. BRESLIN:  No, no --

9              THE COURT:  That would be very entertaining.

10             MR. BRESLIN:  -- Judge.

11             What I'm suggesting, your Honor, is that you have

12   jurisdiction to adjudicate the claim in the adversary

13   proceeding that we will be filing within the hour that --

14             THE COURT:  Okay.  Tell me --

15             MR. BRESLIN:  -- applies -- that applies --

16             THE COURT:  -- why I would have --

17             MR. BRESLIN:  -- to the Karma entity.

18             THE COURT:  -- jurisdiction, Mr. Breslin, over a

19   dispute involving a non-estate asset between two parties who

20   are not the debtor.  That is, by the way, not a

21   subordination agreement that is effected under Section 510

22   when there are claims against the debtor.  That's the only

23   time I have jurisdiction over interparty disputes.  And, of

24   course, to determine priority, two claims against property

25   of the estate.

1              Here it's not property of the estate, unless

2     you're going to tell me that I have to rule that it is in

3     spite of the fact that the estate takes the position that

4     it's not.  I think you get to fight this someplace else.

5              And by the way, today's motion is not about

6     ownership of the vehicle.  It's about access to documents.

7              Mr. Crane, you have your hand raised.

8              MR. CRANE:  Yeah, I wasn't sure if Mr. Breslin was

9     confusing the Auto Wholesale bankruptcy and the adversaries

10    that are going on there, because I'm not aware of any

11    adversaries that are in the EXCEL Auto case --

12             MR. BRESLIN:  No, no.

13             MR. CRANE:  -- unless he planned on filing the

14    adversary in the EXCEL Auto case.

15             MR. BRESLIN:  No, no, no, I was referring to the

16    adversary in the AWB case, and part of our objection was, we

17    were asking your Honor to transfer this motion to the

18    adversary and have an evidentiary hearing there.  But --

19             THE COURT:  Okay.  So I'd have an evidentiary --

20             MR. BRESLIN:  -- in the any event, Judge, we'll

21    take --

22             THE COURT:  -- hearing -- wait, hold on.

23             Transfer this, first of all, I don't even know

24    what that means, number one.  Number two, the adversary is

25    pending in another bankruptcy.  I do happen to be the judge

Page 18

1   in that case.  So all the sudden -- and nobody from that

2   case has come here, meaning the estate, has come here to

3   say, "Hold on a moment, we own those documents."  They are

4   not saying that.  They're not here --

5           MR. BRESLIN:  Understand.

6           THE COURT:  -- they've got notice.  They have no

7   interest in the documents.  This is not a dispute that

8   should be here in this court.

9           The motion will be granted.  It should say that

10  the trustee will turnover these documents if she has them,

11  and she can make one reasonable search for them.  And if she

12  happens to find them by accident in the future because they

13  are in Box 4,722 and nobody has looked there yet, I'm not

14  requiring the trustee to scour everything that she has.  If

15  they find them, they need to turn them over.  They

16  apparently have looked.

17          Mr. Crane, maybe you can figure out -- you do have

18  a duty to figure out who delivered the copies, because

19  that's probably where the documents are, and if you've got

20  the originals, you need to turn them over.

21          MR. CRANE:  Correct.

22          MS. KLOPP:  Thank you, your Honor.

23          THE COURT:  Anything else on that?

24          UNIDENTIFIED SPEAKER:  Judge --

25          THE COURT:  And if there's a dispute --

1   Mr. Softness, I'm done with this motion.

2            If there's a dispute on that car or those

3   documents --

4            UNIDENTIFIED SPEAKER:  You said, "Anything else?"

5            THE COURT:  -- it gets to happen someplace else,

6   and I don't have to make that decision.

7            MR. SOFTNESS:  Could I just speak to that briefly,

8   Judge.

9            THE COURT:  Sure, very briefly.

10           MR. SOFTNESS:  I'm not disagreeing with your

11   ruling.  I just want to limit your ruling to what you ruled.

12   You said, "Turn it over if you have it," without prejudice

13   to whatever else may then happen.

14           THE COURT:  What does that mean?

15           MR. SOFTNESS:  They're just turning over a

16   document without their own name on it.  They're not

17   assigning anything.  It's just, if they have a document,

18   they'll give it to them --

19           THE COURT:  Exactly --

20           MR. SOFTNESS:  -- now they have a document --

21           THE COURT:  -- that's what I said.

22           MR. SOFTNESS:  -- whatever happens next --

23           THE COURT:  I did not order anybody to sign

24   anything.

25           MR. SOFTNESS:  We see -- (inaudible.)

Page 20

1                    THE COURT:  I'm not sure based on the factual

2      allegations how I could, because it doesn't seem to me the

3      debtor actually ever got title.

4                    UNIDENTIFIED SPEAKER:  Correct.

5                    THE COURT:  And Ms. Mehdipour is not claiming that

6      the debtor ever got title.

7                    UNIDENTIFIED SPEAKER:  I agree.

8                    THE COURT:  So they're handing them over as they

9      are.

10                   Okay.  Very good.  This case is always very

11     exciting.  Thank you all.

12                   (Whereupon, the hearing was concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 21

1                            CERTIFICATION

2

3

4    STATE OF FLORIDA            :

5    COUNTY OF PALM BEACH        :

6

7            I, Anna M. Meagher, Stenographic Reporter, do

8    hereby certify that the foregoing proceedings were

9    transcribed by me from a digital recording held on the date

10   and from the place as stated in the caption hereto on page 1

11   to the best of my ability.

12           WITNESS my hand this 7th day of November 2022.

13

14

15          _____

                      Anna M. Meagher
16                 Stenographic Reporter

17

18

19

20

21

22

23

24

25