UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.,   Case No. 22-12790-EPK
                           Chapter 7
　　　Debtor.
_____/

# MICHAEL HALPERIN'S RESPONSE IN OPPOSITION TO MOTION TO COMPEL TURNOVER OF ORIGINAL TITLE FOR 2021 FERRARI (VIN #ZFF95NLA7M0265077)(ECF NO. 314)

Michael Halperin ("Halperin"), by and through undersigned counsel, hereby files his opposition to the Motion to Compel Turnover of Original Title for 2021 Ferrari (VIN #ZFF95NLA7M0265077) (the "Motion to Compel"). ECF No. 314. This response is being filed because the Court does not have jurisdiction to adjudicate the present dispute (the matter involves a tri-party dispute between Halperin, Karma of Palm Beach, Inc. ("Karma") and Edward Brown ("Brown"), all non-debtors) and to correct factual misstatements made by Brown in his response to the Motion to Compel. ECF No. 324.

　　　1.　　Halperin (not Brown) is the owner of the black 2021 Ferrari SF90 Stradale with vehicle identification number ZFF95NLA7M0265077) (the "Vehicle") that is the subject of the present dispute.

　　　2.　　On or about September 10, 2021, Halperin purchased the Vehicle from Ivis Autogroup, LLC in New Jersey for $865,000.

{5009 / 001 /00540336}

3.     Thereafter, Scott Zankl ("Zankl"), one of the owners of Karma (and also an owner of the debtor), obtained possession, but not title to the Vehicle.

4.     Brown, an owner and insider of the debtor herein, regularly removed vehicles from the showroom floor, driving them on dealer issued license plates, and using them for his own personal pleasure.

5.     Apparently, as Halperin later learned, Brown followed this same practice by wrongfully removing the Vehicle for his own personal use, despite the fact that at all times it was the property of Halperin.

6.     In fact, Halperin was issued valid title by the Florida Department of Motor Vehicles.

7.     On August 24, 2022, Halperin filed a state court replevin action against Brown, a copy of which is attached hereto as **EXHIBIT A**.  Despite Halperin's requests to Brown to return the Vehicle, Brown has wrongfully detained the Vehicle since March 2022.

8.     Brown has been driving the Vehicle <u>on dealer plates</u>.[1]

9.     Why does Brown continue to drive the Vehicle on dealer issued plates? Because despite his many improper attempts to register the Vehicle, only Halperin holds a valid and legally transferrable title to it.

10.    As intriguing as this story may be, at bottom this is a dispute between multiple non-debtor parties.  As the present dispute does not involve property of the

---

[1] Curiously, Brown now operates the Vehicle using a California dealer issued license plate.

{5009 / 001 /00540336}

bankruptcy estate and will not have an effect on the administration of this case, the Court does not have subject matter jurisdiction to adjudicate it. *See In re Lemco Gypsum Inc., 910 F.2d 784, 787* (11th Cir. 1990) (defining the limits of subject matter jurisdiction); *see also In re Buxton,* No. 08-25571-EPK, 2011 WL 4501159, at *10 (Bankr. S.D. Fla. Apr. 8, 2011) (declining to exercise subject matter jurisdiction where the "outcome of the parties' dispute will have no impact on the bankrupts' estates or the allocation of assets among creditors.")

11. As for the documents Karma is seeking to compel turnover of herein, given the allegations made in Halperin's replevin complaint and the Court's general knowledge of the facts of this case, it would be dangerous to arm Karma with these documents, as it is unknown what Karma may attempt to do with them. Karma may, for instance, attempt to "sell" or otherwise alienate the Vehicle.

12. Even if the Court were to determine that it has *in rem* jurisdiction over the documents themselves, in the possession of the Trustee, Halperin would respectfully request that, pursuant to 28 U.S.C. § 1334(c)(2), the Court abstain from adjudicating the Motion to Compel given the pending state court replevin action, where each of the parties who have an arguable interest to the documents in question are already joined as parties to the action. *See In re Buxton*, 2011 WL 4501159, at *11 (abstaining from adjudicating dispute where there was already a state court action pending, addressing essentially identical claims).

**WHEREFORE,** Michael Halperin respectfully requests that the Court enter an order denying the Motion to Compel, or alternatively, abstaining from

{5009 / 001 /00540336}

adjudicating the Motion to Compel, and to further grant such other and further relief as the Court deems just and proper.

                                Respectfully submitted,

                                **LANDAU LAW, PLLC**
                                Counsel for Michael Halperin
                                3010 N. Military, Suite 318
                                Boca Raton, Florida 33431
                                Telephone: 561-443-0802
                                Email: phil@landau.law

 By: /s/ *Philip J. Landau*
            Philip J. Landau, Esq.
            Florida Bar. No. 0504017

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on the 28th day of November 2022.

                                /s/ *Philip J. Landau*
                                Philip J. Landau

# EXHIBIT A

{5009 / 001 /00540336}

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MICHAEL HALPERIN,

    Plaintiff,

v.                                            Case No. _____

EDWARD BROWN,

    Defendant.

_____/

## COMPLAINT

Plaintiff Michael Halperin ("Halperin"), by and through his undersigned counsel, hereby files this Complaint against Edward Brown ("Brown"), and states:

## NATURE OF CASE

This action for replevin arises from Brown's improperly possessing Halperin's luxury automobile for which Halperin paid cash and which is titled to Halperin.

## PARTIES, JURISDICTION AND VENUE

1. This is an action for replevin of an automobile worth in excess of $30,000.00, exclusive of costs, interest and attorney's fees.

2. Halperin is a resident of Palm Beach County, Florida. He is *sui juris*.

3. Brown is a resident of Palm Beach County, Florida. He is *sui juris*.

4. The Court has jurisdiction over the subject matter of this controversy based on the claims and relief sought by Halperin, pursuant to Section 78.03 of the Florida Statutes.

5. Venue is proper in Palm Beach County, Florida pursuant to Section 78.032 of the Florida Statutes, because the property to be replevied is located in Palm Beach County, Brown

resides in Palm Beach County, the cause of action accrued in Palm Beach County, and Halperin has been damaged in Palm Beach County.

## FACTUAL ALLEGATIONS

6. On or about September 10, 2021, Halperin purchased a 2021 Ferrari SF90 Stradale with vehicle identification number ZFF95NLA7M0265077 (the "Vehicle") from Ivis Auto Group, LLC d/b/a CarPoint Auto Group ("Ivis"), for $865,000.00.

7. Halperin paid for the Vehicle by paying Ivis through two wires, in the total amount of $865,000.00.

8. Ivis, which is located in New Jersey, contracted with a third party to deliver the Vehicle to Halperin in Palm Beach County Florida, at Mr. Halperin's expense.

9. The Vehicle was delivered to Mr. Halperin on September 13, 2021.

10. Halperin asked Ivis to transfer title to the Vehicle through a structured transaction with Karma of Palm Beach, Inc. ("Karma"). In that transaction, Halperin transferred to Karma a 2019 Ferrari (with a value of $459,000.00) and Bank of America financing of $454,572.00.

11. Halperin insured the Vehicle, as of September 10, 2021, the date on which Halperin paid for it.

12. Karma delayed the process of titling the Vehicle to Halperin, and that process never was completed by Karma.

13. Notwithstanding, Halperin since has obtained clear title to the Vehicle from the Florida Department of Motor Vehicles.

14. In or around November 2021, Halperin permitted Scott Zankl ("Zankl"), one of the owners of Karma, to maintain the Vehicle at Karma. Halperin had purchased and sold other

vehicles through Zankl, and Zankl had informed Halperin that displaying the high luxury status Vehicle would benefit Karma.

15.     Halperin and Zankl also agreed that Halperin would consider an offer to purchase the Vehicle for $1.25 million, and if Halperin agreed to a sale, he would compensate the Karma salesman who arranged for the sale.

16.     At all times, Zankl and Karma acknowledged that the Vehicle was owned exclusively by Halperin and any sale of the Vehicle would be subject to Halperin's sole discretion.

17.     The Vehicle never was sold.  However, in March 2022, Halperin became aware that the Vehicle no longer was maintained on Karma's lot.

18.     Halperin did not authorize a transfer of the Vehicle from Karma's lot or a sale of the Vehicle.

19.     When Halperin discovered that the Vehicle no longer was in the possession of Karma, he confronted Zankl, who dispatched an employee to make a deposit of $865,000.00 into Halperin's Bank of America account.  On or about March 28, 2022, Karma's $865,000.00 check payable to the order of Halperin bounced.

20.     The Vehicle is in the possession of Defendant Brown.

21.     At all times relevant to the matters at issue in this lawsuit, Karma shared a showroom and common management with Excell Auto Group, Inc., a Florida corporation ("Excell").

22.     Brown loaned Excell at least $10 million pursuant to a February 12, 2021 Agreement.

23.     Brown also made a $3 million loan to Excell prior to February 12, 2021.

24. Also on February 12, 2021, Kristin Zankl, then owner of all of the stock in Excell, assigned 49% of her shares to Brown.

25. Pursuant to the documentation executed by Excell and Brown in February 2021, Brown was provided with periodic copies of Excell's balance sheets, statements of profit and loss and other financial data.

26. As part of the Excell loan documentation, Brown received an Unlimited Guaranty, pursuant to which:

(a) Brown received a security interest in Excell's property;

(b) either before or after any default by Excell, Brown was permitted to deal with the security (*i.e.*, Excell's property) as he deemed fit; and

(c) Brown would have the rights of a secured lender to sell or otherwise dispose of Excell's property.

27. Brown was well aware at all times material to the allegations in this lawsuit, that Excell was in severe financial trouble.

28. Brown also was well aware at all times material to the allegations in this lawsuit that Karma was established by Scott Zankl because Excell was having difficulty operating its business.

29. Brown also was well aware at all times material to this lawsuit that Excell and Karma shared a common location in Palm Beach County, Florida.

30. At no time was the Vehicle owned by Excell.

31. At no time did Excell have title, possession, custody or control of the Vehicle.

32. Additionally, Brown enjoyed many privileges of being an owner of Excell. For one thing, Brown's practice was to drive either Excell's vehicles or Karma's vehicles with dealer plates, without paying for the vehicles or insuring them or having title or registration transferred to himself.

33. Brown availed himself of this practice as an owner of Excell, and, upon information and belief, he did so without regard as to whether the vehicles that he selected to drive were the property of Excell, or of Karma, or of someone else.

34. Upon information and belief, on the isolated occasions when Brown paid for vehicles that he took from the Excell / Karma lot, he also did not pay sales tax, allegedly because he was an owner of the seller.

35. According to information maintained by Karma, Brown took the Vehicle to drive <u>on dealer plates</u> (and not as part of any transfer to Brown) no later than April 1, 2022.

36. The Vehicle never has been titled or registered to Brown.

37. Upon information and belief, as of the date of this Complaint, Brown continues to operate the Vehicle on dealer plates despite the fact that the Vehicle is titled to Halperin.

38. Halperin has requested repeatedly that Brown tender evidence of having paid cash for the Vehicle to Karma.  Brown has failed to do so.

39. Upon information and belief, Brown did not pay money to Karma (or to Excell) for the Vehicle.

40. Notwithstanding, Brown purports to have purchased the Vehicle from Karma.

41. Despite this claim, Brown never has had title to the Vehicle, and accordingly could not have insured it.

42. Zankl has testified under oath that the Vehicle belongs to Halperin.

43. According to Zankl, Brown "took Mr. Halperin's car to drive."

44. Pursuant to a board posted at the Karma/Excell Palm Beach County location, Brown was still driving the Vehicle on dealer plates in spring 2022, months after he purports to have "purchased" it.

45. Even had Brown engaged in a purchase transaction for the Vehicle with Karma, Brown would not have been a typical buyer in an ordinary course business transaction with Karma.

46. Brown, through his numerous and extensive transactions and dealings with luxury automobile entities owned and/or managed by Scott and/or Kristin Zankl, and by virtue of his loan transactions with Excell and the assignment of Excell shares to him, had experience and extensive dealings in buying and selling luxury vehicles and in entering loan transactions with respect to luxury vehicle dealers.

47. Brown, through his numerous and extensive transactions and dealings with luxury automobile entities owned and/or managed by Scott and/or Kristin Zankl, and by virtue of his loan transactions with Excell and the assignment of Excell shares to him was not a buyer of vehicles in the ordinary course of business.

48. The business relations between Brown, on the one hand, and Karma and Zankl, on the other hand, was not a standard arm's-length relationship between a purchaser and a seller.

49. Upon information and belief, at all times when Brown has driven the Vehicle:

    (a) Brown has driven it with dealer plates;

    (b) Brown has not insured the Vehicle; and

    (c) the Vehicle has been insured under the dealer's policy of insurance.

50. Moreover, any purported purchase of the Vehicle by Brown was not made in good faith.

    (a) Upon information and belief, Brown did not make any good faith inquiry into the title or registration of the Vehicle, or if he did, he would have known that Karma lacked the ability to transfer the Vehicle to him;

    (b) Brown at all relevant times has been a sophisticated actor in the luxury vehicle business, had a close working relationship with Zankl, and, upon information and belief, failed to ask Zankl whether Karma had the ability to transfer the Vehicle to him;

(c) Brown was aware that he is unable to title the vehicle in his own name, or to register it in his own name or to insure the Vehicle.

51. Any purported purchase of the Vehicle by Brown was not made in the ordinary course of business.

(a) Brown was not an arm's length purchaser from Karma.

(b) Brown never took title to the Vehicle;

(c) Brown did not register the Vehicle in his own name;

(d) Brown drove the vehicle on dealer plates;

(e) Brown did not pay cash for the Vehicle;

(f) Upon information and belief, Brown did not pay sales tax for the Vehicle.

52. Any actual transaction between Brown and Karma contained irregularities that were not ordinary course transactions in the business, and did not comport with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices.

(a) among other things, upon information and belief, Brown did not pay taxes for the Vehicle; and

(b) any such transaction was not handled in every material way as a sale out of inventory to any other retail customer.

53. In addition, as a result of his extensive dealings in the luxury automobile industry, including his loan transactions with Excell and his ownership, through assignment of an interest, in Excell, Brown had knowledge or skill peculiar to the practices involved in transactions concerning luxury automobiles of the type that form the basis of the allegations in this lawsuit.

54. Brown therefore was a merchant in the business of luxury automobile transactions.

55. Brown also was not a buyer in the ordinary course of business because he did not and could not meet the heightened standard of good faith required of a merchant, because any

transaction in which he engaged with respect to the Vehicle did not comport with reasonable commercial standards of fair dealing in the trade.

56. Brown did not observe reasonable commercial standards in dealing with the Vehicle.

    (a) Brown never took title to the Vehicle;

    (b) Brown did not register the Vehicle in his own name;

    (c) Brown drove the vehicle on dealer plates;

    (d) Brown did not pay cash for the Vehicle;

    (e) Upon information and belief, Brown did not pay sales tax for the Vehicle;

    (f) Brown at all relevant times was aware of the troubled financial circumstances of Excell and the business practices of Scott and Kristin Zankl and still continued to transact business with Karma and to drive its vehicles and Excell's vehicles on dealer plates.

57. Regardless of any rights that Brown may have with respect to Excell, he lacks any rights as to the Vehicle, which never was the property of Excell.

58. The Vehicle is devalued when it is driven.

59. All conditions precedent to the maintenance of this action have been satisfied or otherwise have been waived.

60. Halperin has retained the undersigned law firm to represent it in this action and is obligated to pay the firm a reasonable fee for its services.

## COUNT I
## REPLEVIN

61. Halperin incorporates paragraphs 1-60 as if fully set forth herein.

62. This is an action to replevy the Vehicle.

63. Halperin is the owner of the Vehicle.

64. The Vehicle is titled to Halperin.

65. Halperin is entitled to possession of the Vehicle.

66. Halperin gave temporary possession of the Vehicle to Karma, which transferred the Vehicle to Brown.

67. Halperin has since demanded return of the Vehicle from Brown, who has acknowledged possessing it but who has refused to return it.

68. The value of the Vehicle is at least $865,000.00.

69. To Halperin's best knowledge, information, and belief, the Vehicle is located at Brown's residence: 430 Via Del Rosa, Jupiter, Florida 33477.

70. Brown has wrongfully detained the Vehicle and has not returned it.

71. The Vehicle has not been taken for a tax, assessment, or fine pursuant to law.

72. The Vehicle has not been taken under an execution or attachment against the property of Halperin.

WHEREFORE, Halperin hereby demands judgment in its favor and against Brown, including (i) issuance of a writ of Replevin for return of the Vehicle; (ii) issuance of a prejudgment Writ of Replevin for return of the Vehicle; (iii) damages for wrongful detention of the Vehicle and for its devaluation; (iv) his costs; and (v) such other relief that the Court deems just, proper, and equitable.

Dated: August 24, 2022

          DBR LAW, P.A.

          By */s/ Daniel B. Rosenthal*

          1900 Glades Road, Suite 270
          Boca Raton, Florida 33431
          (561) 853-0991
          Fla. Bar No. 711934
          daniel@dbrlawfirm.com
          rose@dbrlawfirm.com

          *Counsel for Michael Halperin*