1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2

3

4

  IN RE:                    CASE NO. 22-12790-EPK
5
  EXCELL AUTO GROUP, INC.,
6
                 Debtor.
7 _____/

8                   ECF #235, 244

9                 September 28, 2022

10          The above-entitled cause came on for hearing

11 before the Honorable Erik P. Kimball, one of the Judges in

12 the UNITED STATES BANKRUPTCY COURT, in and for the

13 SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Dr.,

14 West Palm Beach, Palm Beach County, Florida, on

15 September 28, 2022, commencing at or about 9:30 a.m., and

16 the following proceedings were had.

17

18

19

20

21

22

23

24          Transcribed from a digital recording by:
                Cheryl L. Jenkins, RPR, RMR
25

Page 2

1

APPEARANCES:

2

3                    FURR & COHEN, by
                ALAN CRANE, Esquire (via Zoom)
4              JASON RIGOLI, Esquire (via Zoom)
              On behalf of Nicole Testa Mehdipour

5

6                  STEARNS WEAVER, by
               ERIC SILVER, Esquire (via Zoom)
7          On behalf of Luxury Leasing Company

8

                  MELAND BUDWICK, by
9          JAMES C. MOON, Esquire (via Zoom)
On behalf of Chapford Specialty Finance, LLC and Chapford
10              Credit Opportunities Fund, LP

11

                    ALSO PRESENT
12

13          DO - Electronic Court Reporting Operator

14

                    - - - - - - -
15

16

17

18

19

20

21

22

23

24

25

```
 1                    THE COURT:  Let's see, next we have Excell
 2   Auto Group.  I have a number of parties.  Let's start with
 3   Mr. Crane.
 4                    Good morning, Mr. Crane, if you're there.
 5                    MR. CRANE:  Good morning.  Alan Crane on
 6   behalf of the trustee, as special counsel.
 7                    THE COURT:  Very good.  Let's see Mr. Silver
 8   good morning.
 9                    MR. SILVER:  Good morning, your Honor.  Eric
10   Silver, S-i-l-v-e-r, of Stearns Weaver, on behalf of
11   Luxury Leasing Company.
12                    THE COURT:  Mr. Rigoli.
13                    MR. RIGOLI:  Good morning, your Honor.
14   Jason Rigoli on behalf of the trustee.
15                    THE COURT:  Let's see, I have several --
16   Mr. Moon, good morning.
17                    MR. MOON:  Good morning, your Honor.
18   James Moon on behalf of Chapford Specialty Finance.
19                    THE COURT:  All right.  Now I have
20   Brett Marks on my list.  I do not see Mr. Marks, unless
21   you are here by phone.
22                    No, is there anybody else who would like to
23   make an appearance in Excell Auto Group?
24                    (No verbal response.)
25                    THE COURT:  I did have a couple other
```

Page 4

1    parties, but apparently they have not dialed in.

2                    All right.  Let's see, I have the motion for

3    entry of an order modifying the automatic stay.  Who would

4    like to present that?

5                    MR. SILVER:  Thank you, Judge.  That is

6    Luxury Lease Company's motion to modify the automatic

7    stay.

8                    We were last before you a couple of weeks

9    ago on this motion.  I'm sure you remember it.  We took

10   up --

11                   THE COURT:  I do.

12                   MR. SILVER:  -- probably too much of your

13   time on it.

14                   THE COURT:  No, not at all, and this is one

15   of those matters that the longer I think about it the more

16   complicated it is.

17                   MR. SILVER:  Yeah, unfortunately I tend to

18   agree.  We thought it was a simple issue.  This is a

19   direct claim that Luxury Lease is seeking to bring in the

20   New Jersey litigation against Chapford as a result of a

21   ruling by the New Jersey court, that Chapford had greater

22   rights to a vehicle that the trustee is not asserting any

23   rights in --

24                   THE COURT:  Right.

25                   MR. SILVER:  --vis-a-vis Luxury Lease

1   Company, and so Luxury Lease would like to assert that

2   Karma PB is the alter ego of the debtor for purposes of

3   making Karma PB liable for Chapford's debt to avoid the

4   inequitable result of a bona fide purchaser purchasing a

5   million dollar Lamborghini for a million dollars and not

6   getting the car.

7               THE COURT:  Right.  This is actually

8   fascinating.  You know, I consider myself sort of a

9   student of Article 9, and I had never paid attention to

10  that provision, and I actually found some commentators

11  that say that the limitation to the immediate prior seller

12  is an accident, but I haven't found a case that says that.

13              So you don't need to argue that, it's not my

14  issue, it's to be argued on appeal elsewhere, but I just

15  thought that was fascinating, I can't figure out why it's

16  written that way.

17              MR. SILVER:  It had our state court counsel

18  scratching their head, and I'm sure Jim Moon's counsel in

19  state court is prepared to argue the opposite, right?  But

20  that is not an issue for this Court.

21              This is simply an alternative argument that

22  LLC, Luxury Leasing, would like to make up in New Jersey

23  to avoid what could be potentially an inequitable result.

24              When we were last before your Honor,

25  your Honor had preliminarily indicated that due to the

1    potential impact of the preclusive finding up in

2    New Jersey, that you were not inclined to grant relief

3    from the automatic stay to allow Luxury Leasing to make

4    that argument in state court in New Jersey, and then you

5    entered an order asking for us to explain New Jersey law,

6    and specifically, you know, the preclusive impact under

7    New Jersey law of any finding by the New Jersey court.

8            Both Luxury Leasing and the trustee have

9    submitted supplemental briefs.  I'm sure your Honor has

10   read them, so I don't want to reiterate them.  Our

11   position is that New Jersey law tracks federal common law,

12   even though it is not identical, that the privity standard

13   under New Jersey law is substantially similar in that

14   under New Jersey law there is no court in the entire

15   country that would find that the trustee is in privity

16   with either Chapford or Luxury Leasing, to the extent that

17   it would be -- the trustee or this bankruptcy estate would

18   be bound by any finding up in the New Jersey action by and

19   between these two nondebtor entities.

20           We've cited case law.  I'm happy to answer

21   any questions that you have about, you know, the

22   New Jersey law, but our position remains the same, that

23   there is no privity here, there is no preclusive impact

24   that this Court or this estate needs to be concerned about

25   in terms of impacting the trustee, or the bankruptcy

1    estate with what's going on in the New Jersey action.

2                    THE COURT:  Now, when you read your motion,

3    and look at the wherefore clause, it uses two defined

4    phrases, you're seeking relief from stay to present that

5    theory, and I think I, I think I criticized you for

6    calling it a remedy, but maybe it really is a remedy.

7                    Anyway, you know, if I'm wrong, I'm wrong,

8    but let me go back to what you're requesting.  You request

9    relief to present that theory, both on appeal, and

10   potentially on remand.

11                   How is it to be presented on appeal?

12   Obviously, I'm not -- I'm not privy to the entire record,

13   but was the theory presented at trial?

14                   MR. SILVER:  It was not, your Honor.  There

15   was no trial in this matter.  There was a --

16                   THE COURT:  Right.

17                   MR. SILVER:  There was a non-evidentiary

18   hearing before the New Jersey court on Chapford's replevy

19   relief.  The Court granted that relief in favor of

20   Chapford, and then what follows is sort of --

21                   THE COURT:  Right, right, right.

22                   MR. SILVER:  -- the procedural morass, okay?

23   And at the time that Luxury Lease filed this motion for

24   relief from automatic stay, there was an interlocutory

25   appeal pending in the New Jersey appellate division.  That

Page 8

1    was subsequently voluntarily dismissed because the
2    New Jersey appellate court had denied a motion for a stay
3    of the replevy order, and so Chapford now is in possession
4    of the vehicle, and given the fact that Chapford was in
5    possession of the vehicle, and the New Jersey appellate
6    division had already denied the stay, which is a
7    preliminary injunctive standard --
8            THE COURT:  Right.
9            MR. SILVER:  -- they, Luxury Leasing decided
10   to dismiss the appeal, to be able to go then argue this
11   alter ego argument at the trial court, and if you note in
12   the order denying the stay that was filed by the trustee,
13   it specifically said that it's too early in this action to
14   make a ruling on the alter ego argument.  So it
15   specifically left open consideration as to whether there
16   was sufficient evidence to make an alter ego determination
17   as the trial court level.
18           THE COURT:  Right, and obviously the merits
19   of the action have not been presented in any regard at
20   this point.  It was really just preliminary equitable
21   relief that Chapford was looking for, which it obtained,
22   and so really at this point the focus would be on the
23   presentation of the primary issues in the trial court,
24   yes?
25           MR. SILVER:  That's correct, your Honor.

1            THE COURT:  Okay.  All right, and your

2    presentation is -- it's sort of interesting, your

3    presentation, and what was filed, because most of the

4    citations that you would probably point to as helpful, are

5    federal court citations, they're not New Jersey citations.

6            I mean, we have, I think, a district court

7    saying what the New Jersey Supreme Court would likely do,

8    which means it hasn't done it yet, and then we have the

9    3rd Circuit construing New Jersey law, which seems to

10   focus on the privity standard, but -- don't they use the

11   word "usually"?  You highlight a different phrase than

12   that quote, but I focused on the word "usually", which

13   means there are exceptions, which I found troublesome.

14           I have an even more troublesome question for

15   you, and this is why this case has caused me to go into a

16   block hole, I left the hearing and thought, oh, I have

17   made a terrible mistake, and then I thought of 10 reasons

18   why both it was the right ruling and it was the wrong

19   ruling on both sides.

20               Now, if I were to have a matter in which the

21   trustee pursued somebody, and there was a defensive use of

22   collateral estoppel, which contrary to your footnote in

23   the brief you filed, is, in fact, a potential thing, and

24   then under federal law, I would look to New Jersey to

25   determine what the collateral estoppel standard was, now I

Page 10

```
 1   have an even more vexing problem with you.  Let's say the
 2   trustee pursues an action in Arizona, under Arizona state
 3   law, what is the rule in Arizona with regard to choice of
 4   law for the judgment entered in New Jersey?  I have no
 5   idea.  There might be 50 different rules.  Well, there
 6   might be two rules, then there is -- maybe three.
 7                 So, I mean, wouldn't you need --
 8                 MR. SILVER:  Judge --
 9                 THE COURT:  Wouldn't you need to tell me
10   that any potential claim the trustee has, that they would
11   follow New Jersey law rather than Arizona law, whatever
12   that is.
13                 MR. SILVER:  Judge, let me say this, as I
14   mentioned at the last hearing, you know that I primarily
15   represent trustees, and that's the bulk of my work, and I
16   obviously appear before you representing a trustee.
17                 If this Court is making a determination that
18   under federal law, right, looking to New Jersey law, that
19   you are going to find that the New Jersey action is not
20   preclusive and not binding on this trustee, I don't know
21   why the trustee is suing anywhere but this Court, okay?  I
22   don't know --
23                 THE COURT:  Well --
24                 MR. SILVER:  -- why the trustee wouldn't
25   choose a different forum to pursue the action that it's
```

Page 11

1   potentially going to bring.

2                   THE COURT:  Well, you know there is

3   strategic -- yes, you can serve anybody anywhere, but you

4   can't necessarily easily depose them, and there is a whole

5   bunch of problems.

6                   MR. SILVER:  Yes.

7                   THE COURT:  I mean, but let's not even go

8   there, let's not even go there.  I realize --

9                   MR. SILVER:  Actually it's not before this

10  Court.

11                  THE COURT:  Well, it sort of is.

12                  MR. SILVER:  The trustee has --

13                  THE COURT:  I mean, you're telling me the

14  trustee can never be bound by the ruling in New Jersey,

15  and so I'm trying to figure out whether that's the case.

16                  MR. SILVER:  I'm saying under federal common

17  law, Judge, and under the New Jersey law, which you've

18  asked us to brief and, Judge, just to answer your previous

19  comment about the predominance of federal law,

20  interpreting New Jersey law in our brief, we do also cite

21  to two New Jersey Supreme Court cases, the Zeiger case, as

22  well as the Allen v V&A Brothers, Inc.  case, which both

23  track the Collins analysis.  Collins was the 3rd Circuit

24  court case that we did cite multiple times because,

25  frankly, it had the most expansive discussion of

1    New Jersey law.

2                    The fact that it's a federal court that's

3    interpreting New Jersey law is a function of this

4    non-party issue preclusion issue in the first instance,

5    because you always have other courts that are interpreting

6    the court where the order was entered, the law of the

7    court where --

8                    THE COURT:  Right, but we're always -- our

9    assignment is to guess what the state supreme court would

10   do --

11                   MR. SILVER:  Right.

12                   THE COURT:  -- which is just terrible, and

13   so the 3rd Circuit has come up with a very educated guess,

14   and then -- you know, I mean, we all live in Florida, so

15   the Florida Supreme Court just ignores the federal courts,

16   and has no problem telling us that we're wrong about our

17   guesses.  So -- and rightfully so, it's state law.

18                   All right.  So, you're saying, but really

19   what it boils down to is that you don't see how the

20   trustee could possibly be bound, and they shouldn't bother

21   to try to intervene.

22                   MR. SILVER:  Well, Judge, that's on the

23   trustee if they want to intervene or not, but we certainly

24   think that under New Jersey law, and federal common law,

25   that they would not be bound under both the Supreme Court

1    standard and the New Jersey --

2              THE COURT:  Well, the Supreme Court standard

3    doesn't apply.  We spent a lot of time on that in the last

4    hearing, and then I left, and quickly realized that that

5    was the wrong question.  So -- and went and I studied

6    that.  It was a very nice little dead end that I went

7    down, and then realized that it has nothing to do with the

8    question, it's a New Jersey law issue.

9              I thought I'd give you a chance --

10             MR. SILVER:  Yes, Judge, but under --

11             THE COURT:  -- to tell me what the

12   New Jersey law is.

13             MR. SILVER:  Right, and under the privity

14   standard that's been annunciated by the New Jersey Supreme

15   Court in both Zeiger and in Allen v V&A Bros, Inc., both

16   of which are cited in our brief, Judge, there is just no

17   -- there is no way that the trustee would be bound under

18   New Jersey law.

19             We understand that they don't want to agree

20   or consent to relief from the automatic stay to allow us

21   to proceed in the New Jersey action, because they're

22   concerned about the preclusive impact, and their consent

23   on any court's interpretation of New Jersey law.

24             But, Judge, if you look at the case law, and

25   you look at the Supreme Court standard on privity, you

Page 14

1    look at the 3rd Circuit's interpretation of the New Jersey

2    Supreme Court standard on privity, it tracks the federal

3    common law, tracks the privity standards, and so, Judge,

4    there is just no privity here, and we don't believe that

5    the potential impact on a potential cause of action that

6    the trustee may bring at some point in the future, that it

7    has not brought today, is enough to outweigh the burden to

8    LLC in terms of pursuing the relief that it is seeking to

9    pursued up in New Jersey, to prevent what it perceives to

10   be an inequitable result as a result of this gap in

11   Article 9.

12            THE COURT:  Right.  I'm not going to comment

13   on Article 9.

14            Who would like to respond?

15            MR. CRANE:  This is Alan Crane.  I'll

16   respond on behalf of the trustee.

17            I disagree with Mr. Silver on many of the

18   issues.  One is I don't believe that New Jersey law is

19   anywhere similar to federal law.

20            Two, and I want to bring this -- I want to,

21   because it was cited in -- he cited the Maxis Energy

22   (phonetic) case out of Delaware, which is interpreting

23   New Jersey law, and one of the facts in that case is what

24   I want to bring to your attention at the moment, which is

25   in that case the actual underlying litigation was decided

Page 15

1    long before there was a bankruptcy, and before there was a

2    trustee appointed.  So in that case the trustee did not

3    have notice of the prior litigation.  In this case the

4    trustee does have notice of the current litigation,

5    actually future litigation.

6            So if you're going to grant stay relief,

7    then we are absolutely on notice, we are going to be

8    dragged in for discovery purposes, we're going to be

9    dragged in for, possibly as a party, as a necessary party,

10    and we're going to have to be dealing with it in this

11    case, and potential others, and it's going to not be -- it

12    may be your Honor that decides the next issue, whether --

13    how collateral estoppel in New Jersey applies, but it's

14    not going to be the New Jersey court that's going to

15    decide it.  It's going to be whatever the subsequent court

16    is wherever that litigation may be.

17            And privity under New Jersey law is

18    intentionally broad.  Collateral estoppel is intentionally

19    broad.  We also cited Zeiger.  The concept of privity, as

20    well as its perimeters, are necessarily imprecise.

21    Privity states no reason for including or excluding one

22    from the estoppel of a judgment.  It is merely a word used

23    to say that the relationship between one, who is a party

24    on the record, and another one who is close enough to

25    include the other -- the other within the res judicata.

Page 16

1    There is the Moore case, a New Jersey case, in which they

2    laid out several factors that would seemingly apply to

3    determine privity.

4                    The claim of the party, the nonparty is

5    based on the same transaction or occurrence.  Yes, the

6    interest of both claimants are similar, and no adverse

7    interests exists, that's going to have to be one that's

8    argued in a separate, in a subsequent case.

9                    The non-party had notice of the earlier

10   action.  Yes, we have notice.

11                   And the nonparty did or had an opportunity

12   to participate or intervene in the earlier case.  Yes, we

13   do, and that's what's causing the problem.  We have

14   knowledge, this is a current or future case that we have

15   knowledge of, that we'd be forced to participate in, or

16   otherwise we risk a subsequent court saying under this

17   vague New Jersey standard, purposely vague, that we're

18   bound by it.

19                   And when we left this Court at the last

20   hearing, my understanding was that if the Court found, or

21   was concerned, or is still concerned that the trustee

22   could somehow be dragged into the New Jersey court and

23   bound by its rulings, that you would deny stay relief, and

24   if they want -- if Luxury Lease wants to bring the action,

25   to bring it in the Bankruptcy Court, and that's where that

1   case would belong.

2                   THE COURT:  Well, that's an interesting

3   problem, and that is one of the things that -- one of the

4   different paths I went down on the day after the last

5   hearing, and since then, as a matter of fact, how would I

6   have jurisdiction over the dispute between a person who is

7   attempting to get possession of a vehicle that the trustee

8   claims no interest in, and a creditor that does -- is a

9   creditor of this estate, but is also, the sole purpose of

10  the action is to get possession of a vehicle that the

11  estate has no interest in?  Do I have even subject matter

12  jurisdiction over any component of that?

13                  I guess this is a -- let me flip that, the

14  other side of the coin.  How could Mr. Silver's client

15  come here, I'm trying to figure out how they will come

16  here, I said that the last time, I said if this should be

17  pursued, it should be pursued here, but it's not a claim,

18  it's a theory, or maybe he's right, a remedy.  In this

19  case it's a step on the way to a judgment, and I'm trying

20  to figure out how they'd pursue it.

21                  Let me state this a third way, if I deny the

22  motion for relief from stay, does that mean there is no

23  way for them to pursue this claim?

24                  MR. CRANE:  Mr. Moon is raising his hand, so

25  maybe he --

1              THE COURT:  Mr. Moon.

2              (No verbal response.)

3              THE COURT:  Mr. Moon.

4              MR. MOON:  Sorry, your Honor.  I just wanted

5    to step in here because, you know, the arguments here are

6    interesting, and certainly intellectual.

7              THE COURT:  Well, are you going to answer

8    that question?

9              MR. MOON:  Well, your Honor, I think that

10   they would have to bring the action here, if they can

11   bring it at all, and to the extent that they bring it in

12   New Jersey, remember, your Honor, you know, what's going

13   on in New Jersey right now, there is nothing on remand,

14   there is nothing that's occurred yet.

15             What they're talking about, what they could

16   do, is amend their complaint, which by the way the only

17   count left is for tortious interference, put that aside

18   for a minute, but they want to amend their complaint.

19             So, number one, it's not ripe yet.  If they

20   want to raise an issue and try to get permission from the

21   New Jersey court to raise it, that might be one thing.

22             THE COURT:  Well, they're asking for relief

23   from stay to do that.

24             MR. MOON:  Well, your Honor --

25             THE COURT:  The whole point of the motion is

1  we'd like to go --

2                MR. MOON:  Let me get there, your Honor.

3                THE COURT:  I know you're going to --

4                MR. MOON:  Let me get there.

5                THE COURT:  -- tell me they've already

6  violated the stay, assuming it applies.

7                MR. MOON:  No.

8                THE COURT:  Okay.

9                MR. MOON:  Actually I'm not, your Honor.

10 Yes, I think they did that, but that's not really

11 relevant, and really not my fight.

12                I bring it up because I don't like the way

13 that they are trying to rope the Bankruptcy Court and this

14 estate into a two-party dispute.  The issue, your Honor,

15 is, they're asking you for permission to lift stay to make

16 an argument, but that's not really what they're actually

17 going to have to do.  Stay has to be lifted for all

18 purposes, as it would be for any other state court case,

19 your Honor, because once they argue that they should raise

20 this defense, the evidentiary record must be made.  The

21 estate is going to be pulled into this, and what you're

22 really talking about is deferring to a New Jersey court to

23 make a ruling on the alter ego status of a debtor before

24 your Honor, that's exactly what's going to happen.

25                And, your Honor, you'll note that -- or you

Page 20

1   may not know that our state court counsel from New Jersey,

2   who is in listen mode only, so I told him I wouldn't throw

3   him to the wolves, but he's listening but, you know,

4   another point to make, your Honor, is there was a

5   statement made that this is a direct claim.  Your Honor

6   there has been no finding that this is a direct claim,

7   that this particular transactional use of alter ego is

8   even appropriate.

9           Alter ego is something that I think does

10  belong to the estate.  So from our perspective,

11  your Honor, it seems to me that you have two choices.

12  One, you deny the stay, and allow them to argue whatever

13  they want to up there, because until -- unless and until

14  the trustee is actually pulled into the New Jersey action

15  via discovery, being pulled in as a necessary party, you

16  really don't have an issue that is really before you

17  that's going to cause any consternation, because they were

18  going to make that argument anyway.

19          The second thing you can do is lift the

20  stay, your Honor, but then ring-fence it such that you're

21  making clear that, number one, that any determination by

22  this Court that the stay is lifted to make the argument,

23  is not a determination by this Court that that argument is

24  even appropriate in New Jersey because, think of it,

25  your Honor, otherwise you're suggesting to the New Jersey

1    court that if you allow them to make this argument, that

2    it's proper for them to make it.  That has not been

3    determined by the New Jersey court at all.  We're not even

4    to that gatekeeping function yet.

5                    So the reason why I said all along that the

6    Court should defer from allowing itself to get dragged in

7    here, is they're going to make whatever argument they want

8    to make, unless and until this trustee gets pulled in

9    because of discovery, then I would think you would have

10   another issue, and then it may be a point where it has to

11   get removed into the adversary to have that determination

12   made before this Court as to whether it's alter ego.

13                   And, finally, your Honor, I would point out

14   that they've made twice now in documents a statement that

15   we have no interest in this estate.  We are a creditor.

16   We are actually scheduled.  To the extent that we do not

17   get full recovery, or we lose the vehicle, we absolutely

18   have a claim against this estate.

19                   That's pretty much it, your Honor.  I'm

20   sorry I didn't smile as much -- it's so hard to argue with

21   Mr. Silver, because he's always a congenial person but,

22   you know, the issues here are kind of important.

23                   And, you know, I want to say one more thing,

24   your Honor, don't listen to me or Mr. Silver with respect

25   to the procedural posture in New Jersey, because, frankly,

Page 22

1    I heard some stuff that he said that's not quite accurate,

2    but I'm not New Jersey counsel either, so just take with a

3    grain of salt what you're hearing the procedural status in

4    New Jersey is.

5              THE COURT:  All right.  I thought I had an

6    idea of what the procedural status was.  I'm hoping that

7    not every single matter associated with this question is

8    up in the air.

9              Mr. Silver, you had your hand raised, and

10   now it disappeared.

11             MR. SILVER:  Yes, Judge, you know, I assumed

12   that you saw it, and so I didn't want to keep it up

13   there --

14             THE COURT:  Okay.

15             MR. SILVER:  -- for the entirety of

16   Mr. Moon's argument, and Mr. Crane's argument.

17             But just a suggestion that Mr. Crane or the

18   trustee will be dragged up into New Jersey via discovery,

19   the discovery is already concluded with respect to the

20   alter ego.

21             And, Judge, if I can elaborate upon that, it

22   was Chapford that used this bankruptcy estate to take 2004

23   discovery to establish its replevin claim up in

24   New Jersey, and in that, in that discovery, Judge, is

25   where LLC, Luxury Leasing, learned of the facts giving

1    rise to its direct claim under 11th Circuit standard,

2    that's the Icarus standard that we cited for your Honor in

3    our original motion for stay relief, that gave rise to

4    that claim, Judge, and that's all laid out, all of those

5    facts, Judge, giving rise to that direct relief that

6    Luxury Leasing has, is laid out in Paragraph 15 of the

7    original motion for stay relief, and there are facts,

8    other than one fact, Judge, which is that there is common

9    ownership of Karma PB and Excell, all of the facts are

10   directly related to the Chapford/Excell transaction, and

11   the Karma PB/LLC transaction, and so those facts have

12   already been discovered.

13               There was an agreement between Mr. Moon and

14   I at the outset of the 2004 discovery that he conducted in

15   this bankruptcy case, that we would be able to use that

16   discovery in the New Jersey action, and so I don't believe

17   that there is any further discovery, or any kind of impact

18   or, you know, burden on this estate in allowing Luxury

19   Lease to go up to New Jersey to bring this argument.

20               The trustee certainly does not have to

21   intervene if it doesn't want to.  The New Jersey court

22   does not have jurisdiction over it.  That's not the relief

23   that we're seeking in our motion for stay relief.

24               And if your Honor wants to put guardrails on

25   the stay relief, that's certainly fine.  Luxury Lease also

1   has no objection to the suggestion that Mr. Moon had

2   about, you know, the order clarifying that you're not

3   opining on the proprietary -- or propriety of any argument

4   before the New Jersey court.  I just wanted to make those

5   rebuttal arguments, your Honor.

6               THE COURT:  Yes, Mr. Crane.

7               Well, let me start by asking a question, and

8   I'd like both Mr. Crane and Mr. Silver to respond to this.

9               Mr. Crane, you argued -- and, by the way,

10  okay, good, your video was frozen for a moment.

11              You argued that the estate would be a

12  necessary party, a term of art, which indicates that the

13  presentation of the alter ego theory could not proceed

14  without the estate being added, is that what you meant?

15              MR. CRANE:  It's my concern that one -- in

16  order to establish that one party is actually -- you have

17  two parties.  They are going to be treated as one party.

18              THE COURT:  Right.

19              MR. CRANE:  And how do you adjudicate that

20  issue without having both parties before a court?  How can

21  you argue -- how can a court, any court determine that

22  there is a -- that Karma of Palm Beach is the same as

23  Excell, without having both parties in front of them?  I

24  don't, I don't know, I didn't brief that, but I do not

25  conceptually understand how that could occur.

1              You're saying for all purposes.  I mean,

2    this is not a transaction, this is not, we're limited to

3    one sort of transaction.  This is limited to the entire

4    method of how these two entities dealt with one another,

5    bank accounts, transactions.  It's a broad scope.  I

6    believe the New Jersey court should be looking to Florida

7    law, because New Jersey -- both companies are Florida

8    companies, but there are other things that are going on in

9    New Jersey that they should be applying Florida law to,

10   but they're applying New Jersey law to.  So I have no

11   faith that that will be done that way, but be that as it

12   may, I do not know how you could have -- how you can make

13   the determination that one is the alter ego, without

14   having both of them there.

15              THE COURT:  Thank you.

16              Did you wish to say anything else,

17   Mr. Crane, before I go back to Mr. Silver?

18              MR. CRANE:  We shouldn't even be required to

19   be part of discovery, and also if there is a finding, and

20   if there is a -- you know, the risk is to the creditors of

21   the estate, the entire body of the creditors of the

22   estate, rather than one potential argument that one

23   potential creditor -- or that one non-creditor, because I

24   don't think Mr. Silver's clients actually filed a claim in

25   the estate, wants to make.  So any of the equities would

1    balance in favor of the estate.

2                    This is a -- my understanding from Mr. Moon

3    is that this is a -- I understand that they want to bring

4    this argument, but it is one argument that they want to

5    bring in a New Jersey case, that will have -- could have a

6    devastating effect on the entire bankruptcy estate, and

7    your -- and it would be abdicated to that New Jersey court

8    to decide whether or not one is the alter ego of the

9    other.

10                   THE COURT:  Why does it matter whether

11   Mr. Silver's client filed a proof of claim?  I mean, this

12   is all about Chapford attempting to satisfy what is, in

13   effect, its claim against the estate by realizing on

14   collateral, correct?  It is --

15                   MR. CRANE:  Yes.

16                   THE COURT:  It is, in fact -- I mean, that

17   seems to me, by itself, implicates 362(a)(6), it's pursuit

18   of a claim against the debtor, while the defendant is

19   somebody else, which is -- that provision is applied to,

20   for example, pursuing the debtor's fraudulent transferees.

21                   So, it seems to me -- by the way, we've all

22   jumped over the -- and I have jumped over whether the stay

23   applies at all.  I realize the initial motion suggested

24   the stay didn't apply at all.  I think at least two

25   provisions of the stay apply under the circumstances, but

Page 27

```
1    that's why I'm focusing on relief from stay here.  And by
2    the way the trustee has the burden at this point on relief
3    from stay.
4                   All right.  So, Mr. Silver, did you wish to
5    add anything else?
6                   I would like you to address the necessary
7    party argument that Mr. Crane had made.
8                   MR. SILVER:  Judge, it's not before this
9    Court, whether --
10                  THE COURT:  What do you mean?
11                  MR. SILVER:  Whether --
12                  THE COURT:  Yes, it is.  If the estate would
13   be a necessary party, that is a problem for you.
14                  MR. SILVER:  Understood, Judge, but what I'm
15   saying is that Luxury Leasing, I don't believe, has any
16   intent to add the trustee or this estate as a party to
17   that action.  If it did, Judge, right, then I think we
18   would need to come back --
19                  THE COURT:  Well, it might be Mr. Moon
20   making that argument, so Mr. Moon would be saying ah-ha,
21   well, you are now making that alter ego argument, and it
22   cannot be presented without this extra party, and now we
23   have the estate responding to that motion, at a minimum.
24                  MR. MOON:  Exactly right, your Honor.
25                  THE COURT:  I think we're dealing --
```

1              MR. SILVER:  But isn't that for the

2  New Jersey court to decide, Judge, as Mr. Moon described

3  it --

4              THE COURT:  Sure.

5              MR. SILVER:  -- it's gatekeeping function as

6  to whether, you know, LLC is entitled to seek this relief

7  at all in the New Jersey action?  Won't it need to -- and

8  that's what I meant by it's not before this Court,

9  your Honor, is that it's really an issue for the

10 New Jersey court.  If the New Jersey court finds that --

11             THE COURT:  Well, that's exactly what

12 troubles me.

13             Okay.  What else?

14             MR. CRANE:  Your Honor, if I may?

15             THE COURT:  Yep, but let him finish.

16             MR. SILVER:  Judge --

17             THE COURT:  Let him finish.  Go ahead,

18 Mr. Silver.

19             MR. SILVER:  I just, I want to reiterate

20 here that we are not seeking to hold Excell, this estate

21 liable for any debts of Karma PB.

22             What we are seeking to do is hold Karma PB

23 liable for the estate's debt to Chapford.  Okay.  That is

24 classically what was, you know, before the 11th Circuit in

25 Icarus, that's like a classic, seeking to hold a nondebtor

1    entity liable for the debtor's debts as a remedy on that

2    Article 9 issue, Judge, and so I keep bringing that up,

3    your Honor, because it's -- I think it's important as to

4    why the trustee is not a necessary party to that action

5    because --

6                    THE COURT:  Well, the reason he makes that

7    argument is because the analysis required to reach that

8    one thing that you want to have, the outcome from the

9    finding of alter ego is a much broader finding that is

10   necessitated by the case law in Florida, which I am

11   confident would apply.  So that is my concern.

12                   Also, there is a very unique circumstance

13   here, that I don't -- I think all of us, as bankruptcy

14   people, are not paying any attention to, but it's the

15   elephant in the room, whenever you have an alter ego

16   question with regard to the debtor, and I realize you're

17   focusing on liabilities, but this Court has exclusive

18   jurisdiction over the question, what is property of the

19   estate, and that question is a -- the litigation, the

20   argument, Mr. Silver, which you wish to make is, in fact,

21   a component of that question.

22                   And so I think the most compelling argument

23   made in opposition to your motion is that that question is

24   being offloaded to another court, and I realize you think

25   it's limited to that instance, and that's why I asked for

1    the briefing that you presented ahead of today, to see

2    whether, in fact, it would be necessarily limited in any

3    action brought by the trustee, where the argument might be

4    made defensively, and so luckily the strobe lights have

5    turned off, and now we have background noise.

6                    Mr. Crane.

7                    MR. CRANE:  My concern was regarding -- or

8    in response to what Mr. Silver was saying, is that by

9    granting stay relief, and allowing the New Jersey court to

10   decide, you'd be opening up Pandora's box to allow other

11   creditors to bring the same argument based upon the

12   findings made in the New Jersey court, and that could

13   increase our creditor base based upon a finding that one

14   was the alter ego of the other.  Again, I think we're a

15   necessary party in the New Jersey case, but that's -- I

16   said that already.

17                   THE COURT:  Mr. Moon.

18                   MR. MOON:  Thank you, your Honor.  I just

19   want --

20                   THE COURT:  And then Mr. Crane, and then

21   we're done.

22                   Okay.  Mr. Moon.  Because I could talk to

23   you --

24                   MR. MOON:  I just wanted to --

25                   THE COURT:  I could talk to all of you about

1    this endlessly, but you're billing and I'm not.  So, and

2    there are other people waiting.

3                    Mr. Moon.

4                    MR. MOON:  Your Honor, I just wanted to be

5    very clear on the record about this.  Mr. Silver made the

6    comment that discovery has been done.  Your Honor,

7    discovery was done with respect to a specific vehicle,

8    with a specific deal jacket, and a specific transaction.

9    There is no such thing as alter ego for a transaction.

10   These two entities were either -- you either apply the

11   alter ego standard, and say undercapitalization, using the

12   other for fraud --

13                   THE COURT:  Yep.

14                   MR. MOON:  -- all these kinds of things, and

15   we do not have anywhere close to an evidentiary record on

16   that.  So I just wanted to be clear about that,

17   your Honor.

18                   THE COURT:  Right, I think I said that at

19   the last hearing.  It's not -- you're addressing

20   discovery, but the reality is the analysis is much broader

21   than that.

22                   All right.  Mr. Silver.  You had your hand

23   raised.

24                   MR. SILVER:  I didn't have my hand up, but

25   if you have questions of me --

1          THE COURT:  Oh, okay, I thought you did

2     earlier.

3          MR. SILVER:  -- I'm happy to answer them,

4     but getting it from three different people, you know, I

5     think I've done my best to address the issues, Judge.

6          THE COURT:  They're ganging up on you.

7     Yeah, it's very sad.  I don't think you were a victim,

8     however.  You seem to --

9          MR. SILVER:  I'm not crying victim, Judge,

10    but --

11         THE COURT:  Very good.

12         I think I was concerned that I had made the

13    wrong decision at the last hearing, and now I'm confident

14    I have not.  I think under the circumstances here I am

15    troubled by several things, and I said this at the last

16    hearing, there is no such thing as a limited ruling on

17    alter ego.  It is always based on a number of components,

18    if Florida law would apply, a number of components, as

19    Mr. Moon just outlined a few moments ago, and it's an

20    overarching finding, you make that finding on the weight

21    of something else.

22         And in this case, I understand the argument,

23    Mr. Silver, that your client would like to make.  I'm

24    troubled, not just by the fact that I would be essentially

25    offloading a central question in the bankruptcy to another

1    court, but also I am not entirely sure that New Jersey law

2    would not permit the application defensively of a finding

3    in that court to apply for the benefit of parties that we

4    do not know right now that the trustee might pursue, and

5    I'm also concerned that the trustee feels compelled to

6    bring the estate to New Jersey under the circumstances,

7    thus, putting the estate at considerable expense in

8    connection with the matter, and so I'm sticking with my

9    original ruling.  I'll enter an order.

10                   I have to tell you -- yes, just a moment.

11   It is a joy hearing the three of you argue this.  I mean

12   that honestly.

13                   Yes, Mr. Silver.

14                   MR. SILVER:  Thank you, Judge.  If I can

15   just have a clarification on one point of your ruling?

16                   THE COURT:  Sure.

17                   MR. SILVER:  If your Honor is not inclined

18   to grant us automatic stay and argue this, and the ruling

19   is based on the fact that it's a central question in this

20   estate, do we have relief to seek, in whatever procedural

21   manner is appropriate in this Court, to make that argument

22   before your Honor?

23                   THE COURT:  Well, I don't know, you have to

24   figure out how you're going to do that, and I don't want

25   to say anything about what procedure you might use,

```
 1   because I haven't given a great deal of thought to that.
 2   I have given some thought to it, because I was concerned,
 3   as you can tell by one of my questions from Mr. Crane,
 4   that by denying the relief from stay, it would leave you
 5   with no remedy at all.
 6              I'll let you know that at least one of my
 7   law clerks has told me at least two ways in which you
 8   could pursue the matter, but I don't want to -- I can't
 9   give you any advice.  So, I'm not doing anything in that
10   regard.  I hope I don't see an attempt to have all of this
11   come here to the Bankruptcy Court, because I'm confident
12   that there would be issues with subject matter
13   jurisdiction, and even if I had it, it would end up being
14   heard by the district court, but I leave that up to you.
15   Today all I'm doing is ruling on the one motion that I
16   have.  Aren't you sorry you asked that question?
17              MR. SILVER:  I'm not, your Honor.  Thank
18   you.
19              THE COURT:  Okay.  Thank you all for your
20   time.  I appreciate it, and again, it is these kind of
21   matters that, among many others, that make me glad to be
22   sitting here, and I apologize if I've wasted your time and
23   your clients' money in calling you all back.
24              Let's move on to the next matter.
25              MR. CRANE:  Your Honor, I had one other
```

Page 35

1   hearing set for today.

2                   THE COURT:  Yes.

3                   MR. CRANE:  It was the trustee's motion to

4   employ --

5                   THE COURT:  Oh, right, yes, I apologize, to

6   approve the agreement with regard to discovery, KL

7   discovery.

8                   MR. CRANE:  Yes, I am not a hundred percent

9   sure -- I'm not seeing on the docket that there was a

10  certificate of service.  I'm sure it was served, but I

11  don't see the certificate of service.

12                  THE COURT:  You are correct, there isn't

13  one.

14                  How would you like to handle it?

15                  MR. CRANE:  I can either -- I can propose

16  one of two ways, one is I'll reschedule it, and we'll

17  re-notice it; two, because it's an employment of a

18  professional, I don't think there is going to be much --

19  you could grant it, but put a provision in there that if

20  anyone has objections within the next 20 days, they can

21  file an objection.

22                  THE COURT:  That would be fine with me, and

23  under the circumstances it certainly seems reasonable.

24  You have a bunch of electronic devices, I understand that

25  the paper documents will also be within their control, but

1  I think the initial reason for contacting them was the

2  fact that you have computers and other devices with data,

3  and the estate is put in the position of responding to

4  subpoenas from a variety of parties, and you just want to

5  comply, and there is also the provision that offloads the

6  cost on various parties, which seems reasonable, and we'll

7  see if anybody objects.

8          MR. CRANE:  Thank you, your Honor.

9          THE COURT:  Okay.  So, you may tender an

10  order on 244.

11          Very good.  Thank you, gentlemen.

12

13

14

15          (Thereupon, the hearing was concluded.)

16

17

18

19

20

21

22

23

24

25

Page 37

1

2

3                        **CERTIFICATION**

4

5    **STATE OF FLORIDA        :**

6    **COUNTY OF MIAMI-DADE   :**

7

8                **I, Cheryl L. Jenkins, RPR, RMR, Shorthand**

9    **Reporter and Notary Public in and for the State of Florida**

10   **at Large, do hereby certify that the foregoing proceedings**

11   **were transcribed by me from a digital recording held on**

12   **the date and from the place as stated in the caption**

13   **hereto on Page 1 to the best of my ability.**

14                **WITNESS my hand this 12th day of**

15   **December, 2022.**

16

17

18            _____

19                **CHERYL L. JENKINS, RPR, RMR**

20                **Court Reporter and Notary Public**
          **in and for the State of Florida at Large**
21                  **Commission #HH 170910**
                   **December 27, 2025**

22

23

24

25