Page 1

1          UNITED STATES BANKRUPTCY COURT

           SOUTHERN DISTRICT OF FLORIDA

2            WEST PALM BEACH DIVISION

3

4

                    CASE NO. 22-12790-EPK

5

6    IN RE:

7      EXCELL AUTO GROUP, INC.,

8         Debtor.

_____/

9

10

11

12

13   MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY

              TO THE EXTENT APPLICABLE (235)

14

15               September 14, 2022

16        The above-entitled cause came on for hearing

17   before the Honorable ERIK P. KIMBALL, one of the Judges of

18   the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN

19   DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm

20   Beach, Palm Beach, Florida on September 14, 2022, commencing

21   at or about 10:30 a.m., and the following proceedings were

22   had:

23            Transcribed from a digital recording by:

             Anna M. Meagher, Stenographic Reporter

24

25

Page 2

APPEARANCES:


                    Furr & Cohen, P.A., by
                    Alan R. Crane, Esquire
                    Jason Rigoli, Esquire
             On behalf of Nicole Testa Mehdipour,
                       Chapter 7 Trustee
                 Email:  Acrane@furrcohen.com
                 Email:  Jrigoli@furrcohen.com


                    Stearns Weaver Miller
          Weissler Alhadeff & Sitterson, P.A., by
                    Eric J. Silver, Esquire
             On behalf of Luxury Lease Company
              Email:  Esilver@stearnsweaver.com


                    Meland Budwick, P.A., by
                    James C. Moon, Esquire
          On behalf of Chapford Specialty Finance, LLC
          and Chapford Credit Opportunities Fund, L.P.
                Email:  Jmoon@melandbudwick.com



                    - - - - - - -

1          THE COURT:  All right.  Next we have EXCEL Auto
2    Group.
3          Do we have Mr. Rigoli?  Mr. Crane?
4          Mr. Crane.
5          MR. CRANE:  Good morning, your Honor.  Alan Crane,
6    special counsel for the Chapter 7 trustee, Nicole Testa
7    Mehdipour.
8          THE COURT:  And also Mr. Rigoli.
9          MR. RIGOLI:  Good morning, your Honor.  Jason
10   Rigoli, special counsel to the Chapter 7 trustee, Nicole
11   Mehdipour.
12         THE COURT:  I see Mr. Moon.  Good morning.
13         MR. MOON:  Good morning, your Honor.  James Moon,
14   M-O-O-N, for Chapford Specialty Finance, LLC and Chapford
15   Credit Opportunities Fund, L.P.
16         THE COURT:  Mr. Silver.
17         MR. SILVER:  I guess that leaves me, Judge.  Eric
18   Silver, S-I-L-V-E-R, of Stearns Weaver on behalf of Luxury
19   Lease Company, the movant here today, your Honor.
20         THE COURT:  Is there anyone else who I failed to
21   call who wishes to make appearance?
22         (No audible response.)
23         THE COURT:  All right.  Mr. Silver.
24         MR. SILVER:  Thank you, Judge.
25         I know you've read it, but we're here on our

1   motion for stay relief requesting modification of the

2   automatic stay to the extent that the stay is applicable in

3   this case to the relief that we're seeking here.  Judge, I

4   know that this case has been very complicated, involving

5   lots of movants before this Court.  This is the first time

6   that this movant has been before this Court requesting

7   relief.  Allow me to explain a little bit more about who

8   this movant is.

9           Luxury Lease Company bought a vehicle from a

10  non-debtor entity, Karma Palm Beach, which I'm sure this

11  Court has heard about in the administration of this estate.

12  In buying its vehicle from Karma Palm Beach, after the

13  purchase, Chapford, who is represented by Mr. Moon,

14  initiated an action up in New Jersey state court to replevy

15  the vehicle, asserting that it had better rights to the

16  vehicle than my client.  Judge, that action, that

17  litigation, is pending in New Jersey state court.  It's

18  referenced at paragraph 9 in the motion for stay relief.

19          This vehicle isn't just like a $50,000 Ford truck,

20  Judge.  It's a million-dollar Lamborghini.  And Chapford

21  extended financing to EXCEL in order for EXCEL to purchase

22  the vehicle.  EXCEL then, unbeknownst to, I think, anybody

23  here, transferred the vehicle from EXCELL to Karma Palm

24  Beach, and, thereafter, Karma Palm Beach sold it to my

25  client, who exchanged -- you know, in exchange for

1  consideration, reasonably equivalent value, bought the

2  vehicle from -- or transferred the vehicle from Karma Palm

3  Beach to Luxury Lease.

4          Judge, in the action pending in New Jersey,

5  Chapford advanced an argument based on the UCC that since it

6  was not a creditor of Karma Palm Beach that the ordinary

7  course benefit -- the ordinary course or ordinary buyer --

8          THE COURT:  Right --

9          MR. SILVER:  -- buyer in the ordinary course.

10         THE COURT:  -- 9-320(a).

11         MR. SILVER:  Thank you, Judge.

12         THE COURT:  Right.

13         MR. SILVER:  -- that it did not apply, that,

14 unfortunately, Luxury Lease was out-of-pocket for its money

15 and doesn't get the car, and the Court ruled in its favor.

16 That was taken up on appeal, and all of this is set forth in

17 the motion, your Honor.  And since the filing of the motion,

18 that appellate court, on a motion to stay the enforcement of

19 the replevy order, has entered an order denying the motion

20 to stay.  So the -- and before it, your Honor, it was not --

21 the facts given rise to the alter ego argument were not

22 before the appellate court.  However, it did opine that it

23 was too early in the litigation for an alter ego

24 determination and sent it back down to state court for the

25 remainder of the claims to be advanced.

1              At this point, your Honor, we're seeking limited

2    stay relief, solely to be able to advance the alter ego

3    argument that Karma and EXCEL are the alter egos of each

4    other, just for purposes of this one transaction and

5    pursuant to the facts that are set forth in paragraph 15 of

6    the motion, which all relate to the Karma PB, LLC

7    transaction, as I've identified them in the motion, your

8    Honor, and for purposes of pursuing just a remedial measure,

9    your Honor, to address what we perceive to be the

10   inequitable result, an equitable argument to be able to give

11   some redress to LLC, my client, in connection with this

12   legal conundrum.

13             Judge, you know, as represented in the motion, I

14   did reach out to Mr. Rigoli and Mr. Crane prior to filing

15   the motion, as soon as this alter ego issue came up.  I

16   advised my client, without waiving privilege, your Honor,

17   but I did advise them about the automatic stay and how we

18   would need stay relief to come to this Court.  So I reached

19   out to Mr. Crane and Mr. Rigoli , "Hey, do you think that

20   this stay applies?"  Because I don't.  I believe it's a

21   direct claim that is not part of the estate.  They took a

22   different position, so that necessitated the filing of this

23   motion.

24             There have been two objections that were filed to

25   the motion, one by the trustee, the other by Mr. Moon.  The

1    issue, I think -- the real issue, your Honor, for you is

2    whether this should -- whether granting stay relief to allow

3    my client to pursue this alter ego remedy in the New Jersey

4    state court action will have any preclusive effect and,

5    thereby, (distorted audio) impact the estate.  Judge,

6    there's no question that this is a direct cause of action or

7    direct remedy, Judge.  They (distorted audio) naming the

8    trustee.  They are not naming themselves.

9            THE COURT:  Mr. -- Mr. Silver, just for a moment,

10   your sound is very bad right now, it seems like a bandwidth

11   issue.

12           MR. SILVER:  I apologize, your Honor.  I'm in my

13   office, and there's some storms, I see some lightening storm

14   in the distance, and that could be affecting the reception,

15   but --

16           THE COURT:  Sounds -- it's a little better right

17   now.  Go ahead.

18           MR. SILVER:  Okay.  Thank you, your Honor.

19           The objection lodged by the trustee, your Honor,

20   is that there may be an impact on this estate, because the

21   finding of alter ego in the state court action will have a

22   perceived preclusive effect.  I don't believe that's true,

23   your Honor.  We provided the trustee case law.  First of

24   all, we would be willing to consent to language from your

25   Honor that any finding in the state court -- well, first of

1    all, that the stay relief only be limited to allow us to

2    pursue this remedy with respect to this transaction --

3              THE COURT:  Why -- you keep calling it a remedy.

4    I don't understand why it's a remedy.  The --

5              MR. SILVER:  Alter ego --

6              THE COURT:  -- goal of your -- well, the goal of

7    your argument is to cause two entities to be treated as one,

8    so that 9-320(a) applies.  That's the goal --

9              MR. SILVER:  That's correct, your Honor.

10             THE COURT:  -- of the argument.

11             I think I have two concerns.  I don't think that's

12   a remedy.  I think that is a necessary finding to support

13   the legal argument that you wish to make.  So it's not

14   really a remedy.  It's seeking a finding.

15             And, number two, I don't understand how an alter

16   ego finding could relate only to a single transaction.  I'm

17   not aware of any case that says you make an alter ego

18   finding but the parties are only alter egos with regard to a

19   single transaction.  That would be contrary to the nature of

20   the presentation that would need to be made to result in an

21   alter ego finding.

22             MR. SILVER:  Well, Judge, let me address both of

23   those concerns.

24             First, your Honor, the reason I call it a remedy

25   is because alter ego is not a cause of action, okay.

1          THE COURT:  Understood.  But you're asking the

2     state court in -- I think it's a state court --

3          MR. SILVER:  It is a state court, your Honor.

4          THE COURT:  -- right, to make a finding that the

5     parties are one in the same, so that you can say that the

6     lien of Chapford is a lien on the seller, the seller's, your

7     seller's property, because you want to treat Karma of Palm

8     Beach and EXCEL as the same entity.

9          MR. SILVER:  That's correct, your Honor.

10          THE COURT:  Right.  So it's a finding.

11          MR. SILVER:  It is, absolutely.  We are seeking a

12     finding from the state court in connection with the claims

13     that we are going to assert against Chapford that for

14     purposes of this transaction -- and I understand, Judge,

15     that you have concerns regarding whether it can be -- or may

16     be limited.  But if your Honor limits it in your order, then

17     it can.

18          And, Judge, further to address the preclusive

19     impact on this estate, your Honor, we're not naming EXCEL.

20     We have agreed and consented to language and proposed

21     language on notice to all parties that any order granting

22     stay relief on this issue, your Honor, would be not

23     preclusive on the estate, and we provide the case law to

24     Mr. Crane and Mr. Rigoli from the Supreme Court and Eleventh

25     Circuit that deals with the privity issue, Judge, about

1    preclusive findings from other courts on this estate.

2              And there's just no way, under Supreme Court

3    precedent, that the trustee and this estate would be found

4    to be in privity with Chapford on the New Jersey action.

5    None of the exceptions to privity apply here.  They're not

6    being adequately represented.  I can take you through the

7    six exceptions, but I think that Mr. Crane and Mr. Rigoli

8    would agree with me that there's just no way that any

9    finding in New Jersey would be preclusive upon this estate.

10             And notwithstanding that, Judge, if your Honor

11   limits and includes the language that we protect -- that we

12   have proposed in our motion, your Honor, regarding the

13   limitation on the preclusive impact on the estate, your

14   Honor is going to be ruling on all the adversary proceedings

15   that come before this Court.  Because that's the concern, is

16   that, you know, a defendant in -- a potential defendant in a

17   potential litigation that may or may not be brought by this

18   trustee at a later date may raise the alter ego finding that

19   was found in New Jersey with respect to this transaction,

20   between Chapford and the debtor, your Honor -- I'm sorry,

21   Chapford and LLC, your Honor.

22             And so, you know, the harm in not allowing my

23   client to pursue this alter ego finding with respect to this

24   transaction, your Honor, greatly outweighs any perceived

25   harm to the estate when we can limit that harm with a

```
 1    finding by your Honor that any ruling up in the state court

 2    action would not be -- would not impact or be preclusive

 3    upon the trustee or this estate.  And so, your Honor --

 4              THE COURT:  All right.  Can I ask, what would be

 5    the basis for me to do that?  That's an advisory ruling; is

 6    it not?  You're asking --

 7              MR. SILVER:  No, it is not, and --

 8              THE COURT:  -- me to rule ahead of time that a

 9    finding in another court will not have preclusive effect,

10    potentially, binding parties that have no notice of the fact

11    that I'm hearing this matter.

12              MR. SILVER:  Well, Judge, number one, the motion

13    for stay relief that was filed in this case was filed on --

14              THE COURT:  Right, I know, but --

15              MR. SILVER:  And the language --

16              THE COURT:  -- not the whole world -- I know we

17    all like to think everybody in the world knows about every

18    case.  But they don't.  So, now, there's a lawsuit pursued

19    by the trustee against a party who has no notice of today,

20    and they come in and say the estate is bound by this ruling

21    elsewhere, and my order can't possibly be binding on them,

22    because there's no due process.  I'm not even sure I can

23    enter that order, by the way, but --

24              MR. SILVER:  So, Judge, I -- on behalf of

25    trustees, I mean, you know that's the bulk of my practice,
```

1   I've been before you representing Chapter 7 trustees a

2   number of times.  I've negotiated that language on behalf of

3   trustees in several cases when parties are pursuing

4   co-debtors, your Honor, that you can go and pursue the

5   co-debtor, just as long as it's not preclusive against this

6   estate, any finding that the state court makes as to that

7   co-debtor.  I don't know why this would be any different,

8   your Honor, and --

9           THE COURT:  Well, I see no reason why a party

10   cannot agree that it will not raise such an argument.

11   That's different.  That's different than me ruling ahead of

12   time that a finding not yet happening someplace else will

13   not be preclusive in any regard in a case that I have not

14   heard or seen yet, let alone some other court, but -- so

15   that's what I'm troubled by.

16           MR. SILVER:  Well, sure.

17           THE COURT:  If you wish to agree, if somebody

18   wishes to agree on behalf of a client that they will not

19   raise a collateral estoppel argument, great, they can agree

20   to that.  It's binding.

21           MR. SILVER:  That's a fair distinction, your

22   Honor, and that's why in response to that concern raised by

23   the trustee, I provided them with Supreme Court case law

24   that deals with the privity issue to put their mind at ease,

25   that anything that happens in the New Jersey state court

1  will necessarily not be binding upon this estate.  Judge,

2  that case is Taylor v. Sturgell, it's 553 U.S. 880, and it

3  talks about whether the exceptions to privity, right, how

4  can -- how can someone -- how can a ruling by another court

5  be binding on a party even though they're not a party to

6  this action --

7              THE COURT:  Mm-hmm, right.

8              MR. SILVER:  -- and there are only six exemptions,

9  Judge, and they're set forth in that ruling by the Supreme

10  Court, your Honor.  And I can go through them if you'd like,

11  but I provided that to Mr. Rigoli and Mr. Crane.  I don't

12  know if they've had an opportunity to review it and they

13  have comments on it, but none of them are applicable here,

14  and so I just --

15              THE COURT:  So your argument is that --

16              MR. SILVER:  I know you're loathed --

17              THE COURT:  -- really the stay --

18              MR. SILVER:  -- I know you're loathed to wade into

19  these inter-creditor disputes --

20              THE COURT:  Right, this is a slightly different

21  argument --

22              MR. SILVER:  -- but this seems a little different.

23              THE COURT:  -- the argument -- this argument is

24  the stay is not implicated because the estate is not

25  effected at all by your request to pursue a particular

Page 14

1    argument in New Jersey.

2              MR. SILVER:  Which is the primary argument that we

3    made in the motion for stay relief.  Obviously, it's been

4    supplemented, you know, to address some concerns that were

5    raised post-filing of the motion by the trustee, in an

6    effort to try to resolve this and find some common ground

7    and consensus.

8              THE COURT:  Yes.  Any -- are you done with your

9    presentation, Mr. Silver?

10             MR. SILVER:  I could on for hours, Judge, but I

11   don't know, this is your motion calendar, Judge, and I'm

12   happy to address anymore comments or questions that you

13   have.

14             THE COURT:  Okay.  Who would like to respond?

15             MR. CRANE:  This is Alan Crane, your Honor.  I'll

16   respond on behalf of the Chapter 7 trustee.

17             Throughout this case, your Honor, we have made --

18   taken, for the most part, due care in not getting involved

19   in -- between various parties regarding vehicles.  You have

20   a whole 'nother bankruptcy called Auto Wholesale dealing

21   with those vehicles, and we're not involved in it.  We have

22   abandoned vehicles.

23             There's no -- there's no argument in here that the

24   green Lamborghini is subject -- is property of the

25   bankruptcy estate.  We do not want to be dragged into a

1  court in New Jersey arguing about why it should -- the Court

2  should or should not find that Karma is the alter ego of

3  EXCEL.  And the bind -- the court that's going to ultimately

4  determine whether or not collateral estoppel applies, may be

5  your Honor, it may not be your Honor.  There's litigation

6  that we contemplate that could very well be filed here and

7  removed to the district court, and then it's going to be

8  some district court judge that's going to make that

9  decision.  It could be --

10            THE COURT:  Well, hold on.  You're saying --

11            MR. CRANE:  -- that it doesn't get filed here.

12            THE COURT:  -- that would be a matter -- you're

13  talking about litigation filed within the bankruptcy that's

14  withdrawn?

15            MR. CRANE:  Yes.

16            THE COURT:  Okay.  Well --

17            MR. CRANE:  That's one, and --

18            THE COURT:  -- I know, that --

19            MR. CRANE:  -- it may be --

20            THE COURT:  That's not a helpful argument.  I

21  mean, assuming I can enter the order that Mr. Silver

22  requests, it would be binding on the district court, because

23  we are the same for that purpose.  But you're saying it

24  could be pursued elsewhere, in another court entirely, like

25  a Florida State court.

1              MR. CRANE:  That is correct.

2              So, yes, there are other courts where actions may

3    be brought that would apply under New Jersey law.  If

4    there's privity of party and interests, it could apply the

5    collateral estoppel.  And so I don't know that the Court can

6    enter an order that limits the application of the collateral

7    estoppel to other judges, and so then we're faced with the

8    prospect of having to potentially intervene in this New

9    Jersey case, which we shouldn't have to be.  That's not

10   something that -- that's not a place where we should be

11   doing this.

12             The grounds set forth in the motion that Luxury

13   Lease filed are pretty much no longer applicable.  At the

14   time Luxury Lease was actually in possession of the property

15   or the vehicle.  Now, I believe Chapford is in possession of

16   the vehicle.  There was a motion to stay pending appeal,

17   which was lost, and they lost in both the lower court and

18   the appellate court.  There was a motion for rehearing that

19   I believe has been withdrawn, and the appeals have been

20   dismissed with prejudice.

21             We do believe that the automatic stay applies, and

22   in order for there to be a finding of alter ego, there has

23   to be evidence that Karma of Palm Beach was the subsidiary

24   of EXCEL Auto Group.  We don't see any of that.  That -- you

25   know, usually if you're applying alter ego theories, it's a

Page 17

1   parent -- it's -- the parent is the alter ego of the

2   subsidiary, because it so dominated the subsidiary.  But

3   that denotes an ownership interest or a shareholder and

4   you're trying to reach the shareholder, and you have to

5   prove that the -- in part that there was a domination, that

6   the shareholder owned the company and there was a domination

7   by the shareholder over the corporation.

8           In this case we have no evidence that Karma of

9   Palm Beach was owned by anybody, other than the Zankls.

10  Karma of Broward is a different story.  But as it relates to

11  Karma of Palm Beach, which is the company at issue, we don't

12  see any evidence that Karma of Palm Beach was ever even

13  owned by EXCEL Auto Group.

14          And I agree with your Honor's statement earlier

15  that it's not a transactional issue.  It is a -- there has

16  to be a finding that there was a -- again, a domination of

17  the -- you know, there was a domination by the parent of the

18  subsidiary, and, again, I don't believe you can do that on

19  one transaction, on a transactional basis.  So we --

20          THE COURT:  What do you take -- what is your take

21  on the argument that the stay is not implicated -- I'm

22  rewording this slightly -- that the stay is not implicated

23  at all because no matter the outcome in New Jersey, if there

24  is a finding of alter ego, it cannot be binding on the

25  estate in this bankruptcy case?

1          MR. CRANE:  We believe that there was -- that the

2    stay does apply, because it's an action or a proceeding in

3    which the debtor could be or could have been brought into,

4    and all of these transactions regarding the vehicle happened

5    prior to the filing of the bankruptcy.  That's set forth in

6    the initial motion, and that's conceded.  So we believe that

7    that is our concern.  Again, collateral estoppel is

8    necessary -- might not necessarily be -- you may not be the

9    judge applying it.  It may be another judge that's going to

10   have to.  We don't want to be put in the position of having

11   to argue it in another case and have --

12          THE COURT:  So you --

13          MR. CRANE:  -- unnecessary expense.

14          THE COURT:  -- were not -- you were not swayed by

15   the case law that Mr. Silver provided to you that suggests,

16   he says, that there could never be collateral estoppel

17   against the estate, that you couldn't be bound by it, by

18   whatever the finding is?

19          MR. CRANE:  I have not looked at specifically the

20   case that Mr. Silver is talking about, so I would have to --

21   so I don't know the factors that he's talking about.  I'm

22   not sure when he sent that over.  I was in jury duty

23   yesterday.

24          THE COURT:  Well, it's -- you were where?

25          MR. CRANE:  I was in jury duty yesterday.

Page 19

```
 1              THE COURT:  Oh, I thought you said "Germany."
 2              MR. CRANE:  No, jury duty --
 3              THE COURT:  I was like, "Wow, you must be" --
 4              MR. CRANE:  -- yesterday, so if he sent it over
 5    yesterday --
 6              THE COURT:  They don't let me serve jury duty.  I
 7    went once.  They kicked me out.
 8              MR. CRANE:  That's what happened with me.  I went
 9    and they kicked me out.
10              UNIDENTIFIED SPEAKER:  Judge, they were worried
11    you were going to be biased?
12              THE COURT:  No, they have exclusion rules.
13    It's -- you know, it was the state court, and the form that
14    they send does not actually have all of the exclusions rules
15    on it, and it wasn't until an hour in that I learned that
16    there was a separate exclusion rule, and then they told me
17    you should have just called.  I said, "Why would I do that?
18    It's so presumptuous," just call and say I'm not coming,
19    that seems, like -- you know, I'm not going to do that.  And
20    so then they sent me home.  It was very interesting.  All
21    right.  And the district court I'm not even in the list.
22              All right.  So let's go back to where we are.  I
23    apologize if I interrupted you, Mr. Crane.  You were in the
24    midst of --
25              MR. CRANE:  No, I --
```

Page 20

1          THE COURT:  -- responding on that particular case.

2          MR. CRANE:  -- I'm not aware of the Supreme Court

3    case and the factors.  I don't believe -- I don't recall

4    them being in the moving papers, and --

5          THE COURT:  Generally, a finding has collateral

6    effect only against the parties to the action, unless

7    there's a reason to extend it under the privity analysis,

8    and that's, I assume, the matter that Mr. Silver is pointing

9    to.  He's saying that none of the privy analysis could bind

10   the estate in this case.  That's his argument.

11         MR. CRANE:  Okay.  I'm -- I'm not even a hundred

12   percent sure how you can argue an alter ego argument without

13   starting to name parties, and we are -- you know, to the --

14   there would have to be a finding, again, that EXCEL

15   dominated Karma of Palm Beach, and I don't -- we're the

16   trustee, you know, my client is the trustee of EXCEL, so

17   there's privity.  I don't want to have to have that argument

18   made in some other court.

19         So if the Court -- if your Honor makes a finding

20   that there could never be that argument made, then we'll

21   respect it.  But we don't -- we're greatly concerned that it

22   will get used and we'll be having to fight it, and we may

23   end up having to go into the New Jersey litigation,

24   someplace that we should not have to be.

25         THE COURT:  Understood.

Page 21

1            Anyone else?

2                MR. MOON:  Your Honor, James Moon --

3                THE COURT:  Sure.

4                MR. MOON:  -- for Chapford.  Your Honor, I'll be

5    brief, mainly because we're the obvious other non-debtor

6    that's involved in the litigation.  I filed a joinder and

7    wanted to give you a little bit of context of how this came

8    before your Honor.

9                It's clear, at least to us, that they are not

10   coming before your Honor because they have a genuine concern

11   and respect for the automatic stay.  They already made their

12   argument, your Honor.  And, in fact, if you look at what

13   they were advising this nonbankruptcy New Jersey court of,

14   they were basically trying to put the brakes on what was

15   occurring with the replevin of a car.  They were doing

16   everything that they could to delay and stop what's going

17   on.

18               And so they told the New Jersey court that they

19   were -- they needed to seek the opinion of the trustee for a

20   motion for reconsideration that they had to file.  And so

21   what they do then is they file a motion for stay relief, and

22   two days later withdraw the very motion for reconsideration

23   that's the basis for the motion before you, your Honor.  And

24   the reason why they did that, your Honor, is because they

25   didn't appeal the underlying order.  What they did was they

Page 22

1   sought reconsideration, and then sought a stay of that
2   order.  So the New Jersey appellate court said, "No, we're
3   not going to stay it, because you didn't appeal.  You sought
4   a motion for reconsideration."  So then they withdrew that.
5           And so, your Honor, they've just made some errors
6   up there, and I don't fault Mr. Silver for that.  He is not
7   involved in that at all.  But what happened here, your
8   Honor, is they failed to make an alter ego argument at the
9   trial court level.  They realized their mistake when they
10  lost badly, and they were trying to rectify it.  But now the
11  very vehicle that they wanted to use to rectify it has been
12  withdrawn.
13          The motion -- and you'll see in the final exhibit
14  that we attached, as of yesterday -- no, it was on the 12th,
15  where they had first tried to withdraw their motion -- or
16  their appeal without prejudice, and the appellate court
17  said, "No, this is with prejudice," and they had to resubmit
18  their letter, and it says, "Our firm represents Luxury
19  Lease, LLC and Summit Auto Sales.  We are writing to
20  withdraw their August 24th motion for leave to appeal the
21  trial court's August 19, '22 order pending before the
22  appellate division.  And they withdraw this motion seeking
23  interlocutory relief with prejudice and without cause."  So
24  I'm not really even sure what we're here for.
25          But at the end of the day, your Honor, it was my

Page 23

1    view all along, there's no reason to be dragging the trustee

2    or this Court into a dispute between two non-debtors

3    fighting over a vehicle in New Jersey.  They can argue

4    whatever they want.

5            The problem is what they are trying to do is,

6    number one, make it look to the New Jersey court that there

7    is an interest down here, and so they should be careful

8    because you might violate something with the Bankruptcy

9    Court.  And, number two, what they are trying to do is

10   guardrail an order coming out of it, such that something

11   from a Bankruptcy Court is now being interjected into the

12   New Jersey court saying, "Argue what you want, but it has no

13   preclusive effect down here."

14           Your Honor, my view is probably along the lines of

15   Mr. Silver, that I don't see what preclusive effect there

16   could possibly be.  So why are we here?  So my view would be

17   to simply deny the order, without a lot of, you know,

18   preclusive language, whatever, because it's unnecessary.  I

19   don't think your Honor needs to reiterate what the law is.

20   And so that's just my argument, your Honor.

21           I just wanted you to understand there's a lot

22   that's been going on in New Jersey.  You may look at the

23   docket and see we were very aggressive from the very

24   beginning to try to find out where this car was.  We found

25   it, no thanks to Luxury, I might add, because they tried to

```
 1    hide the car from us, and then were dishonest with us about

 2    what they were doing with it.  So there's a lot --

 3              THE COURT:  I'm imaging --

 4              MR. MOON:  -- going back and forth.

 5              THE COURT:  -- I'm imaging a bright green

 6    Lamborghini.  It seems --

 7              MR. MOON:  I'd love to.

 8              THE COURT:  -- difficult --

 9              MR. MOON:  -- send you a picture.

10              MR. SILVER:  It's a dark green Lamborghini, Judge.

11              THE COURT:  Dark green, fascinating.

12              MR. MOON:  Oh, no, no, it's not.  It's neon.  It's

13    like a neon green with No. 63 on it --

14              THE COURT:  It's a neon green Lamborghini --

15              MR. MOON:  -- you'd never drive it in your wildest

16    dreams.

17              THE COURT:  -- that's fantastic.  Mr. Silver, your

18    photo must have been in a parking garage or something,

19    limited lighting.

20              MR. SILVER:  On a bus stop, Judge.

21              THE COURT:  Bus stop.

22              MR. MOON:  But, your Honor, just to close, I don't

23    fault Mr. Silver for arguing what he needs to try to, you

24    know, support what the New Jersey counsel had failed to do,

25    but at the end of the day, your Honor, I think you just need
```

Page 25

1   to deny the motion.  And that's my presentation.  Thank you,

2   your Honor.

3            THE COURT:  But your suggestion, Mr. Moon, is that

4   I deny the motion, but that doesn't prevent them from

5   raising the argument?

6            MR. MOON:  Well, your Honor, they already did --

7            THE COURT:  Well, I know that --

8            MR. MOON:  -- they've already done it.

9            THE COURT:  -- but, I mean, again.  Again.

10           You're saying the stay doesn't apply --

11           MR. MOON:  Your Honor, they are not going to --

12           THE COURT:  -- at all --

13           MR. MOON:  -- (inaudible.)

14           THE COURT:  -- you're actually going along with

15   Mr. Silver.  You're saying the stay is not --

16           MR. MOON:  Your Honor, at some point --

17           THE COURT:  -- implicated because -- hold on, let

18   me finish my sentence.  The stay doesn't apply because the

19   argument they wish to make in New Jersey will not have any

20   impact on the estate.  That's your position.

21           MR. MOON:  My argument is as the party that

22   doesn't have to deal with the issue of whether this argument

23   belongs to the estate, I don't even think I can, is that

24   deal with it how you want.  I'm here as the other party

25   litigant in a state court action that sees this particular

1   proceeding being used to try to influence that proceeding.

2   So my view of this is slightly different, so I'm trying to

3   make sure that I don't try to take the hat of Mr. Crane, who

4   is able to make his own argument with respect to that.   I

5   just think your Honor should reject the bait and trying to

6   draw you in or the trustee in to an action that they have no

7   business being in.

8           And, quite frankly, your Honor, your Honor will

9   rule as you do.  I'm not even slightly worried about this

10  argument, that they want to bring, now lately, to the

11  appellate court, and they can argue what they want.  They

12  won't be successful in my view, but, you know, I obviously

13  defer to the Court with respect to what you intend to rule

14  today.

15          THE COURT:  Okay.  I don't know who had their hand

16  raised first.  I'll just go alphabetical with Mr. Crane.

17  He's also in the upper left of my -- what did you wish to

18  say?

19          MR. CRANE:  I've now read the case -- read the

20  factors that are within the Taylor versus Sturgell case from

21  the U.S. Supreme Court, and still maintain my position of

22  being concerned that collateral estoppel could be, in some

23  future proceeding, used against the trustee.

24          THE COURT:  Okay.  Mr. Silver, you wanted to

25  speak?

```
 1              MR. SILVER:  Judge, I was actually just going to
 2    echo Mr. Moon's suggestion, which is if you want to deny it,
 3    deny it as moot, because the stay doesn't apply, and we
 4    would be fine with that, your Honor.
 5              Otherwise, you know, look, obviously we reject
 6    Mr. Moon's insinuation regarding the motive behind the
 7    motion.  Obviously, Mr. Crane has concerns, and so no
 8    bankruptcy lawyer worth their two cents would advise their
 9    client to continue an action where a trustee was raising
10    concerns about the automatic stay.  So we sought stay relief
11    because the trustee was concerned, and so that's why we're
12    here, your Honor.
13              I would like your Honor to rule that we have stay
14    relief to be able to go and grant -- to go pursue these
15    arguments.  But, alternatively, if you want to find that the
16    stay doesn't apply, that is fine by us as well.  Thank you,
17    your Honor --
18              THE COURT:  Understood.
19              MR. SILVER:  -- and I appreciate your time.
20              THE COURT:  The requested finding that
21    Mr. Silver's client would want to have made in New Jersey,
22    the impact of that finding, let's set aside the impact that
23    it might have in other actions, but the impact, in general,
24    of an alter ego finding is to combine the entities, which
25    means their assets and liabilities become also combined in
```

1  most instances, Mr. Silver.

2          I know you're saying -- I'm not -- this is not a

3  question, by the way, this is a lead in, okay?  I do not

4  think that I can say in an order that a ruling elsewhere

5  will not have collateral effect in connection with claims

6  that I do not have yet.  I can't say that.

7          In my view pursuing an argument that an entity is

8  the alter ego of a debtor in bankruptcy is, in effect, a

9  suit against the debtor for purposes of Section 362.  The

10 alter ego argument presented here is not something that

11 would be personal to the movant, and I cannot imagine an

12 alter ego argument that is personal to the movant, because

13 the analysis is always about the defendant and another party

14 and about their actions.

15         If Karma of Palm Beach and EXCEL are alter egos of

16 one another, it could not be just for a particular

17 transaction.  I am not aware of law in any case that says

18 you can be an alter ego only for one transaction.  I've

19 never seen such a thing.  At present it's difficult to

20 ascertain the impact of that alter ego ruling.  I am not at

21 this moment in a position to say that it could never have

22 any impact on the trustee or the estate in this case.

23         And so my view is that if such an argument is to

24 be pursued, it has to be pursued within the bankruptcy, and

25 so I'm denying the motion for those reasons.  I'll do a

1  brief order.

2           MR. SILVER:  Thank you, your Honor.

3           THE COURT:  Good luck in New Jersey.  Everybody is

4  fighting over a green million-dollar Lamborghini (laughter).

5  I'm sorry, I just --

6           MR. MOON:  Thank you very much for your time,

7  Judge.  We appreciate it.

8           THE COURT:  There's no accounting for taste.

9  (Laughter.)  All right.  And I shouldn't laugh, because

10  people have -- we have one party that's lent money

11  apparently and another party that's paid a lot of money for

12  the vehicle.

13           This is, by the way, a story that I keep hearing

14  in these cases.  I have circumstances where the allegation

15  is that someone sold a vehicle, then took out a lien on it,

16  and then sold it again, in another one of my cases, multiple

17  times.  So, obviously, there are some people who are

18  rightfully concerned, and a million dollars is lot of money

19  to put out no matter what it's for, even if it's a green

20  Lamborghini.

21           All right.  Let me go onto the next case.

22           (Whereupon, the hearing was concluded.)

23

24

25

Page 30

1                        CERTIFICATION

2

3

4    STATE OF FLORIDA              :

5    COUNTY OF BREVARD             :

6

7            I, Anna M. Meagher, Stenographic Reporter, do

8    hereby certify that the foregoing proceedings were

9    transcribed by me from a digital recording held on the date

10   and from the place as stated in the caption hereto on page 1

11   to the best of my ability.

12           WITNESS my hand this 19th day of December 2022.

13

14

15           _____

                     Anna M. Meagher,

16                 Stenographic Reporter

17

18

19

20

21

22

23

24

25