## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

IN RE.

EXCELL AUTO GROUP, INC.                  Case No.:  22-12790-EPK
                                         Chapter 7
Debtor.

_____/

Kenneth J. Goodman, as Trustee
of the DCG 2008 Irrevocable
Wealth Trust,

                                                 Adv. Case No.
          Plaintiff,
v.

                                         (Fla. 15th Judicial Circuit Court
                                         (Palm Beach) Case No. 50-2022-
                                         CA-005035-XXXX-MB)

Scott Zankl and Kristen Zankl,

          Defendants.
_____/

Nicole Testa Mehdipour,
as the Chapter 7 Trustee of
Excell Auto Group, Inc.

          Plaintiff in Intervention,
v.

Kenneth J. Goodman, as Trustee
of the DCG 2008 Irrevocable
Wealth Trust, Scott Zankl and Kristen Zankl,

          Defendants in Intervention.

_____/

### CREDITOR, AND DEFENDANT IN INTERVENTION, KENNETH GOODMAN, AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST'S NOTICE OF REMOVAL OF NICOLE TESTA MEHDIPOUR, AS THE CHAPTER 7 TRUSTEE OF EXCELL AUTO GROUP, INC.'S COMPLAINT IN INTERVENTION FROM THE FIFTEENTH JUDICIAL CIRCUIT COURT IN AND FOR PALM BEACH COUNTY CASE NO. 50-2022-CA-005035-XXXX-MB TO THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA'S WEST PALM BEACH DIVISION, UNDER CHAPTER 7 CASE NO. 22-12790-EPK (EXCELL AUTO GROUP, INC.)

Creditor, and Defendant in Intervention, Kenneth J. Goodman ("Goodman"), as Trustee of the DCG 2008 Irrevocable Wealth Trust ("DCG" or the "Trust"), by and through undersigned counsel, and pursuant to Art. I, §8, Clause 4[1], & Art VI, Clause 2[2], of the U.S. Const., 11 U.S.C. §101(15), §102(2) & (3), §321(a), §323(a), §362(a)(3)[3], §501(a)[4], §502(a) & (b)[5], §541[6],

---

[1] Art. I, §8, Clause 4 of the United States Constitution authorizes Congress to enact "*Uniform Laws on the subject of Bankruptcies throughout the United States*."

[2] Art. VI, Clause 2 of the United States Constitution is the federal Supremacy Clause and states: "***This Constitution, and the Laws of the United States which shall be made in Pursuance thereof***; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land*; *and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding*".

[3] 11 U.S.C. §362(a) states in pertinent part that:

" (a) Except as provided in subsection (b) of this section, *a petition filed under §301*, … of this title, …. *operates as a stay, applicable to all entities*, of—…

(2) *the commencement* or continuation, including the issuance or employment of process, *of a judicial*, administrative, *or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title*;…

(3) *any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate*;…"

[4] 11 U.S.C. §501(a) states in pertinent part that "*A creditor* or an indenture trustee *may file a proof of claim*."

[5] 11 U.S.C. §502(a) & (b) states in pertinent part that "

(a) *A claim* or interest, *proof of which is filed under §501 of this title, is deemed allowed, unless a party in interest*, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, *objects*.

(b)Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, *if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount*, except to the extent that—

(1) *such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law* for a reason other than because such claim is contingent or unmatured;."

[6] 11 U.S.C. §541(a) states in pertinent what constitutes the property of Excell's Bankruptcy Estate:

"(a) The commencement of a case under §§301, … of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

---

(2)  All interests of the debtor … as of the commencement of the case that is—

   (A)  under the sole, equal, or joint management and control of the debtor; or

   (B)  liable for an allowable claim against the debtor, …, to the extent that such interest is so liable.

(3)  ***Any interest in property that the trustee recovers under §§…, 550, … of this title***.

(4)  ***Any interest in property preserved for the benefit of or ordered transferred to the estate under §§… or 551 of this title***…."

§550, & §551, 28 U.S.C. §157(a)[7], (b)(2)(B), (C) & (E)[8] & (b)(3)[9], §1331[10], §1334(a) & (b)[11],

§1441(a)[12], & §1452(a)[13], Fed. R. Bank. P. 3001(f)[14], 3007(b)[15], 7001(1), (9) & (10)[16], & 9027[17],

the United States District Court's Local Rule 87.2[18], and Fed. R. Evid. 201[19], hereby files this it's

---

[7] 28 U.S.C. §157(a) states in pertinent part that "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 ***shall be referred to the bankruptcy judges for the district***."

[8] 28 U.S.C. §157(b)(2)(B) states in pertinent part that "***Core proceedings include***, but are not limited to…***allowance or disallowance of claims against the estate***, ***counterclaims by the estate against persons filing claims against the estate*** [and] ***orders to turn over property of the estate***.

[9] 28 U.S.C. §157(b)(3) states in pertinent part that "***A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law***."

[10] 28 U.S.C. §1331 states in pertinent part that "The district courts ***shall have original jurisdiction of all civil actions arising under the Constitution, laws***, or treaties ***of the United States***."

[11] 28 U.S.C. §1334(a) & (b) states in pertinent part that "

(a) *Except as provided in subsection (b) of this section, **the district courts shall have original and exclusive jurisdiction of all cases under title 11**.* (otherwise known as "core proceedings");

(b) *Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11*." (otherwise known as "non-core proceedings");

[12] 28 U.S.C. §1441(a) states in pertinent part that "Except as otherwise expressly provided by Act of Congress, ***any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant*** or the defendants, ***to the district court of the United States for the district and division embracing the place where such action is pending***."

[13] 28 U.S.C. §1452(a) states in pertinent part that "A party ***may remove any claim or cause of action in a civil action*** …, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under §1334 of this title."

[14] Fed. R. Bank. P. 3001(f) states in pertinent part: "[a] ***proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim***."

[15] Fed. R. Bank. P. 3007(b) states in pertinent part: " (b) DEMAND FOR RELIEF REQUIRING AN ADVERSARY PROCEEDING. **A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding**."

[16] Fed. R. Bank. P. 7001(1), (9), & (10) states in pertinent part:

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

(1) ***a proceeding to recover money or property***, …

(9) a proceeding to obtain a ***declaratory judgment relating to any of the foregoing***; or

(10) ***a proceeding to determine a claim or cause of action removed under 28 U.S.C. §1452***.

[17] Fed. R. Bank. P. 9027 states in pertinent part:

Notice of Removal (the "Notice of Removal") *solely of* Nicole Testa Mehdipour, as the

Chapter 7 Trustee ("Excell's Chapter 7 Trustee") of Excell Auto Group, Inc.'s  ("Excell",

"Debtor" or "Obligor") Complaint in Intervention (the "Intervention Complaint"), attached as

Exhibit A hereto, that was first filed and brought in the Fifteenth Judicial Circuit Court in and for

---

(a) NOTICE OF REMOVAL.

(1) *Where Filed; Form and Content*. A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending. The notice shall be signed pursuant to Rule 9011 and contain a short and plain statement of the facts which entitle the party filing the notice to remove, contain a statement that upon removal of ***the claim or cause of action*** the party filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy court, and be accompanied by a copy of all process and pleadings.

(2) *Time for Filing; Civil Action Initiated Before Commencement of the Case Under the Code*. If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if claim or cause of action in a civil action has been stayed under §362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

(3) *Time for filing; civil action initiated after commencement of the case under the Code*. ***If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed***, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons.

(b) NOTICE. Promptly after filing the notice of removal, the party filing the notice shall serve a copy of it on all parties ***to the removed claim or cause of action***.

(c) FILING IN NON-BANKRUPTCY COURT. Promptly after filing the notice of removal, the party filing the notice shall file a copy of it with the clerk of the court ***from which the claim or cause of action*** is removed. ***Removal of the claim or cause of action*** is effected on such filing of a copy of the notice of removal. The parties shall proceed no further in that court unless and until ***the claim or cause of action*** is remanded.

[18] Local Rule 87.2(a) of the United States District Court for the Southern District of Florida states that:

***General Order of Reference***. Pursuant to 28 U.S.C. §157(a), and the Order of Reference entered March 27, 2012 (see Order of Reference available on Court's website, www.flsd.uscourts.gov), all cases under Title 11, United States Code, and all proceedings under Title 11, United States Code or arising in or related to cases under Title 11, United States Code, are referred to the Bankruptcy Judges for this District and shall be commenced in the Bankruptcy Court pursuant to the Local Bankruptcy Rules. ***The Order of Reference also applies to notices of removal pursuant to 28 U.S.C. § 1452(a), which shall be filed with the Clerk of the Bankruptcy Court for the Division of the District where such civil action is pending. The removed claim or cause of action shall be assigned as an adversary proceeding in the Bankruptcy Court***.

[19] Fed. R. Evid. 201 states that: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Palm Beach County (the "Florida Circuit Court") on **_March 7, 2023_**[20], without leave of this Bankruptcy Court, within the pending action on a Complaint (the "Zankl Guarantee Complaint") brought by DCG, as Plaintiff, against Debtor's non-debtor principals, Scott Zankl ("Scott") and Kristen Zankl ("Kristen") (collectively the "Zankls"), as Defendants, upon their absolute and unconditional guarantees of Debtor's obligations due and owing to the Trust, in Case No. 50-2022-Ca-005035-XXXX-MB (the "State Court Zankl Guarantee Action")[21], to this United States Bankruptcy Court for the Southern District of Florida's West Palm Beach Division (the "Bankruptcy Court"), as referred to it by the United States District Court for the Southern District of Florida (the "District Court"), *but not* the underlying State Court Zankl Guarantee Action and Zankl Guarantee Complaint, and that the Intervention Complaint alone, be referred to the Bankruptcy Court, for adjudication, pursuant to Local Rule 87.2, under Excell's Chapter 7 Bankruptcy Case No. 22-12790-EPK pending before this Bankruptcy Court ("Excell's Bankruptcy Case")[22],

and in support thereof states that:

### The Excell Debt Owing to DCG

1. Excell is in the business of buying and selling for profit high end luxury automobiles

---

[20] After leave was given to the Excell Trustee to file the Intervention Complaint by Order dated January 29, 2023, under Efiling # 165673225, or as D.E. 54 in the State Court Zankl Guarantee Action, the Excell Trustee filed and served the Intervention Complaint on March 7, 2023, under Efiling #168167811 or as D.E. 58 in the State Court Zankl Guarantee Action.

[21] This Bankruptcy Court may, and DCG asks this Bankruptcy Court to, take judicial notice of the State Court Zankl Guarantee Action, and its filing and documents, for the purposes of this Notice of Removal, under Fed. R. Evid. 201, as official actions of the judicial departments of the State of Florida, records of a court of record of the State of Florida, rules of court of the State of Florida, and are otherwise facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.

[22] This Bankruptcy Court may, and DCG asks this Bankruptcy Court to, take judicial notice of the Excell Bankruptcy Case, and its filing and documents, for the purposes of this Notice of Removal, under Fed. R. Evid. 201, as official actions of the judicial departments of the United States, records of a court of record of the United States, rules of court of the United States, and are otherwise facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned

for customers, either off the floor of Excell's showroom, or by locating and brokering the purchase and sale of high-end vehicles at Excell's customer's request in the marketplace for such types of vehicles. When Excell sells a vehicle from dealer to deal it is a wholesale purchase (the "Wholesale Program"), and when it sells a vehicle by locating a vehicle for its customer it has a locate purchase (the "Locate Program").

2.    DCG had previously lent money to Excell, as documented by a series of promissory Notes beginning on September 18, 2019, entered into conjunction with Excell upon two related Profit Participation Agreements under the Wholesale and Locate Programs, in the respective amounts of the Amended Locate Principal Amount of $1,500,000, the Wholesale Principal Amount of $1,850,000, and an additional amount owing from Excell to DCG of a $220,000.00 deposit (the "Deposit Amount") that Scott, on behalf of Excell confirmed to DCG (the "Excell Acknowledgement Letter"), for a total amount due and owing from Excell to it as of the Petition Date, before calculation of interest, of $3,570,000.00 (collectively the "Principal Excell Debt Amount").

3.    The Zankls are the owners, officers and directors of Excell, who executed in favor of DCG absolute and unconditional guarantees of all debts, that Excell owed to DCG.

4.    This process for financing Excell and the Zankls' other business enterprises was initiated by Scott and is consistent with the financing process used and obtained with Excell's and the Zankls' other auto businesses.

**The State Court Guarantee Action**

5.    On May 24, 2022, DCG filed the two count Zankl Guarantee Complaint[23] against the Zankls for breach of contract to enforce the absolute and unconditional personal guarantees that

---

[23] DCG efiled the Complaint, with exhibits, in the State Court Zankl Guarantee Action on May 24, 2022 at Efiling # 150220626. A copy of the Zankl Guarantee Complaint, and the exhibits attached thereto, are attached as Ex. B hereto.

the Zankls executed in favor of DCG with respect to the debts owing to DCG from Debtor, Excell, in the State Court Zankl Guarantee Action.

6. Attached as Exhibits to the Zankl Guarantee Complaint were the following fully executed documents delivered to DCG:

## The Guarantees

A. September 18, 2019 Unconditional Guarantee (Wholesale Program) from Defendants absolutely and unconditionally guaranteeing not only the Wholesale Note, but all debts due and owing from Excell to Plaintiff, attached as Ex. A to the Zankl Guarantee Complaint (the "Wholesale Guarantee");

B. September 18, 2019 Unconditional Guarantee (Locate Program) from Defendants absolutely and unconditionally guaranteeing not only the Locate Note, but all debts due and owing from Excell to Plaintiff, attached as Ex. B to the Zankl Guarantee Complaint (the "Locate Guarantee")(collectively the Wholesale Guarantee and the Locate Guarantee shall be referred to herein as the "Guarantee");

## The Wholesale Note

C. September 18, 2019 Consolidated Promissory Note (Wholesale Program) from Excell memorializing a loan for monies lent from Plaintiff to Excell in the principal amount of $1,850,000 (the "Wholesale Principal Amount"), with interest accruing annually at 1.85% thereunder (the "Wholesale Interest Rate") with a maturity date of September 20, 2020 (the "Original Wholesale Maturity Date"), attached as Ex. C to the Zankl Guarantee Complaint (the "Wholesale Note");

D. November 2, 2020 Extension, Modification and Ratification Agreement (Wholesale Program) from Excell and the Guarantors, which modified and extended the Original Wholesale Maturity Date to October 31, 2021 (the "Final Wholesale Maturity Date"), and ratified the Wholesale Note, and the Wholesale Guarantee, by the Guarantors, attached as Ex. D to the Zankl Guarantee Complaint (the "Wholesale Note Extension") (collectively the Wholesale Note, the Wholesale Guarantee and the Wholesale Note Extension shall be referred to herein as the "Wholesale Loan Documents");

## The Locate Note

E. September 18, 2019 Consolidated Promissory Note (Locate Program) from Excell memorializing a loan for monies lent from Plaintiff to Excell in the principal amount of $1,020,000 (the "Locate Principal Amount"), with interest accruing annually at 1.85% thereunder (the "Locate Interest Rate") (collectively the Wholesale Interest Rate and the Locate Interest Rate shall be referred to herein as the "Notes' Interest Rate"), with a maturity date of May 1, 2020 (the "Original Locate Maturity Date"), attached as Ex. E to the Zankl Guarantee Complaint (the "Original Locate Note");

F. December 5, 2019 Amended and Restated Promissory Note (Locate Program) from Excell in the principal amount of $1,500,000 (the "Amended Locate Principal Amount"), with

interest continuing to accrue annually at the Locate Interest Rate, memorializing not only the Original Locate Note, but an additional advance and loan from Plaintiff to Excell in the principal amount of an additional $480,000, and further extending the Original Locate Maturity Date to May 1, 2020 (the "Amended Locate Maturity Date"), attached as Ex. F to the Zankl Guarantee Complaint (the "Amended Locate Note") (collectively the Wholesale Note and the Amended Locate Note shall be referred to herein as the "Notes");

G.  December 5, 2019 Ratification of the Locate Guarantee from the Guarantors, attached as Ex. G to the Zankl Guarantee Complaint (the "Locate Guarantee Ratification");

H.  November 2, 2020 Extension, Modification and Ratification Agreement (Locate Program) from Excell and the Guarantors, which modified and extended the Amended Locate Maturity Date to October 31, 2021 (the "Final Locate Maturity Date")(collectively the Final Locate Maturity Date and the Final Locate Maturity Date shall be referred to herein as the "Final Maturity Date"), and ratified the Amended Locate Note, and the Locate Guarantee, by the Guarantors, attached as Ex. H to the Zankl Guarantee Complaint (the "Locate Note Extension")(collectively the Wholesale Note Extension and the Locate Note Extension shall be referred to herein as the Note Extensions, while collectively the Locate Note, the Amended Locate Note, the Locate Guarantee,  the Locate Guarantee Ratification and the Locate Note Extension shall be referred to herein as the "Locate Loan Documents", and collectively the Wholesale Loan Documents and the Locate Loan Documents shall be referred to herein as the "Loan Documents").

### The Usury Defense

7.  The Zankls, in the State Court Zankl Guarantee Action, filed their Answer ("Answer")

and asserted their First, and only Affirmative Defense of usury (the "Usury Defense")[24], as:

> "As a first affirmative defense, Defendants state that Plaintiff's loan is civilly and/or criminally "USURIOUS" pursuant to Chapter 687, including §687.02(1), *§687.03*, §687.04, §687.05, §687.06, §687.071, §687.08, §687.125, §687.145 and §687.146, Florida Statutes, and subject to the penalties set forth therein, including loss of interest, payment of double interest, and unenforceability of the Loan Agreement in the Florida courts. ***Interest charged in excess of the legal rate constitutes a usurious loan.***
>
> The elements of a usurious loan are the following:
>
> A. A loan, either expressed or implied;
>
> B. An understanding that the money must be repaid;
>
> C. ***In consideration of the loan, a greater rate of interest than is allowed by law is paid or agreed to be paid by the borrower;*** and

---

[24] The Zankls efiled their Answer and Usury Defense in the Zankl Guarantee Action on June 16, 2022 at Efiling # 151607119. A copy of the Zankls' Answer and Usury Defense, are attached as Ex. C hereto.

D. There is an intent to charge a usurious rate, sometimes referred to as corrupt intent."

**The Partial Summary Judgment Motion Against the Usury Defense**

8.   Thereafter, on August 26, 2022, DCG, moved, in the State Zankl Guarantee Action, pursuant to Fla. R. Civ. P. 1.510, and Fla. Stat. §687.03(4), for partial summary judgment against the Usury Defense (the "Partial Summary Judgment Motion")[25], the hearing of which was heard on October 24, 2022 (the "Partial Summary Judgment Hearing") and at which counsel for the Excell Trustee first appeared and participated[26].

9.   The basis for the Partial Summary Judgment Motion was that despite Defendant, Scott's testimony at his depositions in the Excell Bankruptcy Case, and the State Court Zankl Guarantee Action, that any "profits" paid to DCG by the borrower, Excell, under the agreed upon Transaction Documents with DCG, including the Profit Participation Agreements between DCG and Excell, attached as exhibits to DCG's Proofs of Claims in the Excell Bankruptcy Case, were actually "interest" despite what any of those Loan Documents might say to the contrary, that Fla. Stat. §687.03(4)[27], nonetheless specifically exempts such payments for profits received from the calculation of interest under Florida's Usury Statute, Fla. Stat. Chapter 687, and as a matter of

---

[25] Efiled in the State Court Zankl Guarantee Action under Efiling # 156231117. A copy of the Partial Summary Judgment Motion, and the exhibits attached thereto, are attached as Ex. D hereto.

[26] Efiled in the State Court Zankl Guarantee Action under Efiling # 159067054 & 159520211.

[27] Fla. Stat. §687.03(4), cited by the Zankls in their Usury Defense, goes on to state in pertinent that:

"If, as provided in subsection (3), a loan, advance of money, line of credit, forbearance, or other obligation exceeds $500,000, then, for the purposes of this chapter, _**interest on**_ that loan, advance of money, line of credit, forbearance, or other obligation _**shall not include**_ the value of property charged, reserved, or taken as an advance or forbearance, _**the value of which substantially depends on the success of the venture in which are used the proceeds**_ of that loan, advance of money, line of credit, forbearance, or other obligation. … _**[I]nterests in profits**_, … are examples of the type of property the value of which _**would be excluded from calculation of interest under the preceding sentence**_." (_emphasis added_).

10

law[28] defeats the third element of the Usury Defense that "***In consideration of the loan, a greater rate of interest than is allowed by law is paid or agreed to be paid by the borrower;*** ".

10. After the Partial Summary Judgment Hearing the State Court took the Partial Summary Judgment Motion under advisement, and has yet to rule on the Partial Summary Judgment Motion.

11. Thereafter, the Zankls moved to reopen the Partial Summary Judgment Hearing[29], which motion was denied by an Order of the State Court entered on March 20, 2023[30].

### **The Zankls' Other Cases in Which They Assert the Same Usury Defense**

12. Besides DCG's State Court Zankl Guarantee Action, the Zankls' Counsel in the State Court Zankl Guarantee Action, on behalf of the Zankls, and other businesses they are affiliated, have filed the identical spurious Usury Defense in six (6) other actions pending before different judges in the same State Court (the "Other State Court Actions")[31,] in which five of the Plaintiffs in those cases are also creditors of Excell, who have filed claims in the Excell Bankruptcy Case:

---

[28] Florida's Third District Court of Appeal, in a case almost exactly on point, in *Bailey v. Harrington*, 462 So. 2d 861, 862 (Fla. 3d DCA 1985), interpreted Fla. Stat. §687.03(4), and stated in pertinent part: "The **note in question charged *an interest rate of* 24.99% *which was plainly not usurious as the amount of money loaned herein was in excess of $500,000*.** §§ 687.03(1), 687.071, Fla. Stat. (1983). The ***profit participation provision of the loan agreement did not***, as the trial court found, ***charge any additional interest on the loan. It provided that the lender was entitled to share in 43% of the profits, if any, from the construction project which the loan financed. This payment cannot constitute additional interest on the loan as it was not payable at all if no profits were realized from the project***. Indeed, no profits were realized as the project entirely failed and all agree that no payment whatever is due under the profit participation provision. ***Moreover, this profit participation provision is expressly authorized by our usury statutes as not constituting additional interest***, § 687.03(4), Fla. Stat. (1983), ***and has long been approved by well-established principles of usury law***. *Schwab v. Quitoni*, 362 So.2d 297 (Fla. 3d DCA 1978)." (*emphasis added*). The conclusion reached in *Bailey* has been cited approvingly by Florida's Fourth District Court of Appeal in *Kraft v. Mason*, 668 So. 2d 679, 684 (Fla. 4th DCA 1996), and by Florida's Fifth District Court of Appeal in *Oregrund*, 873 So. 2d at 455-57[28]. Thereafter, the conclusions on this issue reached in both *Bailey* and *Kraft* were cited approvingly by Florida's Supreme Court in *Valliappan v. Cruz*, 917 So. 2d at 259-60.

[29] D.E. 49 in the State Court Zankl Guarantee Action.

[30] D.E. 62 in the State Court Zankl Guarantee Action.

[31] This Bankruptcy Court may, and DCG asks this Bankruptcy Court to, take judicial notice of the Other State Court Actions, and its filing and documents, for the purposes of this Notice of Removal, under Fed. R. Evid. 201, as official actions of the judicial departments of the State of Florida, records of a court of record of the State of Florida, rules of court of the State of Florida, and are otherwise facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.

a. Case No.: 50-2022-CA-003301-XXXXMB – Prestige Luxury Cars, LLC ("Prestige"), v. Excell, the Zankls, and Karma of Broward, Inc. ("Karma Broward"), (the "Prestige Case") [32] [33];

b. Case No.: 50-2022-CA-003547-XXXXMB – Savannah Row Development Company, LLC ("Savannah Row"), v. the Zankls (the "Savannah Row Case") [34] [35];

c. Case No.: 50-2022-CA-003889-XXXXMB – BAL Investments, LLC ("BAL"), v. the Zankls and the Zankl Family 2020 Irrevocable Trust U/A July 27, 2020 (the "BAL Investments Case") [36] [37];

d. Case No.: 50-2022-CA-004086-XXXXMB – Woodside Credit LLC ("Woodside"), v. the Zankls, Karma of Palm Beach, Inc. ("Karma Palm Beach"), and Karma Broward (the "Woodside Credit Case") [38] [39],

e. Case No.: 50-2022-CA-009599-XXXXMB –The Gori Family Limited Partnership (the "Gori Family"), v. the Zankls (the "Gori Family Case") [40] [41]; and,

---

[32] See Zankls' Answer and Affirmative Defense of Usury at D.E. 28 Efiled on August 15, 2022 at Efiling # 155293615 in the Prestige Case.

[33] On May 30, 2022, Prestige filed a claim for $1,320,000.00, of which $440,000.00 is claimed to be secured, in the Excell Bankruptcy Case under Proof of Claim No. 7.

[34] See Zankls' Answer and Affirmative Defense of Usury at D.E. 15 Efiled on November 11, 2022 at Efiling # 161066619 in the Savannah Row Case.

[35] On June 15, 2022, Savannah Row filed a $1,407,708.76 unsecured claim in the Excell Bankruptcy Case under Proof of Claim No. 15.

[36] See Zankls' Answer and Affirmative Defense of Usury at D.E. 28 Efiled on December 7, 2022 at Efiling # 162589232 in the BAL Investments Case.

[37] On June 24, 2022, BAL filed six secured claims for $5,325,479.33, $347,500.00, $369,500.00, $587,500.00, $1,050,000.00 and $837,500.00 in the Excell Bankruptcy Case under Proof of Claim Nos. 29, 30, 31, 32, 33 & 34.

[38] See Zankls' Answer and Affirmative Defense of Usury at D.E. 175 Efiled on December 7, 2022 at Efiling # 162591710 in the Woodside Credit Case.

[39] On June 27, 2022, Woodside filed a $1,211,066.68 unsecured claim in the Excell Bankruptcy Case under Proof of Claim No. 51.

[40] See Zankls' Answer and Affirmative Defense of Usury at D.E. 20 Efiled on December 7, 2022 at Efiling # 162589746 in the Gori Family Case.

[41] On June 22, 2022, the Gori Family filed three unsecured claims for $1.800,000.00, $2,1000,000.00, & $1,500,000.00 in the Excell Bankruptcy Case under Proof of Claim Nos. 18, 19 & 20.

      f.   Case No.: 50-2022-CA-003618-XXXXMB –Interface Properties LLC ("Interface"), v. Karma Palm Beach (the "Interface Properties Case")[42].

### The Excell Bankruptcy Case

13. Scott filed the Voluntary Petition for Chapter 7 relief under 11 U.S.C. §301, in the Excell Bankruptcy Case on Excell's behalf on April 8, 2022 (the "Petition Date") in the Bankruptcy Court of this District Court[43].

14. The Zankls' Counsel in the State Court Zankl Guarantee Action are also Debtor's counsel in the Excell Bankruptcy Case, and are the counsel who filed the Excell Bankruptcy Case on Excell's behalf, and are also representing the Zankls and their other non-debtor entities, Karma Palm Beach and Karma Broward,[44] in the Excell Bankruptcy Case.

15. As a result of the Excell Bankruptcy Case, the adjudication of any claim, or attempt to collect upon a debt by DCG against Debtor, Excell or its assets, was stayed by virtue of 11 U.S.C. §362(a)(2)[45].

### DCG's Proofs of Claims

16. Therefore in order to, and so as to, collect upon the Principal Excell Debt Amount owing to it from Debtor, Excell, and its Chapter Bankruptcy Estate, DCG, as a creditor of Excell, exercised its exclusive right and remedy in order to do so under federal bankruptcy law, pursuant to 11 U.S.C. §501(a), and timely filed three Proofs of Claims Nos. 5, 6 & 17 (collectively "DCG's Proofs of Claims") in the Excell Bankruptcy Case, as represented by the various documents supporting the same, that were attached as exhibits to those DCG's Proofs of Claims, and are

---

[42] See Zankls' Answer and Affirmative Defense of Usury at D.E. 47 Efiled on December 7, 2022 at Efiling # 162590271 in the Interface Properties Case.

[43] D.E. 1 in the Excell Bankruptcy Case.

[44] On June 27, 2022, the Zankls' and Debtor's counsel, filed a $6 million unsecured claim in the Excell Bankruptcy under Proof of Claim No. 53 on behalf of Karma Palm Beach and Karma Broward.

[45] 11 U.S.C. §102(2) states that "'claim against the debtor' includes claim against property of the debtor".

attached as composite Exhibit E hereto.

### The Exclusive Federal Bankruptcy Claims Resolution Process

17. Pursuant to 11 U.S.C. §502(a) & (b), DCG's Proofs of Claims are deemed allowed unless and until a party in interest, including Excell's Trustee, objects to them, and if such claims are objected to DCG is entitled, after notice and a hearing, to an adjudication of DCG's Proofs of Claims before this Bankruptcy Court in the Excell Bankruptcy Case, which Bankruptcy Court shall determine the amount of DCG's Proofs of Claims, and shall allow such claim in such amount, ***unless such claim is unenforceable against Debtor and the property of Debtor's Estate, under any agreement or applicable law***. As such, by federal bankruptcy law, DCG is entitled to a determination by this Bankruptcy Court as to the enforceability of the Loan Documents and Profit Participation Agreements that support DCG's Proofs of Claims, as to both validity and amount, both of which are presumed valid, unless and until objected to by competent evidence to overcome said presumption.

18. Furthermore, pursuant to Fed. R. Bank. P. 3001(f), DCG's Proofs of Claims shall constitute *prima facie evidence* of the ***validity and amount*** of DCG's Proofs of Claims. Thus, any party, including Excell's Trustee, objecting to DCG's Proofs of Claims has the burden of introducing evidence sufficient to rebut the presumption of the validity of DCG's Proofs of Claims. *See generally* Collier on Bankruptcy ¶ 3001.09[2] (16th ed. 2019).

19. As of yet, no party in interest, including Excell's Trustee, has ever filed an Objection to any of DCG's Proofs of Claims.

20. Pursuant to 11 U.S.C. §541(a)(7) & (8), property of the Debtor includes any interest in property that (i) the Excell Trustee recovers under 11 U.S.C. §550, which section governs the Excell Trustee's powers to avoid a transfer that had already been made of Debtor's property, or (ii) preserved for the benefit of or ordered transferred to the estate under 11 U.S.C. §551, which

section governs the Excell Trustee's powers to have ordered returned to Debtor's Estate a transfer that had already been made of Debtor's property.

21. Pursuant to 11 U.S.C. §362(a)(3), any attempt to collect upon property of the Debtor, as defined by 11 U.S.C. §541, including any claimed rights to the return of monies paid by Debtor to DCG, are stayed as to all ***entities***[46], including Excell's Trustee.

22. Fed. R. Bank. P. 7001(1), (9), & (10) requires the Excell Trustee to bring an adversary proceeding in this Bankruptcy Court if it seeks to (i) recover money or property, (ii) obtain a declaratory judgment relating to the same, or (iii) determine a claim or cause of action removed under 28 U.S.C. §1452.

23. Furthermore, Fed. R. Bank. P. 3007(b) dictates that the Excell Trustee shall not include a demand for relief to (i) recover money or property,(ii) obtain a declaratory judgment relating to the same, or (iii) determine a claim or cause of action removed under 28 U.S.C. §1452, in an objection to the allowance of DCG's Proofs of Claims, but may only include the objection in an adversary proceeding.

24. The Excell Trustee has never filed an adversary proceeding ancillary to Excell's Bankruptcy Case, nor sought stay relief in order to do proceed outside of bankruptcy, against DCG to recover the payments Excel made to DCG under the Loan Documents and Profit Participation Agreements, pursuant to 11 U.S.C. §550 or §551, or otherwise.

**The Intervention Complaint**

25. However, while counsel for Excell's Trustee attended the Partial Summary Judgment Hearing on October 24, 2022, Excell's Trustee, later sought leave from the State Court, *yet not*

---

[46] 11 U.S.C. §101(15) states that the "term 'entity' includes ***person, estate, trust***, governmental unit, and United States trustee." 11 U.S.C. §102(3) states that ""'includes' and 'including' are not limiting." Furthermore, 11 U.S.C. §323(a) states that "The ***trustee*** in a case under this title is the representative of the ***estate***.", and pursuant to 11 U.S.C. §321(a) only a "***person*** may serve as ***trustee***."

*relief from this Bankruptcy Court*, on December 8, 2022 to intervene in the State Court Zankl Guarantee Action[47], which leave was granted by way of an Order from the State Court, entered on January 29, 2023[48].

26. The Excell Trustee advised the State Court that it was nothing more than a neutral observer interested in the outcome of the State Court Zankl Guarantee Action, and was merely seeking a declaratory judgment so as to be bound by the outcome in the State Court Zankl Guarantee Action, and was not merely seeking advice from the State Court. What the Excell Trustee eventually plead in the Intervention Complaint was nothing as such, and was way more than an action by a neutral observer, but rather asserted the Excell Trustee as an active participant in the State Court Zankl Guarantee Action, and taking a clear side on behalf of the Zankls in the State Court Zankl Guarantee Action.

27. On **_March 7, 2023_**, Excell's Trustee brought the Intervention Complaint against DCG and the Zankls, attached as Ex. A hereto[49], which DCG seeks removal of alone, and not the balance of the State Court Zankl Guarantee Action, to this Bankruptcy Court.

28. A review of ¶¶8-11, 14-25, & 31-34 of the Intervention Complaint reads as if it is, and is nothing more than a disguised, Objection to DCG's Proofs of Claims, and an attempt by the Excell Trustee to exercise the Excell Trustee's avoidance powers under 11 U.S.C. §550 to recover the payments made by Excell to DCG under the Profit Participation Agreements, which are the subject matter of DCG's Proofs of Claims.

29. The Intervention Complaint at ¶2 seeks from the State Court "By this Complaint, the

---

[47] D.E. 44 in the State Court Zankl Guarantee Action. A copy of the Intervention Motion is attached as Ex. F hereto.

[48] D.E. 54 in the State Court Zankl Guarantee Action. A copy of the Intervention Order is attached as Ex. G hereto.

[49] D.E. 58 in the State Court Zankl Guarantee Action. A copy of the Intervention Complaint is attached as Ex. A hereto.

Chapter 7 Trustee seeks ***a determination of the parties' respective rights pursuant to the Loan***

***Documents***", which are the very Loan Documents which are the subject matter of DCG's Proofs

of Claims Nos. 5 & 6.

30. The Intervention Complaint at ¶3 further seeks from the State Court

"More specifically, and as more fully set forth herein, ***the Chapter 7 Trustee seeks a determination***, inter alia, ***that the Loan Documents charge a usurious rate of interest under Florida law, such that: (1) the Loan Documents are invalid; and (2) all payments received by the DCG Trust on account of the Loan Documents must be returned to the Chapter 7 Trustee for the benefit of the estate of Excell Auto Group, Inc. ("Excell"). Further, the Chapter 7 Trustee seeks costs, interest, attorneys' fees, where provided by law, and reserves its right to seek double the amount paid in interest by Excell and/or other exemplary damages as are permitted by Florida law and where supported by the facts***."

31. Furthermore in the Excell Trustee's prayer for relief she seeks

"WHEREFORE, Plaintiff NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc., respectfully requests that the Court: (a) ***Find and declare that the Loans, as reflected in the Loan Documents, charge a usurious rate of interest*** as more fully described herein; (b) ***Find and declare that the Loans are unenforceable, that the interest charged for the Loans is forfeited, that the Chapter 7 Trustee is entitled to be compensated with double the amount of interest charged, and/or that the Chapter 7 Trustee is entitled to exemplary damages in accordance with the rate charged***; (c) ***Find and declare that the Chapter 7 Trustee is entitled her attorneys' fees and litigation costs incurred in the prosecution of this matter***;"

32. The Intervention Complaint, on its face, is nothing more than a blatant attempt by the

Excell Trustee to forum shop to avoid having this Bankruptcy Court in a claims objection and/ or

adversary proceeding determine the issue of whether the Loans that comprise DCG's Proofs of

Claims are usurious under Fla. Stat. §687.03(4), so as to be able to argue res judicata and collateral

estoppel to this Bankruptcy Court, so that this Bankruptcy Court never has to decide the issue.

33. Excell's Trustee has chosen to engage in such blatant forum shopping because Excell's

Trustee is concerned that this Bankruptcy Court will follow the uniform precedent on the issue as

set forth by the United States District and Bankruptcy Courts for the Southern District of Florida,

at *Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041, 1055 (S.D. Fla. 1998)(J. Gold) [50];

*In re Transcapital Financial Corporation*, 433 B.R. 900, 907-909 (Bankr. S.D. Fla. 2010) (J.

Cristol)[51]; and *Markwood Invs. Ltd. v. Neves (In re Neves)*, 638 B.R. 220, 233 (Bankr. S.D. Fla.

2014)(J. Isicoff)[52], which have each interpreted Fla. Stat. §687.03(4) to mean that:

(a)  notes representing cumulative loans in excess of $500,000 that on their face that charge

less than the highest allowable statutory rate of interest of 24.99%[53] are plainly not usurious under

---

[50]"*Florida courts adhere to Supreme Court precedent, and do not characterize fees received for participating in uncertain transactions as interest for purposes of usury determinations*. *See, e.g., Kraft v. Mason*, 668 So.2d 679, 684 (Fla. 4th DCA 1996). *Repeatedly, those courts have found that an agreement to pay fees is not usurious when payment depends upon a contingency*. *See, e.g., Bailey v. Harrington*, 462 So.2d 861 (Fla. 3d DCA), *review denied*, 472 So.2d 1180 (Fla. 1985)." (*emphasis added*).

[51] "*Florida law is in accord with the basic proposition that a loan or financing agreement will not be deemed to be usurious when repayment is made subject to the occurrence of a contingency*. *See, e.g., Kraft v. Mason*, 668 So. 2d 679, 684 (Fla. 4th DCA 1996) (citing *Bailey v. Harrington*, 462 So.2d 861 (Fla. 3d DCA 1985)) ("*A loan agreement is not usurious when payment depends upon a contingency*."); *Valliappan*, 917 So. 2d at 260 (same); *Beausejour Corp. N.V. v. Offshore Dev. Co., Inc.*, 802 F.2d 1319, 1321 (11th Cir. 1986) (citing *Britz v. Kinsvater*, 351 P.2d 986 (Ariz. 1960)) (same); *L'Arbalete*, 474 F. Supp. 2d at 1324 (same).… *A loan agreement is not usurious when payment depends upon a contingency*. *See, e.g., Bailey v. Harrington*, 462 So.2d 861 (Fla. 3d DCA), *rev. den.*, 472 So.2d 1180 (Fla. 1985), *rev. den. sub nom, N-Site Associates v. Harrington*, 472 So.2d 1181 (Fla. 1985); *Schwab v. Quitoni*, 362 So.2d 297 (Fla. 3d DCA 1978). *Here, when the loan was given, any talk of recovery was pure speculation. Quite possibly, there would be no successful recovery from the anti-trust litigation, and Mason might have collected nothing beyond the payback of the loan. This contingent nature of any "interest" to Mason makes the agreement non-usurious. … Florida Statute § 687.03(4) merely provides that when a loan or financing arrangement includes as part of the consideration to the lender a transfer of property, the value of which "substantially" depends on the success of the venture being financed (e.g., stock or stock options), such property is not counted in calculating the interest on the loan. By way of example, if a lender loans a start-up company $501,000.00 with a stated interest rate of 12%, but also receives stock or stock options in the start-up venture as a part of the consideration for the financing transaction, then the stock options will not be valued in determining whether the de facto interest rate is actually greater than the stated 12% amount.* See Bailey v. Harrington*, 462 So. 2d 861 (*loan in excess of $500,000 with stated interest rate of 24.99% was not usurious — "profit participation" given by lender as additional consideration was not counted in calculating interest under § 687.03(4)*)." (*emphasis added*).

[52] "*[U]nder Florida law, "[a] loan agreement is not usurious when payment depends upon a contingency*." *Kraft v. Mason*, 668 So.2d 679, 684 (Fla. 4th DCA 1996) (citing *Bailey v. Harrington*, 462 So.2d 861 (Fla. 3d DCA) *rev. denied* 472 So.2d 1180 (Fla.1985) ). *See also In re Transcapital Fin. Corp.*, 433 B.R. 900, 908 (Bankr.S.D.Fla.2010) ("*The fact that repayment of the loan is contingent upon the result of the horse race renders the transaction non-usurious even though the lender stands to potentially earn a 50% return in a single day*"). *Where the lending party does not know at the outset the total amount it will receive in return for the extension of credit, the ultimate amount received is not conclusive of corrupt intent*. *Kraft*, 668 So.2d at 684. *See also Velletri v. Dixon*, 44 So.3d 187, 189 (Fla. 2d DCA 2010) ("*Whether a transaction is either civilly or criminally usurious is determined at the inception of the loan*")."(*emphasis added*).

[53] The Notes, supporting DCG's Proof of Claims Nos. 5 & 6, on their face only charge an annual interest rate of 1.85%.

Fla. Stat. §§ 687.03(1) & 687.071,

(b) profit participation provisions of loan agreements do not charge any additional interest on the loan, when they provide that the lender is entitled to share in a large percentage of the profits, if any, from the project which the loan financed since the profit participation payment cannot constitute additional interest on the loan if it was not payable at all if no profits were realized from the project.

(c) profit participation provisions are expressly authorized by Fla. Stat. §687.03(4) as not constituting additional interest, and,

(d) well-established principles of usury law provide that profit participation agreements as a matter of law are merely speculative, uncertain and/ or contingent, and as such do not constitute additional interest in determining whether an unlawful usurious rate of interest has been charged with respect to a loan made in connection with it.

34. To further demonstrate the brazenness of the Excell Trustee's attempts to forum shop the adjudication of these issues away from this Bankruptcy Court's original and exclusive jurisdiction to determine these matters, the Excel Trustee has gone so far and has even taken the extraordinary step to move to intervene to file an Intervention Complaint in the Interface Properties Case, a case in which it has no legal right or interest to intervene in a case between two non-debtors to this action on notes and profit participations solely because the same interpretation of Fla. Stat. §687.03(4) is being considered by the State Court judge in that action. A true and correct of the Excell Trustee's Motion to intervene in the Interface Properties Case, with exhibits, is attached as Exhibit H hereto.

## **Grounds for Removal**

35. Pursuant to the Supremacy Clause of Art. VI, Clause 2 of the United States Constitution, the U.S. Constitution, and all federal statutory and common law are the supreme law

of the land, and preempt the courts, laws and constitutions of the states, including those of the State of Florida, to the contrary.

36. Art. I, §8, Clause 4 of the U.S. Constitution authorizes Congress to enact uniform bankruptcy laws throughout the United States to allow Americans to exercise their bankruptcy rights.

*37.* This Bankruptcy Court, through reference from the District Court[54], has ***original and exclusive federal question subject matter jurisdiction***, pursuant to 28 U.S.C. §1331 & §1334(a), over the Excell Bankruptcy Case, and the Intervention Complaint to be removed to it, which provides that the federal courts, and the bankruptcy courts by reference, have original jurisdiction of all civil actions arising under the U.S. Constitution, or the laws of the United States, including all cases under title 11, that are otherwise known as "core bankruptcy proceedings".

38. Pursuant to 28 U.S.C. §157(b)(3) the determination of whether a proceeding is a core bankruptcy proceeding shall not be made solely on the basis that its resolution may be affected by state law. Notwithstanding the same, pursuant to 28 U.S.C. §157(b)(2)(B), (C) & (E), (i) the allowance or disallowance of DCG's Proof of Claims, (ii) any counterclaims by the Excell Trustee, on behalf of the Excell's Estate against DCG, as having filed DCG's Proof of Claims against Excell's Estate, for the recovery of monies paid to DCG under the documents evidencing DCG's Proof of Claims, and (iii) any orders to have DCG turn over property to Excell's Estate, are each nonetheless specifically enumerated as core bankruptcy proceedings, invoking the original and exclusive jurisdiction of this Bankruptcy Court, through this District Court, over the Intervention Complaint.

39. Furthermore, the Excell Trustee's role and capacity are set forth in 11 U.S.C. §323, and

---

[54] Pursuant to 28 U.S.C. §157(a), and this District Court's Standard Order of Reference of all matters under Title 11, as set forth in this District Court's Local Rule 87.2 (the "Order of Reference"), the Excell Bankruptcy Case has been referred to this Bankruptcy Court for this District Court, before Bankruptcy Judge Erik Kimball.

the Excell Trustee's powers to avoid and require turnover of property that had already been transferred from Debtor to DCG before the Petition Date are set forth in 11 U.S.C. §550 & §551, furthermore invoking the original and exclusive jurisdiction of this Bankruptcy Court, through this District Court, over the Intervention Complaint.

40. While 28 U.S.C. §1441(a) provides that unless otherwise expressly provided by another federal statute, the State Court Zankl Guarantee Action brought in the State Court of which this District Court has original jurisdiction, may be removed by DCG, to this District Court for the district and division embracing the place where State Court Zankl Guarantee Action is pending. Congress, in enacting 28 U.S.C. §1452(a), expressly provided that DCG may remove ***any claim or cause of action, including the Intervention Complaint***, in the State Court Zankl Guarantee Action, without removing the entire State Court Zankl Guarantee Action, to this District Court for the district where the State Court Zankl Guarantee Action is pending, since this District Court has jurisdiction of such claim or cause of action under 11 U.S.C. §1334.

### The Procedural Requirements for Removal Have Been Satisfied

41. As a result of this Notice of Removal being filed pursuant to 28 U.S.C. §1452, the procedural requirements and process for removal of the Intervention Complaint set forth in 28 U.S.C. §1446, are supplanted by Fed. R. Bank. P. 9027, and this District Court's Local Rule 87.2.

42. This Notice of Removal of the Intervention Complaint is timely, pursuant to Fed. R. Bankr. P. 9027(a)(3), since the Intervention Complaint, which first triggered this Bankruptcy Court's original and exclusive subject matter jurisdiction, was not first filed in the State Court Zankl Guarantee Action, and served upon DCG on March 7, 2023, until less than thirty (30) days ago on March 7, 2023, and well after the Petition Date.

43. Normally, this Notice of Removal would have to be filed pursuant to Fed. R. Bank. P. 9027(a) with the clerk of this District Court for the district and division within which is located

the State Court where the State Court Zankl Guarantee Action, is pending, however in this district, the Order of Reference and Local Rule 87.2, requires that this Notice of Removal be filed with the Clerk of this Bankruptcy Court for the division of this district where the State Court Zankl Guarantee Action, is pending, is automatically referred to this Bankruptcy Court, and that the Intervention Complaint is to be assigned as an adversary proceeding in this Bankruptcy Court.

44. In accordance with Fed. R. Bank. P. 9027(a)(1), true and correct copies of the Intervention Complaint, along with the motion and order related to the same, the underlying Complaint and Answer and Affirmative Defenses, and Partial Summary Judgment Motion as to the Usury Defense, in the State Court Zankl Guarantee Action, are provided to this Bankruptcy Court as Exhibits to this Notice of Removal.

45. As a result of having filed DCG's Proofs of Claims, and this Notice of Removal, DCG, pursuant to Fed. R. Bank. P. 9027(a)(1), consents to the entry of final orders or judgment by this Bankruptcy Court on the adjudication of its Proofs of Claims, and any counterclaims by the Excell Trustee thereto, as set forth in the Intervention Complaint.

46. After filing this Notice of Removal, DCG will promptly serve written notice of this Notice of Removal on counsel for the Zankls and the Excell Trustee, in accordance with Fed. R. Bank. P. 9027(b), and file the same with the State Court in accordance with Fed. R. Bank. P. 9027(c).

## **Non-Waiver of Defenses**

47. By removing the Intervention Complaint from the State Court, DCG does not waive any defenses available to DCG against the Intervention Complaint, nor admit any of the allegations in the Intervention Complaint.

WHEREFORE, Creditor, and Defendant in Intervention, DCG prays for (i) removal of *only* the Intervention Complaint, *and not the balance of the causes of action*, in the State Court Zankl Guarantee Action, from the State Court to this Bankruptcy Court, (ii) thereby staying all proceedings in the State Court with respect to *only* the Intervention Complaint, *and not the balance of the causes of action*, in the State Court Zankl Guarantee Action, and (iii) such further relief as this Bankruptcy Court deems just and proper.

Dated:  March 24, 2023

  */s/ Ivan J. Reich*_____
Ivan J. Reich (FBN:  778011)
NASON, YEAGER, GERSON, HARRIS
    & FUMERO, P.A.
750 Park of Commerce Blvd, Suite 210
Boca Raton, FL  33487
Tel:  (561) 982-7114
Fax:  (561) 982-7116
Email:  ireich@nasonyeager.com
            msmith@nasonyeager.com
*Attorneys for Creditor, and Defendant in Intervention,*
*the DCG 2008 Irrevocable Wealth Trust*

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that on this 24th day of March, 2023, a true and accurate copy of the foregoing has been furnished to the Clerk of the Court using CM/ECF electronic service.  I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, and to (a) the Zankls and the Zankls' Counsel via email through the Zankls' Counsel, Harry Winderman, Esq., Weiss, Handler & Cornwell, P.A., 2255 Glades Road, Suite 205E, Boca Raton, Florida 33431, at **HW@whcfla.com**, and (b) the Excell Trustee, and the Excell Trustee's Counsel via email, Michael C. Foster, Esq., Young Foster PLLC, 1600 South Federal Highway, Suite 570 Pompano Beach, Florida 33062, at michael@youngfoster.com,

 /s/  Ivan J. Reich
*Attorneys for Creditor, and Defendant in Intervention, the DCG 2008 Irrevocable Wealth Trust*