Exhibit B

Case 22-12790-EPK    Doc 371-2    Filed 03/24/23    Page 2 of 54

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.

KENNETH J. GOODMAN AS TRUSTEE
OF THE DCG 2008 IRREVOCABLE WEALTH TRUST,

      Plaintiff,

vs.

SCOTT ZANKL and KRISTEN ZANKL,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, the KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST ("Plaintiff" or the "Trust"), by and through its undersigned attorneys, hereby sues the Defendants, SCOTT ZANKL ("Scott") and KRISTEN ZANKL ("Kristen"), (together, "Defendants") and alleges:

### **Parties, Jurisdiction, and Venue**

1. The Trust is a Florida trust under the Florida Trust Code.

2. Upon information and belief, Scott and Kristen reside within Palm Beach County, Florida.

3. This is an action for damages in excess of $30,000, not including attorneys' fees and costs.

4. This matter arises from the Defendants' breach of two Unconditional Guaranties, each of which contains a jurisdiction and venue clause that requires disputes arising from either respective guaranty be brought in Palm Beach County, Florida. *See UNCONDITIONAL GUARANTY (Wholesale Program) dated September of 2019 (the "Wholesale Guaranty") attached as Exhibit "A" at Section 15; see also UNCONDITIONAL GUARANTY (Locate Program) dated September of 2019 (the "Locate Guaranty") attached as Exhibit "B" at Section 15.*

5. This Court therefore has jurisdiction over this matter, and venue is appropriate in this forum.

6. All conditions precedent to bringing this lawsuit have occurred, been excused, or otherwise have been waived.

7. Plaintiff has retained the undersigned for legal representation in this matter and has agreed to pay a reasonable fee in exchange for same.

### General Allegations

#### A. The Wholesale Note and Guaranty

8. On September 18, 2019, a Florida corporation named Excell Auto Group, Inc., ("Excell") knowingly and willingly entered into a Consolidated Promissory Note (Wholesale Program), which had a principal payment sum of $1,850,000.00. *See the "Wholesale Note" attached hereto as **Exhibit "C"**.* The terms and conditions of the Wholesale Note are clear and unambiguous. Those terms and conditions include that the entire principal payment sum of the Wholesale Note and related interest shall be paid by Excell to Plaintiff by September 30, 2020. Plaintiff performed its obligations under the Wholesale Note and the other related loan documents described further herein.

9. The Wholesale Guaranty affirms that Plaintiff provided the financing described in the Wholesale Note, and also that Scott and Kristen each "absolutely, unconditionally, and irrevocably guarantee[] and agree[] to be liable for the full and indefeasible payment and performance when due" under the Wholesale Note. *See* Exhibit "A" at Section 2.

10. On or about November 2, 2020, Plaintiff, Excell, Scott, and Kristen, altogether executed an EXTENSION, MODIFICATION AND RATIFICATION AGREEMENT (Wholesale Program). *See the "Wholesale Note Extension" attached hereto as **Exhibit "D"**.* The Wholesale Note Extension, among other things, extended the maturity date of the Wholesale Note to October 31, 2021 but did not alter the principal amount owed, and those documents may be collectively referred to as the "**Wholesale Note Documents**". It also ratified the Wholesale Guaranty and affirmed that Scott and Kristen each are responsible under the Wholesale Guaranty for any and all performance owed by Excell under any of the Wholesale Note Documents in the event Excell failed to perform its obligations.

11. The Wholesale Note Documents have matured, include a waiver of any notice requirement for a breach of the note for nonpayment, and also provide that all amounts owed are immediately due and payable upon a breach, including for nonpayment.

12. Excell has failed to make any payment towards the principal amount, interest, fees, or other amounts owed under the Wholesale Note Documents, thereby triggering an immediate obligation as of the maturity date for Scott and Kristen, jointly and severally, to perform Excell's obligations under the Wholesale Note Documents.

13. Scott and Kristen each have failed to make any payment to Plaintiff as required under the Wholesale Guaranty.

### B.  The Locate Note and Guaranty

14. On September 18, 2019, Excell knowingly and willingly entered into a CONSOLIDATED PROMISSORY NOTE (LOCATE PROGRAM), which had a principal payment sum of $1,020,000.00.  *See the "Locate Note" attached hereto as **Exhibit "E"**.*  The terms and conditions of the Locate Note are clear and unambiguous.  Those terms and conditions include that the entire principal payment sum of the Locate Note and related interest shall be paid by Excell to Plaintiff by May 1, 2020.  Plaintiff performed its obligations under the Locate Note and the other related loan documents described further herein.

15. The Locate Guaranty affirms that Plaintiff provided the financing described in the Locate Note, and also that Scott and Kristen each "absolutely, unconditionally, and irrevocably guarantee[] and agree[] to be liable for the full and indefeasible payment and performance when due" under the Locate Note.  *See* Exhibit "B" at Section 2.

16. On or about December 5, 2019, Plaintiff and Excell entered into an AMENDED AND RESTATED PROMISSORY NOTE (LOCATE PROGRAM), which, among other things, extended the maturity date of the Locate Note to May 1, 2020 and memorialized an additional advance by Plaintiff of $480,000.00, increasing the total principal to $1,500,000.00.  *See the "Locate Note Amendment" attached hereto as **Exhibit "F"***

17. On or about December 5, 2019, Plaintiff, Scott, and Kristen entered into a RATIFICATION OF UNCONDITIONAL GUARANTY (Locate Program), which, among other things, ratified the Locate Guaranty and affirmed that Scott and Kristen each are responsible under the Locate Guaranty for any and all performance owed by Excell under the Locate Note as modified by the Locate Note Amendment in the event Excell failed to perform its obligations.  *See the "Locate Guaranty Ratification" attached hereto as **Exhibit "G"***

18. On or about November 2, 2020, Plaintiff, Excell, Scott, and Kristen, altogether executed an EXTENSION, MODIFICATION AND RATIFICATION AGREEMENT (Locate

Program).  *See the "Locate Note Extension and Ratification" attached hereto as **Exhibit "H"***. The Locate Note Extension and Ratification, among other things, extended the maturity date of the Locate Note as previously modified as described herein to October 31, 2021, and all of the previously described Locate loan documents may be collectively referred to as the "**Locate Note Documents**".  Under the Locate Note Documents, the principal amount owed is $1,500,000.00, and the Locate Guaranty applies to all of Excell's obligations under the Locate Note Documents.

19. The Locate Note Extension and Ratification also and again ratified the Locate Guaranty and again affirmed that Scott and Kristen each are responsible under the Locate Guaranty for any and all performance owed by Excell under any of the Locate Note Documents in the event Excell failed to perform its obligations.

20. The Locate Note Documents have matured, include a waiver of any notice requirement for a breach of the note for nonpayment, and also provide that all amounts owed are immediately due and payable upon a breach, including for nonpayment.

21. Excell has failed to make any payment towards the principal amount, interest, fees, or other amounts owed under the Locate Note Documents, thereby triggering an immediate obligation as of the maturity date for Scott and Kristen, jointly and severally, to perform Excell's obligations under the Locate Note Documents.

22. Scott and Kristen each have failed to make any payment to Plaintiff as required under the Locate Guaranty.

### COUNT I – BREACH OF WHOLESALE GUARANTY

23. Plaintiff re-alleges counts 1 through 22 as if stated herein.

24. Plaintiff and Defendants knowingly and willingly entered into the Wholesale Guaranty. Its terms and condition are all enforceable under Florida law, and are clear and unambiguous.

25. Defendants have each materially breached the Wholesale Guaranty by failing to pay any of the amounts owed as required, where that amount as of the date of this complaint is $2,043,413.70, which includes interest and principal.  Plaintiff is entitled to this full amount as damages plus interest as it continues to accrue.

26. Plaintiff is also entitled to an award of its incurred attorneys' fees and costs pursuant to Section 2 of the Wholesale Guaranty.

WHEREFORE, Plaintiff demands that judgment be entered in this matter in favor of Plaintiff, including an award of liquidated damages in the amount $2,043,413.70, plus attorneys' fees and costs, court costs, interest, and any additional relief deemed just and proper.

## COUNT II – BREACH OF LOCATE GUARANTY

27. Plaintiff re-alleges counts 1 through 22 as if stated herein.

28. Plaintiff and Defendants knowingly and willingly entered into the Locate Guaranty. Its terms and condition are all enforceable under Florida law, and are clear and unambiguous.

29. Defendants have each materially breached the Locate Guaranty by failing to pay any of the amounts owed as required, where that amount as of the date of this complaint is $1,647,205.48, which includes interest and principal. Plaintiff is entitled to this full amount as damages plus interest as it continues to accrue.

30. Plaintiff is also entitled to an award of its incurred attorneys' fees and costs pursuant to Section 2 of the Locate Guaranty.

WHEREFORE, Plaintiff demands that judgment be entered in this matter in favor of Plaintiff, including an award of liquidated damages in the amount $1,647,205.48, plus attorneys' fees and costs, court costs, interest, and any additional relief deemed just and proper.

Dated: May __24__, 2022

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.

3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
E-mail:      ntennyson@nasonyeager.com
Attorneys for Plaintiff
Florida Bar No.:  73605

By: /s/ *Noah B. Tennyson*
NOAH B. TENNYSON

J:\09Admin\BCH\NCS\Interface Properties v. Zankl\DCG 2008 Complaint.docx/sjj

## UNCONDITIONAL GUARANTY
(Wholesale Program)

THIS UNCONDITIONAL GUARANTY (this "**Guaranty**"), is made effective as of the 18 day of September, 2019 (the "**Effective Date**"), by SCOTT ZANKL and KRISTEN ZANKL (collectively, the "**Guarantor**"), to and for the benefit of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST (the "**Lender**"), and its successors, participants, endorsees and/or assigns.

### R E C I T A L S :

A.      Lender has provided financing to EXCELL AUTO GROUP, INC., a Florida corporation (the "**Borrower**"), in the initial principal amount of $1,850,000.00 (the "**Loan**"), as evidenced by that certain Consolidated Promissory Note dated on or about the date hereof, executed by Borrower in favor of Lender, in the original principal amount of $1,850,000.00 (said note together with all extensions and renewals thereof, amendments thereto and substitutions or replacements therefor is referred to herein as the "**Note**").

B.      The Note is executed and delivered in conjunction with that certain Profit Participation Agreement (Wholesale Program) dated on or about the date hereof, executed by Borrower and Lender ("**Profit Participation Agreement**").

C.      The Note, the Profit Participation Agreement, this Guaranty, and any other documents, certifications, affidavits, guaranties, agreements, UCCs, or any other instruments or papers executed by Borrower, Lender, Guarantor, or any other borrower, guarantor, or other party in connection with the Loan, or as security for the repayment of the Loan, together with all modifications and amendments thereto, are referred to herein collectively as the "**Loan Documents**".

D.      Guarantor acknowledges that Guarantor will benefit from the Loan and the transactions relating thereto and that Lender would not make the Loan to Borrower unless Guarantor executes and delivers this Guaranty to Lender.

NOW THEREFORE, for and in consideration of the foregoing, the sum of TEN AND NO/100 DOLLARS ($10.00), the covenants, promises, undertakings, and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor agrees as follows:

1.      <u>Recitals; Defined Terms</u>. The above stated Recitals are true and correct and are incorporated herein by this reference. All capitalized terms used herein that are not otherwise defined in this Guaranty shall have the same meaning ascribed to such terms in the Loan Documents, as applicable.

2.      <u>Guaranty</u>.

(a)      Guarantor absolutely, unconditionally, and irrevocably guarantees and agrees to be liable for the full and indefeasible payment and performance when due (whether in due course or upon acceleration) of the following (all of which are collectively referred to herein as the "**Guaranteed Obligations**"): (i) all obligations, payments and indebtedness of any kind, nature and description of Borrower to Lender, including, but not limited to, principal, interest, indemnity obligations, fees, costs and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising under the Loan, the Note, or any other Loan Documents, or arising in connection with any other indebtedness owed by Borrower to Lender, whether now existing or hereafter arising, whether arising before, during or after the initial or any renewal term of the Note, modification of the Note, or extension

Exhibit "A"

of the Note or after the commencement of any case with respect to Borrower under the United States Bankruptcy Code or any similar statute (including, without limitation, the payment of interest and other amounts, which would accrue and become due but for the commencement of such case, whether or not such amounts are allowed or allowable in whole or in part in any such case and including loans, interest, fees, costs, expenses and indemnity obligations related thereto and all other obligations of Borrower or its successors to Lender arising after the commencement of such case), whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured, and however acquired by Lender; and (ii) all costs, fees, and expenses (including, without limitation, attorneys' fees and legal expenses) incurred by Lender in connection with the preparation, execution, delivery, recording, administration, collection, liquidation, enforcement and defense of Borrower's obligations, liabilities and indebtedness as aforesaid to Lender, the rights of Lender in any collateral or under this Guaranty and all other Loan Documents, whether such costs, fees, or expenses are incurred before, during or after the initial or any renewal term of the Note and the other Loan Documents, modification of the Note and the other Loan Documents, or extension of the Note and the other Loan Documents or after the commencement of any case with respect to Borrower or Guarantor under the United States Bankruptcy Code or any similar statute.

(b)     This Guaranty is a guaranty of payment and performance and not of collection and Guarantor waives any right it may have to require that any action be brought against Borrower or any other person or entity. In that regard, Guarantor agrees that Lender need not attempt to collect the Guaranteed Obligations from Borrower or any other Obligor (defined below) or to realize upon any collateral, but may require Guarantor to make immediate payment of all of the Guaranteed Obligations to Lender when due, whether by maturity, acceleration or otherwise, or at any time thereafter. Guarantor does hereby agree that if any of the Guaranteed Obligations are not paid or performed by Borrower in accordance with the terms of the Note and the other Loan Documents, then Guarantor shall without demand immediately make such payments or performance. Guarantor hereby acknowledges its approval of the contents, execution and delivery of the Note and the other Loan Documents.

(c)     Lender may apply (and reverse and re-apply) any amounts received in respect of the Guaranteed Obligations to any portion of the Guaranteed Obligations, in whole or in part (including reasonable attorneys' fees and legal expenses incurred by Lender with respect thereto or otherwise chargeable to Borrower or Guarantor) and in such order as Lender may elect.

(d)     Payment by Guarantor shall be made to Lender at the office of Lender as the Guaranteed Obligations become due. Guarantor shall make all payments to Lender on the Guaranteed Obligations free and clear of, and without deduction or withholding for or on account of, any setoff, counterclaim, defense, duties, taxes, levies, imposts, fees, deductions, withholding, restrictions or conditions of any kind. One or more successive or concurrent actions may be brought hereon against Guarantor either in the same action in which Borrower or any other Obligor is sued or in separate actions. In the event any claim or action, or action on any judgment, based on this Guaranty is brought against Guarantor, Guarantor agrees not to deduct, set-off, or seek any counterclaim for or recoup any amounts which are or may be owed by Lender to Guarantor.

(e)     The obligations hereunder are independent of the obligations of Borrower to Lender. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or whether Borrower is joined in any such action.

3.     <u>Waivers and Consents</u>.

(a)     Guarantor hereby waives notice of and hereby consents to acceptance of this Guaranty, the making of loans and advances and providing other financial accommodations to Borrower, and presentment, demand, protest, notice of protest, notice of nonpayment or default and all other notices

2

to which Borrower or Guarantor is entitled are hereby waived by Guarantor. Guarantor also waives notice of and hereby consents to: (i) any amendment, modification, supplement, extension, renewal, or restatement of the Note and any of the other Loan Documents, including, without limitation, extensions of time of payment of or increase or decrease in the amount of any of the Guaranteed Obligations, interest rate, fees, other charges, or any collateral, and the guaranty made herein shall apply to the Note and the other Loan Documents and the Guaranteed Obligations as so amended, modified, supplemented, renewed, restated or extended, increased or decreased, (ii) the taking, exchange, surrender and releasing of collateral or guaranties now or at any time held by or available to Lender for the obligations of Borrower or any other party at any time liable on or in respect of the Guaranteed Obligations or who is the owner of any property which is security for the Guaranteed Obligations (individually, an "**Obligor**", and collectively, the "**Obligors**"), (iii) the exercise of, or refraining from the exercise of any rights against Borrower or any other Obligor or any collateral, (iv) the settlement, compromise or release of, or the waiver of any default with respect to, any of the Guaranteed Obligations, and (v) any financing by Lender of Borrower under Section 364 of the United States Bankruptcy Code or consent to the use of cash collateral by Lender under Section 363 of the United States Bankruptcy Code. Guarantor agrees that the amount of the Guaranteed Obligations shall not be diminished and the liability of Guarantor hereunder shall not be otherwise impaired or affected by any of the foregoing.

(b)     No invalidity, irregularity or unenforceability of all or any part of the Guaranteed Obligations shall affect, impair or be a defense to this Guaranty, nor shall any other circumstance which might otherwise constitute a defense available to or legal or equitable discharge of Borrower in respect of any of the Guaranteed Obligations, or Guarantor in respect of this Guaranty, affect, impair or be a defense to this Guaranty. Without limitation of the foregoing, the liability of Guarantor hereunder shall not be discharged or impaired in any respect by reason of any failure by Lender to perfect or continue perfection of any lien or security interest in any collateral or any delay by Lender in perfecting any such lien or security interest. As to interest, fees and expenses, whether arising before or after the commencement of any case with respect to Borrower under the United States Bankruptcy Code or any similar statute, Guarantor shall be liable therefor, even if Borrower's liability for such amounts does not, or ceases to, exist by operation of law. Guarantor acknowledges that Lender has not made any representations to Guarantor with respect to Borrower or otherwise in connection with the execution and delivery by Guarantor of this Guaranty and Guarantor is not in any respect relying upon Lender or any statements by Lender in connection with this Guaranty.

(c)     Until the Guaranteed Obligations have been paid in full, (i) Guarantor hereby postpones and agrees not to exercise any right of subrogation Guarantor has or may have as against Borrower with respect to the Guaranteed Obligations; (ii) Guarantor hereby postpones and agrees not to exercise any right to proceed against Borrower or any other person or entity now or hereafter liable on account of the obligations evidenced under the Note for contribution, indemnity, reimbursement, or any other similar rights (irrespective of whether direct or indirect, liquidated or contingent); and (iii) Guarantor hereby postpones and agrees not to exercise any right Guarantor may have to proceed or to seek recourse against or with respect to any property or asset of Borrower or any other person or entity now or hereafter liable on account of the Guaranteed Obligations. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor shall not exercise any rights of subrogation, contribution, indemnity, reimbursement or other similar rights against, and shall not proceed or seek recourse against or with respect to any property or asset of Borrower (including after payment in full of the Guaranteed Obligations) if all or any portion of the obligations evidenced under the Note have been satisfied in connection with an exercise of remedies in respect of the stock or other equity interest of Borrower.

(d)     Except the defense of discharge by payment in full, Guarantor hereby waives any and all legal or equitable defenses or claims against Lender to which Guarantor may be entitled, whether now or in the future, with respect to the Loan Documents and this Guaranty, including, but not limited to,

3

any defense based upon an election of remedies by Lender, including without limitation, an election to proceed by non-judicial rather than judicial foreclosure (if the right to proceed by non-judicial foreclosure is available to Lender), and any defense arising by virtue of:

(i)      the dissolution, incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or revocation hereof by any other person or entity;

(ii)      the failure of Lender to file or enforce a claim of any kind against the estate (either in administration, bankruptcy or any other proceeding) of Guarantor or any other person or entity;

(iii)      any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any of the Guaranteed Obligations; or

(iv)      the failure of Lender to record any document or perfect any lien.

Without limiting the generality of the foregoing, Guarantor waives any and all defenses under the Equal Credit Opportunity Act and recognizes that neither Guarantor is independently creditworthy to support the guaranty obligations hereunder with respect to the Loan Documents. Guarantor further recognizes and agrees that they knowingly makes this waiver and agrees that the waiver is plain, clear and unambiguous.

(e)      Guarantor agrees that it will not assert any right of contribution against any other guarantor, if any, of the Guaranteed Obligations, whether the obligations of such other guarantor are evidenced by this Guaranty or other agreement, until such time as all of the obligations and liabilities of such other guarantor to Lender, whether now existing or hereafter arising, shall have been paid in full.

(f)      Guarantor hereby waives any right or claim of right to cause a marshaling of any of the Borrower's assets or the assets of any other party now or hereinafter held as security for any Guaranteed Obligations.

(g)      Guarantor waives, to the fullest extent allowed by law, any and all exemptions afforded under Section 222.11, Florida Statutes.

4.      Subordination. Guarantor subordinates all obligations of Borrower owing to Guarantor, whether now existing or hereafter arising, including, without limitation, any indebtedness arising out of any claim of indemnity, reimbursement, or contribution Guarantor may have against Borrower, to all obligations and indebtedness of Borrower now or hereafter owing to Lender. Guarantor agrees that, until the indefeasible payment in full to Lender of the Guaranteed Obligations, Guarantor will not accept any payment or satisfaction of any kind of any indebtedness of Borrower to Guarantor and Guarantor hereby assigns to Lender all right, title, and interest in such indebtedness, including the right to file proof of claim and to vote thereon in connection with any bankruptcy, insolvency, or reorganization proceeding, and including the right to vote on any plan of arrangement or reorganization. Further, Guarantor agrees that, until the indefeasible payment in full to Lender of the Guaranteed Obligations, if Guarantor should receive any payment, satisfaction, or security for any indebtedness of Borrower to Guarantor, or for any contribution by any other guarantor for payment made hereunder by Guarantor to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of or as security for the indebtedness of Borrower to Lender and, until so delivered, shall be held in trust for Lender as security for the indebtedness of Borrower to Lender.

5.     Reinstatement. If after receipt of any payment of, or proceeds of collateral applied to the payment of, any of the Guaranteed Obligations, Lender is required to surrender or return such payment or proceeds to any person for any reason, then the Guaranteed Obligations intended to be satisfied by such payment or proceeds shall be reinstated and continue and this Guaranty shall continue in full force and effect as if such payment or proceeds had not been received by Lender. Guarantor shall be liable to pay to Lender, and does indemnify and hold Lender harmless for the amount of any payments or proceeds surrendered or returned and Guarantor expressly agrees that in such event the Guarantor shall be liable to Lender, as principal obligor on the Note, to the same extent as if Guarantor had been the original maker thereof. This Section shall remain effective notwithstanding any contrary action which may be taken by Lender in reliance upon such payment or proceeds. This Section shall survive the termination or revocation of this Guaranty.

6.     Omitted.

7.     Application of Payments. Any payment, voluntary or involuntary, received by Lender from Borrower may be applied to the obligations of Borrower to Lender in whatever order Lender elects, and any payment received from any of Guarantor may be applied to any obligations of Borrower to Lender guaranteed hereunder in whatever order Lender elects.

8.     Consideration; No Limitation on Other Guaranties. Guarantor hereby confirms to Lender that Guarantor is a direct or indirect owner of Borrower, or otherwise has an interest in Borrower, such that Guarantor will benefit both directly and indirectly from the Loan and that such benefits constitute fair, reasonable and adequate consideration to Guarantor for Guarantor's agreements hereunder. Nothing contained herein shall be deemed to limit the obligations of Guarantor under any other guaranty of Guarantor in favor of Lender or the rights of Lender under any such guaranty. Guarantor expressly agrees that recourse may be had against Guarantor's property for all obligations hereunder, and further agrees that any and all of Guarantor's properties shall be subject to execution for any judgment rendered against Guarantor on this Guaranty by a court of competent jurisdiction.

9.     Representations and Warranties. Guarantor hereby represents and warrants to Lender as follows:

(a)     Prior Representations. All prior representations made by Guarantor to Lender in connection with the Loan are true and correct in all material respects.

(b)     Authorization. Guarantor has full right, power and authority to enter into this Guaranty and any other Loan Documents to which Guarantor is a party and to carry out its obligations hereunder and thereunder.

(c)     No Conflict. The execution, delivery and performance by Guarantor of this Guaranty and any of the other Loan Documents to which Guarantor is a party will not violate or be in conflict with, result in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of its assets or properties is bound, or any judgment, decree, order or award of any court, governmental body or arbitrator, or any law, rule or regulation applicable to Guarantor, nor require the consent of any third party not otherwise described in this Guaranty.

(d)     Litigation. There are no claims, actions, suits or proceedings pending or threatened against or adversely affecting Guarantor at law or in equity or before or by a governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgment or liability which may result in any material and adverse change in the financial condition

of Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(e)    <u>Insolvency</u>. Guarantor is not insolvent, and will not be rendered insolvent by the execution, delivery, payment and performance of this Guaranty.

(f)    <u>Loan Benefits Guarantor</u>. The Loan confers direct, full, fair, and equivalent benefit on Guarantor.

(g)    <u>Enforceability</u>. This Guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

(h)    <u>Financial Statements</u>. The financial statements and other financial information furnished by Guarantor to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the date hereof and do not contain any untrue statement of a material fact or omit to state a material fact, and Guarantor will furnish to Lender any such other financial statements pertaining to Guarantor as may be required hereunder and under the other Loan Documents or as requested by Lender from time to time.

10.    <u>Reliance on Representations</u>. Guarantor acknowledges that Lender has relied upon Guarantor's representations and warranties herein, has made no independent investigation of the truth thereof and is not charged with any knowledge contrary thereto that may have been received by any officer, director, employee, shareholder, or agent of Lender. Guarantor further acknowledges that Guarantor has not been induced to execute and deliver this Guaranty as a result of, and is not relying upon, any representations, warranties, agreements, or conditions, whether express or implied, written or oral, by Lender or by any officer, director, employee, shareholder, or agent of Lender.

11.    <u>Affirmative Covenants</u>. Guarantor covenants that so long as any liabilities (whether direct or contingent, liquidated or unliquidated) owed to Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations owed to Lender under the Loan Documents, Guarantor shall, unless Lender otherwise consents in writing, comply with and perform the following covenants:

(a)    <u>Punctual Payments</u>. Guarantor shall, subject to the terms and conditions of this Guaranty, punctually pay all principal, interest, fees or other liabilities due under any of the Loan Documents at the times and place and in the manner specified therein.

(b)    <u>Compliance</u>. Guarantor shall comply with the requirements of all laws, rules, regulations and orders of any governmental authority applicable to Guarantor and/or its business.

(c)    <u>Taxes and Other Liabilities</u>. Guarantor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real or personal, including without limitation federal and state income taxes and state and local property taxes and assessments, except (i) such as Guarantor may in good faith contest or as to which a bona fide dispute may arise, and (ii) for which Guarantor has made provision, to Lender's satisfaction, for eventual payment thereof in the event Guarantor is obligated to make such payment.

(d)    <u>Other Financial Information</u>. Guarantor shall promptly provide to Lender, in form and detail satisfactory to Lender, such other information regarding the operation, business affairs, and financial condition of Guarantor which Lender may reasonably request from time to time.

(e)    Further Assurances. Guarantor shall promptly upon the request of Lender do, execute, acknowledge, and deliver any and all such further acts, notices of assignments, transfers, certificates, assurances and other instruments as Lender, may require from time to time in order to (A) carry out more effectively the purposes of the Loan Documents; and (B) assure, convey, grant, assign, transfer, preserve, protect and confirm more effectively to Lender, the rights granted or now or hereafter intended to be granted to Lender under this Guaranty or under any of the other Loan Documents to which Guarantor is or is to be a party.

12.    No Duties of Lender. Lender shall have no duty to Guarantor to monitor the actions or condition of Borrower. It is the intention of the parties that Lender may rely completely on this Guaranty for repayment of the obligations guaranteed hereunder whether or not Borrower is creditworthy and whether or not it would be prudent to make such loans and advances to or on behalf of Borrower or to permit the same to remain outstanding. Lender shall have no duty to Guarantor to ensure the payment and performance by Borrower of its obligations under the Loan Documents.

13.    Acceleration. Notwithstanding anything to the contrary contained herein or any of the terms of any of the other Loan Documents, the liability of Guarantor for the entire Guaranteed Obligations, shall mature and become immediately due and payable without demand or notice, upon the occurrence of any act, condition or event which constitutes an Event of Default.

14.    Default. For purposes of this Guaranty "**Event of Default**" shall mean the occurrence of any of the following events or conditions: (a) The non-payment or non-performance of any of the Guaranteed Obligations when such payment or performance is due; (b) The failure in business, dissolution or termination of existence of Borrower, Guarantor, or any other Obligor; (c) Any petition in bankruptcy is filed by or against Borrower, Guarantor, or any other Obligor, or any proceedings in bankruptcy or under any laws or regulations of any jurisdiction relating to the relief of debtors, being commenced for the relief or readjustment of any indebtedness of Borrower, Guarantor, or any other Obligor, either through reorganization, composition, extension or otherwise; (d) The appointment of a receiver of any property of Borrower, Guarantor, or any other Obligor; (e) Any seizure, vesting or intervention by or under authority of a government, by which the management of Borrower, Guarantor, or any other Obligor is displaced or its authority in the conduct of its business is curtailed; and (f) without limiting any of the foregoing, Borrower defaults in the performance of any of the Borrower's obligations to Lender under the Loan Documents.

15.    Governing Law; Choice of Forum; Service of Process: Jury-Trial Waiver.

(a)    This Guaranty will be construed in accordance with the laws of the State of Florida.  The parties hereby irrevocably consent and submit to the exclusive jurisdiction of the courts in Palm Beach County, Florida and the United States District Court serving Palm Beach County, Florida and waives any objection based on venue or *forum non conveniens* with respect to any action instituted therein arising under this Guaranty.

(b)    GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION BASED UPON, ARISING OUT OF, OR IN CONNECTION WITH, THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS.

16.    Multiple Guarantors. If there is, or at any time hereafter there is, more than one guarantor of the Guaranteed Obligations (or any part thereof), the failure or refusal of any or some of such guarantors to execute this Guaranty, any other guaranty agreement, or from time to time any amendments, modifications, consents, or other instruments related to the this Guaranty, the Loan, the Note, or any of the other Loan Documents shall not affect or impair Guarantor's agreements and obligations under this Guaranty.

17.    Usury. Nothing herein shall be deemed to obligate Guarantor to pay any sum of interest which exceeds the maximum rate of interest which Guarantor may lawfully be required to pay under the laws of the state which govern this instrument or under the applicable laws or regulations of the United States of America. Notwithstanding any other provision of this Guaranty or in any instrument evidencing or securing the Loan, the limitation imposed by this Section shall control and limit the obligations of Guarantor to pay sums of interest guaranteed by this instrument. In the event Guarantor shall pay any sum of interest pursuant to this Guaranty which exceeds such maximum rate, such overcharge shall be applied to reduce any other sum for which Guarantor is obligated hereunder, if such sum is then due and payable, or shall be refunded to Guarantor at the election of Lender.

18.    Notices. All notices, statements, demands or other communications (a "**Notice**") to be given under or pursuant to this Guaranty, or which a party hereto may wish to give, must be in writing, addressed to the other party at its address as provided below, and delivered in person, by electronic mail, overnight delivery service or by certified or registered mail, return receipt requested and postage prepaid. Such notice will be deemed to have been delivered on the date of hand delivery, on the date of delivery by electronic mail transmission (unless such delivery is made on a non-business day or on any day after 5 p.m., in which event delivery will be deemed to have been made on the following business day) or on the day of delivery when sent by overnight delivery service or mailed as aforesaid (which would also be the day receipt is rejected), as the case may be. Any party may from time to time change its address or facsimile number for receipt of notices by sending a notice to the other parties specifying such new information).

Addresses for notices are as follows:

| **To the Guarantor**: | **To the Lender**: |
|---|---|
| Scott Zankl & Kristen Zankl | DCG 2008 Irrevocable Wealth Trust |
| 1001 Clint Moore Road, #101 | c/o Interface Properties |
| Boca Raton, Florida 33487 | Attn: Kenneth J. Goodman, as Trustee |
| E-Mail: Scott@excellauto.com | 1001 East Telecom Drive |
| | Boca Raton, Florida 33432 |
| | E-Mail: ken@interfaceproperties.com |

19.    Time of Essence. Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations hereunder.

20.    Assignment. This Guaranty is assignable by Lender without notice to or the consent of Guarantor, and any assignment hereof by Lender shall operate to vest in such assignee all rights and powers herein conferred upon and granted to Lender. Assignment or transfer of the indebtedness guaranteed hereby shall automatically assign this Guaranty whether or not the Guaranty is expressly referred to in the transfer or assignment and without the necessity of an express assignment.

21.    Severability. This Guaranty is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Guaranty or the application thereof to any person or circumstances shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Guaranty and the application of such provision to other persons or circumstances shall not be affected thereby but instead shall be enforced to the greatest extent permitted by law.

22.    Amendments and Waivers. Neither this Guaranty nor any provision hereof shall be amended, modified, waived or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender. Lender shall not by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any of its rights, powers and/or remedies unless such

waiver shall be in writing and signed by an authorized officer of Lender. Any such waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any right, power and/or remedy on any one occasion shall not be construed as a bar to or waiver of any such right, power and/or remedy which Lender would otherwise have on any future occasion, whether similar in kind or otherwise.

23.    <u>Construction of Agreement</u>.  The parties have participated freely in the negotiation and preparation of this Guaranty, have each been advised to engage independent legal counsel, have each had a reasonable opportunity to have any such independent legal counsel involved in such review and negotiations (or has otherwise knowingly, at its sole election, elected not to engage such independent legal counsel) and each waive any and all rights or remedies it may have or be entitled to deriving from disparity in size or from any significant disparate bargaining position. Furthermore, this Guaranty will not be construed more strongly against either party regardless of which party is responsible for its preparation.

24.    <u>Entire Agreement</u>. This Guaranty represents the entire agreement and understanding of the parties concerning the subject matter hereof, and supersedes all other prior agreements, understandings, negotiations, term sheets, proposal letters, commitment letters, discussions, representations, warranties, commitments, offers and contracts concerning the subject matter hereof, whether oral or written.

25.    <u>Successors and Assigns</u>. This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators, successors and assigns and shall inure to the benefit of Lender and its successors, endorsees, transferees and assigns; provided, however, Guarantor does not have the right to pledge, hypothecation, levy, encumbrance or transfer any of its rights, interests, duties, liabilities and/or obligations under this Guaranty without the prior written consent of Lender, which consent may be granted or withheld in Lender's sole and absolute discretion.

26.    <u>Construction</u>. All references to the term "**Guarantor**" wherever used herein shall mean Guarantor and Guarantor's heirs, executors, administrators, successors and assigns (including, without limitation, any receiver, trustee or custodian for Guarantor or any of Guarantor's assets or Guarantor in Guarantor's capacity as debtor or debtor-in-possession under the United States Bankruptcy Code). All references to the term "**Lender**" wherever used herein shall mean Lender and its successors and assigns and all references to the term "**Borrower**" wherever used herein shall mean Borrower and its successors and assigns (including, without limitation, any receiver, trustee or custodian for Borrower or any of its assets or Borrower in its capacity as debtor or debtor-in-possession under the United States Bankruptcy Code). All references to the term "**Person**" or "**person**" wherever used herein shall mean any individual, sole proprietorship, partnership, corporation (including, without limitation, any corporation which elects subchapter S status under the Internal Revenue Code of 1986, as amended), limited liability company, limited liability partnership, business trust, unincorporated association, joint stock corporation, trust, joint venture or other entity or any government or any agency or instrumentality or political subdivision thereof. All references to the plural shall also mean the singular and to the singular shall also mean the plural.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, Guarantor has executed this Guaranty effective as of the Effective Date.

Signed, sealed and delivered
in the presence of:

GUARANTOR:

WITNESS 1:

_____

Print Name: _____

Name: Scott Zankl

WITNESS 2:

_____

Print Name: _____


WITNESS 1:

_____

Print Name: _____

Name: Kristen Zankl

WITNESS 2:

_____

Print Name: _____

J:\09Admin\BCH\NCS\DCG 2008 Irrevocable Trust\Unconditional Guaranty Excell Auto (Wholesale Program) C1.doc/bch

10

## UNCONDITIONAL GUARANTY
(Locate Program)

THIS UNCONDITIONAL GUARANTY (this "**Guaranty**"), is made effective as of the 18 day of September, 2019 (the "**Effective Date**"), by SCOTT ZANKL and KRISTEN ZANKL (collectively, the "**Guarantor**"), to and for the benefit of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST (the "**Lender**"), and its successors, participants, endorsees and/or assigns.

## R E C I T A L S :

A.    Lender has provided financing to EXCELL AUTO GROUP, INC., a Florida corporation (the "**Borrower**"), in the initial principal amount of $1,020,000.00 (the "**Loan**"), as evidenced by that certain Consolidated Promissory Note dated on or about the date hereof, executed by Borrower in favor of Lender, in the original principal amount of $1,020,000.00 (said note together with all extensions and renewals thereof, amendments thereto and substitutions or replacements therefor is referred to herein as the "**Note**").

B.    The Note is executed and delivered in conjunction with that certain Profit Participation Agreement (Locate Program) dated on or about the date hereof, executed by Borrower and Lender ("**Profit Participation Agreement**").

C.    The Note, the Profit Participation Agreement, this Guaranty, and any other documents, certifications, affidavits, guaranties, agreements, UCCs, or any other instruments or papers executed by Borrower, Lender, Guarantor, or any other borrower, guarantor, or other party in connection with the Loan, or as security for the repayment of the Loan, together with all modifications and amendments thereto, are referred to herein collectively as the "**Loan Documents**".

D.    Guarantor acknowledges that Guarantor will benefit from the Loan and the transactions relating thereto and that Lender would not make the Loan to Borrower unless Guarantor executes and delivers this Guaranty to Lender.

NOW THEREFORE, for and in consideration of the foregoing, the sum of TEN AND NO/100 DOLLARS ($10.00), the covenants, promises, undertakings, and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor agrees as follows:

1.    Recitals; Defined Terms. The above stated Recitals are true and correct and are incorporated herein by this reference. All capitalized terms used herein that are not otherwise defined in this Guaranty shall have the same meaning ascribed to such terms in the Loan Documents, as applicable.

2.    Guaranty.

(a)    Guarantor absolutely, unconditionally, and irrevocably guarantees and agrees to be liable for the full and indefeasible payment and performance when due (whether in due course or upon acceleration) of the following (all of which are collectively referred to herein as the "**Guaranteed Obligations**"): (i) all obligations, payments and indebtedness of any kind, nature and description of Borrower to Lender, including, but not limited to, principal, interest, indemnity obligations, fees, costs and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising under the Loan, the Note, or any other Loan Documents, or arising in connection with any other indebtedness owed by Borrower to Lender, whether now existing or hereafter arising, whether arising before, during or after the initial or any renewal term of the Note, modification of the Note, or extension

Exhibit "B"

of the Note or after the commencement of any case with respect to Borrower under the United States Bankruptcy Code or any similar statute (including, without limitation, the payment of interest and other amounts, which would accrue and become due but for the commencement of such case, whether or not such amounts are allowed or allowable in whole or in part in any such case and including loans, interest, fees, costs, expenses and indemnity obligations related thereto and all other obligations of Borrower or its successors to Lender arising after the commencement of such case), whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured, and however acquired by Lender; and (ii) all costs, fees, and expenses (including, without limitation, attorneys' fees and legal expenses) incurred by Lender in connection with the preparation, execution, delivery, recording, administration, collection, liquidation, enforcement and defense of Borrower's obligations, liabilities and indebtedness as aforesaid to Lender, the rights of Lender in any collateral or under this Guaranty and all other Loan Documents, whether such costs, fees, or expenses are incurred before, during or after the initial or any renewal term of the Note and the other Loan Documents, modification of the Note and the other Loan Documents, or extension of the Note and the other Loan Documents or after the commencement of any case with respect to Borrower or Guarantor under the United States Bankruptcy Code or any similar statute.

(b)     This Guaranty is a guaranty of payment and performance and not of collection and Guarantor waives any right it may have to require that any action be brought against Borrower or any other person or entity. In that regard, Guarantor agrees that Lender need not attempt to collect the Guaranteed Obligations from Borrower or any other Obligor (defined below) or to realize upon any collateral, but may require Guarantor to make immediate payment of all of the Guaranteed Obligations to Lender when due, whether by maturity, acceleration or otherwise, or at any time thereafter. Guarantor does hereby agree that if any of the Guaranteed Obligations are not paid or performed by Borrower in accordance with the terms of the Note and the other Loan Documents, then Guarantor shall without demand immediately make such payments or performance. Guarantor hereby acknowledges its approval of the contents, execution and delivery of the Note and the other Loan Documents.

(c)     Lender may apply (and reverse and re-apply) any amounts received in respect of the Guaranteed Obligations to any portion of the Guaranteed Obligations, in whole or in part (including reasonable attorneys' fees and legal expenses incurred by Lender with respect thereto or otherwise chargeable to Borrower or Guarantor) and in such order as Lender may elect.

(d)     Payment by Guarantor shall be made to Lender at the office of Lender as the Guaranteed Obligations become due. Guarantor shall make all payments to Lender on the Guaranteed Obligations free and clear of, and without deduction or withholding for or on account of, any setoff, counterclaim, defense, duties, taxes, levies, imposts, fees, deductions, withholding, restrictions or conditions of any kind. One or more successive or concurrent actions may be brought hereon against Guarantor either in the same action in which Borrower or any other Obligor is sued or in separate actions. In the event any claim or action, or action on any judgment, based on this Guaranty is brought against Guarantor, Guarantor agrees not to deduct, set-off, or seek any counterclaim for or recoup any amounts which are or may be owed by Lender to Guarantor.

(e)     The obligations hereunder are independent of the obligations of Borrower to Lender. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or whether Borrower is joined in any such action.

3.     <u>Waivers and Consents</u>.

(a)     Guarantor hereby waives notice of and hereby consents to acceptance of this Guaranty, the making of loans and advances and providing other financial accommodations to Borrower, and presentment, demand, protest, notice of protest, notice of nonpayment or default and all other notices

2

to which Borrower or Guarantor is entitled are hereby waived by Guarantor. Guarantor also waives notice of and hereby consents to: (i) any amendment, modification, supplement, extension, renewal, or restatement of the Note and any of the other Loan Documents, including, without limitation, extensions of time of payment of or increase or decrease in the amount of any of the Guaranteed Obligations, interest rate, fees, other charges, or any collateral, and the guaranty made herein shall apply to the Note and the other Loan Documents and the Guaranteed Obligations as so amended, modified, supplemented, renewed, restated or extended, increased or decreased, (ii) the taking, exchange, surrender and releasing of collateral or guaranties now or at any time held by or available to Lender for the obligations of Borrower or any other party at any time liable on or in respect of the Guaranteed Obligations or who is the owner of any property which is security for the Guaranteed Obligations (individually, an "**Obligor**", and collectively, the "**Obligors**"), (iii) the exercise of, or refraining from the exercise of any rights against Borrower or any other Obligor or any collateral, (iv) the settlement, compromise or release of, or the waiver of any default with respect to, any of the Guaranteed Obligations, and (v) any financing by Lender of Borrower under Section 364 of the United States Bankruptcy Code or consent to the use of cash collateral by Lender under Section 363 of the United States Bankruptcy Code. Guarantor agrees that the amount of the Guaranteed Obligations shall not be diminished and the liability of Guarantor hereunder shall not be otherwise impaired or affected by any of the foregoing.

(b)      No invalidity, irregularity or unenforceability of all or any part of the Guaranteed Obligations shall affect, impair or be a defense to this Guaranty, nor shall any other circumstance which might otherwise constitute a defense available to or legal or equitable discharge of Borrower in respect of any of the Guaranteed Obligations, or Guarantor in respect of this Guaranty, affect, impair or be a defense to this Guaranty. Without limitation of the foregoing, the liability of Guarantor hereunder shall not be discharged or impaired in any respect by reason of any failure by Lender to perfect or continue perfection of any lien or security interest in any collateral or any delay by Lender in perfecting any such lien or security interest. As to interest, fees and expenses, whether arising before or after the commencement of any case with respect to Borrower under the United States Bankruptcy Code or any similar statute, Guarantor shall be liable therefor, even if Borrower's liability for such amounts does not, or ceases to, exist by operation of law. Guarantor acknowledges that Lender has not made any representations to Guarantor with respect to Borrower or otherwise in connection with the execution and delivery by Guarantor of this Guaranty and Guarantor is not in any respect relying upon Lender or any statements by Lender in connection with this Guaranty.

(c)      Until the Guaranteed Obligations have been paid in full, (i) Guarantor hereby postpones and agrees not to exercise any right of subrogation Guarantor has or may have as against Borrower with respect to the Guaranteed Obligations; (ii) Guarantor hereby postpones and agrees not to exercise any right to proceed against Borrower or any other person or entity now or hereafter liable on account of the obligations evidenced under the Note for contribution, indemnity, reimbursement, or any other similar rights (irrespective of whether direct or indirect, liquidated or contingent); and (iii) Guarantor hereby postpones and agrees not to exercise any right Guarantor may have to proceed or to seek recourse against or with respect to any property or asset of Borrower or any other person or entity now or hereafter liable on account of the Guaranteed Obligations. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor shall not exercise any rights of subrogation, contribution, indemnity, reimbursement or other similar rights against, and shall not proceed or seek recourse against or with respect to any property or asset of Borrower (including after payment in full of the Guaranteed Obligations) if all or any portion of the obligations evidenced under the Note have been satisfied in connection with an exercise of remedies in respect of the stock or other equity interest of Borrower.

(d)      Except the defense of discharge by payment in full, Guarantor hereby waives any and all legal or equitable defenses or claims against Lender to which Guarantor may be entitled, whether now or in the future, with respect to the Loan Documents and this Guaranty, including, but not limited to,

3

any defense based upon an election of remedies by Lender, including without limitation, an election to proceed by non-judicial rather than judicial foreclosure (if the right to proceed by non-judicial foreclosure is available to Lender), and any defense arising by virtue of:

       (i)     the dissolution, incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or revocation hereof by any other person or entity;

       (ii)    the failure of Lender to file or enforce a claim of any kind against the estate (either in administration, bankruptcy or any other proceeding) of Guarantor or any other person or entity;

       (iii)   any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any of the Guaranteed Obligations; or

       (iv)   the failure of Lender to record any document or perfect any lien.

Without limiting the generality of the foregoing, Guarantor waives any and all defenses under the Equal Credit Opportunity Act and recognizes that neither Guarantor is independently creditworthy to support the guaranty obligations hereunder with respect to the Loan Documents. Guarantor further recognizes and agrees that they knowingly makes this waiver and agrees that the waiver is plain, clear and unambiguous.

       (e)    Guarantor agrees that it will not assert any right of contribution against any other guarantor, if any, of the Guaranteed Obligations, whether the obligations of such other guarantor are evidenced by this Guaranty or other agreement, until such time as all of the obligations and liabilities of such other guarantor to Lender, whether now existing or hereafter arising, shall have been paid in full.

       (f)    Guarantor hereby waives any right or claim of right to cause a marshaling of any of the Borrower's assets or the assets of any other party now or hereinafter held as security for any Guaranteed Obligations.

       (g)    Guarantor waives, to the fullest extent allowed by law, any and all exemptions afforded under Section 222.11, Florida Statutes.

    4.    <u>Subordination</u>. Guarantor subordinates all obligations of Borrower owing to Guarantor, whether now existing or hereafter arising, including, without limitation, any indebtedness arising out of any claim of indemnity, reimbursement, or contribution Guarantor may have against Borrower, to all obligations and indebtedness of Borrower now or hereafter owing to Lender. Guarantor agrees that, until the indefeasible payment in full to Lender of the Guaranteed Obligations, Guarantor will not accept any payment or satisfaction of any kind of any indebtedness of Borrower to Guarantor and Guarantor hereby assigns to Lender all right, title, and interest in such indebtedness, including the right to file proof of claim and to vote thereon in connection with any bankruptcy, insolvency, or reorganization proceeding, and including the right to vote on any plan of arrangement or reorganization. Further, Guarantor agrees that, until the indefeasible payment in full to Lender of the Guaranteed Obligations, if Guarantor should receive any payment, satisfaction, or security for any indebtedness of Borrower to Guarantor, or for any contribution by any other guarantor for payment made hereunder by Guarantor to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of or as security for the indebtedness of Borrower to Lender and, until so delivered, shall be held in trust for Lender as security for the indebtedness of Borrower to Lender.

5.     <u>Reinstatement</u>. If after receipt of any payment of, or proceeds of collateral applied to the payment of, any of the Guaranteed Obligations, Lender is required to surrender or return such payment or proceeds to any person for any reason, then the Guaranteed Obligations intended to be satisfied by such payment or proceeds shall be reinstated and continue and this Guaranty shall continue in full force and effect as if such payment or proceeds had not been received by Lender. Guarantor shall be liable to pay to Lender, and does indemnify and hold Lender harmless for the amount of any payments or proceeds surrendered or returned and Guarantor expressly agrees that in such event the Guarantor shall be liable to Lender, as principal obligor on the Note, to the same extent as if Guarantor had been the original maker thereof. This Section shall remain effective notwithstanding any contrary action which may be taken by Lender in reliance upon such payment or proceeds. This Section shall survive the termination or revocation of this Guaranty.

6.     <u>Omitted</u>.

7.     <u>Application of Payments</u>. Any payment, voluntary or involuntary, received by Lender from Borrower may be applied to the obligations of Borrower to Lender in whatever order Lender elects, and any payment received from any of Guarantor may be applied to any obligations of Borrower to Lender guaranteed hereunder in whatever order Lender elects.

8.     <u>Consideration; No Limitation on Other Guaranties</u>. Guarantor hereby confirms to Lender that Guarantor is a direct or indirect owner of Borrower, or otherwise has an interest in Borrower, such that Guarantor will benefit both directly and indirectly from the Loan and that such benefits constitute fair, reasonable and adequate consideration to Guarantor for Guarantor's agreements hereunder. Nothing contained herein shall be deemed to limit the obligations of Guarantor under any other guaranty of Guarantor in favor of Lender or the rights of Lender under any such guaranty. Guarantor expressly agrees that recourse may be had against Guarantor's property for all obligations hereunder, and further agrees that any and all of Guarantor's properties shall be subject to execution for any judgment rendered against Guarantor on this Guaranty by a court of competent jurisdiction.

9.     <u>Representations and Warranties</u>. Guarantor hereby represents and warrants to Lender as follows:

(a)     <u>Prior Representations</u>. All prior representations made by Guarantor to Lender in connection with the Loan are true and correct in all material respects.

(b)     <u>Authorization</u>. Guarantor has full right, power and authority to enter into this Guaranty and any other Loan Documents to which Guarantor is a party and to carry out its obligations hereunder and thereunder.

(c)     <u>No Conflict</u>. The execution, delivery and performance by Guarantor of this Guaranty and any of the other Loan Documents to which Guarantor is a party will not violate or be in conflict with, result in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of its assets or properties is bound, or any judgment, decree, order or award of any court, governmental body or arbitrator, or any law, rule or regulation applicable to Guarantor, nor require the consent of any third party not otherwise described in this Guaranty.

(d)     <u>Litigation</u>. There are no claims, actions, suits or proceedings pending or threatened against or adversely affecting Guarantor at law or in equity or before or by a governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgment or liability which may result in any material and adverse change in the financial condition

of Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(e)     Insolvency. Guarantor is not insolvent, and will not be rendered insolvent by the execution, delivery, payment and performance of this Guaranty.

(f)     Loan Benefits Guarantor. The Loan confers direct, full, fair, and equivalent benefit on Guarantor.

(g)     Enforceability. This Guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

(h)     Financial Statements. The financial statements and other financial information furnished by Guarantor to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the date hereof and do not contain any untrue statement of a material fact or omit to state a material fact, and Guarantor will furnish to Lender any such other financial statements pertaining to Guarantor as may be required hereunder and under the other Loan Documents or as requested by Lender from time to time.

10.     Reliance on Representations. Guarantor acknowledges that Lender has relied upon Guarantor's representations and warranties herein, has made no independent investigation of the truth thereof and is not charged with any knowledge contrary thereto that may have been received by any officer, director, employee, shareholder, or agent of Lender. Guarantor further acknowledges that Guarantor has not been induced to execute and deliver this Guaranty as a result of, and is not relying upon, any representations, warranties, agreements, or conditions, whether express or implied, written or oral, by Lender or by any officer, director, employee, shareholder, or agent of Lender.

11.     Affirmative Covenants. Guarantor covenants that so long as any liabilities (whether direct or contingent, liquidated or unliquidated) owed to Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations owed to Lender under the Loan Documents, Guarantor shall, unless Lender otherwise consents in writing, comply with and perform the following covenants:

(a)     Punctual Payments. Guarantor shall, subject to the terms and conditions of this Guaranty, punctually pay all principal, interest, fees or other liabilities due under any of the Loan Documents at the times and place and in the manner specified therein.

(b)     Compliance. Guarantor shall comply with the requirements of all laws, rules, regulations and orders of any governmental authority applicable to Guarantor and/or its business.

(c)     Taxes and Other Liabilities. Guarantor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real or personal, including without limitation federal and state income taxes and state and local property taxes and assessments, except (i) such as Guarantor may in good faith contest or as to which a bona fide dispute may arise, and (ii) for which Guarantor has made provision, to Lender's satisfaction, for eventual payment thereof in the event Guarantor is obligated to make such payment.

(d)     Other Financial Information. Guarantor shall promptly provide to Lender, in form and detail satisfactory to Lender, such other information regarding the operation, business affairs, and financial condition of Guarantor which Lender may reasonably request from time to time.

(e) <u>Further Assurances</u>. Guarantor shall promptly upon the request of Lender do, execute, acknowledge, and deliver any and all such further acts, notices of assignments, transfers, certificates, assurances and other instruments as Lender, may require from time to time in order to (A) carry out more effectively the purposes of the Loan Documents; and (B) assure, convey, grant, assign, transfer, preserve, protect and confirm more effectively to Lender, the rights granted or now or hereafter intended to be granted to Lender under this Guaranty or under any of the other Loan Documents to which Guarantor is or is to be a party.

12.     <u>No Duties of Lender</u>. Lender shall have no duty to Guarantor to monitor the actions or condition of Borrower. It is the intention of the parties that Lender may rely completely on this Guaranty for repayment of the obligations guaranteed hereunder whether or not Borrower is creditworthy and whether or not it would be prudent to make such loans and advances to or on behalf of Borrower or to permit the same to remain outstanding. Lender shall have no duty to Guarantor to ensure the payment and performance by Borrower of its obligations under the Loan Documents.

13.     <u>Acceleration</u>. Notwithstanding anything to the contrary contained herein or any of the terms of any of the other Loan Documents, the liability of Guarantor for the entire Guaranteed Obligations, shall mature and become immediately due and payable without demand or notice, upon the occurrence of any act, condition or event which constitutes an Event of Default.

14.     <u>Default</u>. For purposes of this Guaranty "**Event of Default**" shall mean the occurrence of any of the following events or conditions: (a) The non-payment or non-performance of any of the Guaranteed Obligations when such payment or performance is due; (b) The failure in business, dissolution or termination of existence of Borrower, Guarantor, or any other Obligor; (c) Any petition in bankruptcy is filed by or against Borrower, Guarantor, or any other Obligor, or any proceedings in bankruptcy or under any laws or regulations of any jurisdiction relating to the relief of debtors, being commenced for the relief or readjustment of any indebtedness of Borrower, Guarantor, or any other Obligor, either through reorganization, composition, extension or otherwise; (d) The appointment of a receiver of any property of Borrower, Guarantor, or any other Obligor; (e) Any seizure, vesting or intervention by or under authority of a government, by which the management of Borrower, Guarantor, or any other Obligor is displaced or its authority in the conduct of its business is curtailed; and (f) without limiting any of the foregoing, Borrower defaults in the performance of any of the Borrower's obligations to Lender under the Loan Documents.

15.     <u>Governing Law; Choice of Forum; Service of Process; Jury-Trial Waiver</u>.

(a)     This Guaranty will be construed in accordance with the laws of the State of Florida. The parties hereby irrevocably consent and submit to the exclusive jurisdiction of the courts in Palm Beach County, Florida and the United States District Court serving Palm Beach County, Florida and waives any objection based on venue or *forum non conveniens* with respect to any action instituted therein arising under this Guaranty.

(b)     GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION BASED UPON, ARISING OUT OF, OR IN CONNECTION WITH, THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS.

16.     <u>Multiple Guarantors</u>. If there is, or at any time hereafter there is, more than one guarantor of the Guaranteed Obligations (or any part thereof), the failure or refusal of any or some of such guarantors to execute this Guaranty, any other guaranty agreement, or from time to time any amendments, modifications, consents, or other instruments related to the this Guaranty, the Loan, the Note, or any of the other Loan Documents shall not affect or impair Guarantor's agreements and obligations under this Guaranty.

17.    <u>Usury</u>. Nothing herein shall be deemed to obligate Guarantor to pay any sum of interest which exceeds the maximum rate of interest which Guarantor may lawfully be required to pay under the laws of the state which govern this instrument or under the applicable laws or regulations of the United States of America. Notwithstanding any other provision of this Guaranty or in any instrument evidencing or securing the Loan, the limitation imposed by this Section shall control and limit the obligations of Guarantor to pay sums of interest guaranteed by this instrument. In the event Guarantor shall pay any sum of interest pursuant to this Guaranty which exceeds such maximum rate, such overcharge shall be applied to reduce any other sum for which Guarantor is obligated hereunder, if such sum is then due and payable, or shall be refunded to Guarantor at the election of Lender.

18.    <u>Notices</u>. All notices, statements, demands or other communications (a "**Notice**") to be given under or pursuant to this Guaranty, or which a party hereto may wish to give, must be in writing, addressed to the other party at its address as provided below, and delivered in person, by electronic mail, overnight delivery service or by certified or registered mail, return receipt requested and postage prepaid. Such notice will be deemed to have been delivered on the date of hand delivery, on the date of delivery by electronic mail transmission (unless such delivery is made on a non-business day or on any day after 5 p.m., in which event delivery will be deemed to have been made on the following business day) or on the day of delivery when sent by overnight delivery service or mailed as aforesaid (which would also be the day receipt is rejected), as the case may be. Any party may from time to time change its address or facsimile number for receipt of notices by sending a notice to the other parties specifying such new information).

Addresses for notices are as follows:

**To the Guarantor**:
Scott Zankl & Kristen Zankl
1001 Clint Moore Road, #101
Boca Raton, Florida 33487
E-Mail: Scott@excellauto.com

**To the Lender**:
DCG 2008 Irrevocable Wealth Trust
c/o Interface Properties
Attn: Kenneth J. Goodman, as Trustee
1001 East Telecom Drive
Boca Raton, Florida 33432
E-Mail: ken@interfaceproperties.com

19.    <u>Time of Essence</u>. Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations hereunder.

20.    <u>Assignment</u>. This Guaranty is assignable by Lender without notice to or the consent of Guarantor, and any assignment hereof by Lender shall operate to vest in such assignee all rights and powers herein conferred upon and granted to Lender. Assignment or transfer of the indebtedness guaranteed hereby shall automatically assign this Guaranty whether or not the Guaranty is expressly referred to in the transfer or assignment and without the necessity of an express assignment.

21.    <u>Severability</u>. This Guaranty is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Guaranty or the application thereof to any person or circumstances shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Guaranty and the application of such provision to other persons or circumstances shall not be affected thereby but instead shall be enforced to the greatest extent permitted by law.

22.    <u>Amendments and Waivers</u>. Neither this Guaranty nor any provision hereof shall be amended, modified, waived or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender. Lender shall not by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any of its rights, powers and/or remedies unless such

waiver shall be in writing and signed by an authorized officer of Lender. Any such waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any right, power and/or remedy on any one occasion shall not be construed as a bar to or waiver of any such right, power and/or remedy which Lender would otherwise have on any future occasion, whether similar in kind or otherwise.

23.     <u>Construction of Agreement</u>. The parties have participated freely in the negotiation and preparation of this Guaranty, have each been advised to engage independent legal counsel, have each had a reasonable opportunity to have any such independent legal counsel involved in such review and negotiations (or has otherwise knowingly, at its sole election, elected not to engage such independent legal counsel) and each waive any and all rights or remedies it may have or be entitled to deriving from disparity in size or from any significant disparate bargaining position. Furthermore, this Guaranty will not be construed more strongly against either party regardless of which party is responsible for its preparation.

24.     <u>Entire Agreement</u>. This Guaranty represents the entire agreement and understanding of the parties concerning the subject matter hereof, and supersedes all other prior agreements, understandings, negotiations, term sheets, proposal letters, commitment letters, discussions, representations, warranties, commitments, offers and contracts concerning the subject matter hereof, whether oral or written.

25.     <u>Successors and Assigns</u>. This Guaranty shall be binding upon Guarantor and Guarantor's heirs, executors, administrators, successors and assigns and shall inure to the benefit of Lender and its successors, endorsees, transferees and assigns; provided, however, Guarantor does not have the right to pledge, hypothecation, levy, encumbrance or transfer any of its rights, interests, duties, liabilities and/or obligations under this Guaranty without the prior written consent of Lender, which consent may be granted or withheld in Lender's sole and absolute discretion.

26.     <u>Construction</u>. All references to the term "**Guarantor**" wherever used herein shall mean Guarantor and Guarantor's heirs, executors, administrators, successors and assigns (including, without limitation, any receiver, trustee or custodian for Guarantor or any of Guarantor's assets or Guarantor in Guarantor's capacity as debtor or debtor-in-possession under the United States Bankruptcy Code). All references to the term "**Lender**" wherever used herein shall mean Lender and its successors and assigns and all references to the term "**Borrower**" wherever used herein shall mean Borrower and its successors and assigns (including, without limitation, any receiver, trustee or custodian for Borrower or any of its assets or Borrower in its capacity as debtor or debtor-in-possession under the United States Bankruptcy Code). All references to the term "**Person**" or "**person**" wherever used herein shall mean any individual, sole proprietorship, partnership, corporation (including, without limitation, any corporation which elects subchapter S status under the Internal Revenue Code of 1986, as amended), limited liability company, limited liability partnership, business trust, unincorporated association, joint stock corporation, trust, joint venture or other entity or any government or any agency or instrumentality or political subdivision thereof. All references to the plural shall also mean the singular and to the singular shall also mean the plural.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, Guarantor has executed this Guaranty effective as of the Effective Date.

Signed, sealed and delivered
in the presence of:

GUARANTOR:

WITNESS 1:

_____

Print Name: _____

Name: Scott Zankl

WITNESS 2:

_____

Print Name: _____


WITNESS 1:

_____

Print Name: _____

Name: Kristen Zankl

WITNESS 2:

_____

Print Name: _____

THIS PROMISSORY NOTE IS A CONSOLIDATION AND RENEWAL OF (i) THAT CERTAIN PROMISSORY NOTE DATED FEBRUARY 16, 2018, IN THE ORIGINAL PRINCIPAL AMOUNT OF $700,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $700,000.00), (ii) THAT CERTAIN PROMISSORY NOTE DATED MAY 16, 2018, IN THE ORIGINAL PRINCIPAL AMOUNT OF $250,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $250,000.00), (iii) THAT CERTAIN PROMISSORY NOTE DATED OCTOBER 2, 2018, IN THE ORIGINAL PRINCIPAL AMOUNT OF $350,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $350,000.00), (iv) THAT CERTAIN PROMISSORY NOTE DATED DECEMBER 11, 2018, IN THE ORIGINAL PRINCIPAL AMOUNT OF $300,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $300,000.00) AND (iii) THAT CERTAIN PROMISSORY NOTE DATED JANUARY 10, 2019, IN THE ORIGINAL PRINCIPAL AMOUNT OF $250,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $250,000.00) (COLLECTIVELY, THE "**ORIGINAL NOTES**"). THE TERMS AND CONDITIONS SET FORTH HEREIN SHALL CONTROL THE OBLIGATIONS OF BORROWER WITH RESPECT TO THE INDEBTEDNESS EVIDENCED BY THE ORIGINAL NOTES. THIS PROMISSORY NOTE DOES NOT EVIDENCE ANY INDEBTEDNESS OF BORROWER IN EXCESS OF THE ORIGINAL NOTES RENEWED HEREBY. BORROWER WARRANTS AND REPRESENTS THAT ALL DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES HAVE BEEN PAID IN CONNECTION WITH THE ORIGINAL NOTES. ACCORDINGLY, NO ADDITIONAL DOCUMENTARY STAMP TAXES OR INTANGIBLE TAXES ARE DUE IN CONNECTION WITH THIS PROMISSORY NOTE.

## CONSOLIDATED PROMISSORY NOTE
### (WHOLESALE PROGRAM)

U.S. $1,850,000.00

Boca Raton, Florida
September _____, 2019

The undersigned maker (individually and collectively, "**Borrower**") jointly and severally, if applicable, promises to pay to the order of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST, its successors and/or assigns ("**Lender**"), at 1001 East Telecom Drive, Boca Raton, Florida 33432, or such other place as it may designate from time to time, the principal sum of $1,850,000.00 ("**Loan**" or "**Loan Proceeds**"), or so much thereof as shall have been advanced from time to time by Lender to Borrower, together with interest accruing thereon from the date hereof at the rate and time hereinafter provided.

Interest (computed on the basis of a 360-day year for the actual number of days elapsed) on the outstanding balance of principal evidenced by this Note shall accrue interest at an annual interest rate equal to 1.85%, which annual interest rate is equal to the applicable federal rate for loans with a maturity of less than three years on the date of this Note. Unless otherwise due and payable by Borrower to Lender prior to the Maturity Date (as herein defined) in accordance with the terms an conditions of this Note and/or any of the other Documents (as hereinafter defined), the entire outstanding principal balance, together with accrued but unpaid interest and all other amounts due and payable under this Note, will be due and payable by Borrower to Lender on September 30, 2020 ("**Maturity Date**"), all without notice or demand and with time being of the essence. This Note may be prepaid in part or in full at any time without prior notice, and, in the event of any prepayment of this Note, there will be no additional fee for such prepayment.

This Note is executed and delivered in conjunction with that certain Profit Participation Agreement (Wholesale Program) dated of even date herewith between Borrower and Lender ("**Wholesale Program Profit Participation Agreement**").

As material consideration for, and as an inducement to, Lender making this loan to Borrower, Borrower warrants and represents to, and otherwise for the benefit of, Lender, and otherwise covenants, as and where applicable, as to the following:

1

Exhibit "C"

(1)      Borrower will use the Loan Proceeds solely and exclusively for the purchase and sale of vehicles in connection with Borrower's Wholesale Program (as defined in the Wholesale Program Profit Participation Agreement).

(2)      Borrower is a corporation that is duly formed and validly existing under the laws of the State of Florida, is in good standing and is otherwise authorized to transact business in the State of Florida.

(3)      Neither Borrower nor any person, group, entity or nation that Borrower is acting, directly or indirectly for, or on behalf of, is named by any Executive Order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person," or is otherwise a banned or blocked person, group, entity, or nation pursuant to any law that is enforced or administered by the Office of Foreign Assets Control, and Borrower is not engaging in the transactions contemplated by the Documents (as hereinafter defined), directly or indirectly, on behalf of, or instigating or facilitating the transactions contemplated by the Documents, directly or indirectly, on behalf of, any such person, group, entity or nation; and Borrower is not, and shall not become, a person or entity whose activities are regulated by the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders thereunder.

(4)      Borrower has all requisite power and authority, acting alone and without the consent or joinder of any other party, (a) to enter into, execute and deliver, as and where applicable, the Note, the Wholesale Program Profit Participation Agreement and all other documents and agreements entered into, executed and/or otherwise delivered by, or on behalf of, Borrower in connection with the Loan (the Note, Wholesale Program Profit Participation Agreement and all such other documents and agreements being sometimes herein collectively referred to as "**Documents**") and (b) to perform and otherwise carry out all the obligations, transactions and agreements contemplated in the Documents.

(5)      The Documents have been approved by those persons having proper authority, and to the best of Borrower's knowledge are in all respects legal, valid and binding according to their terms.

(6)      Neither the entering into, execution and/or delivery of the Documents nor the performance or consummation of any of the obligations and transactions of Borrower under or otherwise contemplated by the Documents will result in any breach of, or constitute a default under, any lease, bank loan or credit agreement, or other instrument to which Borrower is a party or by which it may be bound or affected (including, without limitation, any loan(s) obtained by, and respective loan documents executed, entered into and/or otherwise delivered by or on behalf of, Borrower or any affiliate of Borrower from and to, respectively, SEASIDE NATIONAL BANK & TRUST, a national banking association, its successors and/or assigns ("**SNBT**").  In connection with the foregoing, Borrower warrants and represents that it has advised SNBT of, and SNBT has consented to, Borrower entering into, executing and delivering the Documents and performing or consummating the obligations and transactions of Borrower under or otherwise contemplated by the Documents.

(7)      There are no judgements against Borrower and Borrower has not received notice of any, and there are no actions, suits or proceedings pending in any court or before or by an arbitration tribunal or regulatory commission, department or agency or otherwise threatened which in any case, if adversely determined, could have an adverse effect on condition or operation of the Wholesale Program or would adversely affect the ability of Borrower to perform and otherwise consummate any of its obligations and transactions under or otherwise contemplated by the Documents.

(8)     No petition in bankruptcy (voluntary or otherwise), assignment for the benefit of creditors, or petition seeking reorganization or arrangement or other action under Federal or state bankruptcy law is pending against Borrower, and Borrower has not made an assignment for the benefit of creditors or admitted in writing its inability to pay its debts as they mature.

(9)     Borrower has participated freely in the negotiation and preparation of this Note and the other Documents, has been advised to engage independent legal counsel, has had a reasonable opportunity to have any such independent legal counsel involved in such review and negotiations (or has otherwise knowingly, at its sole election, elected not to engage such independent legal counsel) and waives any and all rights or remedies it may have or be entitled to deriving from disparity in size or from any significant disparate bargaining position in relation to Lender.

(10)    For each calendar year occurring during the term of this Note, Borrower will deliver to Lender a true, correct and complete copy of Borrower's federal tax return no later than five (5) business days after such federal tax return is filed with the Internal Revenue Service (which obligation shall survive the Maturity Date as to any unfiled, as of the Maturity Date, federal tax return applicable to a calendar year occurring during the term of this Note).

The occurrence of any one or more of the following events, circumstances or conditions shall, at the sole election of Lender, constitute a default hereunder: (a) failure of Borrower to pay to Lender, within five (5) days after the same shall have become due and payable in accordance with the Note and/or any other Documents (as applicable), any principal, interest and/or other amounts due under this Note and/or any other of the Documents, respectively, or any fees owing to Lender; provided, however, there will be no cure or grace period in respect to the failure of Borrower to pay Lender the entire outstanding principal balance, together with accrued but unpaid interest and all other amounts due and payable under this Note, on the Maturity Date; (b) If any warranty or representation made by Borrower in this Note or pursuant to the terms of any other Documents shall at any time be false or misleading in any respect; (c) If Borrower shall, for a period of ten (10) days, fail to keep, observe or perform any of the non-monetary terms or covenants contained in this Note or any of the other Documents or is unable or unwilling to meet its obligations thereunder; (d) The occurrence of any one or more event of default under any of the other the Documents; (e) A default by Borrower, any affiliate of Borrower or any officer, director or shareholder of Borrower with respect any other obligation of Borrower, such affiliate and/or such officer, director or shareholder of Borrower to Lender, or any affiliate of Lender, whether or not related to this Agreement; (f) The death or disability of Scott Zankl; (g) Scott Zankl is no longer an officer of, or owns a controlling interest in, Borrower; (h) The pledge, hypothecation, levy, encumbrance or transfer of an ownership interest in Borrower without the prior written consent of Lender; and/or (i) If there is filed by or against Borrower or any Guarantor (as hereinafter defined) a petition in bankruptcy or a petition for the appointment of a receiver or trustee of the assets of Borrower or any Guarantor, and any such petition is not dismissed within thirty (30) days of the date of filing, or if Borrower or any Guarantor files a petition for reorganization under any of the provisions of the Bankruptcy Code or of any similar law, state, federal, or foreign, or if Borrower or any Guarantor makes a general assignment for the benefit of creditors or makes any insolvency assignment or is adjudicated insolvent by any court of competent jurisdiction. At any time after the occurrence of any such event of default, the indebtedness evidenced by this Note and/or any note(s) or other obligation(s) which may be taken in renewal, extension, substitution or modification of all or any part of the indebtedness evidenced thereby and all other obligations of Borrower to Lender howsoever created and existing shall, at the option of Lender in its sole discretion, immediately become due and payable without demand upon or notice to Borrower, and Lender shall be entitled to exercise the other remedies set forth in the Documents, provided by law and/or provided in equity. The remedies of Lender as provided herein, or in the Documents, shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Lender, and may be exercised as often as the occasion thereof shall arise.

3

No release of any party liable upon or in respect of this Note shall release any other such party. No single or partial exercise of any power hereunder or under any instrument or agreement securing or guaranteeing this Note shall preclude other or further exercises thereof or the exercise of any other power. The Lender hereof shall at all times have the right to proceed against Borrower and/or any Guarantor or any portion of the security for payment of this Note in such order and in such manner as the Lender may deem fit, without waiving any rights with respect to any other security or guaranty. No delay or omission on the part of the Lender hereof in exercising any right hereunder shall operate as a waiver of such right or of any right under this Note.

Borrower hereby waives presentment for payment, demand, notice of dishonor and protest and agrees that any collateral, lien or right of setoff securing any indebtedness evidenced by this Note may, from time to time, in whole or in part, be exchanged or released, and any person liable on or with respect to this Note may be released, all without notice to or further reservations of rights against Borrower, any endorser, surety or Guarantor (as hereinafter defined) and all without in any way affecting or releasing the liability of Borrower, any endorser, surety or Guarantor.

Borrower hereby agrees to pay all out-of-pocket costs, expenses and fees, including, without limitation, reasonable attorneys' fees, incurred by Lender in connection with the collection of the indebtedness or other payments evidenced by or owning to Lender in connection with this Note or the other Documents, in enforcing any of the rights, powers, remedies and privileges of Lender hereunder or under the other Documents, or in connection with any further negotiations, modifications, releases, or otherwise incurred by Lender in connection with this Note and/or any of the other Documents. As used in this Note, the term "attorneys' fees" shall mean reasonable charges and expenses for legal services rendered to or on behalf of Lender in connection with the collection of the indebtedness evidenced by this Note at any time whether prior to the commencement of judicial proceedings and/or thereafter at the trial and/or appellate level and/or in pre-judgment and post-judgment or bankruptcy proceedings. Borrower also agrees to pay, prior to delinquency, any and all documentary stamp taxes and intangible taxes arising by reason of the execution and delivery of Original Notes, this Note and the other Documents.

Any notice to the Borrower provided for in this Note shall be given by delivering or mailing such notice by hand delivery, certified mail, return-receipt-requested or Federal Express, addressed to the Borrower at the address provided below in Borrower's signature block, or to such other address as Borrower may designate by notice in writing to the Lender. Any notice to the Lender shall be given by delivering or mailing such notice by hand delivery, certified mail, return-receipt-requested or Federal Express to the Lender at the address stated in the first paragraph of this Note, or at such address as may have been designated by notice to Borrower.

Nothing herein contained, nor in any instrument or transaction related hereto, shall be construed or so operate as to require Borrower, or any person liable for the payment of the sums due pursuant to this Note, to pay interest in an amount or at a rate greater than the highest rate permissible under applicable law as amended from time to time. Should any interest or other charges made by Borrower, or any party liable for the payment of the sums due pursuant to this Note, result in the computation or earning of interest in excess of the highest rate permissible under applicable law, then any and all such excess shall be and the same is hereby waived by Lender, and all such excess shall be paid by Lender to Borrower or to any party liable for the payment of the sums due pursuant to this Note, it being the intent of the parties hereto that under no circumstances shall Borrower or any party liable for the payment of the sums due hereunder, be required to pay interest in excess of the highest rate permissible under applicable law as amended from time to time.

If any installment of interest, principal or principal and interest shall become overdue, in addition to such payment, a "late charge" in the amount of ten percent (10.00%) of such overdue payment shall be paid by Borrower to Lender on demand for the purpose of defraying the expenses incident to handling

such delinquent payments. Furthermore, during the continuation of any default by Borrower in the payment of any installment of interest, principal or principal and interest under this Note or the occurrence of an event of default hereunder or the other Documents, the interest rate provided herein shall be increased to a rate which shall be equal to the maximum rate of interest allowable under the laws of the State of Florida. Borrower hereby irrevocably consents and submits to the exclusive jurisdiction of the courts in Palm Beach County, Florida and the United States District Court serving Palm Beach County, Florida and waives any objection based on venue or *forum non conveniens* with respect to any action instituted therein arising under this Note or any of the other Documents.

To the extent that Lender receives any payment on account of any of Borrower's obligations, and any such payment(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, subordinate and/or required to be repaid to a trustee, receiver or any other person or entity under any bankruptcy act, state or federal law, common law or equitable cause, then, to the extent of such payment(s) received, Borrower's obligations or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment(s) had not been received by Lender and applied on account of Borrower's obligations.

Borrower agrees that this Note shall be deemed to have been made under and shall be governed by the laws of the State of Florida in all respects, including matters of construction, validity and performance. If any provisions of this Note shall be deemed unenforceable under applicable law, such provision shall be ineffective, but only to the extent of such unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the terms and provisions of this Note shall be applicable to and be binding upon each and every maker, endorser, surety, guarantor, all other persons who are or may become liable for the payment hereof and their heirs, personal representatives, successors or assigns; provided, however, in no event will Borrower have the right to pledge, hypothecation, levy, encumbrance or transfer any of its rights, interests, duties, liabilities and/or obligations under this Note and/or the Documents without the prior written consent of Lender, which consent may be granted or withheld in Lender's sole and absolute discretion.

Whenever the context so requires, words used in the singular shall be construed to mean or include the plural and vice versa, and pronouns of any gender shall be construed to mean or include any other gender or genders. Neither this Note nor any term or provision hereof may be altered or amended in any manner except by an instrument in writing signed by the Lender and the Borrower. It is expressly understood and agreed that the Lender shall never be construed for any purpose as a partner, joint venturer, co-principal or associate of the Borrower or of any person or party claiming by, through or under the Borrower in the conduct of their respective businesses.

TIME IS OF THE ESSENCE AS TO EACH PROVISION OF THIS NOTE OR THE OTHER DOCUMENTS WHICH REQUIRES BORROWER TO TAKE ANY ACTION WITHIN A SPECIFIED TIME PERIOD.

BORROWER AND LENDER (BY ACCEPTING THIS NOTE) HEREBY MUTUALLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER AND BASED UPON, ARISING OUT OF, OR IN CONNECTION WITH, THIS NOTE, THE LOAN OR THE OTHER DOCUMENTS SECURING OR EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED BY THIS NOTE.

To further secure Borrower's performance of all of its obligations under this Note, and as an inducement to Lender to enter into this Loan, Borrower will cause Scott Zankl and Kristen Zankl (collectively, "**Guarantor**") to execute and deliver, simultaneously with Borrower's execution and delivery of this Note, an unconditional guaranty that is acceptable to Lender under which Guarantor will

unconditionally guaranty to, and for the benefit of, Lender, its successors and/or assigns, all of Borrower's duties and obligations under this Note and the other Documents.

**[SIGNATURE ON NEXT PAGE]**

**[CONSOLIDATED PROMISSORY NOTE SIGNATURE PAGE]**

Signed, sealed and delivered
in the presence of:

WITNESS 1:

Print Name: _____Kathy Vidpad_____

EXCELL AUTO GROUP, INC., a
Florida corporation

By: _____
Name: Scott Zankl
Title: President

Address of Borrower:
  1001 Clint Moore Road, #101
  Boca Raton, Florida 33487

WITNESS 2:

Print Name: _____Michell Porcelli_____

\\fs1\docs\11985\11985-26414\815767.doc/bchh

7

<u>**EXTENSION, MODIFICATION AND RATIFICATION AGREEMENT**</u>
(Wholesale Program)

THIS EXTENSION, MODIFICATION AND RATIFICATION AGREEMENT ("**Agreement**"), effective as of November ___, 2020 ("**Effective Date**"), is between EXCELL AUTO GROUP, INC., a Florida corporation ("**Company**"), SCOTT ZANKL and KRISTEN ZANKL (collectively, "**Guarantors**") and KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST ("**DCG Trust**", with Company, Guarantors and DCG Trust being sometimes individually referred to as a "**Party**", or collectively as "**Parties**", as the context so requires).

RECITALS:

A.      DCG Trust has previously loaned Company an original principal sum of $1,850,000.00 ("**Loan**"), as evidenced by that certain Consolidated Promissory Note (Wholesale Program) dated September 18, 2019 executed by Company in favor of DCG Trust, its successors and/or assigns ("**Note**").

B.      To secure Company's performance of all of its obligations under the Loan and Loan Documents (which capitalized term, when used in this Agreement, will have the same meaning ascribed to it in the Guaranty (as herein defined)), Guarantors executed and delivered that certain Unconditional Guaranty (Wholesale Program) effective as of September 18, 2019 ("**Guaranty**").

C.      In connection with the Loan, Company and DCG Trust entered into that certain Profit Participation Agreement (Wholesale Program) dated September 18, 2019 ("**Profit Participation Agreement**").

D.      Company and DCG Trust wish to amend the Note and Profit Participation Agreement, and Guarantors wish to ratify, confirm and adopt their duties, responsibilities, liabilities and obligations under the Guaranty, all as hereinafter provided.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, as applicable, agree as follows:

1.      <u>Recitals</u>. The above stated Recitals are true and correct and are incorporated herein by this reference.

2.      <u>Maturity Date/Outside Termination Date</u>. The Maturity Date (as originally defined in the Note) and Outside Termination Date (as originally defined in the Profit Participation Agreement) are each hereby amended and will now mean October 31, 2021.

3.      <u>Ratification of Note/Profit Participation Agreement</u>. In partial consideration of DCG Trust's agreement to enter into this Agreement, Company hereby (a) absolutely, unconditionally and irrevocably ratifies, confirms and adopts all of the terms and conditions of, and all of its duties, responsibilities, warranties, representations, covenants, obligations and liabilities under, each of the Note and Profit Participation Agreement (as amended, modified and ratified by this Agreement) and (b) represents and warrants to, and for the benefit of, DCG Trust that (i) each and every warranty, representation, agreement and other covenant of, or made by, Company under the Note, Profit Participation Agreement and any of the other Loan Documents remain true and correct, in all respects, as of the Effective Date, (ii) Company is not in breach or default under any of the terms and conditions of the Note, Profit Participation Agreement and/or any of the other Loan Documents and (iii) Company does not have any claims or defenses against DCG Trust that could give rise to any defense, offset or counterclaim in connection with the enforcement of the Note, Profit Participation Agreement, Guaranty and/or any of the other Loan Documents (all as amended, modified and ratified by this Agreement).

4.      <u>Ratification of Guaranty</u>. In partial consideration of DCG Trust's agreement to enter into this Agreement, Guarantors hereby absolutely, unconditionally, and irrevocably ratify, confirm and adopt all of the terms and conditions of, and all of their duties, responsibilities, warranties, representations, covenants, obligations and liabilities under, the Guaranty (as amended, modified and ratified by this Agreement), and hereby acknowledge and agree that (a) the Guaranty is in full force and effect and (b) the Guaranty and Guarantors shall continue to guarantee, without limitation,

all of Company's duties, responsibilities, liabilities and obligations with respect to the repayment of Loan and performance under the Note and other Loan Documents (all as amended, modified and supplemented by this Agreement and all as may hereafter be further amended, modified, supplemented, extended, renewed and/or restated). Guarantors hereby further represent and warrant to, and for the benefit of, DCG Trust that (i) each and every warranty, representation, agreement and other covenant of, or made by, Guarantors under the Guaranty remains true and correct, in all respects, as of the Effective Date, (ii) Guarantors are not in breach or default under any of the terms and conditions of the Guaranty and (iii) Guarantors do not have any claims and/or defenses against DCG Trust that could give rise to any defense, offset, claim or counterclaim in connection with the enforcement of the Guaranty (as amended, modified and ratified by this Agreement).

5.    <u>Release</u>. In partial consideration of DCG Trust's agreement to enter into this Agreement, Company and Guarantors hereby forever, irrevocably and unconditionally release and discharge DCG Trust, its agents, trustees, servants, employees, directors, officers, attorneys, affiliates, subsidiaries, successors and assigns, and all persons, firms, corporation and organizations who have acted in its behalf of and from any and all damages, losses, claims, demands, liabilities, obligations, actions, costs, expenses, fees (including, without limitation, attorneys' fees) and causes of action whatsoever which they may have or claim to have as of the date of execution of this Agreement, and whether currently known or unknown, accrued or accrued, and of every nature and extent whatsoever on account of or in any way touching, concerning, arising out of or founded upon the subject Loan, Note, Profit Participation Agreement, Guaranty and/or any of the other Loan Documents, including, but not limited to, all such loss or damage of any kind heretofore sustained, or that may arise as a consequence of the dealings between the parties up to and including the Effective Date.

6.    <u>Miscellaneous</u>. In the event of any conflict between the express terms of this Agreement and the terms of the Note, Profit Participation Agreement and/or other Loan Documents, the express terms of this Agreement shall control. Each Party represents and warrants, on its own respective behalf, that the person signing this Agreement on such Party's behalf is duly authorized to execute and deliver this Agreement, and that this First Agreement constitutes a legal, valid and binding obligation of each such Party. Each Party further represents and warrants, on its own respective behalf, that it has reviewed this Agreement with its legal counsel, or otherwise had an opportunity to review this Agreement with its legal counsel. Therefore, in connection with the foregoing, this Agreement will be interpreted without regard to any presumption or rule requiring construction against the party causing this Agreement to be drafted. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one in the same Agreement. If this Agreement is executed and delivered digitally or electronically (whether by PDF file, DocuSign or otherwise) the digital or electronic copy, respectively, will be treated as an original for all purposes. This Agreement shall become effective and binding only upon execution and delivery of this Agreement by all of the parties hereto.

**[SIGNATURES ON NEXT PAGE]**

Each of Company, Guarantors and DCG Trust has caused this Agreement to be duly executed, which Agreement is effective as of the Effective Date.

**DCG TRUST**:

_____
Kenneth J. Goodman, as Trustee of
the DCG 2008 Irrevocable Wealth Trust

**COMPANY**:

EXCELL AUTO GROUP, INC., a
Florida corporation

By: _____
Name: Scott Zankl
Title: President

**GUARANTORS**:

_____
Name: Scott Zankl

_____
Name: Kristen Zankl

\\NYGW-PBG-FS01\Docs\11985\11985-26414\980219.docx/bch

THIS PROMISSORY NOTE IS A CONSOLIDATION AND RENEWAL OF (i) THAT CERTAIN PROMISSORY NOTE DATED JULY 1, 2019, IN THE ORIGINAL PRINCIPAL AMOUNT OF $520,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $520,000.00), AND (ii) THAT CERTAIN PROMISSORY NOTE DATED SEPTEMBER 4, 2019, IN THE ORIGINAL PRINCIPAL AMOUNT OF $500,000.00 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $500,000.00 (COLLECTIVELY, THE "**ORIGINAL NOTES**"). THE TERMS AND CONDITIONS SET FORTH HEREIN SHALL CONTROL THE OBLIGATIONS OF BORROWER WITH RESPECT TO THE INDEBTEDNESS EVIDENCED BY THE ORIGINAL NOTES. THIS PROMISSORY NOTE DOES NOT EVIDENCE ANY INDEBTEDNESS OF BORROWER IN EXCESS OF THE ORIGINAL NOTES RENEWED HEREBY. BORROWER WARRANTS AND REPRESENTS THAT ALL DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES HAVE BEEN PAID IN CONNECTION WITH THE ORIGINAL NOTES. ACCORDINGLY, NO ADDITIONAL DOCUMENTARY STAMP TAXES OR INTANGIBLE TAXES ARE DUE IN CONNECTION WITH THIS PROMISSORY NOTE.

**CONSOLIDATED PROMISSORY NOTE**
**(LOCATE PROGRAM)**

U.S. $1,020,000.00                                                    Boca Raton, Florida
                                                                       September 18, 2019

   The undersigned maker (individually and collectively, "**Borrower**") jointly and severally, if applicable, promises to pay to the order of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST, its successors and/or assigns ("**Lender**"), at 1001 East Telecom Drive, Boca Raton, Florida 33432, or such other place as it may designate from time to time, the principal sum of $1,020,000.00 ("**Loan**" or "**Loan Proceeds**"), or so much thereof as shall have been advanced from time to time by Lender to Borrower, together with interest accruing thereon from the date hereof at the rate and time hereinafter provided.

   Interest (computed on the basis of a 360-day year for the actual number of days elapsed) on the outstanding balance of principal evidenced by this Note shall accrue interest at an annual interest rate equal to 1.85%, which annual interest rate is equal to the applicable federal rate for loans with a maturity of less than three years on the date of this Note. Unless otherwise due and payable by Borrower to Lender prior to the Maturity Date (as herein defined) in accordance with the terms an conditions of this Note and/or any of the other Documents (as hereinafter defined), the entire outstanding principal balance, together with accrued but unpaid interest and all other amounts due and payable under this Note, will be due and payable by Borrower to Lender on May 1, 2020 ("**Maturity Date**"), all without notice or demand and with time being of the essence. This Note may be prepaid in part or in full at any time without prior notice, and, in the event of any prepayment of this Note, there will be no additional fee for such prepayment.

   This Note is executed and delivered in conjunction with that certain Profit Participation Agreement (Locate Program) dated of even date herewith between Borrower and Lender ("**Locate Program Profit Participation Agreement**").

   As material consideration for, and as an inducement to, Lender making this loan to Borrower, Borrower warrants and represents to, and otherwise for the benefit of, Lender, and otherwise covenants, as and where applicable, as to the following:

     (1) Borrower will use the Loan Proceeds solely and exclusively for the purchase and sale of vehicles in connection with Borrower's Locate Program (as defined in the Locate Program Profit Participation Agreement).

     (2) Borrower is a corporation that is duly formed and validly existing under the laws of the State of Florida, is in good standing and is otherwise authorized to transact business in the State of Florida.

1

(3)     Neither Borrower nor any person, group, entity or nation that Borrower is acting, directly or indirectly for, or on behalf of, is named by any Executive Order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person," or is otherwise a banned or blocked person, group, entity, or nation pursuant to any law that is enforced or administered by the Office of Foreign Assets Control, and Borrower is not engaging in the transactions contemplated by the Documents (as hereinafter defined), directly or indirectly, on behalf of, or instigating or facilitating the transactions contemplated by the Documents, directly or indirectly, on behalf of, any such person, group, entity or nation; and Borrower is not, and shall not become, a person or entity whose activities are regulated by the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders thereunder.

(4)     Borrower has all requisite power and authority, acting alone and without the consent or joinder of any other party, (a) to enter into, execute and deliver, as and where applicable, the Note, the Locate Program Profit Participation Agreement and all other documents and agreements entered into, executed and/or otherwise delivered by, or on behalf of, Borrower in connection with the Loan (the Note, Locate Program Profit Participation Agreement and all such other documents and agreements being sometimes herein collectively referred to as "**Documents**") and (b) to perform and otherwise carry out all the obligations, transactions and agreements contemplated in the Documents.

(5)     The Documents have been approved by those persons having proper authority, and to the best of Borrower's knowledge are in all respects legal, valid and binding according to their terms.

(6)     Neither the entering into, execution and/or delivery of the Documents nor the performance or consummation of any of the obligations and transactions of Borrower under or otherwise contemplated by the Documents will result in any breach of, or constitute a default under, any lease, bank loan or credit agreement, or other instrument to which Borrower is a party or by which it may be bound or affected (including, without limitation, any loan(s) obtained by, and respective loan documents executed, entered into and/or otherwise delivered by or on behalf of, Borrower or any affiliate of Borrower from and to, respectively, SEASIDE NATIONAL BANK & TRUST, a national banking association, its successors and/or assigns ("**SNBT**"). In connection with the foregoing, Borrower warrants and represents that it has advised SNBT of, and SNBT has consented to, Borrower entering into, executing and delivering the Documents and performing or consummating the obligations and transactions of Borrower under or otherwise contemplated by the Documents.

(7)     There are no judgements against Borrower and Borrower has not received notice of any, and there are no actions, suits or proceedings pending in any court or before or by an arbitration tribunal or regulatory commission, department or agency or otherwise threatened which in any case, if adversely determined, could have an adverse effect on condition or operation of the Locate Program or would adversely affect the ability of Borrower to perform and otherwise consummate any of its obligations and transactions under or otherwise contemplated by the Documents.

(8)     No petition in bankruptcy (voluntary or otherwise), assignment for the benefit of creditors, or petition seeking reorganization or arrangement or other action under Federal or state bankruptcy law is pending against Borrower, and Borrower has not made an assignment for the benefit of creditors or admitted in writing its inability to pay its debts as they mature.

(9)     Borrower has participated freely in the negotiation and preparation of this Note and the other Documents, has been advised to engage independent legal counsel, has had a reasonable opportunity to have any such independent legal counsel involved in such review and negotiations (or has

otherwise knowingly, at its sole election, elected not to engage such independent legal counsel) and waives any and all rights or remedies it may have or be entitled to deriving from disparity in size or from any significant disparate bargaining position in relation to Lender.

(10)    For each calendar year occurring during the term of this Note, Borrower will deliver to Lender a true, correct and complete copy of Borrower's federal tax return no later than five (5) business days after such federal tax return is filed with the Internal Revenue Service (which obligation shall survive the Maturity Date as to any unfiled, as of the Maturity Date, federal tax return applicable to a calendar year occurring during the term of this Note).

The occurrence of any one or more of the following events, circumstances or conditions shall, at the sole election of Lender, constitute a default hereunder: (a) failure of Borrower to pay to Lender, within five (5) days after the same shall have become due and payable in accordance with the Note and/or any other Documents (as applicable), any principal, interest and/or other amounts due under this Note and/or any other of the Documents, respectively, or any fees owing to Lender; provided, however, there will be no cure or grace period in respect to the failure of Borrower to pay Lender the entire outstanding principal balance, together with accrued but unpaid interest and all other amounts due and payable under this Note, on the Maturity Date; (b) If any warranty or representation made by Borrower in this Note or pursuant to the terms of any other Documents shall at any time be false or misleading in any respect; (c) If Borrower shall, for a period of ten (10) days, fail to keep, observe or perform any of the non-monetary terms or covenants contained in this Note or any of the other Documents or is unable or unwilling to meet its obligations thereunder; (d) The occurrence of any one or more event of default under any of the other the Documents; (e) A default by Borrower, any affiliate of Borrower or any officer, director or shareholder of Borrower with respect any other obligation of Borrower, such affiliate and/or such officer, director or shareholder of Borrower to Lender, or any affiliate of Lender, whether or not related to this Agreement; (f) The death or disability of Scott Zankl; (g) Scott Zankl is no longer an officer of, or owns a controlling interest in, Borrower; (h) The pledge, hypothecation, levy, encumbrance or transfer of an ownership interest in Borrower without the prior written consent of Lender; and/or (i) If there is filed by or against Borrower or any Guarantor (as hereinafter defined) a petition in bankruptcy or a petition for the appointment of a receiver or trustee of the assets of Borrower or any Guarantor, and any such petition is not dismissed within thirty (30) days of the date of filing, or if Borrower or any Guarantor files a petition for reorganization under any of the provisions of the Bankruptcy Code or of any similar law, state, federal, or foreign, or if Borrower or any Guarantor makes a general assignment for the benefit of creditors or makes any insolvency assignment or is adjudicated insolvent by any court of competent jurisdiction. At any time after the occurrence of any such event of default, the indebtedness evidenced by this Note and/or any note(s) or other obligation(s) which may be taken in renewal, extension, substitution or modification of all or any part of the indebtedness evidenced thereby and all other obligations of Borrower to Lender howsoever created and existing shall, at the option of Lender in its sole discretion, immediately become due and payable without demand upon or notice to Borrower, and Lender shall be entitled to exercise the other remedies set forth in the Documents, provided by law and/or provided in equity. The remedies of Lender as provided herein, or in the Documents, shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Lender, and may be exercised as often as the occasion thereof shall arise.

No release of any party liable upon or in respect of this Note shall release any other such party. No single or partial exercise of any power hereunder or under any instrument or agreement securing or guaranteeing this Note shall preclude other or further exercises thereof or the exercise of any other power. The Lender hereof shall at all times have the right to proceed against Borrower and/or any Guarantor or any portion of the security for payment of this Note in such order and in such manner as the Lender may deem fit, without waiving any rights with respect to any other security or guaranty. No delay or omission on the part of the Lender hereof in exercising any right hereunder shall operate as a waiver of such right or of any right under this Note.

Borrower hereby waives presentment for payment, demand, notice of dishonor and protest and agrees that any collateral, lien or right of setoff securing any indebtedness evidenced by this Note may, from time to time, in whole or in part, be exchanged or released, and any person liable on or with respect to this Note may be released, all without notice to or further reservations of rights against Borrower, any endorser, surety or Guarantor (as hereinafter defined) and all without in any way affecting or releasing the liability of Borrower, any endorser, surety or Guarantor.

Borrower hereby agrees to pay all out-of-pocket costs, expenses and fees, including, without limitation, reasonable attorneys' fees, incurred by Lender in connection with the collection of the indebtedness or other payments evidenced by or owning to Lender in connection with this Note or the other Documents, in enforcing any of the rights, powers, remedies and privileges of Lender hereunder or under the other Documents, or in connection with any further negotiations, modifications, releases, or otherwise incurred by Lender in connection with this Note and/or any of the other Documents. As used in this Note, the term "attorneys' fees" shall mean reasonable charges and expenses for legal services rendered to or on behalf of Lender in connection with the collection of the indebtedness evidenced by this Note at any time whether prior to the commencement of judicial proceedings and/or thereafter at the trial and/or appellate level and/or in pre-judgment and post-judgment or bankruptcy proceedings. Borrower also agrees to pay, prior to delinquency, any and all documentary stamp taxes and intangible taxes arising by reason of the execution and delivery of Original Notes, this Note and the other Documents.

Any notice to the Borrower provided for in this Note shall be given by delivering or mailing such notice by hand delivery, certified mail, return-receipt-requested or Federal Express, addressed to the Borrower at the address provided below in Borrower's signature block, or to such other address as Borrower may designate by notice in writing to the Lender. Any notice to the Lender shall be given by delivering or mailing such notice by hand delivery, certified mail, return-receipt-requested or Federal Express to the Lender at the address stated in the first paragraph of this Note, or at such address as may have been designated by notice to Borrower.

Nothing herein contained, nor in any instrument or transaction related hereto, shall be construed or so operate as to require Borrower, or any person liable for the payment of the sums due pursuant to this Note, to pay interest in an amount or at a rate greater than the highest rate permissible under applicable law as amended from time to time. Should any interest or other charges made by Borrower, or any party liable for the payment of the sums due pursuant to this Note, result in the computation or earning of interest in excess of the highest rate permissible under applicable law, then any and all such excess shall be and the same is hereby waived by Lender, and all such excess shall be paid by Lender to Borrower or to any party liable for the payment of the sums due pursuant to this Note, it being the intent of the parties hereto that under no circumstances shall Borrower or any party liable for the payment of the sums due hereunder, be required to pay interest in excess of the highest rate permissible under applicable law as amended from time to time.

If any installment of interest, principal or principal and interest shall become overdue, in addition to such payment, a "late charge" in the amount of ten percent (10.00%) of such overdue payment shall be paid by Borrower to Lender on demand for the purpose of defraying the expenses incident to handling such delinquent payments. Furthermore, during the continuation of any default by Borrower in the payment of any installment of interest, principal or principal and interest under this Note or the occurrence of an event of default hereunder or the other Documents, the interest rate provided herein shall be increased to a rate which shall be equal to the maximum rate of interest allowable under the laws of the State of Florida. Borrower hereby irrevocably consents and submits to the exclusive jurisdiction of the courts in Palm Beach County, Florida and the United States District Court serving Palm Beach County, Florida and waives any objection based on venue or *forum non conveniens* with respect to any action instituted therein arising under this Note or any of the other Documents.

4

To the extent that Lender receives any payment on account of any of Borrower's obligations, and any such payment(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, subordinate and/or required to be repaid to a trustee, receiver or any other person or entity under any bankruptcy act, state or federal law, common law or equitable cause, then, to the extent of such payment(s) received, Borrower's obligations or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment(s) had not been received by Lender and applied on account of Borrower's obligations.

Borrower agrees that this Note shall be deemed to have been made under and shall be governed by the laws of the State of Florida in all respects, including matters of construction, validity and performance. If any provisions of this Note shall be deemed unenforceable under applicable law, such provision shall be ineffective, but only to the extent of such unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the terms and provisions of this Note shall be applicable to and be binding upon each and every maker, endorser, surety, guarantor, all other persons who are or may become liable for the payment hereof and their heirs, personal representatives, successors or assigns; provided, however, in no event will Borrower have the right to pledge, hypothecation, levy, encumbrance or transfer any of its rights, interests, duties, liabilities and/or obligations under this Note and/or the Documents without the prior written consent of Lender, which consent may be granted or withheld in Lender's sole and absolute discretion.

Whenever the context so requires, words used in the singular shall be construed to mean or include the plural and vice versa, and pronouns of any gender shall be construed to mean or include any other gender or genders. Neither this Note nor any term or provision hereof may be altered or amended in any manner except by an instrument in writing signed by the Lender and the Borrower. It is expressly understood and agreed that the Lender shall never be construed for any purpose as a partner, joint venturer, co-principal or associate of the Borrower or of any person or party claiming by, through or under the Borrower in the conduct of their respective businesses.

TIME IS OF THE ESSENCE AS TO EACH PROVISION OF THIS NOTE OR THE OTHER DOCUMENTS WHICH REQUIRES BORROWER TO TAKE ANY ACTION WITHIN A SPECIFIED TIME PERIOD.

BORROWER AND LENDER (BY ACCEPTING THIS NOTE) HEREBY MUTUALLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER AND BASED UPON, ARISING OUT OF, OR IN CONNECTION WITH, THIS NOTE, THE LOAN OR THE OTHER DOCUMENTS SECURING OR EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED BY THIS NOTE.

To further secure Borrower's performance of all of its obligations under this Note, and as an inducement to Lender to enter into this Loan, Borrower will cause Scott Zankl and Kristen Zankl (collectively, "**Guarantor**") to execute and deliver, simultaneously with Borrower's execution and delivery of this Note, an unconditional guaranty that is acceptable to Lender under which Guarantor will unconditionally guaranty to, and for the benefit of, Lender, its successors and/or assigns, all of Borrower's duties and obligations under this Note and the other Documents.

**[SIGNATURE ON NEXT PAGE]**

**[CONSOLIDATED PROMISSORY NOTE SIGNATURE PAGE]**

Signed, sealed and delivered
in the presence of:

WITNESS 1:

Print Name: Michele Porcelli

WITNESS 2:

Print Name: Kathy Roberts

EXCELL AUTO GROUP, INC., a
Florida corporation

By: _____
Name: Scott Zankl
Title: President

Address of Borrower:
  1001 Clint Moore Road, #101
  Boca Raton, Florida 33487

J:\09Admin\BCH\NCS\DCG 2008 Irrevocable Trust\Consolidated Promissory Note Excell Auto C1 (Current).doc/bch

6

THIS AMENDED AND RESTATED PROMISSORY NOTE AMENDS, RESTATES AND REPLACES, IN ITS ENTIRETY, THAT CERTAIN CONSOLIDATED PROMISSORY NOTE (LOCATE PROGRAM) DATED SEPTEMBER 18, 2019 (OF WHICH THE OUTSTANDING PRINCIPAL BALANCE IS $1,020,000.00) (THE "**2019 NOTE**"). THIS AMENDED AND RESTATED PROMISSORY NOTE IS BEING ISSUED TO MEMORALIZE AN ADDITIONAL ADVANCE BY LENDER TO BORROWER IN THE ORIGINAL PRINCIPAL AMOUNT OF $480,000.00 ("**ADDITIONAL ADVANCE**"). EXCEPT FOR THE ADDITIONAL ADVANCE, THIS AMENDED AND RESTATED PROMISSORY NOTE DOES NOT EVIDENCE ANY OTHER INDEBTEDNESS OF BORROWER IN EXCESS OF THE 2019 NOTE.  BORROWER WARRANTS AND REPRESENTS THAT IT WILL TIMELY PAY ALL DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES DUE AND PAYABLE BY REASON OF THE ADDITIONAL ADVANCE, AND OTHERWISE HAS PAID ALL OTHER DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES DUE AND PAYABLE IN CONNECTION WITH 2019 NOTE. A TRUE AND CORRECT COPY OF THE 2019 NOTE IS ATTACHED TO THIS AMENDED AND RESTATED PROMISSORY NOTE.

**AMENDED AND RESTATED PROMISSORY NOTE**
**(LOCATE PROGRAM)**

U.S. $1,500,000.00                                        Boca Raton, Florida
                                                         December 5, 2019

The undersigned maker (individually and collectively, "**Borrower**") jointly and severally, if applicable, promises to pay to the order of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST, its successors and/or assigns ("**Lender**"), at 1001 East Telecom Drive, Boca Raton, Florida 33432, or such other place as it may designate from time to time, the principal sum of $1,500,000.00 ("**Loan**" or "**Loan Proceeds**"), or so much thereof as shall have been advanced from time to time by Lender to Borrower, together with interest accruing thereon from the date hereof at the rate and time hereinafter provided.

Interest (computed on the basis of a 360-day year for the actual number of days elapsed) on the outstanding balance of principal evidenced by this Amended and Restated Promissory Note ("**Note**") shall accrue interest at an annual interest rate equal to 1.85%, which annual interest rate is equal to the applicable federal rate for loans with a maturity of less than three years on the date of this Note.  Unless otherwise due and payable by Borrower to Lender prior to the Maturity Date (as herein defined) in accordance with the terms an conditions of this Note and/or any of the other Documents (as hereinafter defined), the entire outstanding principal balance, together with accrued but unpaid interest and all other amounts due and payable under this Note, will be due and payable by Borrower to Lender on May 1, 2020 ("**Maturity Date**"), all without notice or demand and with time being of the essence. This Note may be prepaid in part or in full at any time without prior notice, and, in the event of any prepayment of this Note, there will be no additional fee for such prepayment.

This Note is executed and delivered in continued conjunction with that certain Profit Participation Agreement (Locate Program) dated September 18, 2019 between Borrower and Lender ("**Locate Program Profit Participation Agreement**").

As material consideration for, and as an inducement to, Lender making this loan to Borrower, Borrower warrants and represents to, and otherwise for the benefit of, Lender, and otherwise covenants, as and where applicable, as to the following:

        (1)    Borrower will use the Loan Proceeds solely and exclusively for the purchase and sale of vehicles in connection with Borrower's Locate Program (as defined in the Locate Program Profit Participation Agreement).

        (2)    Borrower is a corporation that is duly formed and validly existing under the laws of the State of Florida, is in good standing and is otherwise authorized to transact business in the State of Florida.

1

(3)      Neither Borrower nor any person, group, entity or nation that Borrower is acting, directly or indirectly for, or on behalf of, is named by any Executive Order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person," or is otherwise a banned or blocked person, group, entity, or nation pursuant to any law that is enforced or administered by the Office of Foreign Assets Control, and Borrower is not engaging in the transactions contemplated by the Documents (as hereinafter defined), directly or indirectly, on behalf of, or instigating or facilitating the transactions contemplated by the Documents, directly or indirectly, on behalf of, any such person, group, entity or nation; and Borrower is not, and shall not become, a person or entity whose activities are regulated by the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders thereunder.

(4)      Borrower has all requisite power and authority, acting alone and without the consent or joinder of any other party, (a) to enter into, execute and deliver, as and where applicable, the Note, the Locate Program Profit Participation Agreement and all other documents and agreements entered into, executed and/or otherwise delivered by, or on behalf of, Borrower in connection with the Loan (the Note, Locate Program Profit Participation Agreement and all such other documents and agreements being sometimes herein collectively referred to as "**Documents**") and (b) to perform and otherwise carry out all the obligations, transactions and agreements contemplated in the Documents.

(5)      The Documents have been approved by those persons having proper authority, and to the best of Borrower's knowledge are in all respects legal, valid and binding according to their terms.

(6)      Neither the entering into, execution and/or delivery of the Documents nor the performance or consummation of any of the obligations and transactions of Borrower under or otherwise contemplated by the Documents will result in any breach of, or constitute a default under, any lease, bank loan or credit agreement, or other instrument to which Borrower is a party or by which it may be bound or affected (including, without limitation, any loan(s) obtained by, and respective loan documents executed, entered into and/or otherwise delivered by or on behalf of, Borrower or any affiliate of Borrower from and to, respectively, SEASIDE NATIONAL BANK & TRUST, a national banking association, its successors and/or assigns ("**SNBT**").  In connection with the foregoing, Borrower warrants and represents that it has advised SNBT of, and SNBT has consented to, Borrower entering into, executing and delivering the Documents and performing or consummating the obligations and transactions of Borrower under or otherwise contemplated by the Documents.

(7)      There are no judgements against Borrower and Borrower has not received notice of any, and there are no actions, suits or proceedings pending in any court or before or by an arbitration tribunal or regulatory commission, department or agency or otherwise threatened which in any case, if adversely determined, could have an adverse effect on condition or operation of the Locate Program or would adversely affect the ability of Borrower to perform and otherwise consummate any of its obligations and transactions under or otherwise contemplated by the Documents.

(8)      No petition in bankruptcy (voluntary or otherwise), assignment for the benefit of creditors, or petition seeking reorganization or arrangement or other action under Federal or state bankruptcy law is pending against Borrower, and Borrower has not made an assignment for the benefit of creditors or admitted in writing its inability to pay its debts as they mature.

(9)      Borrower has participated freely in the negotiation and preparation of this Note and the other Documents, has been advised to engage independent legal counsel, has had a reasonable opportunity to have any such independent legal counsel involved in such review and negotiations (or has otherwise knowingly, at its sole election, elected not to engage such independent legal counsel) and waives any and all rights or remedies it may have or be entitled to deriving from disparity in size or from any significant disparate bargaining position in relation to Lender.

(10)    For each calendar year occurring during the term of this Note, Borrower will deliver to Lender a true, correct and complete copy of Borrower's federal tax return no later than five (5) business days after such federal tax return is filed with the Internal Revenue Service (which obligation shall survive the Maturity Date as to any unfiled, as of the Maturity Date, federal tax return applicable to a calendar year occurring during the term of this Note).

The occurrence of any one or more of the following events, circumstances or conditions shall, at the sole election of Lender, constitute a default hereunder: (a) failure of Borrower to pay to Lender, within five (5) days after the same shall have become due and payable in accordance with the Note and/or any other Documents (as applicable), any principal, interest and/or other amounts due under this Note and/or any other of the Documents, respectively, or any fees owing to Lender; provided, however, there will be no cure or grace period in respect to the failure of Borrower to pay Lender the entire outstanding principal balance, together with accrued but unpaid interest and all other amounts due and payable under this Note, on the Maturity Date; (b) If any warranty or representation made by Borrower in this Note or pursuant to the terms of any other Documents shall at any time be false or misleading in any respect; (c) If Borrower shall, for a period of ten (10) days, fail to keep, observe or perform any of the non-monetary terms or covenants contained in this Note or any of the other Documents or is unable or unwilling to meet its obligations thereunder; (d) The occurrence of any one or more event of default under any of the other Documents; (e) A default by Borrower, any affiliate of Borrower or any officer, director or shareholder of Borrower with respect any other obligation of Borrower, such affiliate and/or such officer, director or shareholder of Borrower to Lender, or any affiliate of Lender, whether or not related to this Agreement; (f) The death or disability of Scott Zankl; (g) Scott Zankl is no longer an officer of, or owns a controlling interest in, Borrower; (h) The pledge, hypothecation, levy, encumbrance or transfer of an ownership interest in Borrower without the prior written consent of Lender; and/or (i) If there is filed by or against Borrower or any Guarantor (as hereinafter defined) a petition in bankruptcy or a petition for the appointment of a receiver or trustee of the assets of Borrower or any Guarantor, and any such petition is not dismissed within thirty (30) days of the date of filing, or if Borrower or any Guarantor files a petition for reorganization under any of the provisions of the Bankruptcy Code or of any similar law, state, federal, or foreign, or if Borrower or any Guarantor makes a general assignment for the benefit of creditors or makes any insolvency assignment or is adjudicated insolvent by any court of competent jurisdiction. At any time after the occurrence of any such event of default, the indebtedness evidenced by this Note and/or any note(s) or other obligation(s) which may be taken in renewal, extension, substitution or modification of all or any part of the indebtedness evidenced thereby and all other obligations of Borrower to Lender howsoever created and existing shall, at the option of Lender in its sole discretion, immediately become due and payable without demand upon or notice to Borrower, and Lender shall be entitled to exercise the other remedies set forth in the Documents, provided by law and/or provided in equity. The remedies of Lender as provided herein, or in the Documents, shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Lender, and may be exercised as often as the occasion thereof shall arise.

No release of any party liable upon or in respect of this Note shall release any other such party. No single or partial exercise of any power hereunder or under any instrument or agreement securing or guaranteeing this Note shall preclude other or further exercises thereof or the exercise of any other power. The Lender hereof shall at all times have the right to proceed against Borrower and/or any Guarantor or any portion of the security for payment of this Note in such order and in such manner as the Lender may deem fit, without waiving any rights with respect to any other security or guaranty. No delay or omission on the part of the Lender hereof in exercising any right hereunder shall operate as a waiver of such right or of any right under this Note.

Borrower hereby waives presentment for payment, demand, notice of dishonor and protest and agrees that any collateral, lien or right of setoff securing any indebtedness evidenced by this Note may, from time to time, in whole or in part, be exchanged or released, and any person liable on or with respect to this Note may be released, all without notice to or further reservations of rights against Borrower, any endorser, surety or Guarantor (as hereinafter defined) and all without in any way affecting or releasing the liability of Borrower, any endorser, surety or Guarantor.

3

Borrower hereby agrees to pay all out-of-pocket costs, expenses and fees, including, without limitation, reasonable attorneys' fees, incurred by Lender in connection with the collection of the indebtedness or other payments evidenced by or owning to Lender in connection with this Note or the other Documents, in enforcing any of the rights, powers, remedies and privileges of Lender hereunder or under the other Documents, or in connection with any further negotiations, modifications, releases, or otherwise incurred by Lender in connection with this Note and/or any of the other Documents.  As used in this Note, the term "attorneys' fees" shall mean reasonable charges and expenses for legal services rendered to or on behalf of Lender in connection with the collection of the indebtedness evidenced by this Note at any time whether prior to the commencement of judicial proceedings and/or thereafter at the trial and/or appellate level and/or in pre-judgment and post-judgment or bankruptcy proceedings. Borrower also agrees to pay, prior to delinquency, any and all documentary stamp taxes and intangible taxes arising by reason of the execution and delivery of Original Notes, this Note and the other Documents.

Any notice to the Borrower provided for in this Note shall be given by delivering or mailing such notice by hand delivery, certified mail, return-receipt-requested or Federal Express, addressed to the Borrower at the address provided below in Borrower's signature block, or to such other address as Borrower may designate by notice in writing to the Lender. Any notice to the Lender shall be given by delivering or mailing such notice by hand delivery, certified mail, return-receipt-requested or Federal Express to the Lender at the address stated in the first paragraph of this Note, or at such address as may have been designated by notice to Borrower.

Nothing herein contained, nor in any instrument or transaction related hereto, shall be construed or so operate as to require Borrower, or any person liable for the payment of the sums due pursuant to this Note, to pay interest in an amount or at a rate greater than the highest rate permissible under applicable law as amended from time to time. Should any interest or other charges made by Borrower, or any party liable for the payment of the sums due pursuant to this Note, result in the computation or earning of interest in excess of the highest rate permissible under applicable law, then any and all such excess shall be and the same is hereby waived by Lender, and all such excess shall be paid by Lender to Borrower or to any party liable for the payment of the sums due pursuant to this Note, it being the intent of the parties hereto that under no circumstances shall Borrower or any party liable for the payment of the sums due hereunder, be required to pay interest in excess of the highest rate permissible under applicable law as amended from time to time.

If any installment of interest, principal or principal and interest shall become overdue, in addition to such payment, a "late charge" in the amount of ten percent (10.00%) of such overdue payment shall be paid by Borrower to Lender on demand for the purpose of defraying the expenses incident to handling such delinquent payments. Furthermore, during the continuation of any default by Borrower in the payment of any installment of interest, principal or principal and interest under this Note or the occurrence of an event of default hereunder or the other Documents, the interest rate provided herein shall be increased to a rate which shall be equal to the maximum rate of interest allowable under the laws of the State of Florida. Borrower hereby irrevocably consents and submits to the exclusive jurisdiction of the courts in Palm Beach County, Florida and the United States District Court serving Palm Beach County, Florida and waives any objection based on venue or *forum non conveniens* with respect to any action instituted therein arising under this Note or any of the other Documents.

To the extent that Lender receives any payment on account of any of Borrower's obligations, and any such payment(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, subordinate and/or required to be repaid to a trustee, receiver or any other person or entity under any bankruptcy act, state or federal law, common law or equitable cause, then, to the extent of such payment(s) received, Borrower's obligations or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment(s) had not been received by Lender and applied on account of Borrower's obligations.

Borrower agrees that this Note shall be deemed to have been made under and shall be governed by the laws of the State of Florida in all respects, including matters of construction, validity and performance. If any provisions of this Note shall be deemed unenforceable under applicable law, such provision shall be ineffective, but only to the extent of such unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Note. All of the terms and provisions of this Note shall be applicable to and be binding upon each and every maker, endorser, surety, guarantor, all other persons who are or may become liable for the payment hereof and their heirs, personal representatives, successors or assigns; provided, however, in no event will Borrower have the right to pledge, hypothecation, levy, encumbrance or transfer any of its rights, interests, duties, liabilities and/or obligations under this Note and/or the Documents without the prior written consent of Lender, which consent may be granted or withheld in Lender's sole and absolute discretion.

Whenever the context so requires, words used in the singular shall be construed to mean or include the plural and vice versa, and pronouns of any gender shall be construed to mean or include any other gender or genders. Neither this Note nor any term or provision hereof may be altered or amended in any manner except by an instrument in writing signed by the Lender and the Borrower. It is expressly understood and agreed that the Lender shall never be construed for any purpose as a partner, joint venturer, co-principal or associate of the Borrower or of any person or party claiming by, through or under the Borrower in the conduct of their respective businesses.

TIME IS OF THE ESSENCE AS TO EACH PROVISION OF THIS NOTE OR THE OTHER DOCUMENTS WHICH REQUIRES BORROWER TO TAKE ANY ACTION WITHIN A SPECIFIED TIME PERIOD.

BORROWER AND LENDER (BY ACCEPTING THIS NOTE) HEREBY MUTUALLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER AND BASED UPON, ARISING OUT OF, OR IN CONNECTION WITH, THIS NOTE, THE LOAN OR THE OTHER DOCUMENTS SECURING OR EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED BY THIS NOTE.

To further secure Borrower's performance of all of its obligations under the 2019 Note, and as an inducement to Lender to enter into the loan evidenced by the 2019 Note, Borrower caused Scott Zankl and Kristen Zankl (collectively, "**Guarantor**") to execute and deliver, that certain Unconditional Guaranty (Locate Program) effective as of September 18, 2019 ("**Original Guaranty**"), under which Guarantor unconditionally guarantees to, and for the benefit of, Lender, its successors and/or assigns, all of Borrower's duties and obligations under the 2019 Note and the other Documents. To further secure Borrower's performance of all of its obligations under this Amended and Restated Promissory Note and the Documents, and as an inducement to Lender to enter into the Loan, Borrower will cause Guarantor to execute and deliver a ratification of the Original Guaranty, under which Guarantor will unconditionally ratify, confirm and adopt the Original Guaranty as being in full force and effect, and which Original Guaranty will now unconditionally guaranty to, and for the benefit of, Lender, its successors and/or assigns, all of Borrower's duties and obligations under this Amended and Restated Note, together with the other Documents.

**[SIGNATURE ON NEXT PAGE]**

**[AMENDED AND RESTATED PROMISSORY NOTE SIGNATURE PAGE]**

Signed, sealed and delivered
in the presence of:

WITNESS 1:                                          EXCELL AUTO GROUP, INC., a
                                                    Florida corporation

_____         By: _____
Print Name: _____         Name: Scott Zankl
                                        Title: Vice President

WITNESS 2:                                          Address of Borrower:
                                                       1001 Clint Moore Road, #101
_____                        Boca Raton, Florida 33487
Print Name: _____

\\fs1\docs\11985\11985-26414\849105.doc/bch

6

## RATIFICATION OF UNCONDITIONAL GUARANTY
### (Locate Program)

THIS RATIFICATION OF UNCONDITIONAL GUARANTY (this "**Ratification**"), is made effective as of the ___S___ day of December, 2019 (the "**Ratification Effective Date**"), by SCOTT ZANKL and KRISTEN ZANKL (collectively, the "**Guarantor**"), to and for the benefit of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST, and its successors and/or assigns (the "**Lender**").

### R E C I T A L S:

A.    Lender previously provided financing to EXCELL AUTO GROUP, INC., a Florida corporation (the "**Borrower**"), in the initial principal amount of $1,020,000.00 (the "**Original Loan**"), as evidenced by that certain Consolidated Promissory Note dated September 18, 2019, executed by Borrower in favor of Lender ("**Original Note**").

B.    To secure Borrower's performance of all of its obligations under the Loan and Loan Documents, Guarantor executed and delivered that certain Unconditional Guaranty (Locate Program) effective as of September 18, 2019 ("**Original Guaranty**"), under which Guarantor absolutely, unconditionally, and irrevocably guarantees to, and for the benefit of, Lender, all of Borrower's duties and obligations under the Original Note and the other Loan Documents.

C.    Lender is providing additional financing to Borrower in the initial principal amount of $480,000.00 (the "**Additional Loan**"), as evidenced by that certain Amended and Restated Promissory Note dated on or about the date hereof, executed by Borrower in favor of Lender, in the total principal amount of $1,500,000.00 (said note, together with all extensions and renewals thereof, amendments thereto and substitutions or replacements therefor, is sometimes also referred to herein as the "**Amended and Restated Note**").

D.    Guarantor acknowledges that Guarantor will benefit from the Additional Loan and the transactions relating thereto, and that Lender would not make the Additional Loan to Borrower unless Guarantor executes and delivers this Ratification to Lender.

NOW THEREFORE, for and in consideration of the foregoing, the sum of TEN AND NO/100 DOLLARS ($10.00), the covenants, promises, undertakings, and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor agrees as follows:

1.    <u>Recitals; Defined Terms</u>. The above stated Recitals are true and correct and are incorporated herein by this reference. All capitalized terms used, but not otherwise defined, in this Ratification shall have the same meaning ascribed to such terms in the Original Guaranty (with the defined term (a) "Loan" now including, without limitation, the Additional Loan, (b) "Note" now including, without limitation, the Amended and Restated Note and (c) "Loan Documents" now including, without limitation, the Amended and Restated Note, together with any and all other documents, certifications, affidavits, guaranties, agreements, UCCs, or any other instruments or papers executed by Borrower, Lender, Guarantor, or any other borrower, guarantor, or other party in connection with the Loan, or as security for the repayment of the Loan, together with all modifications and amendments thereto, as applicable.

Exhibit "G"

2.    <u>Ratification of Original Guaranty</u>. Guarantor hereby absolutely, unconditionally, and irrevocably ratifies, confirms and adopts all of the terms and conditions of, and all of its duties, responsibilities, warranties, representations, covenants, obligations and liabilities under, the Original Guaranty (as amended, modified and ratified by this Ratification), and hereby acknowledges and agrees that (a) the Original Guaranty is in full force and effect and (b) the Original Guaranty and Guarantor shall continue to guarantee, without limitation, all of Borrower's duties and obligations with respect to the repayment of Loan and performance under the Loan Documents (as amended, modified and supplemented by this Ratification, the Additional Loan and the Amended and Restated Note, and all as may hereafter be further amended, modified, supplemented, extended, renewed and/or restated). Guarantor hereby further represents and warrants to, and for the benefit of, Lender that (i) each and every warranty, representation, agreement and other covenant of, or made by, Guarantor under the Original Guaranty remains true and correct, in all respects, as of the Ratification Effective Date, (ii) Guarantor is not in breach or default under any of the terms and conditions of the Original Guaranty and (iii) Guarantor does not have any claims and/or defenses against Lender that could give rise to any defense, offset, claim or counterclaim in connection with the enforcement of the Original Guaranty, as ratified by this Ratification.

3.    <u>Release</u>. Guarantor hereby releases and forever discharges Lender, its agents, servants, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, successors and assigns, and all persons, firms, corporation and organizations who have acted in its behalf of and from all damages, losses, claims, demands, liabilities, obligations, actions, costs, expenses, fees (including, without limitation, attorneys' fees) and causes of action whatsoever which they may have or claim to have as of the date of execution of this Ratification, and whether currently known or unknown, accrued or accrued, and of every nature and extent whatsoever on account of or in any way touching, concerning, arising out of or founded upon the subject Loan, Loan Documents and/or the Original Guaranty, including, but not limited to, all such loss or damage of any kind heretofore sustained, or that may arise as a consequence of the dealings between the parties up to and including the Ratification Effective Date.

4.    <u>Miscellaneous</u>. Guarantor represents and warrants that this Ratification constitutes its legal, valid and binding obligation. This Ratification may be executed in counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one in the same agreement. Guarantor represents that it has reviewed this Ratification with its legal counsel or otherwise had an opportunity to review this Ratification with its legal counsel. Therefore, in connection with the foregoing, this Ratification will be interpreted without regard to any presumption or rule requiring construction against the party causing this Ratification to be drafted. If this Ratification is executed and delivered electronically (whether by PDF file, DocuSign or otherwise) the electronic copy will be treated as an original for all purposes. This Ratification, effective as of the First Amendment Effective Date, shall be deemed part of the Original Guaranty.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, Guarantor has executed this Ratification, which Ratification is effective as of the Ratification Effective Date.

Signed, sealed and delivered
in the presence of:

GUARANTOR:

WITNESS 1:

_____
Print Name: _____

Name: Scott Zankl

WITNESS 2:

_____
Print Name: _____


WITNESS 1:

_____
Print Name: _____

Name: Kristen Zankl

WITNESS 2:

_____
Print Name: _____

\\fs1\docs\11985\11985-26414\849107.doc/bch

## EXTENSION, MODIFICATION AND RATIFICATION AGREEMENT
(Locate Program)

THIS EXTENSION, MODIFICATION AND RATIFICATION AGREEMENT ("**Agreement**"), effective as of November ___, 2020 ("**Effective Date**"), is between EXCELL AUTO GROUP, INC., a Florida corporation ("**Company**"), SCOTT ZANKL and KRISTEN ZANKL (collectively, "**Guarantors**") and KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST ("**DCG Trust**", with Company, Guarantors and DCG Trust being sometimes individually referred to as a "**Party**", or collectively as "**Parties**", as the context so requires).

RECITALS:

A.      DCG Trust has previously loaned Company an original principal sum of $1,500,000.00 ("**Loan**"), as evidenced by that certain Amended and Restated Promissory Note (Locate Program) dated December 5, 2020 executed by Company in favor of DCG Trust, its successors and/or assigns ("**Note**").

B.      To secure Company's performance of all of its obligations under the Loan and Loan Documents (which capitalized term, when used in this Agreement, will have the same meaning ascribed to it in the Guaranty (as herein defined)), Guarantors executed and delivered that certain Unconditional Guaranty (Locate Program) effective as of September 18, 2019, as ratified by that certain Ratification of Unconditional Guaranty (Locate Program) dated December 5, 2020 (collectively, "**Guaranty**").

C.      In connection with the Loan, Company and DCG Trust entered into that certain Profit Participation Agreement (Locate Program) dated September 18, 2019, as amended by that certain First Amendment to Profit Participation Agreement dated December 5, 2019 (collectively, "**Profit Participation Agreement**").

D.      Company and DCG Trust wish to amend the Note and Profit Participation Agreement, and Guarantors wish to ratify, confirm and adopt their duties, responsibilities, liabilities and obligations under the Guaranty, all as hereinafter provided.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, as applicable, agree as follows:

1.      Recitals. The above stated Recitals are true and correct and are incorporated herein by this reference.

2.      Maturity Date/Outside Termination Date. The Maturity Date (as originally defined in the Note) and Outside Termination Date (as originally defined in the Profit Participation Agreement) are each hereby amended and will now mean October 31, 2021.

3.      Ratification of Note/Profit Participation Agreement. In partial consideration of DCG Trust's agreement to enter into this Agreement, Company hereby (a) absolutely, unconditionally and irrevocably ratifies, confirms and adopts all of the terms and conditions of, and all of its duties, responsibilities, warranties, representations, covenants, obligations and liabilities under, each of the Note and Profit Participation Agreement (as amended, modified and ratified by this Agreement) and (b) represents and warrants to, and for the benefit of, DCG Trust that (i) each and every warranty, representation, agreement and other covenant of, or made by, the Company under the Note, Profit Participation Agreement and any of the other Loan Documents remain true and correct, in all respects, as of the Effective Date, (ii) Company is not in breach or default under any of the terms and conditions of the Note, Profit Participation Agreement and/or any of the other Loan Documents and (iii) Company does not have any claims or defenses against DCG Trust that could give rise to any defense, offset or counterclaim in connection with the enforcement of the Note, Profit Participation Agreement, Guaranty and/or any of the other Loan Documents (all as amended, modified and ratified by this Agreement).

4.      Ratification of Guaranty. In partial consideration of DCG Trust's agreement to enter into this Agreement, Guarantors hereby absolutely, unconditionally, and irrevocably ratify, confirm and adopt all of the terms and conditions of, and all of their duties, responsibilities, warranties, representations, covenants, obligations and liabilities under, the

Exhibit "H"

Guaranty (as amended, modified and ratified by this Agreement), and hereby acknowledge and agree that (a) the Guaranty is in full force and effect and (b) the Guaranty and Guarantors shall continue to guarantee, without limitation, all of Company's duties, responsibilities, liabilities and obligations with respect to the repayment of Loan and performance under the Note and other Loan Documents (all as amended, modified and supplemented by this Agreement and all as may hereafter be further amended, modified, supplemented, extended, renewed and/or restated). Guarantors hereby further represent and warrant to, and for the benefit of, DCG Trust that (i) each and every warranty, representation, agreement and other covenant of, or made by, Guarantors under the Guaranty remains true and correct, in all respects, as of the Effective Date, (ii) Guarantors are not in breach or default under any of the terms and conditions of the Guaranty and (iii) Guarantors do not have any claims and/or defenses against DCG Trust that could give rise to any defense, offset, claim or counterclaim in connection with the enforcement of the Guaranty (as amended, modified and ratified by this Agreement).

5.  Release. In partial consideration of DCG Trust's agreement to enter into this Agreement, Company and Guarantors hereby forever, irrevocably and unconditionally release and discharge DCG Trust, its agents, trustees, servants, employees, directors, officers, attorneys, affiliates, subsidiaries, successors and assigns, and all persons, firms, corporation and organizations who have acted in its behalf of and from any and all damages, losses, claims, demands, liabilities, obligations, actions, costs, expenses, fees (including, without limitation, attorneys' fees) and causes of action whatsoever which they may have or claim to have as of the date of execution of this Agreement, and whether currently known or unknown, accrued or accrued, and of every nature and extent whatsoever on account of or in any way touching, concerning, arising out of or founded upon the subject Loan, Note, Profit Participation Agreement, Guaranty and/or any of the other Loan Documents, including, but not limited to, all such loss or damage of any kind heretofore sustained, or that may arise as a consequence of the dealings between the parties up to and including the Effective Date.

6.  Miscellaneous. In the event of any conflict between the express terms of this Agreement and the terms of the Note, Profit Participation Agreement and/or other Loan Documents, the express terms of this Agreement shall control. Each Party represents and warrants, on its own respective behalf, that the person signing this Agreement on such Party's behalf is duly authorized to execute and deliver this Agreement, and that this First Agreement constitutes a legal, valid and binding obligation of each such Party. Each Party further represents and warrants, on its own respective behalf, that it has reviewed this Agreement with its legal counsel, or otherwise had an opportunity to review this Agreement with its legal counsel. Therefore, in connection with the foregoing, this Agreement will be interpreted without regard to any presumption or rule requiring construction against the party causing this Agreement to be drafted. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which, when taken together, will constitute one in the same Agreement. If this Agreement is executed and delivered digitally or electronically (whether by PDF file, DocuSign or otherwise) the digital or electronic copy, respectively, will be treated as an original for all purposes. This Agreement shall become effective and binding only upon execution and delivery of this Agreement by all of the parties hereto.

**[SIGNATURES ON NEXT PAGE]**

Each of Company, Guarantors and DCG Trust has caused this Agreement to be duly executed, which Agreement is effective as of the Effective Date.

**DCG TRUST**:

Kenneth J. Goodman, as Trustee of
the DCG 2008 Irrevocable Wealth Trust

**COMPANY**:

EXCELL AUTO GROUP, INC., a
Florida corporation

By:
Name: Scott Zankl
Title: President

**GUARANTORS**:

Name: Scott Zankl

Name: Kristen Zankl

\\NYGW-PBG-FS01\Docs\11985\11985-26414\980167.docx/bch