# Exhibit H

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

INTERFACE PROPERTIES, LLC,                    CASE NO.: 50-2022-CA-003618-
                                              XXXX-MB

       Plaintiff,

v.

KARMA OF PALM BEACH, INC.,

       Defendant.

_____/

## MOTION TO INTERVENE BY NICOLE TESTA MEHDIPOUR, CHAPTER 7 TRUSTEE OF THE ESTATE OF EXCELL AUTO GROUP, INC.

NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc. (the "Chapter 7 Trustee"), through the undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.230, hereby moves to intervene in the captioned case for purposes of presenting and contesting the question of whether certain "Karma Loans" (hereafter defined) by and between the parties to the captioned lawsuit constitute usurious transaction(s) as defined by Florida law. As good grounds for this motion, the Chapter 7 Trustee states as follows:

## BACKGROUND

1.     On April 8, 2022, Excell Auto Group, Inc. ("Debtor") filed a petition for relief under Chapter 7 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division. The Chapter 7 Trustee was appointed thereafter.

2.     Debtor – like the Defendant herein, Karma of Palm Beach, Inc. ("Karma") – held itself out, at all times material, as a seller of luxury automobiles. Debtor also had the same officers, directors, and shareholders as Karma (Scott and Kristen Zankl, hereafter the "Zankls") while it was operating.

3.    Debtor financed its operations by using various lenders. The DCG 2008 Irrevocable Wealth Trust (the "<u>DCG Trust</u>") is an affiliate[1] of the Plaintiff Interface Properties, LLC ("<u>Interface</u>") and claims to have been one of Debtor's lenders. Similarly, Interface asserts in the captioned case that it was one of Karma's lenders.

4.    In summary: (a) Interface claims to have loaned funds to Karma for Karma's luxury car dealership; (b) the DCG Trust claims to have loaned funds to Debtor for Debtor's luxury car dealership; and (c) each of the entities involved in these transactions has the same ultimate principals/interested parties.

5.    The DCG Trust sued the Zankls as guarantors for Debtor's loan obligations in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County Florida in a case styled *Kenneth J. Goodman, as Trustee of the DCG 2008 Irrevocable Wealth Trust v. Scott Zankl and Kristen Zankl*; Case No. 50-2022-CA-005035-XXXX-MB (the "<u>DCG Litigation</u>"). In the DCG Litigation, the Zankls assert that the loans made by the DCG Trust to Debtor (the "<u>DCG Loans</u>") were usurious and, thus, unenforceable such that the Zankls' guarantees for such loans are also unenforceable.

6.    More specifically, the Zankls argue that the loans made to Debtor were documented by both notes (charging a below-market rate of interest) and "profit participation agreements" (purporting to split profits from vehicle sales on a 50-50 basis between Debtor and the DCG Trust). The Zankls claim that these documents were, however, a sham to avoid application of the Florida usury laws – evidenced by the fact that, among other things, payments under the notes and "profit participation agreement" were almost constant and unmoored to any actual vehicle sales.

---

[1] Plaintiff's Manager – Kenneth J. Goodman – is also the Trustee of the DCG 2008 Irrevocable Wealth Trust.

7.    The Chapter 7 Trustee has intervened as a Plaintiff in the DCG Litigation arguing that because Debtor is the primary obligor for the DCG Loans it has the primary interest in a determination as whether the DCG Loans are usurious and unenforceable. (A true and correct copy of the Chapter 7 Trustee's Complaint is attached hereto as Exhibit "A," and is incorporated by reference.)

8.    Here too, Karma argues that the loans made by Interface to it (the "Karma Loans") were documented in a manner similar to the DCG Loans to disguise a usurious rate of interest, which would render such loans illegal/invalid. Interface, for its part, sought partial summary judgment upon the validity of Karma's defense based on usury, but was denied such relief by Order dated December 14, 2022 (the "Order Denying Summary Judgment"). A true and correct copy of the Order Denying Summary Judgment is attached hereto as Exhibit "B" and incorporated herein by reference. As the Court noted in the Order Denying Summary Judgment:

> 2.    On its face, the Notes are clearly not usurious since the interest rate of .18% is far below any market rate and certainly below the criminal usury rate. In addition to the Notes, Plaintiff was to receive 50% of the profits from the sale of vehicles to be purchased with the funds evidenced by the Notes. Even if, taken on its face, the profits from this arrangement totaled more than 25% interest it would not constitute usury.
>
> 3.    However, the record evidence demonstrates that Plaintiff was engaged in other advances of funds to Defendant's affiliates with different interest rates on promissory notes and profits participation arrangements, but notwithstanding that interest rates were below market rates consistently over several years received payments almost exactly at the same "rate of return" of 28% and higher rates of return as opposed to profit participation.
>
> * * *
>
> 8.    Based on the facts presented, a reasonable jury could conclude that the so-called profit-sharing arrangement between Plaintiff and Defendant constituted an artifice to hide otherwise usurious payments.

*See* Exhibit B.

3

## THE CHAPTER 7 TRUSTEE'S INTEREST
## AND PREDICATE FOR RELIEF

9.    Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention." *See* Florida Rule of Civil Procedure 1.230. This rule has been interpreted as allowing a court discretion to permit intervention after finding that "the interest asserted is appropriate to support intervention." *See John G. Grubbs, Inc. v. Suncoast Excavating, Inc.*, 594 So.2d 346, 347 (Fla. 5th DCA 1992). The court's discretion is guided by "a number of factors, including the derivation of the interest, any pertinent contractual language, the size of the interest, the potential for conflicts or new issues, and any other relevant circumstance." *Id.*

10.    Here, intervention is appropriate when measured against the foregoing standard. First, Debtor (Karma's affiliate), the Zankls (Debtor and Karma's principals), and DCG (an Interface affiliate, sharing a single principal – Kenneth Goodman) are litigating the question of usury in the DCG Litigation on facts strikingly similar to those *sub judice*. Therefore, the interested parties (the Chapter 7 Trustee, Mr. Goodman, Debtor, and the Zankls) and the witnesses here and in the DCG Litigation appear to be identical.

11.    Second, resolution of the question of whether the loans in the DCG Litigation were usurious is of tangible (and substantial) financial interest to the Chapter 7 Trustee and the creditors for whom she labors. *C.f. John G. Grubbs, Inc. v. Suncoast Excavating, Inc.*, 594 So.2d at 347. A finding of usury in the DCG Litigation will result in the return of payments made by Debtor to the Debtor's estate and invalidation of the DCG Trust's right to collect on the affected loans. Whether the loans are usurious also controls the validity of the DCG Trust's proofs of claim in Debtor's bankruptcy. A finding in this case that the Karma Loans were or were not usurious will

4

undoubtedly be cited as precedent by the parties in the DCG Litigation. In other words, the Court's ruling here is likely to impact the Chapter 7 Trustee's core interests in another case.

12.    <u>Third</u>, there is little risk of conflict or new issues being injected into this case by the Chapter 7 Trustee's intervention. Indeed, there are likely to be substantial efficiencies gained by allowing intervention where the witnesses are the same and the issues are similar in this case and the DCG Litigation. *C.f. John G. Grubbs, Inc. v. Suncoast Excavating, Inc.*, 594 So.2d at 347. The question of usury has already been raised by the Karma and Interface here (as in the DCG Litigation). The Chapter 7 Trustee simply seeks to join in the resolution of the dispute given this Court's familiarity with the issues to avoid duplicative judicial labor, labor by the parties in another forum, and the risk of inconsistent results.

13.    The Chapter 7 Trustee therefore requests that the Court enter an order permitting her to intervene in the captioned case as follows:

  a.  To advocate concerning, and, if appropriate, to seek equitable and legal relief arising out of the same transactions and occurrences set forth in the pleadings currently before the Court with respect to, whether the Karma Loans are usurious and/or comply with the limitations prescribed in Chapter 687 of the Florida Statutes;

  b.  To respond to the pleadings, motions and/or other papers of all other parties in the captioned case to the extent that such pleadings consider whether the Karma Loans are usurious and/or comply with the limitations prescribed in Chapter 687 of the Florida Statutes;

  c.  To issue and respond to interrogatories, document requests, requests for admission and/or other written discovery, to take and/or participate in depositions, and to otherwise issue and/or participate in any discovery permissible under Florida Rule of Civil Procedure 1.280; and

  d.  To obtain such other relief as is deemed just and proper by this Court.

14.    Counsel for the Chapter 7 Trustee has conferred with counsel for Karma who does not object to the relief sought in this Motion. Counsel for the Chapter 7 Trustee has also conferred with counsel for the Interface Plaintiff who objects to the relief sought in this motion.

WHEREFORE, NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc., respectfully requests that the Court allow her to intervene in the captioned lawsuit for the purposes described in paragraph 13, *infra*, and for such further relief as is deemed just and proper.

Dated this  20th   day of March 2023.        Respectfully submitted,

**YOUNG FOSTER PLLC**
*Counsel for the Chapter 7 Trustee*
1600 South Federal Highway, Suite 570
Pompano Beach, Florida 33062
Telephone:     (954) 866-3570
Facsimile:      (954) 866-3571


By:    /s/ *Michael C. Foster, Esq.*
        Michael C. Foster, Esq.
        Florida Bar No. 0042765
        michael@youngfoster.com
        admin@youngfoster.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this   20th   day of March 2023, a true and correct copy of the foregoing document was served upon: *Ivan J. Reich, Esq.*, Counsel for Plaintiff, Nason, Yeager, Gerson, Harris & Fumero, P.A., 750 Park of Commerce Blvd., Suite 210, Boca Raton, Florida 33487, and *Harry Winderman, Esq.*, Weiss, Handler & Cornwell, P.A., Counsel for Defendants, 2255 Glades Road, Suite 205E, Boca Raton, Florida 33431, via the Florida E-Filing Portal.

 /s/ *Michael C. Foster*
Michael C. Foster, Esq.

6

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO. 50-2022-CA-003618-XXXXMB

INTERFACE PROPERTIES, LLC,

      Plaintiff,

v.

KARMA OF PALM BEACH, INC.,

      Defendant.

_____/

## THE CHAPTER 7 TRUSTEE'S NOTICE OF FILING
## EXHIBITS TO MOTION TO INTERVENE

NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc. (the "Chapter 7 Trustee"), through the undersigned counsel hereby gives notice to the Court and all parties of record of filing the following exhibits to the *Motion to Intervene by Nicole Testa Mehdipour, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc.* (the "Motion to Intervene"):

1.    *Complaint in Intervention of Nicole Testa Mehdipour, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc.*, Exhibit "A" to the Motion to Intervene; and

2.    *Order on Plaintiff's Motion for Summary Judgment*, Exhibit "B" to the Motion to Intervene.

Dated this  21st  day of March 2023.

Respectfully submitted,

**YOUNG FOSTER PLLC**
*Counsel for the Chapter 7 Trustee*
1600 South Federal Highway, Suite 570
Pompano Beach, Florida 33062
Telephone:     (954) 866-3570
Facsimile:      (954) 866-3571


By:    /s/ *Michael C. Foster, Esq.*
        Michael C. Foster, Esq.
        Florida Bar No. 0042765
        michael@youngfoster.com
        admin@youngfoster.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this   21st   day of March 2023, a true and correct copy of the foregoing document was served upon: *Ivan J. Reich, Esq.*, Counsel for Plaintiff, Nason, Yeager, Gerson, Harris & Fumero, P.A., 750 Park of Commerce Blvd., Suite 210, Boca Raton, Florida 33487, and *Harry Winderman, Esq.*, Weiss, Handler & Cornwell, P.A., Counsel for Defendants, 2255 Glades Road, Suite 205E, Boca Raton, Florida 33431, via the Florida E-Filing Portal.


 /s/ *Michael C. Foster*
Michael C. Foster, Esq.

Case 22-12790-EPK    Doc 371-8    Filed 03/24/23    Page 10 of 23

# EXHIBIT A

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.: 50-2022-CA-005035-
XXXX-MB

KENNETH J. GOODMAN, as Trustee of
the DCG 2008 Irrevocable Wealth Trust,

     Plaintiff,

v.

SCOTT ZANKL and KRISTEN ZANKL,

     Defendants.

_____/

NICOLE TESTA MEHDIPOUR, Chapter 7
Trustee of the Estate of Excell Auto Group, Inc.,

     Plaintiff-Intervenor,

v.

DCG 2008 IRREVOCABLE WEALTH
TRUST by and through Kenneth J. Goodman,
its Trustee, SCOTT ZANKL, and KRISTEN
ZANKL,

     Defendants.

_____/

## COMPLAINT IN INTERVENTION OF NICOLE TESTA MEHDIPOUR, CHAPTER 7 TRUSTEE OF THE ESTATE OF EXCELL AUTO GROUP, INC.

Plaintiff-Intervenor, NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee of the Estate of

Excell Auto Group, Inc. (the "Chapter 7 Trustee"), through the undersigned counsel and pursuant

to the Court's January 29, 2023 *Order Granting Motion to Intervene by Nicole Testa Mehdipour,*

*Chapter 7 Trustee of the Estate of Excell Auto Group, Inc.*, hereby sues the DCG 2008

IRREVOCABLE WEALTH TRUST by and through Kenneth J. Goodman its Trustee (the "DCG Trust"), SCOTT ZANKL ("S. Zankl"), and KRISTEN ZANKL ("K. Zankl"), stating as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory relief brought pursuant to §86.011, *et seq.*, Florida Statutes and Florida Rule of Civil Procedure 1.110, *et seq.*

2.      By this Complaint, the Chapter 7 Trustee seeks a determination of the parties' respective rights pursuant to the Loan Documents (hereafter defined).

3.      More specifically, and as more fully set forth herein, the Chapter 7 Trustee seeks a determination, *inter alia*, that the Loan Documents charge a usurious rate of interest under Florida law, such that: (1) the Loan Documents are invalid; and (2) all payments received by the DCG Trust on account of the Loan Documents must be returned to the Chapter 7 Trustee for the benefit of the estate of Excell Auto Group, Inc. ("Excell"). Further, the Chapter 7 Trustee seeks costs, interest, attorneys' fees, where provided by law, and reserves its right to seek double the amount paid in interest by Excell and/or other exemplary damages as are permitted by Florida law and where supported by the facts.

## JURISDICTION AND VENUE

4.      The Court has personal jurisdiction over the DCG Trust where it is a trust created and existing under the Florida Trust Code.

5.      The Court has personal jurisdiction over S. Zankl and K. Zankl, where each is an individual over the age of eighteen years, who resides in the State of Florida, and who is *sui juris*.

6.      The Court has subject matter jurisdiction over this lawsuit pursuant to §§ 86.011 and 26.012, Florida Statutes, and because the amount in controversy exceeds $50,000.00.

7.      Venue is proper in this Court where the cause of action accrued in Palm Beach County, Florida.

## GENERAL ALLEGATIONS
### The Parties

8.      On April 8, 2022, Excell Auto Group, Inc. ("Excell") filed a petition for relief under Chapter 7 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division. The Chapter 7 Trustee was appointed thereafter.

9.      Excell held itself out, at all times material, as a seller of luxury automobiles on a retail and wholesale basis, and Excell financed its operations by using various lenders. The DCG Trust was one of Excell's lenders.

10.     The DCG Trust and Excell were parties to at least two loan facilities known as the "Locate Program" and the "Wholesale Program" (collectively the "Loans"), which were documented by various loan agreements and guarantees (described and defined hereafter and collectively referred to as the "Loan Documents").

11.     The Chapter 7 Trustee's interest in the resolution of the dispute described herein is as follows: Excell is identified as the borrower under the Loan Documents, and Excell's funds were the source of all sums paid to the DCG Trust on account of the Loans. Thus, Excell is the primary obligor under the Loan documents. The Chapter 7 Trustee is successor to Excell and has the sole right to assert any and every cause of action it may have, and to recover any funds owed to it.

12.     At all times material, K. Zankl was a shareholder of Excell. Although Kristen Zankl has testified that she authorized Scott Zankl to operate the business, including signing her electronic signature to certain documents. Thus, upon information and belief, Kristen Zankl did not know about, and did not specifically authorize, the transactions referenced in this Complaint.

3

13.     At all times material, Scott Zankl operated and controlled the Debtor.

**Facts Giving Rise to Relief**

***The Lending Relationship and Loan Documents***

14.     Excell and the DCG Trust, and certain of its insiders and affiliates, had an ongoing lending relationship that was documented long-after funds were advanced to Excell pursuant to the following Loan Documents:

A.  the *Consolidated Promissory Note (Locate Program)* dated September 18, 2019;

B.  the *Profit Participation Agreement (Locate Program)* dated September 18, 2019;

C.  the *Consolidated Promissory Note (Wholesale Program)* dated September 18, 2019;

D.  the *Profit Participation Agreement (Wholesale Program)* dated September 18, 2019;

E.  the *Amended and Restated Promissory Note (Locate Program)* dated December 5, 2019; and

F.  the *Extension, Modification and Ratification Agreement (Wholesale Program)* dated November 2, 2020.

15.     Copies of the Loan Documents were filed by the DCG Trust with its Motion for Summary Judgment dated August 26, 2022 (the "DCG Motion for Summary Judgment") as Exhibits A, B, and C, and the Loan Documents are incorporated herein by reference.

16.     As alleged above, the Loan Documents purport to memorialize two existing loan facilities: (1) the "Locate Program," which refers to Excell's identification of a vehicle for – and sale to – one of Excell's customers; and (2) the "Wholesale Program," which refers to transactions between auto dealers. However, in practice, the use of the funds obtained by Excell through its lending facilities bore little or no relationship to the actual acquisition of vehicles for re-sale on a

retail or wholesale basis.

17.   The Loan Documents can be divided into two, general, categories – *i.e.*, "promissory notes" and "profit participation agreements." Notionally, the "promissory notes" purport to document a "loan" at a fixed rate of interest, payable over time. The terms of the "promissory notes" thus provide, for example, that:

> The undersigned maker (individually and collectively, **"Borrower")** jointly and severally, if applicable, promises to pay to the order of KENNETH J. GOODMAN AS TRUSTEE OF THE DCG 2008 IRREVOCABLE WEALTH TRUST, its successors and/or assigns **("Lender"),** at 100l East Telecom Drive, Boca Raton, Florida 33432, or such other place as it may designate from time to time, the principal sum of $1,500,000.00 **("Loan"** or **"Loan Proceeds"),** or so much thereof as shall have been advanced from time to time by Lender to Borrower, together with interest accruing thereon from the date hereof at the rate and time hereinafter provided.
>
> Interest (computed on the basis of a 360-day year for the actual number of days elapsed) on the outstanding balance of principal evidenced by this Amended and Restated Promissory Note **("Note")** shall accrue interest at an annual interest rate equal to 1.85%, which annual interest rate is equal to the applicable federal rate for loans with a maturity of less than three years on the date of this Note.

*See, e.g., Amended and Restated Promissory Note (Locate Program),* December 5, 2019, DCG Motion for Summary Judgment at Exhibit A. (Emphasis in original.)

18.   The "profit participation agreements," again, notionally, reflect an agreement by Excell and the DCG Trust to share in the "profits" of *specific vehicle sales*. The terms of the "profit participation agreements" therefore provide:

> 2.   **Profit Participation.**
>
>     a.     In connection with the Company's operation of the Locate Program in accordance with this Agreement, the Company will pay to DCG Trust 50.00% of the Locate Vehicle Profit for each Locate Vehicle (the **"Profit Participation"),** all in accordance with the terms and conditions of this Agreement. Each Profit Participation will be deemed fully earned by DCG Trust in accordance with the hereinafter described terms and conditions of this subsection a., with each fully earned Profit Participation thereafter being due and payable by the Company to DCG Trust in accordance with Section 2.c.(4) of this Agreement. The Company

and DCG Trust acknowledge and agree that a Profit Participation for a Locate
Vehicle is deemed fully earned by DCG Trust as of the date that the following two
conditions are satisfied for each Locate Vehicle: (1) The Company has entered into
a Client PSA for a Locate Vehicle and (2) the Company has entered into a
corresponding Third Party Dealer PSA for the required Locate Vehicle under such
subsection (1) Client PSA. In connection with the foregoing, and notwithstanding
anything contained in this Agreement to the contrary, the Company and DCG Trust
acknowledge and agree that neither the consummation of a Locate Vehicle
Delivery, the payment by Client of the Client Purchase Price Balance nor any other
event shall be deemed or otherwise imputed as any additional condition to a Profit
Participation for a Locate Vehicle being deemed fully earned by (and thereafter due
and payable to) DCG Trust. The payment of the Profit Participation is in addition
to, and not in lieu or modification of, the payment of all principal, interest, costs,
expenses and other fees otherwise due and payable by the Company to DCG Trust
under the Note.

*See, e.g., Profit Participation Agreement (Locate Program),* September 18, 2019, DCG

Motion for Summary Judgment at Exhibit A. (Emphasis in original.)

19.    The DCG Trust's avowed purpose for documenting its lending relationship with a

separate "promissory note" and "profit participation agreement" for each principal sum was to

avoid application of the usury laws.

20.    Indeed, the DCG Trust anticipated that the Loan Documents might be interpreted

as being usurious and, therefore, included the following "usury savings clause" in the Loan

Documents:

Nothing herein contained, nor in any instrument or transaction related
hereto, shall be construed or so operate as to require Borrower, or any
person liable for the payments due pursuant to this Note, to pay interest in
an amount or at a rate greater than the highest rate permissible under
applicable law as amended from time to time. Should any interest or other
charges made by Borrower, or any party liable for the payment of the sums
due pursuant to this Note, result in the computation or earning or interest in
excess of the highest rate permissible under applicable law, then any and all
such excess shall be and the same is hereby waived by Lender, all such
excess shall be paid by Lender to Borrower or to any party liable for the
payment of the sums due pursuant to this Note, it being the intent of the
parties hereto that under no circumstances shall Borrower or any party liable
for the payment of the sums due hereunder, be required to pay interest in

6

excess of the highest rate permissible under applicable law as amended from
time to time.

*See, e.g., Amended and Restated Promissory Note (Locate Program),* December 5, 2019,

DCG Motion for Summary Judgment at Exhibit A.

21.     Under established law, the existence of a "usury savings clause" is not dispositive
of whether a transaction or series of transactions is usurious. Rather, whether a lender willfully
charged an excessive rate of interest is determined by reference to all of the circumstances
surrounding a given transaction or series of transactions.

22.     The circumstances surrounding the transactions between the DCG Trust and
Excell will show that the lending relationship reflected in the Loan Documents was in fact
usurious and, upon information and belief, the Loan Documents were a mere artifice to conceal a
usurious transaction.

23.     Despite the representations made in the Loan Documents, upon information and
belief, the actual facts will show, for example, that:

    a.  The proceeds of the Loans were not advanced in connection with the purchase
of a specific vehicles;

    b.  There were few or no vehicles acquired and sold with the proceeds of the Loans
made for the "Locate Program" and the "Wholesale Program." Rather, the
proceeds from the Loans were used for any and all of Excell's business
purposes, for the business purposes of affiliates, and/or for the personal use of
various insiders;

    c.  Excell's payments for "profit participation" were unmoored to the sale of a
vehicle and, instead, the DCG Trust received a stream of payments that were
consistent in amount and timing;

    d.  The DCG Trust's receipt of payments by Excell was not dependent on the
success of any particular transaction to acquire or sell of vehicle; and

    e.  The DCG Trust advised Excell on one or more occasions that payments had to
be increased to satisfy its desired return on investment, thus acknowledging
that the payments were not "profit."

24.     The DCG Trust knew, or should have known, that these actual facts existed.

25.     In fact, even the terms of the Profit Participation Agreements reflect that payments to the DCG Trust *were not contingent upon any payments being made to Excell* (*i.e.*, the success of a transaction) where they provide "that neither the consummation of a Locate Vehicle Delivery, the payment by Client of the Client Purchase Price Balance nor any other event shall be deemed or otherwise imputed as any additional condition to a Profit Participation for a Locate Vehicle being deemed fully earned by (and thereafter due and payable to) DCG Trust." *See, e.g., Profit Participation Agreement (Locate Program),* September 18, 2019, DCG Motion for Summary Judgment at Exhibit A.

26.     Prior to the Chapter 7 Trustee's intervention, S. Zankl and K. Zankl argued in this case that the Loans charged a usurious rate of interest such that any guarantees securing the Loans are invalid. The DCG Trust has countered that the Loan Documents demonstrate that the Loans are not usurious.

27.     Each and every condition precedent to the commencement of these proceedings has occurred or has been waived.

28.     The Chapter 7 Trustee has engaged the undersigned counsel to prosecute this action and it is obligated to pay the undersigned counsel their reasonable attorneys' fees and to reimburse their litigation costs.

## **CAUSE OF ACTION**

29.     The Chapter 7 Trustee readopts and realleges the allegations contained in Paragraphs 1-28, as if fully set forth herein.

30.     This is an action for relief under the Declaratory Judgment Act, Chapter 86, Florida Statues.

31.     The Loans exceed the amount of $500,000.

32.     Pursuant to §687.071, Fla. Stat., the Loans are thus criminally usurious to the extent that they are found to have effective interest rates of 25% or more.

33.     Usurious interest is forfeited under applicable law, and the entire debt may be unenforceable, and exemplary damages and attorneys' fees may be recoverable by the borrower.

34.     As more fully set forth above, and as alleged by S. Zankl and K. Zankl, the Chapter 7 Trustee asserts that the Loans are usurious and that the Loan Documents were an artifice to conceal the fact that the Loans were usurious.

35.     The DCG Trust maintains that the Loans are not usurious but, rather, charged a rate of interest permissible under Florida law.

36.     There is therefore a bona fide, actual, present, and practical need for a declaration as to the enforceability of the Loan Documents, and the debt and interest that they reflect.

37.     A present dispute exists between the parties as to the Loan Documents involving a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts. More specifically, a dispute exists as to whether the Loans are usurious.

38.     The parties disagree in their interpretation of the Loan Documents and, therefore, require an interpretation of such documents by the Court under Florida law.

39.     The Chapter 7 Trustee has ascertainable rights under the Loan Documents as successor to Excell and she is presently in doubt as to such rights due to the material differences in the parties' positions. The Chapter 7 Trustee's rights are dependent upon the construction of the Loan Documents as applied to the facts present here.

40.     The Chapter 7 Trustee has an actual, present, adverse, and antagonistic interest in the subject matter of this lawsuit relating to the interpretation of its rights under the Loan Documents.

41. The parties necessary for a resolution of the dispute and which hold the antagonistic interests present here include the Chapter 7 Trustee, the DCG Trust, S. Zankl, and K. Zankl, which are presently before the Court.

42. The declaration sought by the Chapter 7 Trustee is not merely seeking legal advice from the Court. The matter presented is an actual dispute between the parties which requires a determination by the Court to resolve.

WHEREFORE, Plaintiff NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee of the Estate of Excell Auto Group, Inc., respectfully requests that the Court:

(a) Find and declare that the Loans, as reflected in the Loan Documents, charge a usurious rate of interest as more fully described herein;

(b) Find and declare that the Loans are unenforceable, that the interest charged for the Loans is forfeited, that the Chapter 7 Trustee is entitled to be compensated with double the amount of interest charged, and/or that the Chapter 7 Trustee is entitled to exemplary damages in accordance with the rate charged;

(c) Find and declare that the Chapter 7 Trustee is entitled her attorneys' fees and litigation costs incurred in the prosecution of this matter; and

(d) Award such other relief as is deemed just and proper.

Dated this  7th  day of March 2023.

Respectfully submitted,

**YOUNG FOSTER PLLC**
*Counsel for the Chapter 7 Trustee*
1600 South Federal Highway, Suite 570
Pompano Beach, Florida 33062
Telephone:    (954) 866-3570
Facsimile:    (954) 866-3571

By:    /s/ *Michael C. Foster, Esq.*
Michael C. Foster, Esq.
Florida Bar No. 0042765
michael@youngfoster.com
admin@youngfoster.com

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __7th__ day of March 2023, a true and correct copy of the foregoing document was served upon: *Ivan J. Reich, Esq.*, Counsel for Plaintiff, Nason, Yeager, Gerson, Harris & Fumero, P.A., 750 Park of Commerce Blvd., Suite 210, Boca Raton, Florida 33487, and *Harry Winderman, Esq.*, Weiss, Handler & Cornwell, P.A., Counsel for Defendants, 2255 Glades Road, Suite 205E, Boca Raton, Florida 33431, via the Florida E-Filing Portal.

 /s/ *Michael C. Foster*
Michael C. Foster, Esq.

11

EXHIBIT B

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

INTERFACE PROPERTIES, LLC,                          CASE NO. 50-2022-CA-003618-XXXXMB

v.                    Plaintiff,              DIVISION: AK

KARMA OF PALM BEACH, INC.,

                    Defendant.
_____/

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER CAME BEFORE THE COURT on Plaintiff's Motion for Summary Judgment (D.E. #32), and the Court having heard argument of counsel and otherwise being apprised, rules as follows:

1.   Plaintiff advanced funds to Defendant represented by promissory notes as follows:

    a.   January 20, 2022, Promissory Note from Karma of Palm Beach, Inc. ("Karma") memorializing a loan for monies lent from Plaintiff to Karma in the principal amount of $353,500 (the "January Note Principal Amount"), with interest accruing annually at .18% thereunder (the "January Interest Rate") with a maturity date of January 31, 2022 (the "January Maturlty Date"); and

    b.   March 3, 2022 Promissory Note from Karma memorializing a loan for monies lent from Plaintiff to Karma in the principal amount of $500,000 (the "March Note Principal Amount"), with interest accruing annually at .18% thereunder (the "March Interest Rate") with a maturity date of March 17, 2022 (the "March Maturity Date") (the "March Note") (collectively, the January Note and the March Note shall be referred to herein as the "Notes").

2.   On its face, the Notes are clearly not usurious since the interest rate of .18% is far below any market rate and certainly below the criminal usury rate. In addition to the Notes, Plaintiff was to receive 50% of the profits from the sale of vehicles to be purchased with the funds evidenced by the Notes. Even if, taken on its face, the profits from this arrangement totaled more than 25% interest it would not constitute usury.

3.   However, the record evidence demonstrates that Plaintiff was engaged in other advances of funds to Defendant's affiliates with different interest rates on promissory notes and profits participation arrangements, but notwithstanding that interest rates were below market rates

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 12/14/2022 05:02:33 PM

Case No. 50-2022-CA-003618-XXXX-MB

consistently over several years received payments almost exactly at the same "rate of return" of 28% and higher rates of return as opposed to profit participation.

4. The elements of a usurious loan are the following: (A) A loan, either expressed or implied; (B) an understanding that the money must be repaid; (C) in consideration of the loan, a greater rate of interest than is allowed by law is paid or agreed to be paid by the borrower; and (D) there is an intent to charge a usurious rate, sometimes referred to as corrupt intent.

5. Having raised usury as an affirmative defense, Defendant bears the burden of proof on that issue. *Valliappan v. Cruz,* 917 So. 2d 257, 259-60 (Fla. 2005); *Phillips v. Lindsay,* 102 Fla. 935, 136 So. 666, 668 (1931) (stating that "[t]he defense of usury having been set up by the defendants, the burden of proof was on them to establish it"); *Tucker v. Fouts,* 76 So. 130 (Fla. 1917); *Oregrund Ltd. P'ship v. Sheive,* 873 So. 2d 451, 455-57 (Fla. 5th DCA 2004); *Swanson v. Gulf W. Int'l Corp.,* 429 So.2d 817 (Fla. 2d DCA 1983).

6. "He who alleges usury to avoid or to defeat an obligation to pay money must establish his charge by clear and satisfactory evidence." *Dixon v. Sharp,* 276 So.2d 817, 820 (Fla. 1973). When a trial court finds that usury has not been proved, the decision will not be reversed on appeal so long as competent and substantial record evidence supports the finding. *See, Donofro v. Dick,* 680 So.2d 1039 (Fla. 1st DCA 1996).

7. The determination of usury is one for the fact finder, *Oregrund,* 873 So. 2d at 455-57; *Wells v. Freedman,* 342 So.2d 983 (Fla. 3d DCA 1977); where there is no conflict in the material facts, it is one of law for the court. *Rebman v. Flagship First Nat'l Bank of Highlands County,* 472 So.2d 1360 (Fla. 2d DCA 1985).

8. Based on the facts presented, a reasonable jury could conclude that the so-called profit-sharing arrangement between Plaintiff and Defendant constituted an artifice to hide otherwise usurious payments.

Based on the above findings, this Court hereby **DENIES** Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defense and based on a review of the court file finds that Defendant has dismissed its Counterclaim without prejudice and therefore the determination as to Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim is hereby **MOOT.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida

Case No. 50-2022-CA-003618-XXXX-MB



50-2022-CA-003618-XXXX-MB   12/14/2022
Paige Gillman
Circuit Judge

Copies furnished:

Ivan Reich, Esq. and Noah B. Tennyson, Esq. of Nason, Yeager Gerson, Harris & Fumero, P.A., Attorneys for Plaintiff, 3001 PGA Boulevard, Suite 305, Palm Beach Gardens, Florida 33410  at IReich@nasonyeager.com; ntennyson@nasonyeager.com with copies to MSmith@nasonyeager.com.

Henry B. Handler, Esq. and Harry Winderman, Esq., Weiss, Handler & Cornwell, P.A., *Attorneys for Defendants Kristen Zankl and Scott Zankl,* 2255 Glades Road, Suite 205E, Boca Raton, FL, 33431 at hbh@whcfla.com; hw@whcfla.com with copies to filings@whcfla.com and jn@whcfla.com.

NOT A CERTIFIED COPY