UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

EXCELL AUTO GROUP, INC.

    Debtor.

_____/

Case No.: 22-12790-EPK
Chapter 7

**MOTION TO COMPROMISE CONTROVERSY**
**WITH EDWARD BROWN AND FOR ENTRY OF A BAR ORDER**

Nicole Testa Mehdipour ("**Trustee**"), Chapter 7 trustee in the above captioned bankruptcy case (the "**Bankruptcy Case**"), pursuant to § 105(a) of the Bankruptcy Code[1], Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9019-1(A) of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "**Local Rules**"), moves this Court for entry of an Order authorizing and approving the settlement agreement ("**Settlement Agreement**") attached as **Exhibit 1** between the Trustee and Edward Brown ("**Mr. Brown**"), including the entry of a bar order attached as **Exhibit A** to the Settlement Agreement.  In support thereof states:

**JURISDICTION OF VENUE**

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] 11 U.S.C. §§ 101, *et. seq.*

## FACTUAL AND PROCEDURAL BACKGROUND

**A.**    **Pertinent Pre-Petition Events**

      **(i)**    **Brown's Loans to Excell**

2.      Prior to January 7, 2019, Mr. Brown made several unsecured loans to Excell Auto Group, Inc. ("**Debtor**" or "**Excell**"), in excess of $1.3 million dollars, with the intention that the funds be used to pay off other lenders to Debtor.

3.      On January 7, 2019, Mr. Brown made an unsecured loan of $3,000,000 to Debtor ("**$3MM Loan**").  The $3MM Loan was made to Debtor on an informal basis without written documentation or a specific term for repayment.

4.      In 2020, Debtor was sued by its secured lender, Seaside National Bank & Trust ("**Seaside**").  At such time, the $3MM Loan had not yet been repaid by Debtor.  Debtor also owed Mr. Brown at least $3,900,000 from the sale of his vehicles, including a Ferrari LaFerrari Aperta owned by Mr. Brown for which Debtor had not yet paid him.

5.      Mr. Brown agreed to make yet another loan to Debtor.  On February 12, 2021, the Debtor along with its principals, Scott Zankl and Kristen Zankl, entered into an agreement (the "**Loan Agreement**") with Mr. Brown wherein Mr. Brown loaned the Debtor an additional $10,000,000 ("**$10MM Loan**"), to be repaid within two years at 5% interest, and provided the terms for repayment of the principal of the $3MM Loan.  A portion of the $10MM Loan was used to fully repay Seaside.

6.      The Loan Agreement provided that Mr. Brown was to be pledged 49% of the common stock in the Debtor from Kristen Zankl "as collateral to the Loan", among other terms. The 49% interest was to remain "vested" in Brown "until the Loan is repaid," but that during the time that Brown holds such vested interest, Brown shall not receive any distributions.  The Loan

Agreement further provided that upon repayment of the Loan, "Brown shall be vested in a 20% interest" in Debtor, and that "at the time Brown becomes vested in [Debtor], he will begin to receive distributions from [Debtor], according to such interest." Under the Loan Agreement, Mr. Brown was to file a UCC-1 with respect to Excell's assets. Mr. Brown did not file a UCC-1.

7.      In connection with the Loan Agreement, Kristen Zankl executed an Assignment of Stock ("**Assignment**") to transfer 49 of the 100 shares of Debtor to Mr. Brown.

8.      After the execution of the Loan Agreement, and in accordance with the repayment schedule established therein, Brown received payments totaling $854,994.00. Of this amount, $101,666.00 were made within the 90 days prior to the Petition Date, and $813,328 were made within the one-year period prior to the Petition Date.

9.      As of the Petition Date, Mr. Brown had not attempted to transfer or assign any interest granted by the Assignment.

10.     As of the Petition Date, Mr. Brown had not been fully repaid either the $3MM Loan or the $10MM Loan.

11.     As of the Petition Date, Mr. Brown received any other payments or distributions from Debtor besides for the payments under the Loan Agreement.

12.     Mr. Brown was never an officer or director of Debtor.

13.     Mr. Brown did not participate in the management, control, or operations of Excell, did not have access to any books, records, accounts, or bank statements of Excell, and did not have knowledge of the liabilities of Excell beyond the loans that Mr. Brown made to Excell.

14.     At no point in time did Mr. Brown have a controlling interest in any of the Excluded Entities as defined below.

69908444;1

15.     Mr. Brown did not receive title documentation to certain vehicles that he provided value for and asserts that Excell may be liable for a portion of such damages incurred in his efforts to obtain title.

### (ii)     Selfless Love

16.     Mr. Brown is a director of Selfless Love Foundation, Inc., a Florida not for profit corporation ("**Selfless Love**") devoted to the improvement of the foster care system.

17.     Mr. Brown and his wife paid the purchase price of 2021 Aero Build LLC custom-made trailer, VIN No. A49UIE615MN143050 (the "**Trailer**") for Selfless Love to use in promotion of a children's book, and its charitable endeavors.

18.     Mr. Brown has produced proof of purchase for the custom Trailer by payments made in 2020 and 2021 directly to the manufacturer, Aero Build, LLC.

19.     Prior to the Petition Date, the Trailer was on the Excell lot because Selfless Love intended to sell the Trailer to Excell.  The Trailer was wrapped in Excell branding.  However, Excell did not pay Selfless Love (or the Browns) the purchase price for the Trailer.

20.     To the best of the Trustee's knowledge, Excell does not have title to, or any title documents for, the Trailer.

### (iii)     Parallel Stock Investment

21.     In May 2019, Mr. Brown made an initial investment in SH Parent, Inc. dba. Parallel ("**Parallel**") in the amount of $5 million for which Mr. Brown was awarded 114,600 shares of Series D Preferred Stock.  In June 2020, Mr. Brown was granted additional shares of Series A

Preferred Stock of SH Parent, Inc. dba. Parallel (collectively with the Series D Preferred Stock, the "**Parallel Preferred Stock**").

22.     The Trustee may have certain causes of action against Parallel related to the Parallel Preferred Stock.

23.     The value of the Parallel Preferred Stock and the causes of action against Parallel are unknown.

**B.     Pertinent Post-Petition Events**

24.     On April 8, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, instituting the above-captioned bankruptcy case.

25.     Nicole Testa Mehdipour was duly appointed and is the permanent Chapter 7 trustee for the bankruptcy estate of Excell Auto Group, Inc.

26.     Shortly after the Petition Date, the Trustee's auctioneer took possession of numerous vehicles and other items at the Debtor's premises, including the Trailer.

27.     The Trustee and her professionals have been investigating numerous claims, causes of action, and other potential assets to recover for administration in this estate.  The Trustee has identified certain prepetition preferential transfers made by the Debtor to Mr. Brown and Selfless Love in the one-year preceding the Bankruptcy, including payments made under the Loan Agreement and a check of $9,900 to Selfless Love.  The Trustee has further identified that in the four years preceding the bankruptcy, Debtor donated a Karma vehicle to be auctioned off and a portion of such proceeds benefited Selfless Love, and that additional transfers to Selfless Love totaled $75,950.00.

28.     Mr. Brown is the largest creditor in this Bankruptcy Case and filed Proof of Claim No. 9-2 alleging monetary damages in excess of $16,000,000.00 (the "**Brown Amended Claim**").

29.     The Trustee and Mr. Brown have engaged in an informal discovery, information exchange, and settlement processes to substantiate and account for the transactions between Mr. Brown and Excell in the four-year period prior to the Petition Date over a matter of months.

30.     The Trustee and Mr. Brown have engaged in good-faith and at arms' length and negotiated a comprehensive global settlement of all issues arising by and between Debtor's bankruptcy estate and Mr. Brown in an effort to avoid both parties incurring significant legal fees and costs that would materially exceed the benefits to either party arising from the terms of this Settlement Agreement.

## **TERMS OF THE SETTLEMENT**[2]

31.     The terms of the settlement are summarized below:

a.    Brown shall make a lump-sum settlement payment to the Trustee, on behalf of the Excell estate, in the amount of $600,000.00 (Six Hundred Thousand Dollars) (the "Settlement Payment") within 7 days of entry of both: (i) a final and non-stayed Order Approving the Agreement; and (ii) a final and non-stayed Bar Order as detailed herein.  The Settlement Payment shall be paid either by check, cashier's check, or other form of immediately available funds, made payable to ***Nicole Testa Mehdipour, Chpt. 7 Trustee for Excell Auto Group, Inc.***, and delivered to Nicole Testa Mehdipour, Ch. 7 Trustee, 6278 North Federal Highway, Suite 408, Fort Lauderdale, FL 33308 or via wire transfer, at the option of the Trustee.

b.    The Brown Amended Claim shall be allowed as a general unsecured claim in the amount of $16,895,318.87.

c.    The Brown Amended Claim shall be subordinated to all timely filed, allowed unsecured claims and shall only receive a distribution after all timely filed, allowed unsecured claims have been paid in full.

d.    Brown shall not contest any finding of fact or conclusion of law put forth by the Trustee in seeking approval of this Settlement Agreement that the Loan Agreement at issue provided Brown with a non-controlling passive ownership interest in Excell.

e.    Brown shall convey to the Trustee on behalf of the Debtor's estate: (i) all claims and causes of action that Brown has against SH Parent, Inc., DBA Parallel

---

[2] The Motion attempts to summarize the terms of the Settlement Agreement.  In the event of a conflict between the terms summarized in the Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

Brands, any of its present or former officers, and any of its present or former directors, arising from Brown's acquisition of equity in SH Parent, Inc., DBA Parallel Brands; and (ii) any after-tax net proceeds realized by Brown from the sale of Brown's equity in SH Parent, Inc., DBA Parallel Brands to be sold by Brown in a time and manner expressly consented to in writing by the Trustee to be completed within a time specified in writing by the Trustee (the "Parallel Sale Deadline").   Upon the liquidation of any asset pursuant to this paragraph, the funds shall be transmitted to the Trustee in the same manner as the Settlement Payment.

f.    Brown agrees to advance $200,000.00 (Two Hundred Thousand Dollars and Zero Cents) in litigation fees and costs to the Estate ("Litigation Funding"), which can be increased by Brown in his sole discretion, in connection with the investigation and pursuit of claims and causes of action identified by Brown against various third parties (the "Brown Funded Claims").

g.    The Trustee shall obtain Brown's written consent as to the identity of, and terms of engagement for, co-special counsel to be retained by the Trustee to investigate and prosecute any Brown Funded Claims (such counsel referred to as "Special Counsel"). The Litigation Funding shall be advanced by Brown to the Estate within seven days of the entry of a final, non-appealable and non-stayed order of the Bankruptcy Court approving the retention of the Special Counsel.

h.    Ms. Mehdipour shall hold the advanced Litigation Funding in the trust account for Law Office of Nicole Testa Mehdipour, P.A., pending draws made upon applications for compensation by Special Counsel (as defined herein) retained to pursue the Brown Funded Claims after such applications are approved by the Bankruptcy Court.  Once administrative claims by Special Counsel are allowed and payment authorized by the Court, Ms. Mehdipour shall release that portion of the Litigation Funding from the trust account for Law Office of Nicole Testa Mehdipour, P.A. into the Estate's fiduciary account so that payment can be remitted. The Litigation Funding shall be made payable and delivered to Nicole Testa Mehdipour, Ch. 7 Trustee, 6278 North Federal Highway, Suite 408, Fort Lauderdale, FL 33308 or via wire transfer, at the option of the Trustee.

i.    Brown shall receive an allowed administrative expense claim for any Litigation Funding actually funded by Brown to the Debtor's Estate pursuant to this Agreement (the "Brown Administrative Claim").   The Brown Administrative Claim shall be satisfied solely from the proceeds of the Brown Funded Claims.

j.    As a pre-condition for Brown providing the above consideration, including the Settlement Payment and Litigation Funding, the order entered by the Court approving this Agreement (the "Final Settlement Order") must contain a bar order in form and substance attached to this agreement as **Exhibit "A"** (the "Bar Order") in favor of Brown, enjoining all claims that could have been or have been brought by any creditor of Excell or other party in interest in the Bankruptcy Case,

7

to the broadest and fullest extent permitted by law against Brown, his wife, Ashley Brown, the Edward M. Brown Revocable Trust (the "Trust"), Selfless Love, or any entity in which Brown, his wife, or the Trust had, have, or will have a Controlling Interest, except the Excluded Entities.[3]  Brown agrees to cooperate with the Trustee as necessary to obtain the Final Settlement Order inclusive of the Bar Order. If the Court does not enter the Bar Order, this Agreement shall be deemed null and void, no payments will be made, and the Parties shall be returned to the status quo before entry into the Agreement.

k.    The Trustee shall disclaim any right, title, or interest in the Trailer and turn the Trailer over to Selfless Love, making no representations or warranties to Selfless Love regarding the Trailer.

l.    Brown, his wife, Ashley Brown, the Trust, Selfless Love, or any entity in which Brown, his wife, or the Trust had, have, or will have a Controlling Interest, except the Excluded Entities (collectively, the "Brown Released Parties") will be released by the Excell Trustee from any and all debts, demands, actions, suits, damages, losses, sanctions, obligations, costs, claims and rights or causes of action of whatever kind or description, whether known or unknown, asserted or unasserted, whether past or present, whether suspected or unsuspected, whether liquidated or unliquidated, whether arising in common law or by statute or by equity, whether based on contract, tort, or otherwise, or any other form of injury that the Trustee, on behalf of the Estate, now has or ever had against the Brown Released Parties or property in their possession, other than any obligations arising from the Settlement Agreement itself, including all claims that the Trustee or the Estate has against the Brown Released Parties based on any legal theory or potential liability arising from Brown's ownership interest in Excell, including claims for alter ego liability, piercing of the corporate veil, mere instrumentality, or any other theory of imposition of individual shareholder liability for the corporate debts of Excell.

m.    Brown will release the Excell Estate, the Trustee, her professionals, auctioneer, and other representatives of the Excell Estate to the extent set forth in the Agreement. Brown does not release any claims against Scott Zankl, Kristen Zankl, Excell Auto Finance, LLC nka Columbus Day Finance, LLC, Graner Platzek & Allison, P.A, including any predecessor or successor entities, Graner Law Group, including any predecessor or successor entities, Thomas Graner, or any of Excell's other officers, directors, employees, contractors, or representatives.

---

3 Excluded Entities means any of the Excell Entities, SH Parent, Inc., DBA Parallel Brands, and Graner Platzek & Allison, P.A.  Excell Entities means Excell, Karma of Palm Beach, Inc., or Karma of Broward, Inc., Excell Auto Finance, LLC, Excell Auto Leasing, LLC, Excell Auto Sport and Service, LLC, and Excell Auto Sports and Service, Inc.

32. The parties are aware that this Settlement Agreement must be noticed to all creditors and parties in interest and must be approved by the Bankruptcy Court. If this Settlement Agreement it is not approved, this Settlement Agreement is deemed null and void.

33. The Parties request that the Bankruptcy Court enter an Order approving this Settlement Agreement and reserve jurisdiction to enforce the terms and covenants contained therein.

## BASIS FOR APPROVING THE SETTLEMENT

34. The Trustee submits that the Settlement Agreement and all transactions contemplated therein reflect sound business reasons by the Trustee and, as described in greater detail below, are value maximizing and in the best interest of the Debtor's estate and its creditors.

35. The Settlement Agreement likewise satisfies the standard for approval under Bankruptcy Rule 9019, which provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). As a general matter, compromises and settlements are favored to minimize litigation and expedite the administration of the bankruptcy estate. *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996).

36. Before approving a compromise or settlement under Bankruptcy Rule 9019, a bankruptcy court must determine if the proposed compromise or settlement is fair, equitable, reasonable, and in the interests of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re S.E. Banking Corp.,* 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004) (a bankruptcy court must consider whether a settlement is "fair and equitable"). The Court should approve the proposed settlement unless it "fall[s] below the lowest point in the range of reasonableness." *In re S.E. Banking Corp.*, 314

B.R.250, 272 (Bankr. S.D. Fla. 2004); *see also In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988); *Martin v. Pahiakos (In re Martin),* 490 F.3d 1272, 1274-75 (11th Cir. 2007).  A bankruptcy court considering a proposed settlement, "may give weight to the trustee's informed judgment that a compromise is fair and equitable." *In re S & I Investments*, 421 B.R. 569, 584 (Bankr. S.D. Fla. 2009).

37.     When determining whether a settlement or compromise falls within the range of reasonableness, courts in the Eleventh Circuit generally consider the following factors: "(i) the probability of success in litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Wallace v. Justice Oaks II, Ltd. (In re Justice Oaks, II, Ltd.),* 898 F.2d 1544, 1459 (11th Cir. 1990).

38.     In evaluating a proposed settlement, the bankruptcy court "need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the disputes that are proposed to be compromised … [R]ather, the Court may, and should, make a pragmatic decision on the basis of all equitable factors." *In re Holywell Corp*., 93 B.R. 291, 295 (Bankr. S.D. Fla. 1988) (emphasis in original, citations omitted).  Further, the Court is not obligated to decide the merits of any claims but must simply assess the probability of success on those claims.  *See In re Vazquez,* 325 B.R. 30, 35 (Bankr. S.D. Fla. 2005).

39.     Approval of a settlement or compromise in a bankruptcy proceeding is within the sound discretion of a bankruptcy court and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion.  *See In re Chira,* 367 B.R. 888, 896 n.10 (S.D.

Fla. 2007) (citing *In re Air Safety Intern., L.C.,* 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).

40.     The Trustee respectfully submits that the Settlement Agreement satisfies the factors set forth in *Justice Oaks.*   Based on her reasoned business judgment, the Trustee has made a determination that the Settlement Agreement provides a certain and prompt recovery for creditors, and she recommends its approval.   Considering the interests of creditors, the costs and uncertain risks of litigation, and the inconvenience and delay caused by the Parties' disputes, execution of the Settlement Agreement is prudent, reasonable, fair and equitable and in the interest of the estate.

## A.     The Probability of Success in the Litigation

41.     The likelihood that the Debtor could prevail on the merits of its claims against the Brown Released Parties is questionable.

42.     The Trustee's review of the Debtor's books and records, evidentiary record, and receipt and review of additional information indicates that the Trustee has claims against the Brown and Selfless Love for preference payments within the one-year prior to the filing of the bankruptcy.   Brown and Selfless Love have asserted defenses to the preference payments, including ordinary course of business for all the loan payments made pursuant to the schedule provided in the Agreement.

43.     The Trustee has reviewed potential claims related to Mr. Brown's interest in Excell by virtue of the Assignment, any alleged ownership or control of Excell (including alter ego, piercing the corporate veil, and breach of fiduciary duty), and claims unrelated to Chapter 5 claims. The evidence provided to the Trustee that Mr. Brown was not an officer or director of the Debtor and did not participate in the management or control of the Debtor is unrebutted.  Mr. Brown did not have access to the basic books and records of Excell, nor ability to hire or fire employees,

access bank accounts or bank statements, or any ability to control the operational or management functions of Excell. The Trustee is not aware of any basis for Estate or any other party to pursue a derivative claim against Mr. Brown. The Trustee will seek a finding that Mr. Brown was an innocent shareholder of the Debtor.

**B.**    **Difficulties, if any, to be Encountered in the Matter of Collection**

44.    Any judgment against Mr. Brown and the Brown Released Parties may ultimately be collectible, however, Mr. Brown has also filed a $16,000,000 proof of claim, against which any non-Chapter 5 judgment may ultimately be offset.

**C.**    **Complexity Expense and Delay Associated with the Litigation Involved**

45.    The Chapter 5 litigation is not overly complex. The legal and factual issues are straight forward. Notwithstanding, Mr. Brown would put forth a vigorous defense and has substantiated his position in connection with the settlement negotiations.

46.    Any non-chapter 5 causes of action would involve complex legal and factual analysis. Any adversary proceeding brought by the Trustee against the Brown Released Parties would be vigorously contested and will cause substantial delay in any potential recovery. Further, the Trustee has done sufficient due diligence to conclude that Mr. Brown was an innocent shareholder of the Debtor as set forth above and the largest lender injured due to the collapse of the Debtor.

**D.**    **Paramount Interest of Creditors and Proper Deference to Their Reasonable Views in the Premises**

47.    Finally, the Trustee is of the view that the Settlement Agreement represents the best available means to protect the interests of creditors in this bankruptcy following the Trustee's inspection of the Debtor's and books and records and analyzed the defenses raised by Mr. Brown.

69908444;1

48.     The proposed Settlement Payment coupled with the Litigation Funding, the payment of the sale proceeds of the Parallel Preferred Stock, and consensual subordination of the Brown Amended Claim projects to fund a distribution of undisputed allowed claims with a substantially greater distribution upon the prosecution of the Brown Funded Claims and liquidation of the Parallel Preferred Stock.

49.     In sum, the Settlement Agreement takes into account the relative probabilities of success on the Parties' claims, as well as the costs and expenses to be incurred by the Parties from pursuit of further litigation and proposes a global resolution of all claims that the Parties have determined to be fair, equitable, reasonable, and in the interests of the estate.

### NECESSITY OF A BAR ORDER AND BASIS FOR APPROVAL

#### A.     Necessity of a Bar Order

50.     Pursuant to the express terms of the Settlement Agreement, the Bar Order is an essential, material, and integral component of the settlement and compromise between the Trustee and the Settling Parties.  The Bar Order satisfies the applicable provisions of the Bankruptcy Code and controlling law in the Eleventh Circuit, including *Markland v. David (In re Centro Group, LLC)*, Case No. 21-11364, 2021 U.S. App. LEXIS 32962, 2021 WL 5158001 (11th Cir. Nov. 5, 2021) ("*Centro*") and *In re Munford*, 97 F.3d 449 (11th Cir. 1996).

#### B.     Basis for Approving Bar Order

51.     Section 105(a) of the Bankruptcy Code provides this Court with the inherent power to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a); *Munford*, 97 F.3d 449; *Wald v. Wolfson (In re U.S. Oil & Gas Litig.)*, 967 F.2d 489 (11th Cir. 1992).  In fact, the Eleventh Circuit Court of Appeals has stated that "a bankruptcy court can enjoin **any** civil action if the outcome could alter the debtor's rights, liabilities, options,

or freedom of action or in any way impacts upon the handling and administration of the bankrupt estate." *In re Fundamental Long Term Care*, *Inc*., 873 F.3d 1325, 1337 (11th Cir. Oct. 19, 2017) (emphasis added); *see also In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447268, * 4 (Bankr. S.D. Fla. Aug. 27, 2010) ("As far as any suggestion made by [party objecting to bar order] that [the Bankruptcy] Court does not have jurisdiction or authority [to enter a bar order] ... one need go no further than *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.*), 910 F.2d 784 (11th Cir.1990), for confirmation of this Court's jurisdiction."); *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-RBR, 2010 WL 3743885, at *6-8 (Bankr. S.D. Fla. Sept. 16, 2010) (granting request for a bar order entry of which was required by settlement); *In re S&I Investments*, 421 B.R. 569, 586 (Bankr. S.D. Fla. 2009) (approving request for entry of a bar order, which was a condition to a settlement with the debtor's bankruptcy estate). Accordingly, the Court's power to enter the Bar Order contemplated by the Settlement Agreement is beyond question.

52.     When considering the exercise of power under 11 U.S.C. § 105 in connection with compromises and bar orders, the Eleventh Circuit Court of Appeals has determined that: (i) public policy favors settlements; (ii) the cost of litigation can be burdensome on a bankruptcy estate, and (iii) bar orders play an integral role in facilitating settlements. *See Munford*, 97 F.3d at 455; *U.S. Oil & Gas Litig*., 967 F.2d at 493-94. Whether the bar order is integral to the settlement or compromise is a key factor. 97 F.3d at 455; 967 F.2d at 494.  This is because "settlement bar orders allow settling parties to put a limit on the risks of settlement." *U.S. Oil & Gas Litig.*, 967 F.2d at 494.

53.     The Trustee's agreement to settle the estate's claims in exchange for the Settlement Payment, Litigation Funding, and recovery of Brown's interest in the Parallel Preferred Stock and any litigation connected therewith is strictly conditioned on the entry and finality of the Bar Order.

14

Without the Bar Order, there would be no settlement between the Trustee and Mr. Brown. Mr. Brown would not agree to any of the terms, including a finding of Brown's ownership interest in Excell. Indeed, the Brown Released Parties have important interests in putting an end to the issues related to the Debtor and avoiding any further involvement in matters relating to the Debtor. As such, the Bar Order is an integral component of the Settlement, directly benefits the estate and clearly facilitates and fulfills the longstanding public policy of encouraging pretrial settlements. The Bar Order is narrowly tailored in terms of the released parties and the nature of claims released as it (a) only releases claims against the Brown Released Parties, specifically excluding all entities who are potential targets of further litigation by the Trustee, and (b) only releases claims related to the Debtor or the Debtor's bankruptcy case, and specifically excludes *in rem* actions by any persons or entities, other than the Debtor, Estate or Excell Trustee, concerning specific vehicles in Brown's possession. In turn, Mr. Brown is also subordinating his $16,000,000 unsecured claim against the Debtor, which significantly increases the benefit to the remaining allowed, general unsecured creditors.

54. Moreover, the case law in the Eleventh Circuit is uniform in that bar orders that are incorporated into settlement agreements are fair and equitable if (a) the bar order is consistent with and "fulfills the long-standing public policy of encouraging pretrial settlements," (b) the settlement satisfies the *Justice Oaks factors*, and (c) the bar order satisfies the nonexclusive set of factors for approval of bar orders set forth in *Munford*, including:

    a. The non-debtor third-party claims which will be barred are interrelated with the estate's claims;

    b. The parties opposed to the bar order have not presented sufficient evidence of the strength and existence of their claims against the beneficiary of the bar order;

    c. The estate's litigation against the beneficiary of the bar order is complex; and

> d. The continuance of litigation by the estate and other parties against the beneficiary of the bar order will deplete resources.

*See United States v. Hartog*, 597 B.R. 673, 680-81 (S.D. Fla. 2019); *In re Latitude 360, Inc*., No. 17-00086-PMG, 2019 WL 3614766, *2 (Bankr. M.D. Fla. May 29, 2019); *In re Jiangbo Pharmaceuticals, Inc*., 520 B.R. 316, 323 (Bankr. S.D. Fla. 2014); *In re Evaluation Solutions, LLC*, No. 13-00447-JAF, 2013 WL 3306216, *4, 5 (Bankr. M.D. Fla. June 27, 2013); *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-RBR, 2010 WL 3743885, at *6-8 (Bankr. S.D. Fla. Sept. 16, 2010).

### (i)    **The Interrelatedness of the Barred Claims**

55.    The Trustee believes that the only exposure the Brown Released Parties have, other than certain *in rem* claims to vehicles in Brown's possession, which are excluded from the Barred Claims, flows through claims that could only be brought by the Trustee on behalf of the Bankruptcy Estate.   The Trustee has not identified any independent, third-party claims against the Brown Released Parties arising from or related to the Debtor other than certain *in rem* claims to vehicles in Brown's possession, which are excluded from the Barred Claims.   The first *Munford* element is satisfied.

### (ii)    **Likelihood that Non-Settling Party Could Prevail on Independent Claim Against Brown Released Parties**

56.    As the Trustee is not aware of any independent, third-party claims against the Brown Released Parties arising from or related to the Debtor, other than certain *in rem* claims to vehicles in Brown's possession, which are excluded from the Barred Claims, the Trustee therefore believes that it is unlikely that any third-party could prevail against the Brown Released Parties on the Barred Claims.   The Second *Munford* factor is satisfied.

### (iii)    **The Estate's Litigation Against the Beneficiaries of the Bar Order is Complex**

57.     As stated above, the litigation against the Brown Released Parties beyond Chapter 5 causes of action would be both legally and factually complex.  Further, based upon the information provided to the Trustee, the Trustee believes that Mr. Brown was an innocent shareholder of the Debtor.  The third *Munford* factor is satisfied.

**(iv)    Litigation by the Estate Against the Beneficiary of the Bar Order Will Deplete Resources**

58.     Bringing and continuing litigation against the Brown Released Parties and other parties will deplete the estate's resources.  The litigation would be expensive to bring and would incur substantial administrative expense claims.  Mr. Brown has a $16,000,000 claim in the Bankruptcy Case, to the extent the Trustee successfully avoids and recovers any preference payments, that claim could increase.  Further, to the extent that the Trustee was successful in litigating against Mr. Brown, the damages could be offset against Mr. Brown's claim meaning there would be no cash recovery to the estate.  The fourth *Munford* factor is satisfied.

59.     Accordingly, the Bar Order should be approved in connection with the approval of the Settlement Agreement.

## NOTICE OF THE MOTION AND ORDER

60.     This Motion and proposed form of Order are being noticed to all creditors and interested parties in accordance with Fed. R. Bankr. P. 2002 and 9019 and Local Rule 2002-1 and 9013-1(D).

**WHEREFORE**, Trustee respectfully requests that this Honorable Court enter an order: (i) granting this Motion: (ii) compromising the controversy and approving the Settlement Agreement attached as **Exhibit 1** to the Motion; (iii) approving and entering the Bar Order attached as **Exhibit A** to the Settlement Agreement and (iv) granting such other and further relief as this Court deems just and proper.

69908444;1

Date: April 14, 2023                          Respectfully submitted,

FURR AND COHEN, P.A.
*Special Counsel for Chapter 7 Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

BY:  /s/ *Alan R. Crane*
        Alan R. Crane, Esq.
         Florida Bar No.: 0963836
         E-mail: acrane@furrcohen.com
         Jason S. Rigoli, Esq.
         Florida Bar No. 91990
         E-mail: jrigoli@furrcohen.com

-and-

**LAW OFFICE OF**
**NICOLE TESTA MEHDIPOUR, P.A.**
*Counsel for Chapter 7 Trustee*
6278 N. Federal Highway, Suite 408
Fort Lauderdale, FL 33308
Tel: (954) 858-5880 Fax: (954) 208-0888

By:  /s/ *Nicole Testa Mehdipour*
     Nicole Testa Mehdipour
     Florida Bar No. 177271
     Nicole.Mehdipour@ntmlawfirm.com

18

DocuSign Envelope ID: B8193D3D-7D81-42F3-B1A1-5CD56E3FB4D6

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered on the last date set forth on the signature pages below, by and between Nicole Testa Mehdipour, Chapter 7 Trustee (the "Trustee") for the Estate of Excell Auto Group, Inc. ("Estate") on the one hand and Edward Brown ("Brown") on the other hand. The Trustee and Brown are collectively referred to as the "Parties."

## RECITALS:

WHEREAS, on April 8, 2022 (the "Petition Date"), Excell Auto Group, Inc. (the "Debtor" or "Excell") filed a voluntary petition for relief [ECF No. 1] (the "Petition") under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Court") in the case styled *In re Excell Auto Group, Inc.* Case No.: 22-12790-EPK (the "Bankruptcy Case").

WHEREAS, on April 8, 2022, Nicole Testa Mehdipour (the "Trustee") was appointed Chapter 7 Trustee in the Bankruptcy Case [ECF No. 2].

WHEREAS, on February 12, 2021 Excell entered into a loan agreement with Brown (the "Loan Agreement"), through which Excell borrowed $10,000,000 from Brown and agreed to the terms of repayment of a pre-existing $3,000,000 loan from Brown. Immediately preceding entry of the Loan Agreement, Kristen Zankl was the 100% owner of Excell. Pursuant to the terms of the Loan Agreement, Kristen Zankl assigned 49% of her interest in Excell as collateral to the loan "which shall remain vested in Brown until the Loan is repaid." Further, pursuant to the Loan Agreement, Brown would not receive any distributions during the time that Brown held a vested interest in Excell. Upon the repayment of the loan, Brown's interest would be reduced to a 20% vested interest and "[a]t the time Brown becomes vested in Excell, he begin to receive distributions from Excell." At no point were either of the loans from Brown fully repaid by Excell. Further, Brown was never a director or officer of Excell. Brown did not participate in the management, control, or operations of Excell, did not have access to any books, records, accounts, or bank statements of Excell, and did not have knowledge of the liabilities of Excell beyond the loans that Brown made to Excell. To the extent Brown had a vested interest in Excell, Brown was an innocent shareholder as to any wrongdoings committed by Excell, Scott Zankl, Kristen Zankl, or any of the Excell employees, agents, or representatives. The Motion to Approve this Settlement Agreement and Release shall specifically request that the Bankruptcy Court find that Brown was an innocent shareholder.

WHEREAS, Brown filed an unsecured claim, as amended (Claim No. 9-2), in the Bankruptcy Case identifying in excess of $16,000,000 in damages suffered by Brown arising from the Debtor's pre-petition acts (the "Brown Amended Claim").

WHEREAS, the Trustee has reviewed the facts supporting the Brown Amended Claim and acknowledges that Brown has suffered in excess of $16,000,000 in monetary damages as a result of the Debtor's and its agents' pre-petition acts.

69880995;1

WHEREAS, the Trustee has asserted that Brown and Selfless Love Foundation, Inc., a Florida not for profit corporation ("Selfless Love") of which Brown is a director, received certain prepetition preferential payments pursuant to the Loan Agreement in the one-year period prior to the commencement of the Debtor's bankruptcy case.

WHEREAS, Brown has asserted new value and ordinary course defenses to all of the Trustee's preference claims, which have been analyzed and evaluated by the Trustee.

WHEREAS, the Trustee's auctioneer is in possession of a custom-made trailer, a 2021 Aero Build LLC, VIN No. A49UIE615MN143050 (the "Trailer") wrapped with Excell branding. The purchase price of the Trailer was fully paid for by Brown and his wife directly to the manufacturer for the benefit of Selfless Love, and satisfactory proof of payment and ownership of the Trailer by Selfless Love has been furnished to the Trustee. Excell never paid Selfless Love for the Trailer, and the Excell Trustee does not have any title to the Trailer.  Brown asserts that Selfless Love is entitled to turnover of the Trailer.

WHEREAS, the Trustee and Brown have negotiated a comprehensive global settlement of all issues arising by and between the Debtor's bankruptcy estate and Brown in an effort to avoid both parties incurring significant legal fees and costs that would materially exceed the benefits to either party arising from the terms of this Agreement.

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## SETTLEMENT TERMS

1.     **Conditions Precedent**. This Agreement is subject to and conditioned upon: (i) the entry of a final, non-appealable, and non-stayed Final Settlement Order (as defined herein), and (ii) entry of a final, non-appealable, and non-stayed Bar Order (as defined herein) by the Court.  In the event that the Court does not approve the Agreement or does not enter the Bar Order, nothing herein shall be deemed a representation or admission by any Party as to any issue, and the Parties shall be returned to the status quo prior to the entry into this Agreement.

2.     **Effective Date.**     This Agreement shall become effective on the first business day subsequent to the satisfaction of all Conditions Precedent identified in paragraph 1 herein.

3.     **Recitations**.  The above recitations are true and correct, are incorporated herein by this reference, and constitute a part of this Agreement, subject to paragraph 1.  If this Agreement is not approved, the Parties reserve the right to contest any and all statements in the recitals of this Agreement.

4.     **Non-Admission of Liability**.  Nothing in this Agreement shall constitute or be construed as an admission of liability on behalf of the Parties, their agents, affiliates, assigns,

69880995;1

DocuSign Envelope ID: B8193D3D-7D81-42F3-B1A1-5CD56E3FB4D6

parents, successors, subsidiaries, and/or successors, or an admission as to the validity of any allegations by either Party.

5.    **Attorney Representation**.  Each Party warrants and represents that each Party is entering into this Agreement voluntarily, and without any duress or undue influence. Each Party further represents that each Party has been encouraged to and has had the opportunity to consult with legal counsel of their own choosing.

6.    **Settlement Consideration**.  As full and final settlement of the disputes between the Parties, subject to entry of both (i) a final and non-stayed Final Settlement Order (as defined herein) approving the Agreement and (ii) a final and non-stayed Bar Order (as defined herein), the Parties agree as follows:

    a.    Brown shall make a lump-sum settlement payment to the Trustee of the Excell estate, in the amount of $600,000.00 (Six Hundred Thousand Dollars) (the "Settlement Payment") within 7 days of entry of both: (i) a final and non-stayed Order Approving the Agreement; and (ii) a final and non-stayed Bar Order as detailed herein.  The Settlement Payment shall be paid either by check, cashier's check, or other form of immediately available funds, made payable to *Nicole Testa Mehdipour, Chpt. 7 Trustee for Excell Auto Group, Inc.*, and delivered to Nicole Testa Mehdipour, Ch. 7 Trustee, 6278 North Federal Highway, Suite 408, Fort Lauderdale, FL 33308 or via wire transfer, at the option of the Trustee.

    b.    The Brown Amended Claim shall be allowed as a general unsecured claim in the amount of $16,895,318.87.

    c.    The Brown Amended Claim shall be subordinated to all timely filed unsecured claims and shall only receive a distribution after all timely unsecured claims have been paid in full.

    d.    Brown shall not contest any finding of fact or conclusion of law put forth by the Trustee in seeking approval of this Settlement Agreement that the Loan Agreement at issue provided Brown with a non-controlling passive ownership interest in Excell.

    e.    Brown shall convey to the Trustee on behalf of the Debtor's estate: (i) all claims and causes of action that Brown has against SH Parent, Inc., DBA Parallel Brands, any of its present or former officers, and any of its present or former directors, arising from Brown's acquisition of equity in SH Parent, Inc., DBA Parallel Brands; and (ii) any after-tax net proceeds realized by Brown from the sale of Brown's equity in SH Parent, Inc., DBA Parallel Brands to be sold by Brown in a time and manner expressly consented to in writing by the Trustee to be completed within one year of the Effective Date of this Agreement, unless consented to in writing by the Trustee (the "Parallel Sale Deadline").  Upon the

69880995;1

DocuSign Envelope ID: B8193D3D-7D81-42F3-B1A1-5CD56E3FB4D6

liquidation of any asset pursuant to this paragraph, the funds shall be transmitted to the Trustee in the same manner as the Settlement Payment.

f.   Brown agrees to advance $200,000.00 (Two Hundred Thousand Dollars and Zero Cents) in litigation fees and costs to the Estate ("Litigation Funding"), which can be increased by Brown in his sole discretion, in connection with the investigation and pursuit of claims and causes of action identified by Brown against various third parties (the "Brown Funded Claims").  The Litigation Funding shall be advanced to the Estate at the time specified in paragraph 11. Ms. Mehdipour shall hold the advanced Litigation Funding in the trust account for Law Office of Nicole Testa Mehdipour, P.A., pending draws made upon applications for compensation by Special Counsel (as defined herein) retained to pursue the Brown Funded Claims after such applications are approved by the Bankruptcy Court.  Once administrative claims by Special Counsel are allowed and payment authorized by the Court, Ms. Mehdipour shall release that portion of the Litigation Funding from the trust account for Law Office of Nicole Testa Mehdipour, P.A. into the Estate's fiduciary account so that payment can be remitted.   The Litigation Funding shall be made payable and delivered to Nicole Testa Mehdipour, Ch. 7 Trustee, 6278 North Federal Highway, Suite 408, Fort Lauderdale, FL 33308 or via wire transfer, at the option of the Trustee.

g.   Brown shall receive an allowed administrative expense claim for any Litigation Funding actually funded by Brown to the Debtor's Estate pursuant to this Agreement (the "Brown Administrative Claim").   The Brown Administrative Claim shall be satisfied solely from the proceeds of the Brown Funded Claims.

h.   As a pre-condition for Brown providing the above consideration, including the Settlement Payment and Litigation Funding, the order entered by the Court approving this Agreement (the "Final Settlement Order") must contain a bar order in form and substance attached to this agreement as **Exhibit "A"** (the "Bar Order") in favor of Brown, enjoining all claims that could have been or have been brought by any creditor of Excell or other party in interest in the Bankruptcy Case, to the broadest and fullest extent permitted by law against Brown, his wife, Ashley Brown, Selfless Love, Brown's agents, Brown's representatives, Brown's attorneys, or any entity owned or controlled by Brown. Brown agrees to cooperate with the Trustee as necessary to obtain the Final Settlement Order inclusive of the Bar Order. If the Court does not enter the Bar Order, this Agreement shall be deemed null and void, no payments will be made, and the Parties shall be returned to the status quo before entry into the Agreement.

i.   The Trustee shall disclaim any right, title, or interest in the Trailer and turn the Trailer over to Selfless Love, making no representations or warranties to Selfless Love regarding the Trailer.

69880995;1

DocuSign Envelope ID: B8193D3D-7D81-42F3-B1A1-5CD56E3FB4D6

7. **Trustee Release/ Covenant Not to Sue**. Except for the obligations to be performed under this Agreement, the Trustee, on behalf of the Excell estate, shall release, acquit and forever discharge Brown, his wife, Ashley Brown, the Edward M. Brown Revocable Trust (the "Trust"), Selfless Love, or any entity in which Brown, his wife, or the Trust had, have, or will have a Controlling Interest except the Excluded Entities (collectively, the "Brown Released Parties") on behalf of the Estate, from and against any and all debts, demands, actions, suits, damages, losses, sanctions, obligations, costs, claims and rights or causes of action of whatever kind or description, whether known or unknown, asserted or unasserted, whether past or present, whether suspected or unsuspected, whether liquidated or unliquidated, whether arising in common law or by statute or by equity, whether based on contract, tort, or otherwise, or any other form of injury that the Trustee, on behalf of the Estate, now has or ever had against the Brown Released Parties or property in their possession other than any obligations arising from this Agreement. For the avoidance of doubt, this release includes any and all claims that Excell, the Estate, or the Trustee has to any vehicles currently in Brown's possession, including a 2021 Cullinan VIN SLATV8C09MU204097, a 2021 Lamborghini Urus Mansory Edition VIN#ZPBUA1ZL1MLA12270, a 2021 Ferrari Roma VIN#ZFF98RNA3M0263662, and a black Ferrari Stradale Sf90 VIN# ZFF95NLA7MO265077. For the further avoidance of doubt, this release includes all claims that the Trustee or the Estate has against the Brown Released Parties based on any legal theory or potential liability arising from Brown's ownership interest in Excell, including claims for alter ego liability, piercing of the corporate veil, mere instrumentality, breach of fiduciary duty, or any other theory of imposition of liability for the corporate debts of Excell premised upon Brown's ownership interest.

    a.    For purposes of paragraph 7, the following definitions apply:

        i)    Excluded Entities means any of the Excell Entities, SH Parent, Inc., DBA Parallel Brands, Graner Platzek & Allison, P.A., including any predecessor or successor entities.

        ii)    Excell Entities means Excell, Karma of Palm Beach, Inc., or Karma of Broward, Inc., Excell Auto Finance, LLC nka Columbus Day Finance, LLC, Excell Auto Leasing, LLC, Excell Auto Sport and Service, LLC, and Excell Auto Sports and Service, Inc.

        iii)    Controlling Interest shall mean an ownership interest that under the corporate governance of the business entity provides the owner with the legal capacity to: (i) unilaterally appoint or terminate any officer or director; (ii) convey substantially all of the assets of the business entity; or (iii) make any operational business decision on behalf of the business entity.

        iv)    At no time did Brown have a controlling interest in any of the Excluded Entities.

b.      Brown will provide a list to the Trustee of the entities in which he currently has a Controlling Interest, but the Brown Released Parties shall include all entities which are not currently formed but in which Brown or his wife may have a controlling interest in the future.

8.      **Brown Release / Covenant Not to Sue**. Except for the obligations to be performed under this Agreement and except as otherwise provided herein with respect to the Brown Amended Claim and Brown Administrative Claim, Brown shall release, acquit and forever discharge the Estate, including the Trustee, and her professionals, auctioneer, and other representatives of the Estate from and against any and all debts, demands, actions, suits, damages, losses, sanctions, obligations, costs, claims and rights or causes of action of whatever kind or description, whether known or unknown, asserted or unasserted, whether past or present, whether suspected or unsuspected, whether liquidated or unliquidated, whether arising in common law or by statute or by equity, whether based on contract, tort, or otherwise, or any other form of injury that Brown now has or ever had against the Estate, the Trustee, her professionals, auctioneer, and other representatives of the Excell Estate.  For the avoidance of doubt, this release does not modify the other portions of this Agreement regarding the treatment of the Brown Amended Claim or any Brown Administrative Claim filed by, or on behalf of, Brown.  For the further avoidance of doubt, Brown does not release any claims against Scott Zankl, Kristen Zankl, Excell Auto Finance, LLC nka Columbus Day Finance, LLC, Graner Platzek & Allison, P.A, Thomas Graner, or any of Excell's other officers, directors, employees, contractors, or representatives.

9.      **Acknowledgement of Trailer Ownership**.  Trustee specifically disclaims all right, title, and interest of Excell, and the Estate, in and to the Trailer and agrees to turn over possession of the Trailer to Selfless Love within seven days after entry of a final and non-stayed Final Settlement Order.  The Trustee turns over the Trailer to Selfless Love making no representations or warranties to Selfless Love regarding the Trailer.

10.      **Motion to Approve this Agreement.** The Trustee shall provide a copy of any Motion to approve this Agreement to Brown's counsel for review prior to filing it with the Court. Brown and his attorneys shall have 48 hours to review and approve any Motion to approve this Agreement once it has been received.

11.      **Retention of Co-Special Counsel for Brown Funded Claims**.  The    Trustee shall obtain Brown's written consent as to the identity of, and terms of engagement for, co-special counsel to be retained by the Trustee to investigate and prosecute any Brown Funded Claims (such counsel referred to as "Special Counsel").  Any withholding of consent by Brown to a proposed co-special counsel must be reasonable.  The Trustee shall apply to the Bankruptcy Court to retain the co-special counsel approved by Brown to pursue the Brown Funded Claims, and obtain an order from the Bankruptcy Court approving such retention (the "Special Counsel Retention Order").  Brown shall pay the Litigation Funding to Ms. Mehdipour within seven days after the entry of a final, non-appealable, and non-stayed Special Counsel Retention Order. Further, nothing shall prohibit the Trustee from pursuing the Brown Funded Claims without the Litigation Funding if there is no agreement to the retention of co-special counsel.  For the

69880995;1

DocuSign Envelope ID: B8193D3D-7D81-42F3-B1A1-5CD56E3FB4D6

avoidance of doubt, the Trustee shall control the retention of co-special counsel and shall control the litigation of the Brown Funded Claims.

12.    **Disposition of Brown Funded Claims.**    The Trustee shall control the initiation, settlement, and all other aspects of the Brown Funded Claims.  In the event that the Trustee obtains a judgment on any of the Brown Funded Claims and the judgment is uncollected for more than three years after entry then any uncollected portion of a Brown Funded Claim reduced to judgment shall be sold by the Trustee at a public auction approved by the Bankruptcy Court pursuant to 11 U.S.C. §363(b) where in Brown shall be entitled to a credit bid any portion of any remaining Brown Administrative Claim at the auction.  Nothing shall prohibit the Trustee from seeking to sell the judgment prior to the expiration of the three years.  Further, the three years can be extended by written agreement by Brown or on request by the Trustee for cause.  The non-exclusive list of cause shall include a settlement where payments are ordered or agreed upon, but the payments have not been completed or that the Trustee is pursing third parties to collect on the judgment through a proceeding supplementary, avoidance proceedings and the proceeding is not concluded.

13.    **Entire Agreement**.  This Agreement constitutes the sole and entire agreement between the Parties as to the Trustee's claims against Brown and supersedes all prior and contemporaneous statements, promises, understandings or agreements, whether written or oral.  Each Party acknowledges that no promise or inducement has been offered except as set forth herein, and that this Agreement has been executed after each of the Parties has made an independent investigation of the facts and has had the opportunity to rely upon the legal knowledge and advice of attorneys in executing this Agreement.

14.    **Amendments**.  This Agreement may be amended, modified or altered at any time upon the approval of the Parties and the Court; however, any such amendment must be in writing and signed by all Parties and approved by the Court in order for such amendment to be of any force and effect.

15.    **Partial Invalidity**.  If any provision of this Agreement is declared by any court of competent jurisdiction or any administrative judge to be void or otherwise invalid, all of the other terms, conditions and provisions of this Agreement shall remain in full force and effect to the same extent as if that part declared void or invalid had never been incorporated in the Agreement and in such form, the remainder of the Agreement shall continue to be binding upon the Parties.

16.    **Survival**.  All representations and warranties contained herein shall survive the execution and delivery of this Agreement, and the execution and delivery of any other document or instrument referred to herein.

17.    **Applicable Law**.  This Agreement shall be subject to and governed by the laws of the State of Florida, without giving any effect to the conflicts or choice of laws principles which otherwise might be applicable.

69880995;1

DocuSign Envelope ID: B8193D3D-7D81-42F3-B1A1-5CD56E3FB4D6

18.     **Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement.  Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

19.     **No Adverse Construction.** The Parties acknowledge that this Agreement has been prepared by each of them.  In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth below.

**ACCEPTED AND AGREED:**

**Nicole Testa Mehdipour, Solely in the Capacity as Trustee for Excell Auto Group, Inc.**

**Edward Brown**

69880995;1

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.                                    Case No. 22-12790-EPK

       Debtor.                                          Chapter 7

_____

**BAR ORDER PURSUANT TO SETTLEMENT AGREEMENT BETWEEN
TRUSTEE NICOLE TESTA MEHDIPOUR AND EDWARD BROWN**

**THIS MATTER** came before the Court at a duly noticed hearing on _____, 2023 at

_____ a.m./p.m. ("Hearing") upon the *Trustee's Motion to Compromise Controversy With*

*Edward Brown and for Entry of a Bar Order* [ECF No.___] (the "Motion").  The Court, having

(i) reviewed and considered the Motion and the Settlement Agreement and Release (the

"Settlement Agreement") between Nicole Testa Mehdipour, Chapter 7 Trustee (the "Trustee") for

the Estate of Excell Auto Group, Inc. ("Estate") on the one hand and Edward Brown ("Brown"),

(ii) taken notice of the status of these proceedings and litigation involving the Trustee, (iii) heard

the evidentiary proffer and testimony of the Trustee and Brown, (iv) approved the Settlement

Agreement by entry a separate order [ECF ___], and (v) been duly advised in the premises, and it

appearing the relief requested in the Motion is reasonable and in the best interests of the Debtor's

bankruptcy estate, finds that good cause exists to grant the relief requested in the Motion, including

the entry of this Bar Order.[1]   Therefore, the Court makes the following findings of fact and

conclusions of law in support of the Court granting the Motion and approving the Bar Order[2]:

## **FACTUAL FINDINGS**

A.      On April 8, 2022 (the "Petition Date"), Excell Auto Group, Inc. (the "Debtor" or

"Excell") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, instituting

the above-captioned bankruptcy case.

B.      Nicole Testa Mehdipour was duly appointed and is the permanent Chapter 7 trustee

for the bankruptcy estate of Excell Auto Group, Inc.

C.      The Trustee and her professionals have been investigating numerous claims, causes

of action, other potential assets to recover for administration in this estate, including against Brown

and the Brown Released Parties, as defined herein.

D.      On February 12, 2021, Debtor entered into a loan agreement with Brown (the "Loan

Agreement"), through which Excell borrowed $10,000,000 from Brown and agreed to the terms

of repayment of a pre-existing $3,000,000 loan from Brown.

E.      Pursuant to the terms of the Loan Agreement, Kristen Zankl assigned 49% of her

---

[1] All capitalized terms not defined in this Order shall have the meaning ascribed in the Settlement
Agreement.  To the extent the defined meanings differ, the definitions in the Settlement Agreement shall
control.

[2] To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed
and such finding made applicable in this Order, and to the extent any conclusion of law shall later be
determined to be a finding of fact, it shall be so deemed and such finding made applicable in this Order.

interest in Excell as collateral to the loan "which shall remain vested in Brown until the Loan is repaid." Further, pursuant to the Loan Agreement, Brown would not receive any distributions during the time that Brown held a vested interest in Excell. Upon the repayment of the loan, Brown's interest would be reduced to a 20% vested interest and "[a]t the time Brown becomes vested in Excell, he begin to receive distributions from Excell."

F.    Brown was never a director or officer of Excell. Brown did not participate in the management, control, or operations of Excell, did not have access to any books, records, accounts, or bank statements of Excell, and did not have knowledge of the liabilities of Excell beyond the loans that Brown made to Excell. At no point in time, did Brown have a controlling interest in Excell or the Excluded Entities referenced in the Motion and Settlement Agreement.

G.    The Trustee has reviewed the facts supporting the Brown Amended Claim and acknowledges that Brown has suffered in excess of $16,000,000 in monetary damages as a result of the Debtor's and its agents' pre-petition acts.

H.    Based upon the information provided to the Trustee, the Trustee believes that Mr. Brown was an innocent shareholder of the Debtor.

I.    The Trustee believes that the only exposure the Brown Released Parties have to non-Chapter 5 claims related to the Debtor's estate, or claims against it, including any potential claims for alter ego liability, piercing of the corporate veil, mere instrumentality, breach of fiduciary duty, are claims that could only be brought by the Trustee on behalf of the Bankruptcy Estate.

J.    Brown has asserted a claim in excess of $16,000,000 in the Bankruptcy Case, and to the extent the Trustee successfully avoids and recovers any preference payments, that claim could increase.

K.      Further, to the extent that the Trustee was successful in litigating against Brown, the damages could be offset against Mr. Brown's claim such that there would be no cash recovery to the Estate.

L.      The possibility of a long, complicated, and expensive trial is likely based on the difficult factual and legal issues, the significant number of creditors involved, and in light of the history of related litigation involving the Estate.   The litigation would incur substantial administrative expense claims.

M.      The Bar Order requested is integral to the Settlement Agreement, as Brown would not have entered into the Settlement Agreement without entry of the Bar Order.

N.      Brown conditioned the Settlement Agreement on this Court entering this Bar Order.

O.      Brown is unwilling to pay any of the settlement sums without assurance that the Brown Released Parties will be protected from further claims.

P.      Based on the above factors, the Court finds that the Bar Order is essential for a litigation settlement agreement.

## **CONCLUSIONS OF LAW**

Q.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

R.      Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

S.      Due and proper notice of the Motion and Hearing was given to the parties required under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

T.      The Trustee seeks entry of the Bar Order pursuant to approval of the Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Rule 9019(a) provides that,

after notice and a hearing, a court may approve a proposed settlement of a claim.

U.      The decision of whether or not to approve a compromise is within the sound discretion of the court.  *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) citing *In re Air Safety Intern., L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

V.      As part and parcel of the Settlement Agreement, the Trustee seeks the entry of a bar order enjoining any party from suing the Brown Released Parties from any matter arising from or relating to claims against the Estate or the Debtor, in accordance with the authority granted the Bankruptcy Court.

W.      This Court has the inherent power under the Bankruptcy Code, including section 105(a), to issue any order necessary or appropriate to carry out the provisions of Title 11. *Munford v. Munford, Inc.* (*In re Munford*), 97 F.3d 449, 454 (11th Cir. 1996) (finding bankruptcy court had authority under section 105(a) to enter order barring claims against certain defendants).

X.      The Eleventh Circuit concluded that (i) public policy favors settlements; (ii) the cost of litigation can be burdensome to a bankruptcy estate, and (iii) "bar orders pay an integral role in facilitating settlements." *Munford*, 97 F.3d at 455; *accord In re S & I Invs.*, 421 B.R. 569, 583–586 (Bankr. S.D. Fla. 2009).

Y.      In this case, the Trustee has testified that the Bar Order is an essential and critical element of the Settlement Agreement and the willingness of Brown to pay $600,000 to the Estate, provide litigation funding of an additional $200,000 to the Trustee, and convey all claims and stock that Brown has of SH Parent, Inc., DBA Parallel Brands, any of its present or former officers, and any of its present or former directors, arising from Brown's acquisition of equity in SH Parent, Inc., DBA Parallel Brands.  The Settlement Agreement expressly provides that without a bar order,

it is ineffective and void. The Trustee has further testified that without a bar order, Brown would not have had entered into the Settlement Agreement.

Z.     A bar order is consistent with the pronouncement of the Eleventh Circuit in *Munford* and *In re U.S. Oil and Gas Litigation*, 967 F.2d 489 (11th Cir. 1992), and therefore, entry of a bar order is proper pursuant to 11 U.S.C. § 105(a) and the inherent powers of this Court.

AA.     The Court specifically concludes that the Settlement Agreement, generally, and the Bar Order, specifically: (i) is integrally related to the Trustee's potential claims against the Brown Released Parties; (ii) is adequately interrelated to those claims that any party may have against the Brown Released Parties; (iii) is a critical and required term of the Settlement Agreement; (v) is necessary to achieve the complete resolution of the issues contained in the Settlement Agreement, without which the settling parties would not proceed with the Settlement Agreement; and (vi) is fair and equitable under the circumstances. The result of the Bar Order is that the largest creditor of the Estate, Brown, will provide funds and assets to satisfy claims of other estate unsecured creditors while subordinating his own claim, and funding litigation claims to potentially marshal further assets for the estate. Brown would not otherwise agree to do so given the possibility of future litigation among the vast pool of creditors. The settlement maximizes the recovery for the estate creditors in the most efficient manner, and the bar order is therefore fair and equitable under the circumstances.

BB.     For the avoidance of doubt, and in light of the decisions of the Eleventh Circuit in *Munford* and *U.S. Oil and Gas,* as adopted by this Court in *In re S & I Invs.,* the Court finds that it has subject matter jurisdiction to enjoin claims against Brown and the Brown Released Parties, because such claims (i) are interrelated with claims which have been or could be asserted by the Trustee, and (ii) impact the administration of the Debtor's bankruptcy estate.

- 6 -

**BASED UPON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED as follows:**

1.      The Motion is **GRANTED,** and the Court hereby enters a bar order pursuant to the Settlement Agreement.

2.      Upon receipt by the Trustee of the Settlement Payment (as defined in the Settlement Agreement), all Barred Persons are hereby permanently barred, enjoined, and restrained from commencing, prosecuting, continuing, or asserting, either derivatively or on behalf of themselves, in the Bankruptcy Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, any actions, cause and causes of action, Claims, counterclaims, cross-claims, suits, proceedings, or demands, for damages, punitive damages, costs, expenses, attorneys' fees, and all liabilities whatsoever, of every kind and nature, whether known or unknown, suspected or unsuspected accrued or unaccrued, in law, equity or otherwise, which the Barred Persons ever had, against the Brown Released Parties arising out of, connected with, or in any way related to the Debtor and the Bankruptcy Main Case.  The Barred Claims include all Claims that any Barred Person has against the Brown Released Parties based on any legal theory or potential liability arising from Brown's ownership interest in Excell, including claims for alter ego liability, piercing of the corporate veil, mere instrumentality, breach of fiduciary duty, or any other theory of imposition of liability for the corporate debts of Excell premised upon Brown's ownership interest.  The Barred Claims specifically exclude  any *in rem* claims for relief that any Person or Entity, other than Excell, the Estate, or the Excell Trustee, may have against the following vehicles in Brown's possession: a 2021 Cullinan VIN SLATV8C09MU204097, a 2021 Lamborghini Urus Mansory Edition

VIN#ZPBUA1ZL1MLA12270, a 2021 Ferrari Roma VIN#ZFF98RNA3M0263662, and a black Ferrari Stradale Sf90 VIN# ZFF95NLA7MO265077.

3.     The scope of the bar order set forth in Paragraph 2 is limited to those claims against the Brown Released Parties arising from their connection, involvement, or interest with Debtor, and is not intended to bar third party claims against the Brown Released Parties arising out of matters completely unrelated to the Brown Released Parties' involvement with Debtor.

4.     The following definitions apply to the provisions of this Order barring claims as set forth below; any capitalized terms used herein that are not defined herein shall have the meanings ascribed to them in the Settlement Agreement between the Trustee and Brown:

(i)     "Barred Person" means any Person or Entity that holds, may hold, or purports to hold a Claim or other debt or liability or an Interest or other right, against, in, arising out of, or in any way relating to Debtor Excell Auto Group, Inc. or its Bankruptcy Estate, whether that Person or Entity filed a proof of claim or otherwise, except that such term shall not include the Securities and Exchange Commission, or any other governmental entity or agency.

(ii)     "Claim" means any "claim" defined in section 101(5) of the Bankruptcy Code and any other actions, causes of action, claims, counterclaims, cross-claims, suits, proceedings, damages, losses, costs, expenses, attorneys fees, and demands or liabilities.

(iii)     "Entity" has the definition set forth in section 101(15) of the Bankruptcy Code.

(iv)   "Interest" means any share of common stock, preferred stock, or other instrument evidencing an ownership interest of the Debtor, whether or not transferable, issued, or outstanding, and any option, warrant, or right, contractual or otherwise, to acquire any such interest of Debtor.

(v)   "Person" has the definition set forth in section 101(41) of the Bankruptcy Code.

(vi)   "Brown Released Parties" means Edward Brown, his wife, Ashley Brown, the Edward M. Brown Revocable Trust (the "Trust"), or any entity in which Brown, his wife, or the Trust had, have, or will have a Controlling Interest except the Excluded Entities.

(vii)   Excluded Entities has the meaning defined in the Settlement Agreement and includes Excell, Karma of Palm Beach, Inc., or Karma of Broward, Inc., Excell Auto Finance, LLC nka Columbus Day Finance, LLC, Excell Auto Leasing, LLC, Excell Auto Sport and Service, LLC,  Excell Auto Sports and Service, Inc., SH Parent, Inc., DBA Parallel Brands, and Graner Platzek & Allison, P.A.

(viii)   Controlling Interest shall mean an ownership interest that under the corporate governance of the business entity provides the owner with the legal capacity to: (i) unilaterally appoint or terminate any officer or director; (ii) convey substantially all of the assets of the business entity; or (iii) make any operational business decision on behalf of the business entity.

(ix)   At no time did Brown have a controlling interest in the Excluded Entities.

5.      The Court retains jurisdiction regarding the interpretation, effectuation, and enforcement of the terms and conditions of this Order.

###

Submitted by:

# PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.

      Debtor.

_____

Case No. 22-12790-EPK

Chapter 7

## ORDER GRANTING TRUSTEE'S MOTION TO COMPROMISE CONTROVERSY WITH EDWARD BROWN AND FOR ENTRY OF A BAR ORDER

**THIS MATTER** came before the Court at a duly noticed hearing on _____ 2023 at _____ a.m./p.m. ("Hearing") upon the *Trustee's Motion to Compromise Controversy With Edward Brown and for Entry of a Bar Order* [ECF No.___] (the "Motion"). The Court, having (i) reviewed and considered the Motion and the Settlement Agreement and Release (the "Settlement Agreement") between Nicole Testa Mehdipour, Chapter 7 Trustee (the "Trustee") for the Estate of Excell Auto Group, Inc. ("Estate") on the one hand and Edward Brown ("Brown"), (ii) taken notice of the status of these proceedings and litigation involving the Trustee, (iii) heard the evidentiary proffer and testimony of the Trustee and Brown, and (iv) been duly advised in the

premises, and it appearing the relief requested in the Motion is reasonable and in the best interests of the Debtor's bankruptcy estate, finds that good cause exists to grant the relief requested in the Motion.[1]  Therefore, the Court makes the following findings of fact and conclusions of law in support of the Court granting the Motion and approving the Settlement Agreement[2]:

## **FACTUAL FINDINGS**

A.      On April 8, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, instituting the above-captioned bankruptcy case.

B.      Nicole Testa Mehdipour was duly appointed and is the permanent Chapter 7 trustee for the bankruptcy estate of Excell Auto Group, Inc.

C.      The Trustee and her professionals have been investigating numerous claims, causes of action, other potential assets to recover for administration in this estate, including against Brown and the Brown Released Parties.

D.      On February 12, 2021, Debtor entered into a loan agreement with Brown (the "Loan Agreement"), through which Excell borrowed $10,000,000 from Brown and agreed to the terms of repayment of a pre-existing $3,000,000 loan from Brown.

E.      Pursuant to the terms of the Loan Agreement, Kristen Zankl assigned 49% of her interest in Excell as collateral to the loan "which shall remain vested in Brown until the Loan is repaid."  Further, pursuant to the Loan Agreement, Brown would not receive any distributions during the time that Brown held a vested interest in Excell.  Upon the repayment of the loan,

---

[1] All capitalized terms not defined in this Order shall have the meaning ascribed in the Settlement Agreement.  To the extent the defined meanings differ, the definitions in the Settlement Agreement shall control.

[2] To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed and such finding made applicable in this Order, and to the extent any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed and such finding made applicable in this Order.

Brown's interest would be reduced to a 20% vested interest and "[a]t the time Brown becomes vested in Excell, he begin to receive distributions from Excell."

F.      Brown was never a director or officer of Excell.  Brown did not participate in the management, control, or operations of Excell, did not have access to any books, records, accounts, or bank statements of Excell, and did not have knowledge of the liabilities of Excell beyond the loans that Brown made to Excell.

G.      The Trustee has asserted that Brown and Selfless Love Foundation, Inc., a Florida not for profit corporation ("Selfless Love") of which Brown is a director, received certain prepetition preferential payments pursuant to the Loan Agreement in the one-year period prior to the commencement of the Debtor's bankruptcy case.

H.      Brown and Selfless Love have asserted defenses to the preference payments, including ordinary course of business for all the loan payments made pursuant to the schedule provided in the Loan Agreement.

I.      The Trustee believes that the only exposure the Brown Released Parties have to non-Chapter 5 claims related to the Debtor's estate, or claims against it, including any potential claims for alter ego liability, piercing of the corporate veil, mere instrumentality, breach of fiduciary duty, are claims that could only be brought by the Trustee on behalf of the Bankruptcy Estate.  However, based upon the information provided to the Trustee, the Trustee believes that Mr. Brown was an innocent shareholder of the Debtor. The Trustee is not aware of any basis for Estate or any other party to pursue a derivative claim against Brown.

J.      Pursuant to the Settlement Agreement, and Brown's consent to such finding thereunder, the Court hereby finds that Brown was an innocent shareholder of the Debtor.

K.      The Trustee has reviewed the facts supporting the Brown Amended Claim and

- 3 -

69908599;1

acknowledges that Brown has suffered in excess of $16,000,000 in monetary damages as a result of the Debtor's and its agents' pre-petition acts.

L.      Brown has asserted a claim in excess of $16,000,000 in the Bankruptcy Case, and to the extent the Trustee successfully avoids and recovers any preference payments, that claim could increase.

M.      Further, to the extent that the Trustee was successful in litigating against Brown, the damages could be offset against Mr. Brown's claim such that there would be no cash recovery to the Estate.

N.      The possibility of a long, complicated, and expensive trial is likely based on the difficult factual and legal issues, the significant number of creditors involved, and in light of the history of related litigation involving the Estate.  The litigation would incur substantial administrative expense claims.

O.      The Bar Order requested is integral to the Settlement Agreement, as Brown would not have entered into the Settlement Agreement without entry of the Bar Order.  Brown is unwilling to pay any of the settlement sums without assurance that the Brown Released Parties will be protected from further claims relating to the Debtor or Debtor's estate.

## CONCLUSIONS OF LAW

P.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

Q.      Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

R.      The statutory and legal predicates for the relief granted herein are sections 105(a), Bankruptcy Rule 9019(a) and Local Rule 9019(A).

S.      Due and proper notice of the Motion and Hearing was given to the parties required

under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

T.    The Trustee seeks entry of the Bar Order pursuant to approval of the Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.

U.    The decision of whether or not to approve a compromise is within the sound discretion of the court.  *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) citing *In re Air Safety Intern., L.C*., 336 B.R. 843, 852 (S.D. Fla. 2005); *In re Arrow Air, Inc*., 85 B.R. 886 (Bankr. S.D. Fla. 1988).

V.    A compromise or settlement under Bankruptcy Rule 9019 must be fair, equitable, reasonable, and in the interests of the debtor's estate.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *In re Se.Banking Corp.,* 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004).  A proposed settlement will be approved unless it "fall[s] below the lowest point in the range of reasonableness. *See, e.g., Martin v. Pahiakos (In re Martin),* 407 F.3d 1272, 1275 (11th Cir. 2007); *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).  In considering a proposed settlement, the bankruptcy court "may give weight to the trustee's informed judgment that a compromise is fair and equitable."  *In re S & I Investments,* 421 B.R. 569, 584 (Bankr. S.D. Fla. 2009).

W.    Courts in the Eleventh Circuit also consider the following factors: (i) the probability of success in litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience, and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Wallace v. Justice Oaks II, Ltd. (In re Justice Oaks, II, Ltd.),* 898 F.2d 1544, 1459

(11th Cir. 1990).

X.       "[P]ublic policy strongly favors pretrial settlement in all types of litigation because such cases, depending on their complexity, [like the Adversary Proceeding] 'can occupy a court's docket for years on end, depleting the resources of parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Shearson Lehman Brothers, Inc. v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996) (quoting *U.S. Oil & Gas v. Wolfson,* 967 F.2d 489, 493 (11th Cir. 1992)).

Y.       Based on the findings of fact set forth herein, the Court concludes that the arguments, representations, proffers, and other evidence introduced in support of the Motion and at the Hearing support and warrant the conclusions of law that the Settlement Agreement meets the standard set out in *In re Justice Oaks II, Ltd.*, 898 F.2d at 1549, and otherwise fall well above the lowest point in the range of reasonableness, and meet the standard set out in *In re Justice Oaks II, Ltd.*, 898 F.2d at 1549, as follows:

      a.  <u>Probability of Success</u>.  The Court finds that the probability of success on the litigation against Brown and the Brown Released Parties is questionable. Brown and Selfless Love have asserted defenses to the preference payments, including ordinary course of business for all the loan payments made pursuant to the schedule provided in the Agreement.  The Trustee has reviewed potential claims related to Mr. Brown's interest in Excell by virtue of the Assignment, any alleged ownership or control of Excell (including alter ego, piercing the corporate veil, and breach of fiduciary duty), and claims unrelated to Chapter 5 claims.  The evidence provided to the Trustee that Mr. Brown was not an officer or director of the Debtor and did not participate in the management or control of the Debtor is unrebutted.  Mr. Brown did not have access to the basic books and records of Excell, nor ability to hire or fire employees, access bank accounts or bank statements, or any ability to control the operational or management functions of Excell.

      b.  <u>Difficulties in Collection</u>.  Any judgment against Mr. Brown and the Brown Released Parties may ultimately be collectible, however, Mr. Brown has also filed a $16,000,000 proof of claim, against which any non-Chapter 5 judgment may ultimately be offset.

      c.  <u>Complexity of the Litigation</u>.  The Chapter 5 litigation is not overly

complex.    The legal and factual issues are straight forward. Notwithstanding, Mr. Brown would put forth a vigorous defense and has substantiated his position in connection with the settlement negotiations. Any non-chapter 5 causes of action would involve complex legal and factual analysis. Any adversary proceeding brought by the Trustee against the Brown Released Parties would be vigorously contested and will cause substantial delay in any potential recovery.

d.  <u>Paramount Interest of the Creditors</u>. The Court finds that the settlement is in the paramount interest of creditors because proposed Settlement Payment coupled with the Litigation Funding, the payment of the sale proceeds of the Parallel Preferred Stock, and consensual subordination of the Brown Amended Claim projects to fund a distribution of undisputed allowed claims with a substantially greater distribution upon the prosecution of the Brown Funded Claims and liquidation of the Parallel Preferred Stock.

Z.  The Court thereby finds that Settlement Agreement takes into account the relative probabilities of success on the Parties' claims, as well as the costs and expenses to be incurred by the Parties from pursuit of further litigation and proposes a global resolution of all claims that the Parties have determined to be fair, equitable, reasonable, and in the best interests of the estate.

AA.  The Settlement Agreement is the result of arms-length negotiations between the Trustee and Brown, and the Court finds that the Trustee and Brown have acted in good faith in negotiating and entering into the Settlement Agreement.

BB.  Based on her reasoned business judgment, the Trustee has made a determination that the Settlement Agreement provides a certain and prompt recovery for creditors and she recommends its approval.  The Court further finds that entry into the Settlement Agreement is a proper exercise of the Trustee's sound business judgment.

**BASED UPON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED as follows:**

1.  The Motion is **GRANTED.**

2.  The Settlement Agreement is hereby **APPROVED**.

3.      Except as otherwise provided herein, the objections of any party are **OVERRULED.**

4.      The Court finds that entry of the requested Bar Order is appropriate in order to achieve the finality and repose that is contemplated as a term of the proposed settlement and that good cause therefore exists for the entry of this Order, and that this Order is fair and equitable. *See In re: U.S. Oil & Gas Litigation*, 967 F.2d 489, 495-496 (11th Cir. 1992); *In re Munford, Inc.*, 97 F.3d 449, 454-455 (11th Cir. 1996); *In Re Centro Grp., LLC*, No. 21-11364, 2021 WL 5158001 (11th Cir. Nov. 5, 2021); and *Brophy v. Salkin*, 550 B.R. 595 (S.D. Fla. 2015).

5.      Each and every term and condition of the Settlement Agreement is approved, incorporated and adopted herein, except as limited and modified by this Order.

6.      The Bar Order request is approved to the extent set forth by separate Order of this Court in the *Bar Order Pursuant to Settlement Agreement Between Trustee Nicole Testa Mehdipour and Edward Brown*.

7.      The Amended Claim of Edward Brown (Claim No. 9-2) (the "Amended Brown Claim") is allowed in the amount of $16,000,000.  The Amended Brown Claim shall be subordinated to all timely filed unsecured claims and shall only receive a distribution after all timely unsecured claims have been paid in full.

8.      Brown shall receive an allowed administrative expense claim for any Litigation Funding actually funded by Brown to the Debtor's Estate pursuant to the Settlement Agreement (the "Brown Administrative Claim").   The Brown Administrative Claim shall be satisfied solely from the proceeds of the Brown Funded Claims.

9.      This Order shall be interpreted as broadly as possible so as to effectuate the purposes stated herein.

69908599;1

10.     Subject to the terms and conditions of the Settlement Agreement, the Trustee is authorized to take any and all action necessary to consummate the Settlement Agreement.

11.     The Court reserves sole and exclusive jurisdiction to interpret and enforce the terms of this Order and the Settlement Agreement between the parties and to enter further orders as necessary to implement the Settlement Agreement.

###

Submitted by:

69908599;1