UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

EXCELL AUTO GROUP, INC.

Debtor.
_____/

Case No.: 22-12790-EPK
Chapter 7

**MOTION TO COMPROMISE CONTROVERSY WITH
BAL INVESTMENTS, LLC, 3450 AIP, LLC, LORNE TRITT, GEOFFREY
DECKELBAUM, DAVID OSHINS, AND THE TRITT FAMILY GIFT TRUST**

Nicole Testa Mehdipour (the "**Trustee**"), Chapter 7 trustee in the above captioned bankruptcy case (the "**Bankruptcy Case**"), pursuant to § 105(a) of the Bankruptcy Code[1] and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), moves this Court for entry of an Order authorizing and approving the settlement agreement ("**Settlement Agreement**") between the Trustee and BAL Investments, LLC, 3450 AIP, LLC, Lorne Tritt, Geoffrey Deckelbaum, David Oshins, and The Tritt Family Gift Trust (collectively referred to as "**Defendants**") substantially in the form of the attached order as Exhibit 1. In support of this Motion, the Trustee states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. **Pertinent Pre-Petition Events**

---

[1] 11 U.S.C. §§ 101, *et. seq.*

1

a. **The Bal Investment Lines of Credit with Debtor**

2. Prepetition, BAL Investments, LLC, provided financing to Excell Auto Group, Inc. (the "**Debtor**") via various and discrete instruments.

3. BAL Investments provided the Debtor with a line of credit. Originally, in July 2021, Bal Investments provided a $2 million line of credit to the Debtor, through which the Debtor could request the advance of 80% of the purchase price of a vehicle, and BAL Investments, in its sole discretion could fund (the "**July 2021 LOC**").

4. In October 2021, the Debtor required additional funds and sought and obtained an increase of the line of credit to $5 million (the "**October 2021 LOC,**" and collectively with the July 2021 LOC, the "**LOCs**"). The general funding terms of the October 2021 LOC were the same as the July 2021 LOC. The face of the October 2021 LOC called for the Debtor to pay 14% interest on the full $5 million at fixed monthly payment of $58,333.33.

5. The October 2021 LOC was made up of multiple documents that were to be read together, including a promissory note, pledge agreement, and guaranty. In the pledge agreement there is a Florida choice of law provision. No other document references a choice of law.

6. The Debtor transferred $4,931,406.00 to Bal Investments on account of the LOCs.

b. **BAL Investments Participation in the Locate Deals**

7. In addition to the LOCs, BAL Investments provided financing by participating in what has been termed "Locate Deals."

8. Between August 2021 and February 2022, BAL Investments participated in Locate Deals for 18 specific vehicles. Each of the Locate Deals was memorialized using the same form "Loan Agreement and Promissory Note" attached to Proofs of Claim 30 through 34. None of the

Loan Agreements or Promissory Notes contain a choice of law provision. All Defendants are residents of Georgia.

9. The Debtor repaid $4,241,000 to BAL Investments on the first 13 Locate Deals between August 2021 and February 9, 2022.

**B. The Bankruptcy Filing and Pertinent Post-Petition Events**

10. On April 8, 2022 (the "**Petition Date**"), Excell Auto Group, Inc. (the "**Debtor**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, instituting the above captioned bankruptcy case.

11. Nicole Testa Mehdipour was duly appointed and is the permanent Chapter 7 trustee for the bankruptcy estate of Excell Auto Group, Inc.

12. On account of the October 2021 LOC, BAL Investments filed Proof of Claim No. 29 in the amount of $5,325,479.33.

13. On account of five Locate Transactions, BAL Investments filed: (a) Proof of Claim No. 30 in the amount of $347,500.00 on account of the Locate Transaction for a McLaren 720 Spyder VIN. 8289; (b) Proof of Claim No. 31 in the amount of $369,500 00 on account of the Locate Transaction for a Rolls Royce Dawn VIN. 5247; (c) Proof of Claim No. 32 in the amount of $587,500.0000 on account of the Locate Transaction for the Lamborghini SVJ, VIN. 8698; (d) Proof of Claim No. 33 in the amount of $1,050,000.00 on account of the Locate Transaction for the McLaren P1, VIN. 0085; and (e) Proof of Claim No. 34 in the amount of $837,500.0000 on account of the Locate Transaction for the Lamborghini SCJ 63, VIN. 8766.

14. The Trustee and her professionals have been investigating numerous claims, causes of action, and other potential assets to recover for administration in this estate. The Trustee has

3

identified the certain transfers made by the Debtor to the Defendants which the Trustee believes gives rise not only to avoidance actions but other causes of action as well.

15. The Trustee sent counsel for the Defendants a draft complaint on March 27, 2024, detailing the allegations and potential causes of action the Trustee believes she had against the Defendants.

16. Defendants deny any liability for the claims alleged by the Trustee.

17. The Trustee and Defendants engaged in good-faith settlement negotiations, participated in a judicial settlement conference with the Honorable Paul G. Hyman, Jr., and have reached a settlement, the terms of which they have now set forth in in this Motion. The parties agreed that the oral agreement reached at the conclusion of the judicial settlement conference was binding and enforceable absent the parties reaching a written settlement agreement. The parties are in good faith negotiations to enter into a written settlement agreement. However, the essential terms of the settlement are set forth below. The Trustee will separately file either a written settlement agreement or a copy of the transcript of the agreement reached at the judicial settlement conference.

## **TERMS OF THE SETTLEMENT**[2]

18. In order to avoid the costs of litigation, the parties have reached a settlement which resolves the dispute between the Trustee and Defendants, the terms of which are summarized below.

19. **Settlement Consideration**.

   a. Defendants shall pay the Trustee $1,000,000.00 ("**Settlement Amount**"). The schedule of settlement payments of the Settlement Amount ("**Settlement Payments**") is as follows:

---

[2] The Motion attempts to summarize the terms of the Settlement Agreement. In the event of a conflict between the terms summarized in the Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

4

      i. $250,000.00 to be paid to the Trustee within ten (10) days of the Approval Order (defined below) ("**Initial Payment**"), followed by

      ii. Six (6) installments of $125,000.00 ("**Installment**"), with the first installment due on or before the 90th day after the Initial Payment is due and payable, and each remaining Installment due on or before the 90th day thereafter until the Settlement Amount is paid in full.

  b. The Settlement Payments set forth in Section 2(a) above will be in the form of a check, money order, or attorney's trust account check made payable to ***Nicole Testa Mehdipour, Chpt. 7 Trustee for Excell Auto Group, Inc.***, and delivered to Nicole Testa Mehdipour, Ch. 7 Trustee, 6278 North Federal Highway, Suite 408, Fort Lauderdale, FL 33308. The check or money order should clearly state Excell Auto Group's case number. Alternatively, the Defendants can obtain wiring instructions from the Trustee.

  c. Bal Investments will file an amended Proof of Claim No. 29, in the reduced amount of $4,750,000, within ten (10) days of the entry of the Approval Order.

  d. Bal Investments will withdraw Proofs of Claim 30, 31, 32, 33, and 34, which are filed on account of certain Locate Transactions within ten (10) days of the entry of the Approval Order.

  e. The Parties agree to the releases set forth in the Settlement Agreement, which release the Defendants only from claims arising from or related to the LOCs pr Locate Deals identified in the Draft Complaint (and outlined above).

20. In the event that Defendants default by failing to timely perform any obligation set forth in the Settlement Agreement, the Trustee shall provide written notice ("**Written Notice**") of the default to Defendants through its counsel, by e-mail (which the Parties agree to be an acceptable method of properly giving notice under the Settlement Agreement). The Written Notice shall provide ten (10) days from the date of such notice to cure the default. Should Defendants fail to cure the default within the period referenced above, then the Trustee may file a Notice of Default notifying the Bankruptcy Court of the uncured Default, upon which Defendants agree to the entry of a default final judgment in the amount of 1.5 times $1,000,000 less any payments actually received by the Trustee under this Settlement Agreement[3]. A form of the default final judgment

---

[3] ($1,000,000- (payments made))*1.5=Judgment Amount.

5

will be filed with either the written settlement agreement or with a copy of the transcript of the agreement reached at the judicial settlement conference. In addition, the default judgment will declare Proof of Claim No. 29 disallowed in its entirety. The only defense to default is payment, Defendants expressly waive all other defenses.

21. Each Party shall bear its own attorneys' fees and costs incurred in connection with the negotiation and documentation of this Settlement Agreement. Defendants shall pay or reimburse Trustee for the payment of any costs or expenses (including reasonable attorneys' fees and disbursements) incurred or expended by the Trustee in connection with or incidental to (a) any default by Defendants hereunder or (b) the exercise or enforcement by or on behalf of the Trustee of any of its rights or remedies of Defendants' obligations under the Agreement, including the enforcement, compromise, or settlement of the obligations of this Agreement, including but not limited to consultation with an attorney whether or not the matter prompting such consultation is eventually involved in litigation; and the defense or assertion of the rights or claims of the Trustee hereunder, whether by litigation (including litigation in a United States Bankruptcy Court) or otherwise.

22. The parties are aware that this Settlement Agreement must be noticed to all creditors and parties-in-interest and must be approved by the Bankruptcy Court. In the event that the Settlement Agreement is not approved, it shall be deemed null and void. The parties request that the Bankruptcy Court enter an Order approving this Motion, including the Settlement Agreement, and to reserve jurisdiction to enforce the terms and covenants contained therein.

**Basis for Approving the Settlement**

23. The legal principles to be applied in evaluating a proposed settlement have been enunciated upon within the Southern District of Florida in *In re Arrow Air, Inc.*, 85 B.R. 886

(Bankr. S.D. Fla. 1988). The appropriate test is "whether the compromise falls below the lowest point in the range of reasonableness." *Id*. at 891 (*citing In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2nd Cir. 1985); *In re W.T. Grant Company*, 699 F.2d 599, 608 (2nd Cir. 1983)). The Trustee believes that this Settlement Agreement complies with the legal principles relied upon within these authorities.

24. The Eleventh Circuit has held that when a bankruptcy court decides whether to approve or disapprove a settlement, it must consider:

> A. the probability of success in the litigation;
>
> B. the difficulties, if any, to be encountered in the matter of collection;
>
> C. the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> D. the paramount interest of the creditors and a proper deference to their reasonable view in the premises.

*In re Justice Oaks II, Ltd*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).

25. The proposed settlement satisfies the four-part test set forth in *Justice Oaks II* and Fed. R. Bankr. P. 9019.

### A. Probability of Success in the Litigation

26. While the Trustee believes she would be successful in prosecuting her claims against Defendants, the claims have some peculiarities specific to these particular Defendants, including the form and substance of the underlying transactions, written agreements, and conflict of law issues.

#### (i) Trustee's Claims Based on the LOCs

27. With respect to the Trustee's claims against the Defendants to recover transfers for the LOCs, there is substantial dispute among the parties as to whether Florida's usury law or Georgia's usury laws would apply to the LOCs. Georgia's criminal usury statute provides for a

cap of 5% interest per month (which equates to 60% per annum) and limits the remedy to recovery of all interest and fees, allowing Defendants to retain the principal repaid. Florida's criminal usury statute caps interest at 25% per annum and results in a forfeit of principal and interest by the Defendants plus an award of attorneys' fees and costs.  Florida's criminal usury statute requires a showing of intent by the lender to charge interest of 25% or more, but not intent to violate the statute itself.

28. The LOC's, as drafted and confirmed by Mr. Deckelbaum during his 2004 Examination, may establish a prima facie case under either Florida statute. The actual rate of return on the advances made by the Defendants make the Trustee's claims predicated on the LOC's vulnerable, resulting in a less certainty of success on these claims.

### (ii) Trustee's Claims Based on the Locate Deals

29. With respect to the Trustee's claims against the Defendants to recover transfers for the Locate Deals, the Trustee is substantially more certain of success.

30. The Trustee believes there is substantial evidence to support the argument that the Locate Deals were loans and not true profit participation and that most if not all of the Locate Deals would show an expected rate of return greater than 60%, making the Locate Transactions criminally usurious under both Georgia and Florida law.

31. The Trustee also believes that Florida law would apply to the Locate Transactions under the circumstances, resulting in a recovery of the principal and interest paid by the Debtor to the Defendants on account of each Locate Deal.

32. Notwithstanding, the Defendants have raised various defenses addressing the merits of the Trustee's claims and amount of damages, including the application of Georgia versus Florida law.

33. The Trustee asserts that absent settlement, any adversary proceeding and contested matter filed by the Trustee against the Defendants would be vigorously litigated and most likely appealed.

34. Accordingly, the Trustee believes that the first prong of *Justice Oaks II*, is satisfied.

    **B.**    **Difficulties, if any, to be Encountered in the Matter of Collection**

35. The Defendants have raised the issue of collectability; however, the Trustee has not given this argument substantial weight as the Trustee has not been provided with sufficient information to verify the claims.

36. Notwithstanding, there would be substantial legal expenses incurred in making attempts to collect any award in favor of the Trustee.

37. Accordingly, the Trustee does not find this *Justice Oaks II* factor to be significant.

    **C.**    **Complexity, Expense, and Delay Associated with the Litigation Involved**

38. The litigation in this case is complex. There are substantial factual and legal disputes regarding the nature of the various transactions between the Debtor and Defendants.

39. As detailed above the Trustee believes that the Claims on the Locate Deals are significantly stronger than any claims arising from the LOC's.

40. The Trustee has not yet initiated an adversary proceeding and the prosecution of any such adversary proceeding will take a substantial amount of time and substantial expenses. Defendants assert they would vigorously defend all claims raised in any litigation. The Trustee believes it would likely be a 3 to 5-day trial.

41. Accordingly, the Trustee believes this third *Justice Oaks II* factor weighs in favor of approving the Settlement.

### D. Paramount Interest of Creditors and Proper Deference to Their Reasonable Views in the Premises

42. The Trustee believes this settlement is in the best interests of the estate. The estate benefits by the recovery of $1 million, which is greater than amount recoverable on the Locate Deals under Georgia law, to the extent Georgia law applied. Further, the estate benefits by the disallowance of more than $3.7 million in filed claims – Proofs of Claim 30-34 – along with reducing Proof of Claim 29 by more than $600,000, from $5,325,000 to $4,750,000.00.

43. The creditors in this case recover a substantial amount of damages that could be recovered through litigation under the asserted applicable law, make significant reduction of the claims pool, reduce the burden and carrying costs of litigation, and bring certainty to the very uncertain value of the Trustee's claims for the benefit of the estate.

44. The Trustee has evaluated the settlement while considering all the factors required by *Justice Oaks II* and supports its approval by the Bankruptcy Court as the proposed settlement satisfies those factors and is within the best interest of creditors and the estate.

45. The Trustee believes that the settlement falls above the lowest point of reasonableness.

46. This Motion and proposed form of Order are being noticed to all creditors and interested parties in accordance with Fed. R. Bankr. P. 2002 and 9019 and Local Rule 2002-1 and 9013-1(D).

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an order: (i) granting this Motion: (ii) compromising the controversy and approving the settlement entered into by and between the Trustee, on the one hand, and Defendants on the other hand; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 30th day of November 2024.

| | |
|---|---|
| FURR AND COHEN, P.A. | **LAW OFFICE OF** |
| *Special Counsel for Trustee* | **NICOLE TESTA MEHDIPOUR, P.A.** |
| 2255 Glades Road, Suite 419A | *Counsel for Chapter 7 Trustee* |
| Boca Raton, FL 33431 | 6278 N. Federal Highway, Suite 408 |
| Telephone: (561) 395-0500 | Fort Lauderdale, FL 33308 |
| Facsimile: (561) 338-7532 | Tel: (954) 858-5880 Fax: (954) 208-0888 |
| | |
| BY:   /s/ *Alan R. Crane* | By:  */s/ Nicole Testa Mehdipour* |
| Alan R. Crane, Esq. | Nicole Testa Mehdipour |
| Florida Bar No.: 0963836 | Florida Bar No. 177271 |
| E-mail: acrane@furrcohen.com | nicolem@ntmlawfirm.com |
| Jason S. Rigoli, Esq. | |
| Florida Bar No.: 91990 | |
| E-mail: jrigoli@furrcohen.com | |

**EXHIBIT**
**1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

EXCELL AUTO GROUP, INC.

Case No.: 22-12790-EPK
Chapter 7

Debtor.
_____/

**ORDER GRANTING MOTION TO COMPROMISE CONTROVERSY WITH BAL INVESTMENTS, LLC, 3450 AIP, LLC, LORNE TRITT, GEOFFREY DECKELBAUM, DAVID OSHINS, AND THE TRITT FAMILY GIFT TRUST**

THE CASE came before the Court for a hearing on _____, 2024 at 10:00 a.m. in West Palm Beach, Florida, upon the *Motion to Compromise Controversy with Bal Investments, LLC, 3450 AIP, LLC, Lorne Tritt, Geoffrey Deckelbaum, David Oshins, and The Tritt Family Gift Trust* [ECF No. _____] (the "**Motion**"), filed by Nicole Testa Mehdipour, Trustee. The Court has reviewed the Motion, heard the argument of counsel, notes that no objections to the relief sought in the Motion have been filed or raised at the hearing, reviewed the record in this case, and is otherwise fully advised. Accordingly, it is

**ORDERED that:**

1

1. The Motion is **GRANTED**.

2. The terms of the Settlement Agreement as set forth in the Motion, including the separately filed [(1) transcript of the settlement agreement arrived at in the judicial settlement conference, or 2) the executed written settlement agreement] are **APPROVED** in their entirety and incorporated into this Order by reference.

3. Nothing in this Order shall be construed to modify or amend the terms of the settlement as memorialized in the Settlement Agreement.

4. The Court reserves jurisdiction to enforce the terms of this Order and the Settlement Agreement.

###

**Submitted By:**
Alan R. Crane, Esq.
Furr and Cohen, P.A.
*Special Counsel to the Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532
E-mail: acrane@furrcohen.com

*Attorney Alan R. Crane is directed to serve a conformed copy of this order on all interested parties and shall file a certificate of service with the Court.*