UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

                                                    Case No.: 22-12790-EPK

EXCELL AUTO GROUP, INC.                             Chapter 7

          Debtor.

_____/

### EXPEDITED MOTION TO COMPROMISE CONTROVERSY WITH FUNDERS APP LLC d/b/a 24 CAPITAL, MARK ALLAYEV, PAUL VEGA, FUNDERS APP LLC, AND 24 CAPITAL LLC

### Exigent Circumstances

Currently, in the adversary proceeding in which Defendants are named the Pretrial Conference is set for July 8, 2026 at 9:30 a.m. In connection with the Pretrial Conference there are several pretrial deadlines that are running and will expire in short order.  The Trustee wants to get the Adversary Proceeding (defined below) to trial as quickly as possible and, if this Settlement is not approved, the Parties must complete discovery and all other pretrial matters by about mid-June. Accordingly, the Trustee respectfully requests that this Motion be set for hearing on or before **May 15, 2026**.

Nicole Testa Mehdipour (the "**Trustee**"), Chapter 7 trustee in the above captioned bankruptcy case (the "**Bankruptcy Case**"), pursuant to § 105(a) of the Bankruptcy Code[1], Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), moves this Court for entry of an Order authorizing and approving the settlement agreement ("**Settlement Agreement**") between (i) the Trustee, on the one hand, and (ii) **Funders App LLC d/b/a 24 Capital, a Florida Limited Liability Company, Mark Allayev, an individual, Paul Vega, an individual, Funders App LLC, a New York Limited Liability Company, 24 Capital LLC, a New York Limited Liability Company,**

---

[1] 11 U.S.C. §§ 101, *et seq.*

1

(collectively, the "**Defendants**"), the Trustee and Defendants shall be referred to as a "Party" or "Parties," and in support states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Pertinent Pre-Petition Events

2. On or about March 24, 2021, a "Future Receivables Sale and Purchase Agreement" was entered into between Excell Auto Group, Inc. ("Debtor") and "24 Capital" ("24 Capital MCA Agreement").  A true and correct copy of the 24 Capital MCA Agreement is attached as Exhibit A to the Complaint [Dkt. No. 1] in the Adversary Proceeding (defined below).

3. Per the 24 Capital MCA Loan, "24 Capital" allegedly "purchased" $775,750 worth of the Debtor's future receipts for $535,000.00, with an estimated daily remittance of $7,757.50. After taking into account the $32,100.00 in fees, Defendants funded $502,900.00 to the Debtor on or about March 25, 2021.  The Debtor repaid the Defendants $791,265.00 through August 2021.

### B. The Bankruptcy Filing and Pertinent Post-Petition Events

4. On April 8, 2022 ("**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, instituting the above captioned bankruptcy case.

5. Nicole Testa Mehdipour was duly appointed and is the permanent Chapter 7 trustee for the bankruptcy estate of Excell Auto Group, Inc. (the "**Estate**").

2

6. The Trustee and her professionals have been investigating numerous claims, causes of action, and other potential assets to recover for administration in this estate. The Trustee has identified the certain transfers made by the Debtor to the Defendants, which the Trustee believes gives rise not only to avoidance actions but other causes of action as well.

7. Accordingly, the Trustee filed a complaint initiating the adversary proceeding styled *Mehdipour v. Funders App LLC, et al.*, Adv. Pro. No. 24-01193-EPK ("**Adversary Proceeding**"), asserting claims against the Defendants of criminal usury, federal Civil RICO, conspiracy, fraudulent transfer, and breach of contract arising from the 24 Capital MCA Agreement.

8. Defendants deny any liability for the claims pled by the Trustee.

9. The Trustee and Defendants participated in a judicial settlement conference with the Honorable Paul G. Hyman, Jr., in September 2024 where an impasse was reached. Trustee and Defendants continued to negotiate at arms' length and have reached a settlement, the terms of which they have now set forth in this Motion.

10. A true and correct copy of the Settlement Agreement is attached as **Exhibit 1**.

**TERMS OF THE SETTLEMENT**[2]

11. In order to avoid the costs of litigation, the parties have reached a settlement which resolves the dispute between the Trustee and Defendants, the terms of which are summarized below.

12. **Settlement Consideration**.

    a. (a) Defendants will pay the Trustee $525,000.00 (the "Settlement Amount") in nine (9) monthly installments payable on or before the 15th day of each month, with the first installment of $58,336.00 due on or before May 15, 2026 (the "Initial Installment") followed by eight (8) equal, monthly installments of $58,333.00. For the avoidance of doubt, a schedule

---

[2] The Motion sets forth the terms of the Settlement Agreement. In the event of a conflict between the terms in this Motion and any written Settlement Agreement executed by the Parties, the terms of the Settlement Agreement control.

of payments and due dates is attached to the Settlement Agreement as **Appendix A**.

b. Within five (5) days of the Approval Order being entered and the Trustee's receipt of the Initial Installment in cleared funds, the Trustee will dismiss the adversary proceeding with prejudice.

c. The Parties agree to the releases set forth herein.

13. **Releases.** In exchange for the consideration identified above and the performance of the obligations undertaken by this Agreement, the Parties, and each of them, agree to the following:

a. **Trustee's Release of Defendants**. Except for the obligations contained in this Agreement, and upon the entry of the Approval Order, the Trustee, on behalf of the Debtor and the Bankruptcy Estate, hereby absolutely, forever, and fully, generally and specifically, releases and discharges the Defendants, including their attorneys, accountants, estates, executors, administrators, successors in interest and assigns, and all other persons who were owners, members, managers, or employees of any of the Defendant entities at any time from January 1, 2021 through the Effective Date, (collectively, together with the Defendants, the "Released Parties") from any and all claims, contentions, rights, debts, liabilities, demands, accounts, obligations, duties, promises, costs, expenses (including, but not limited to, attorneys' fees), liens, subrogation rights, indemnification rights, damages, losses, actions, and causes of action, of any kind or nature whatsoever arising from or related to the 24 Capital MCA Agreement that were brought or could have been brought by the Trustee on behalf of the Bankruptcy Estate in the Adversary Proceeding.   Nothing in this release should be construed to release any of the Defendants from any claim or cause of action not related to the 24 Capital MCA Agreement.

b. **Defendants' Release of Trustee and Estate.** Except for the

4

obligations contained in this Agreement, and upon the entry of the Approval Order, Defendants and their agents, associates, independent contractors, consultants, employees, employers, directors, officers, shareholders, partners, members, joint ventures, subsidiaries, parent companies and parent entities, successors or predecessor companies, entities, estates, representatives, executors, administrators, attorneys, accountants, insurers, heirs, executors and assigns (collectively "**Defendant Releasors**"), hereby absolutely, forever, and fully, generally and specifically, release and discharge Trustee, including her attorneys, accountants, estates, executors, administrators, successors in interest and assigns in their capacity as such, and the Estate (collectively, the "**Trustee Affiliated Parties**") from any and all claims, whether allegedly due or owing in the past, present or future and whether based upon contract, tort, statute or any other legal or equitable theory of recovery, and whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, with respect to, pertaining to, or arising from any matters, acts, omissions, events, conduct, agreements, contracts, or occurrences relating to the Debtor and the Bankruptcy Estate from the beginning of time through the Effective Date between and among the Trustee or the Bankruptcy Estate Defendant Releasors, including, but not limited to, waiver of an 11 U.S.C. §502(h) claim.

14. Default.

    a. **Default on settlement payment**. In the event that the Defendants default in timely performing any obligation set forth in this Agreement, the Trustee shall provide written notice (the "**Written Notice**") of the default to Defendants, with a courtesy copy to Defendants' counsel, by e-mail (which the Parties agree to be an acceptable method of properly giving notice under this Agreement). The Written Notice shall provide five (5)

business days from the date of such notice to cure the default. Should Defendants fail to cure the default within the period referenced above, then the Trustee may file a Notice of Default notifying the Bankruptcy Court of the uncured Default upon which Defendants agree to the entry of a default final judgment pursuant to Fla. Stat. §§ 726.105(1)(a) and 726.106 and 11 U.S.C. §§ 544(b)(1), 548, and 550, for which Defendants shall be deemed the initial transferees of the Estate's avoidable transfers, jointly and severally liable in the amount of $1,000,000.00 less any payments actually received by the Trustee under this Settlement Agreement.,  The only defense to default is payment, Defendants expressly waive all other defenses.

15.    **Notices.** Any and all notices or delivery of letters or documents or things required to be made in accordance with this Settlement Agreement shall be made in writing and shall be deemed to have been duly given, when received, if delivered personally, by email, or by overnight courier upon delivery to the parties identified in paragraph 6 of the Settlement Agreement.

16.    **Attorneys' Fees.** Each Party shall bear its own attorneys' fees and costs incurred in connection with the negotiation and documentation of this Agreement. The prevailing Party shall pay or reimburse the non-prevailing Party for the payment of any costs or expenses (including reasonable attorneys' fees and disbursements) incurred or expended by the prevailing Party in connection with or incidental to (a) any default by another Party hereunder or (b) the exercise or enforcement by or on behalf of any Party of any of its rights or remedies or a Party's obligations under the Agreement, including the enforcement, compromise or settlement of the obligations of this Agreement, including but not limited to consultation with an attorney whether or not the matter prompting such consultation is

6

eventually involved in litigation; and the defense or assertion of the rights or claims hereunder, whether by litigation (including litigation in a United States Bankruptcy Court) or otherwise.

## Basis for Approving the Settlement

17.     The legal principles to be applied in evaluating a proposed settlement have been enunciated upon within the Southern District of Florida in *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).  The appropriate test is "whether the compromise falls below the lowest point in the range of reasonableness."  *Id*. at 891 (*citing In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2nd Cir. 1985); *In re W.T. Grant Company*, 699 F.2d 599, 608 (2nd Cir. 1983)).   The Trustee believes that this settlement agreement complies with the legal principles relied upon within these authorities.

18.     The Eleventh Circuit has held that when a bankruptcy court decides whether to approve or disapprove a settlement, it must consider:

> A.     the probability of success in the litigation;
>
> B.     the difficulties, if any, to be encountered in the matter of collection;
>
> C.     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> D.     the paramount interest of the creditors and a proper deference to their reasonable view in the premises.

*In re Justice Oaks II, Ltd*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).

19.     The proposed settlement satisfies the four-part test set forth in *Justice Oaks II* and Fed. R. Bankr. P. 9019.

7

### A.    Probability of Success in the Litigation

20.    The Trustee believes her claims against Defendants under federal civil RICO, conspiracy, fraudulent transfer, and breach of contract, as pled in the Complaint filed in the Adversary Proceeding, would be successful Nevertheless, litigation always carries risk, particularly given the complex legal and factual issues involved.  The New York Court of Appeals has not ruled directly on the issue of whether an MCA Agreement is a loan or sale of future receipts.

21.    The Trustee acknowledges that the causes of action alleged in the Complaint in the Adversary Proceeding are complex in nature and against multiple parties.

22.    Defendants have raised various defenses addressing the merits of the Trustee's claims and amount of damages.

23.    The Trustee asserts that absent settlement, this case would be vigorously litigated and most likely appealed.

### B.    Difficulties, if any, to be Encountered in the Matter of Collection

24.    From the Trustee and Estate's perspective, this element appears to be a factor for this Court to consider in approving the Settlement.

25.    It appears that even if the Trustee were successful in the adversary proceeding, there would be a delay in collecting against the Defendants absent he agreement for which approval is being sought.

26.    Trustees expect additional difficulty would arise from legal challenges and appeals.  Further, there would be substantial legal expenses and delay incurred resulting from Defendants opposition to attempts to collect any award in favor of the Trustee.

**C.**     **Complexity Expense and Delay Associated with the Litigation Involved**

27.     The litigation in this Adversary Proceeding is complex.  There are factual disputes regarding the nature of the transactions between the Debtor and Defendants and the other substantive defenses to the claims that Defendants assert and would vigorously pursue in litigation.  Currently, this adversary is set for a pretrial conference on July 8, 2026, and Trustee believes the trial would take 5-7 days, along with the cost and delay of post-trial briefing of the issues in the Adversary Proceeding.

**D.**     **Paramount Interest of Creditors and Proper Deference to Their Reasonable Views in the Premises**

28.     The Trustee believes this settlement is in the best interests of the Estate and the creditors in this case as it results in a substantial recovery from Defendants, which otherwise may not be available, reduces the burden and carrying costs of litigation and brings certainty to the very uncertain value of the Trustee's claims for the benefit of the estate.

29.     The Trustee has evaluated the settlement while considering all the factors required by *Justice Oaks II* and supports its approval by the Bankruptcy Court as the proposed settlement satisfies those factors and is in the best interests of creditors and the estate.

30.     The Trustee believes that the settlement falls above the lowest point of reasonableness.

31.     This Motion and proposed form of Order are being noticed to all creditors and interested parties in accordance with Fed. R. Bankr. P. 2002 and 9019 and Local Rule 2002-1 and 9013-1(D).

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an order: (i) granting this Motion; (ii) compromising the controversy and approving the Settlement Agreement entered into by and between the Trustee, on the one hand, and

Defendants on the other hand; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 8th day of May 2026.

<table>
<tr>
<td>

FURR AND COHEN, P.A.
*Special Counsel for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532


BY:   /s/ *Jason S. Rigoli*
      Alan R. Crane, Esq.
      Florida Bar No.: 0963836
      E-mail: acrane@furrcohen.com
      Jason S. Rigoli, Esq.
      Florida Bar No.: 91990
      E-mail: jrigoli@furrcohen.com

</td>
<td>

LAW OFFICE OF
NICOLE TESTA MEHDIPOUR, P.A.
*Counsel for Chapter 7 Trustee*
6278 N. Federal Highway, Suite 408
Fort Lauderdale, FL 33308
Tel: (954) 858-5880/Fax: (954) 208-0888


By:  */s/ Nicole Testa Mehdipour*
Nicole Testa Mehdipour
Florida Bar No. 177271
nicolem@ntmlawfirm.com

</td>
</tr>
</table>

10

EXECUTION VERSION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

                                            Case No.: 22-12790-EPK

EXCELL AUTO GROUP, INC.                  Chapter 7

      Debtor.

_____/

## SETTLEMENT AGREEMENT AND COMPROMISE OF CONTROVERSY

       THIS SETTLEMENT AGREEMENT (this "**Settlement Agreement**" or "**Agreement**") is entered on the Effective Date (as defined below), by and among: (1) **Nicole Testa Mehdipour** ("**Trustee**"), chapter 7 trustee of the estate of Excell Auto Group, Inc., on the one hand, and (2) **FUNDERS APP LLC d/b/a 24 CAPITAL a Florida Limited Liability Company, MARK ALLAYEV, an individual, PAUL VEGA, an individual, FUNDERS APP LLC, a New York Limited Liability Company, 24 CAPITAL LLC, a New York Limited Liability Company,** (collectively, the "**Defendants**"), on the other hand. Collectively, the Trustee and Defendants are referred to as the "**Parties**", and each may be referred to as a "**Party**." The Parties hereby stipulate under the following terms and conditions and agree as follows:

### RECITALS

       WHEREAS, on or about March 24, 2021, a "Future Receivables Sale and Purchase Agreement" was entered into between Excell Auto Group, Inc. and "24 Capital" ("**24 Capital MCA Agreement**").  A true and correct copy of the 24 Capital MCA Agreement is attached as Exhibit A to the Complaint [Dkt. No. 1] in the Adversary Proceeding (defined below).

       WHEREAS, pursuant to the 24 Capital Agreement, on March 24, 2021, Funders App, LLC funded $502,900 to the Debtor, and the Debtor subsequently repaid $791,265.00 to Defendants by August 17, 2021.

       WHEREAS, on April 8, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code[1], instituting the case styled *In re Excell Auto Group, Inc.*, Case No. 22-12790-EPK (the "**Bankruptcy Case**"), which is currently pending in the West Palm Beach Division of the United States Bankruptcy Court for the Southern District of Florida ("**Bankruptcy Court**").

       WHEREAS, Nicole Testa Mehdipour was appointed chapter 7 trustee and the § 341 Meeting of Creditors was held and concluded and Nicole Testa Mehdipour is the permanent chapter 7 trustee of this estate (the "**Estate**").

---

[1] 11 U.S.C. §§ 101, *et seq.*

1

**EXHIBIT**

**1**

**WHEREAS**, the Trustee filed a complaint initiating the adversary proceeding styled *Mehdipour v. Funders App LLC, et al.*, Adv. Pro. No. 24-01193-EPK ("**Adversary Proceeding**"), asserting claims against the Defendants of criminal usury, federal Civil RICO, Fraudulent Transfer, and breach of contract arising from the 24 Capital MCA Agreement.

**WHEREAS**, the Defendants deny and dispute any liability and have raised substantive defenses to the Trustee's claims and have and would vigorously defend the adversary proceeding filed by the Trustee.

**WHEREAS**, in order to avoid the costs and uncertainties of litigation, the Parties, without admitting any fault or liability whatsoever to one another, desire to settle this matter amicably, have participated in good-faith settlement negotiations, and have reached a settlement, the terms of which they have now set forth in in this Agreement.

**NOW THEREFORE**, in consideration of the premises set forth herein, and for such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree that the forgoing recitals are true and correct statements of fact and incorporated into this Agreement, and further stipulate and agree as follows:

1.      **Incorporation of Recitals.** The Parties agree that the above recitals are true and correct and are incorporated into this Agreement.

2.      **Settlement Consideration.**

(a)   Defendants will pay the Trustee $525,000.00 (the "**Settlement Amount**") in nine (9) monthly installments payable on or before the 15th day of each month, with the first installment of $58,336.00 due on or before May 15, 2026 (the "Initial Installment") followed by eight (8) equal, monthly installments of $58,333.00.  For the avoidance of doubt, a schedule of payments and due dates is attached hereto as **Appendix A**.

(b)   The Settlement Amount set forth in Section 2(a) above will be in the form of a check, money order, or attorney's trust account check made payable to ***Nicole Testa Mehdipour, Chpt. 7 Trustee for Excell Auto Group, Inc.***, and delivered to Nicole Testa Mehdipour, Ch. 7 Trustee, 6278 North Federal Highway, Suite 408, Fort Lauderdale, FL 33308. The check or money order should clearly state Excell Auto Group's case number.  Alternatively, the Defendants can obtain wiring instructions from the Trustee.

(c)   Within five (5) days of the Approval Order being entered and the Trustee's receipt of the Initial Installment in cleared funds, the Trustee will dismiss the adversary proceeding with prejudice.

(d)   The Parties agree to the releases set forth herein.

3. **Bankruptcy Court Approval.** The Parties agree that the enforceability of this Agreement is subject to and conditioned upon the Bankruptcy Court entering a final, non-appealable order approving the Parties' Agreement set forth herein (the "**Approval Order**"). The Trustee agrees to file a Rule 9019 motion to approve this Agreement as required by the Court (the "**9019 Motion**") and to obtain such Approval Order. For purposes of this Settlement Agreement, the term "Approval Order" means an order entered by the Bankruptcy Court, the implementation, operation, or effect of which has not been stayed and as to which order (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending. Should the Bankruptcy Court deny approval of the settlement contained within this Agreement, this Agreement shall be deemed null and void, including the validity of all instruments executed by any of the Parties pursuant to this Agreement.

4. **Releases.** In exchange for the consideration identified above and the performance of the obligations undertaken by this Agreement, the Parties, and each of them, agree to the following:

    a. **Trustee's Release of Defendants**. Except for the obligations contained in this Agreement, and upon the entry of the Approval Order, the Trustee, on behalf of the Debtor and the Bankruptcy Estate, hereby absolutely, forever, and fully, generally and specifically, releases and discharges the Defendants, including their attorneys, accountants, estates, executors, administrators, successors in interest and assigns, and all other persons who were owners, members, managers, or employees of any of the Defendant entities at any time from January 1, 2021 through the Effective Date, (collectively, together with the Defendants, the "Released Parties") from any and all claims, contentions, rights, debts, liabilities, demands, accounts, obligations, duties, promises, costs, expenses (including, but not limited to, attorneys' fees), liens, subrogation rights, indemnification rights, damages, losses, actions, and causes of action, of any kind or nature whatsoever arising from or related to the 24 Capital MCA Agreement that were brought or could have been brought by the Trustee on behalf of the Bankruptcy Estate in the Adversary Proceeding. Nothing in this release should be construed to release any of the Defendants from any claim or cause of action not related to the 24 Capital MCA Agreement.

    b. **Defendants' Release of Trustee and Estate.** Except for the obligations contained in this Agreement, and upon the entry of the Approval Order, Defendants and their agents, associates, independent contractors, consultants, employees, employers, directors, officers, shareholders, partners, members, joint ventures, subsidiaries, parent companies and parent entities, successors or predecessor companies, entities, estates, representatives, executors, administrators, attorneys, accountants, insurers, heirs, executors and assigns (collectively "**Defendant Releasors**"), hereby absolutely, forever, and fully, generally and specifically, release and discharge Trustee, including her attorneys, accountants, estates, executors, administrators, successors in interest and assigns in their capacity as such, and the Estate (collectively, the "**Trustee Affiliated Parties**") from any and all claims, whether allegedly due or owing in the past, present or future and whether based upon contract, tort, statute or any other legal or equitable theory of recovery, and whether

3

known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, with respect to, pertaining to, or arising from any matters, acts, omissions, events, conduct, agreements, contracts, or occurrences relating to the Debtor and the Bankruptcy Estate from the beginning of time through the Effective Date between and among the Trustee or the Bankruptcy Estate Defendant Releasors, including, but not limited to, waiver of an 11 U.S.C. §502(h) claim.

5.   **Default.**

a.  **Default on Settlement.** In the event that the Defendants default in timely performing any obligation set forth in this Agreement, the Trustee shall provide written notice (the "**Written Notice**") of the default to Defendants, with a courtesy copy to Defendants' counsel, by e-mail (which the Parties agree to be an acceptable method of properly giving notice under this Agreement). The Written Notice shall provide five (5) business days from the date of such notice to cure the default. Should Defendants fail to cure the default within the period referenced above, then the Trustee may file a Notice of Default notifying the Bankruptcy Court of the uncured Default upon which Defendants agrees to the entry of a default final judgment pursuant to Fla. Stat. §§ 726.105(1)(a) and 726.106 and 11 U.S.C. §§ 544(b)(1), 548, and 550, for which Defendants are the Initial Transferees in the amount of $1,000,000.00, less any payments actually received by the Trustee under this Settlement Agreement, for which the Defendants are jointly and severally liable.  The only defense to default is payment, Defendants expressly waive all other defenses.

6.   **Notices.** All notices to be sent or information to be provided under this Settlement Agreement shall be sent to the following:

| | |
|---|---|
| **For the Defendants** | Zack Eisner<br>3323 NE 163rd Street Ste 401<br>North Miami Beach, FL 33160<br>zack@cashera.com |
| **With a copy to:** | Jake VanAusdall, Esq.<br>Maurice Wutscher LLP<br>4900 Centennial Ave #300<br>Nashville, TN<br>jvanausdall@mauricewutscher.com |
| **For the Trustee** | Nicole Testa Mehdipour, Trustee<br>6278 North Federal Highway,<br>Suite 408 Fort Lauderdale, FL<br>33308 nicolem@ntmlawfirm.com |
| **With a copy to:** | Alan R. Crane, Esq.<br>Counsel for Trustee<br>2255 Glades Road, Suite 419A |

4

Boca Raton, FL 33431
acrane@furrcohen.com

7.     **Advice of Counsel.** This Settlement Agreement was executed after arm's length negotiations between the Parties and their respective counsel and reflects the conclusion of the Parties that this Agreement is in the best interests of the Parties. The Parties acknowledge that they have been represented by counsel of their own choice the negotiations leading up to the execution of this Agreement, that they have read this Agreement, have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of the agreement, and understand the terms and provisions of this Agreement. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel and not relying on the representation of any other Party or of counsel for any other Party. The Parties confirm by their signatures to this Agreement that they have been fully advised by independent counsel (or had the opportunity) with respect to the terms of this Agreement and execute it voluntarily and with full knowledge of its terms and conditions.

8.     **No Admission.** This Agreement shall not be construed against either party as an admission of liability, wrongdoing, or concession of any matters. Instead, the Parties are entering into this Settlement Agreement and Defendants are paying the Settlement Amount, all in an effort to avoid the time, expense and uncertainty associated with litigation  Each of the Parties understands and agrees that this Agreement and the settlement provided for herein are intended to compromise disputed claims and defenses, to avoid litigation, and that this Agreement, and the settlement provided for herein, shall not be construed or viewed as an admission by any Party of any liability or wrongdoing, such liability being expressly denied.

9.     **Integration.** This Agreement represents the entire understanding and agreement between the parties hereto with respect to subject matter hereof.  The Parties acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict this Agreement, and that all prior agreements or understandings within the scope of the subject matter of this Agreement are, upon the execution and delivery of this Agreement, superseded, null and void.

10.     **Severability.** Except as otherwise set forth herein, if any clause, provision, or paragraph of this Agreement shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect any other clause, provision, or paragraph of this Agreement, and this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable clause, paragraph, or other provision had not been contained herein.

11.     **Choice of Law.** This Agreement is made and entered into within and shall be governed and controlled by, construed, interpreted and enforced in accordance with the laws of the State of Florida, to the extent state law is applicable, and the United States Bankruptcy Code, without regard to Florida's choice of law rules.

12.     **Enforcement and Retention of Jurisdiction.** Each of the Parties may enforce this Agreement as a valid contract and may obtain any lawful remedy including injunctive relief enforcing the Agreement. Each of the Parties irrevocably agrees that the Bankruptcy Court has

sole and exclusive jurisdiction over the enforcement and interpretation of this Agreement and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement and resolve any and all disputes between the Parties regarding the Agreement. In the event of a default of payments, the Trustee, including the Estate, shall be entitled to the collection of attorneys' fees and costs to enforce the terms of this agreement and to collect upon any judgment, including appeals, proceedings in a bankruptcy proceeding. Each of the Defendants shall be jointly and severally liable for any such attorneys' fees and costs.

13.    **Amendments.** No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless made in writing, signed by the party to be charged and then only to the extent as set forth in such written waiver, modification, or amendment.

14.    **Attorneys' Fees.** Each Party shall bear its own attorneys' fees and costs incurred in connection with the negotiation and documentation of this Agreement. The prevailing Party shall pay or reimburse the non-prevailing Party for the payment of any costs or expenses (including reasonable attorneys' fees and disbursements) incurred or expended by in connection with or incidental to (a) any default by another Party hereunder or (b) the exercise or enforcement by or on behalf of any Party of any of its rights or remedies or a Party's obligations under the Agreement, including the enforcement, compromise or settlement of the obligations of this Agreement, including but not limited to consultation with an attorney whether or not the matter prompting such consultation is eventually involved in litigation; and the defense or assertion of the rights or claims of hereunder, whether by litigation (including litigation in a United States Bankruptcy Court) or otherwise.

15.    **Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when read together with the signatures of those Parties signing other counterparts, shall be deemed to be a complete and original copy. Delivery of an executed signature page to this Agreement by email (pdf) shall be effective as delivery of an originally executed signature page to this Agreement.

16.    **Neutral Interpretation.** In the event a dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

17.    **Authority.** Each of the Parties to this Agreement represents and warrants that it is duly authorized to execute and enter into this Settlement Agreement and that the person through whom each Party executes this Agreement is fully and duly empowered and authorized to execute it on the respective Party's behalf.

18.    **No Third-Party Beneficiaries.** Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or give to, any entity other than the Parties hereto and their respective successors, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation hereof, and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and the respective Defendants. It is expressly understood between the Parties that nothing in this Agreement is intended to in any way prejudice or limit any Party's ability to pursue any claims

6

available to her or it against any other persons or entities, and that no release or waiver provided in this Agreement shall be construed to release or waive any such claims except as to those Parties and the respective Defendants.  Except as provided in this Agreement, the Parties reserve all rights to pursue claims against any parties other than the Parties to this Agreement, including, without limitation, claims for fraudulent transfer, preferential transfer, or any other claims available to the Trustee under bankruptcy law or state law. Nothing in this Settlement Agreement shall be construed to release or waive any claims or defenses that Defendants may have against any non-party to this Agreement other than the Defendants under applicable bankruptcy or non-bankruptcy law.

19.    **Headings.** The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

20.    **Effective Date.**  This Agreement shall become effective on the date that the last Party signs this Agreement (the "**Effective Date**").

**IN WITNESS WHEREOF**, the Parties, have each caused this Agreement to be executed by themselves or by their duly authorized representatives on the dates set forth below with a full and complete understanding of the terms hereof.

By: _Nicole Mehdipour_

**Nicole Testa Mehdipour, Trustee of the estate of Excell Auto Group, Inc.**

**Date:** 5/9/2026

**Corporate Representative of**
**Funders App LLC, a New York limited liability company**

**Printed Name**

**Title**

**Date:** _____

7

5/8/26, 1:21 PM

Inbox - Zack Eisner - Outlook

EXECUTION VERSION

available to her or it against any other persons or entities, and that no release or waiver provided in this Agreement shall be construed to release or waive any such claims except as to those Parties and the respective Defendants. Except as provided in this Agreement, the Parties reserve all rights to pursue claims against any parties other than the Parties to this Agreement, including, without limitation, claims for fraudulent transfer, preferential transfer, or any other claims available to the Trustee under bankruptcy law or state law. Nothing in this Settlement Agreement shall be construed to release or waive any claims or defenses that Defendants may have against any non-party to this Agreement other than the Defendants under applicable bankruptcy or non-bankruptcy law.

19.    **Headings**. The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

20.    **Effective Date**. This Agreement shall become effective on the date that the last Party signs this Agreement (the "**Effective Date**").

**IN WITNESS WHEREOF**, the Parties, have each caused this Agreement to be executed by themselves or by their duly authorized representatives on the dates set forth below with a full and complete understanding of the terms hereof.

| | |
|---|---|
| By: _____<br>Nicole Testa Mehdipour, Trustee of the estate of Excell Auto Group, Inc.<br><br><br>Date: _____ | _____<br>Corporate Representative of<br>Funders App LLC, a New York limited liability company<br><br>_Zach Eisn_<br>Printed Name<br><br>_Gen Counsel_<br>Title<br><br>Date: _May 8 26_ |

7

5/8/26, 1:21 PM

EXECUTION VERSION

Corporate Representative of
Funders App LLC, a Florida limited liability
company

Zach Eisn
Printed Name

Gen Counsel
Title

Date: May 8 26

Corporate Representative of
24 Capital LLC, a New York limited liability
company

Zach Eisn
Printed Name

Gen Counsel
Title

Date: May 8 26

Mark Allayev, Individually

Date: May 8 2026

8

EXECUTION VERSION

|  | *Paul Vega*<br>Paul Vega (May 8, 2026 14:28:45 EDT)<br>**Paul Vega, Individually**<br><br>**Date:** 05/08/2026 |
|---|---|

9

## APPENDIX A

| Installment | Payment Due Date | Payment Amount |
|---|---|---|
| 1 | 5/15/2026 | $ 58,336.00 |
| 2 | 6/15/2026 | $ 58,333.00 |
| 3 | 7/15/2026 | $ 58,333.00 |
| 4 | 8/15/2026 | $ 58,333.00 |
| 5 | 9/15/2026 | $ 58,333.00 |
| 6 | 10/15/2026 | $ 58,333.00 |
| 7 | 11/15/2026 | $ 58,333.00 |
| 8 | 12/15/2026 | $ 58,333.00 |
| 9 | 1/15/2027 | $ 58,333.00 |
| **Total Settlement Amount** | | **$ 525,000.00** |

10

# Settlement Agreement- Funders App et al (Execution Version)

Final Audit Report                                     2026-05-08

| | |
|---|---|
| Created: | 2026-05-08 |
| By: | Loc Phan (loc@fundersapp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAABD23ayA48O5UkLjw8VqKJP2oO3sY0tQb |

## "Settlement Agreement- Funders App et al (Execution Version)" History

Document created by Loc Phan (loc@fundersapp.com)
2026-05-08 - 6:02:47 PM GMT

Document emailed to p.vega@cashera.com for signature
2026-05-08 - 6:02:53 PM GMT

Email viewed by p.vega@cashera.com
2026-05-08 - 6:28:01 PM GMT

Signer p.vega@cashera.com entered name at signing as Paul Vega
2026-05-08 - 6:28:43 PM GMT

Document e-signed by Paul Vega (p.vega@cashera.com)
Signature Date: 2026-05-08 - 6:28:45 PM GMT - Time Source: server - Signature Appearance Selected: TYPE

Agreement completed.
2026-05-08 - 6:28:45 PM GMT

Adobe Acrobat Sign