**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re Excell Auto Group, Inc. | Chapter 7 |
| Debtor. | Case No. 22-12790-EPK |

**FRANKLIN CAPITAL**
**FUNDING, LLC'S OMNIBUS OBJECTION TO INTERIM FEE APPLICATIONS**

Franklin Capital Funding, LLC ("**FCF**") files this omnibus objection to the *Third Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses to the Law Office of Nicole Testa Mehdipour, P.A., Counsel for Chapter 7 Trustee for the Estate of Excell Auto Group, LLC* [DE 1138] ("**Trustee Application**"), the *Third Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Young Foster PLLC as Special Conflict Counsel to the Chapter 7 Trustee, for the Period from January 1, 2025 through March 31, 2026* [DE 1137] ("**Foster Application**"), and *Fourth Interim Application of Furr Cohen, P.A., Attorneys for the Chapter 7 Trustee* [DE 1134] ("**Furr Application**," together with the Trustee Application and the Foster Application, the "**Fee Applications**").

### Background

1.      FCF is one of the only secured creditors and the largest prepetition lender in this case, holding a claim for $5,860,512.75 based on a promissory note extended to the Debtor in 2021. Claim 44-1.

2.      The court filings concerning the estate's finances paint a sorry picture. The estate initially reported total property of $710,000.00 in its schedules. *See* [DE 185], Amended Schedule A/B p. 8 (disclosing same). The trustee has pursued causes of action that obtained some recovery for the estate, but even after including these recoveries the latest report from the trustee discloses

1

a total gross value of the estate's assets of $6,992,625.00. [DE 1144] p. 8. The Fee Applications disclose that the estate currently holds $3,133,696.19 in cash on hand. The claims register reflects total claims asserted against the estate of approximately $94,308,288.18.

3.        Notwithstanding the relatively small size of the Debtor's estate and the large amount of claims, the trustee and her professionals have turned this case into a lucrative affair. As an initial matter, the estate is currently employing three law firms. It employs the Law Office of Nicole Testa Mehdipour, P.A. as general counsel. [DE 21]. This employment is in addition to Ms. Mehdipour's responsibilities as the estate's trustee. The trustee employs Furr Cohen, P.A. as special counsel tasked primarily with pursuing litigation on behalf of the estate. [DE 44]. The trustee also employs Young Foster PLLC as "special conflict litigation counsel." [DE 226]. The need for conflicts counsel arose from the estate holding claims against Kenneth J. Goodman and the DCG 2008 Irrevocable Wealth Trust. *Id.* ¶ 2. Furr Cohen was conflicted from pursuing these claims, thus necessitating Young Foster's retention. *Id.* The Court approved the retention on August 19, 2022, authorizing the trustee to

> employ Michael C. Foster, Esq. and Young Foster PLLC, retroactive to August 1, 2022, as special conflict litigation counsel for the Chapter 7 Trustee on a general retainer, pursuant to 11 U.S.C. §§ 327, 330, and 331, and in accordance with the terms and conditions set forth in the Application.

[DE 228] p. 2. Finally, the trustee employs GlassRatner as its accountant. [DE 197].

4.        Over the course of this case since its inception in April 2022, the trustee has been awarded $633,781.74 [DE 471, 1016]; Young Foster has been awarded $324,713.76 [DE 470, 1015]; and Furr Cohen has been awarded $2,395,036.67 [DE 472, 932, 1014]. GlassRatner has

2

been awarded $1,059,066.13 [DE 469, 1017] [1]. In other words, **to date, the estate professionals have been awarded approximately $4,412,598.00.**

5.      This amount does not include the amounts sought in the current Fee Applications. In the Trustee Application, the trustee seeks a total of $323,503.93 in fees and expenses for the period running from January 1, 2025 through March 31, 2026. In the Foster Application, the law firm of Young Foster seeks $101,062.06 in fees and expenses for the period running from January 1, 2025 through March 31, 2026. In the Furr Application, the law firm of Furr Cohen seeks $1,072,772.07 in fees and expenses for the period running from January 1, 2025 through December 31, 2025. These applications are in addition to the fee application of GlassRatner Advisory & Capital Group, LLC [DE 1132], which seeks $355,764.11 in fees and expenses for the period running from January 1, 2025 through March 31, 2026. The professionals propose a 25% holdback in the current Fee Applications.

6.      Between the Fee Applications and GlassRatner's application, the estate professionals seek a total of $1,853,102.17 in reimbursement on an interim basis for work performed in 2025 on top of the $4.4 million they have already been awarded in this case. If granted, **total professional compensation in this case will amount to $6,265,700.47**. This amount does not include future requests that will be submitted by Furr Cohen for work in 2026 to date, nor is there any predicting how much more work the trustee intends to do in this case in the future.

7.      In other words, if the instant Fee Applications are granted, the estate's professionals will have expended approximately $6.2 million to achieve a gross value of the estate of nearly the

---

[1] These awards (other than the second interim award of $45,609.08 in favor of Furr Cohen [DE 932]) are subject to a 20% holdback.

same amount, or $6.9 million. [DE 1144]. Ironically, the difference between expenditures versus current assets is roughly the same as the estate's starting value in 2022 of $710,000.00.

8. As set forth below, FCF objects to the present Fee Applications on several grounds. Because the Fee Applications are interim in nature, FCF submits that at a minimum the holdback on the fee awards should be increased from 25% to 50% to ensure that the professional fees in this case do not render the estate administratively insolvent before a hearing on final fee applications.

## **Argument**

9. Section 330 of the Bankruptcy Code allows "reasonable compensation" to estate professionals "for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B). Subsection (3) sets forth factors for determining "the amount of reasonable compensation to be awarded," which include:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.*(3)(A)–(F). The *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977) opinion cited by the trustee specifically notes that when a court considers a fee application "the strong policy of the Bankruptcy Act that estates be administered as efficiently as possible demands recognition." So much so that "it has been suggested that '(e)conomy is the most important principle' to be considered in awarding fees to the attorneys for the trustee." *Id.* (quoting 3A J. Moore & L. King, Collier on Bankruptcy, P 62.12(5), at 1483 (14th ed. 1975)). Interim fee applications are subject to section 330's limitations as well. 11 U.S.C. § 331.

10.     Where a trustee is authorized to serve as an attorney in a case, section 328(b) dictates that

> the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

11 U.S.C. § 328(b). As a result, in a case where a trustee employs his or her own law firm as general counsel, the trustee "is required to keep track of the hours spent performing trustee services as well as legal services." *In re Stevens*, 407 B.R. 303, 309 (Bankr. N.D. Ill. 2009). Section 328 requires that a court analyzing a trustee's fee requests under section 330 must first consider "whether the services were required to be performed by a lawyer or were, instead, within the scope of the trustee's duties and thus only compensable under section 326." *Id.* Where a trustee has—in addition to employing herself—employed special counsel to pursue litigation, the court must pay specific attention to section 330's bar on compensation for duplicative work. *Id.* (disallowing fee request of trustee serving as general counsel that duplicated work of special counsel).

11.     Where an attorney is employed as conflicts counsel under section 327, they may be compensated "only for those services directly related to the limited scope of retention and not for

services rendered generally to the debtor in connection with its bankruptcy case." *In re Licking River Mining, LLC*, No. 14–10201, 2015 WL 5601284, at \*10 (Bankr. E.D. Ken. Sep. 22, 2015); *see also In re Auto Parts Club, Inc.*, 191 B.R. 848, 850–51 (Bankr. S.D. Cal. 1996) (indicating that scope of employment under section 327(a) limits compensable activities).

**A. The Court should disallow the bulk of the fees sought in the Trustee Application because they are duplicative of Furr Cohen's and Young Foster's.**

12.    A review of the Trustee Application reveals that many of her time entries are for work in which she was serving in her capacity as trustee or client being serviced by either the Furr Cohen firm or the Young Foster firm. *See, e.g.*, Tr. App. p. 15, entires for 1/7/2025 ("respond to messages with special counsel"), 1/8/2025 ("respond to correspondence re finalizing the Bal Settlement"); 1/10/2025 ("respond to related correspondence with special counsel"), *etc.* This work falls squarely "within the scope of the trustee's duties" and is "thus only compensable under section 326." *In re Stevens*, 407 B.R. at 309.

13.    The limited attorney work performed by the trustee is duplicative of that of the Furr Cohen firm's work or Young Foster's work. Thus, for example, the trustee billed to "revise Response to Libertas First Set of Requests for Admission," Tr. App. p. 15 1/8/2025, to "revise Libertas 9019," *id.* p. 24 8/20/2025, to "revise JSC Statement re Podgurski," *id.* p. 24 8/21/2025, and similar entries, clearly reflecting the trustee commenting on her special counsel's work. The time entries lack entries that demonstrate the trustee acting as her own counsel in pursuing litigation, claims, or otherwise on behalf of the estate—all this work was conducted by the other two firms involved in the case. This is particularly true in the section of the Trustee Application dedicated to "Litigation," *id.* pp. 32–37, that relates exclusively to the adversary litigation undertaken on her behalf by Furr Cohen or Young Foster. The trustee cannot be compensated for

6

this work because it violates section 330's bar on "unnecessary duplication of services." 11 U.S.C. § 330(a)(4)(A)(i).

14. The trustee's application in this case is remarkably similar to the one discussed by the Bankruptcy Court for the Northern District of Illinois in *In re Stevens*, 407 B.R. 303 (Bankr. N.D. Ill. 2009). In that case, as in this one, the trustee employed her own firm as "general counsel to the trustee," employed another firm as "special counsel to the trustee," and yet another firm as "general and special counsel to the trustee." *Id.* at 304–05. When the trustee and her professionals applied for fees, the court held that the trustee's fee application "must be substantially reduced" because much of the work she had performed was trustee work for which her compensation was limited to section 326. *Id.* at 309. It also held that much of the legal work performed by the trustee was "unnecessarily duplicative" of her special counsel's work. *Id.* This was particularly true for the trustee's "litigation" work, which the court found amounted to assisting her special counsel in litigation matters—the very counsel to which the trustee had attested in her employment applications as to their "extensive litigation experience." *Id.* at 310. The court held that the trustee's explanation in her fee application that her counsel required her assistance because they had "no bankruptcy expertise" resulted in highly duplicative work "at great expense to the estate." *Id.*

15. As in *Stevens*, the trustee in this case has submitted fee requests for work that is not attorney work but for which her compensation is restricted to section 326. The legal work performed by the trustee relates exclusively to cases for which she employed other competent law firms which she attested "have considerable expertise in the fields of complex commercial bankruptcy proceedings, bankruptcy litigation, avoidance litigation, insolvency, reorganizations, liquidations and debtors' and creditors' rights." *Emergency Application for Authorization to Employ Furr and Cohen, P.A. as Special Counsel Effective April 11, 2022*, DE 24 ¶ 12; *see also*

7

DE 226 ¶ 3 (trustee's application to employ Young Foster noting same). Notwithstanding, the trustee effectively duplicated much of Furr Cohen's and Young Foster's work "at great expense to the estate." *Stevens*, 407 B.R. at 310. The Court should therefore reduce the trustee's fee request substantially to avoid compensating estate professionals for "unnecessary duplication of services." 11 U.S.C. § 330(a)(4)(A)(i).

      **B. The Court should disallow the bulk of the fees sought in the Foster Application because they are for services beyond the scope of Young Foster's employment.**

16.     As set forth above, the sole purpose of Young Foster's retention as an estate professional in this case was to serve as conflicts counsel to pursue claims against Kenneth J. Goodman and the DCG 2008 Irrevocable Wealth Trust. [DE 226]. A review of the Foster Application reflects that Mr. Goodman and the DCG trust are mentioned only 17 times in the time entries. Foster App. pp. 20–23. [2] The application admits that the primary work conducted by Young Foster in 2025 was related to claims against Graner Law Group, P.A. initiated in adversary proceeding 25-01357. *Id.* pp. 6–7. This case did not involve claims against Kenneth Goodman or the DCG 2008 Irrevocable Wealth Trust. *See* Complaint, DE 1 in Case No. 25-01357 (detailing claims against defendants with no discussion of other targets). Indeed, the last Mr. Goodman is mentioned on the docket in the main bankruptcy is August 18, 2023 [DE 460]; the DCG trust is last mentioned on December 20, 2023 [DE 543].

17.     After FCF advised the applicants of its intention to object to the Fee Applications, Young Foster filed a second employment application to authorize it to work on the cases against the Graner Law Group and others that may involve jury trials retroactive to December 10, 2025. [DE 1145]. FCF will file a separate objection to this application. Even if the application is granted,

---

[2] The specific time entries are for 3/29/2025, 7/16/2025, 7/29/2025, 8/4/2025, 8/26/2025, 8/28/2025, 9/29/2025, 4/14/2025, 4/23/2025, 4/24/2025, 5/13/2025, 7/18/2025, 8/27/2025, 9/25/2025, 9/30/2025, and 10/28/2025.

however, all work that Young Foster performed on these cases to date was unauthorized. The requirements of section 327(a) are not a "procedural formality" that counsel can belatedly satisfy at its convenience nearly six months after unauthorized work occurred. *In re Florida Brethren Homes, Inc.*, 92 B.R. 536, 537 (Bankr. S.D. Fla. 1988) (Britton, J.). Section 327(a) "serves an essential purpose [to] furnish a safeguard against burdening the estate with expensive duplication of services and against a conflict of interest." *Id.* As a result, "it has always been clear that non-compliance generally leads to forfeiture of compensation even to those professionals who in good faith furnished valuable services to the estate." *Id.*

18.    Young Foster was not authorized as an estate professional under section 327 to pursue the adversary proceeding against the Graner Law Group or any causes of action other than those against Kenneth Goodman and the DCG Trust. As a result, all actions undertaken in connection with these actions were beyond the scope of Young Foster's authorized employment in this case for which it cannot receive compensation. Even if the trustee can proffer an explanation as to why Young Foster versus her own firm or Furr Cohen did not handle the Graner and other adversary proceedings, the Bankruptcy Code and case law are clear that without an order under section 327(a) a professional is not entitled to compensation. *See, e.g.*, *id.* at 537 (denying application for fees for services provided before authorized under section 327(a)). Young Foster's work on the Graner adversary proceeding and others, which constitutes the bulk of its fee application, is therefore not entitled to compensation from the estate. FCF therefore requests that the Court deny the Foster Application other than for those entries that reference Kenneth Goodman or the DCG trust.

**C.  The Court should Scrutinize the Fees Sought in the Furr Application.**

19.    Section 330 of the Bankruptcy Code requires the Court to consider not only the amount of time expended by a professional, but also whether the services were reasonable and

9

beneficial to the estate in light of the results achieved. *See In re First Colonial*, 544 F.2d at 1299 (eighth factor requiring analysis of "[t]he amount involved and the results obtained"). The Furr Application reflects that during the period covered by the application the trustee's litigation efforts obtained approximately $3,659,750.00 in recoveries for the estate and a reduction in claims of approximately $15 million. *See* Furr App. pp. 11–13 (setting forth settlements in same approximate amount and reduction of $14.9 million in claims). The Furr Application seeks $1,072,772.07 in fees and expenses for the same period.

20.     One of the factors the Court must consider in analyzing the Furr Application is "[w]hether the fee is fixed or contingent." *In re First Colonial*, 544 F.2d at 1299. Eleventh Circuit precedent recognizes that contingency fee arrangements inherently compensate counsel for assuming litigation risk and that counsel operating under such arrangements may occasionally receive a substantial recovery where successful results are obtained. *See, e.g.*, *Gossett v. Soc. Sec. Admin., Comm.*, 812 F. App'x 847, 850–51 (11th Cir. 2020) (reversing district court's decision reducing contingency fees). Hourly fee arrangements, by contrast, are generally intended to provide greater predictability in administrative expenses of the estate and to preserve value of larger, less-risky claims.

21.     Here, Furr Cohen is working on an hourly basis—i.e. it assumed no risk when it undertook litigation on behalf of the estate. The amount sought in the Furr Application is approximately 30% of total recoveries obtained during the period for which the application was submitted. Even if the litigation undertaken by estate counsel required substantial effort and involved complex issues, a fee of this magnitude would be warranted only in a contingency arrangement to compensate counsel for the risk it took in pursuing risky claims. Furr Cohen is being compensated on an hourly basis, in other words it took no risk to itself by pursuing claims

10

on behalf of the estate. Furr Cohen's compensation should therefore be measured against the overall financial benefit conferred on the estate and creditors. The return on investment for 2025 was about $3.6 million on an expenditure of approximately $1.85 million, or less than two dollars on every dollar expended. Given the overall size of the estate, the claims asserted against it, and the substantial professional fees already incurred to date, FCF respectfully submits that the eighth factor set forth in *First Colonial*—"[t]he amount involved and the results obtained," 544 F.2d at 1299—weighs in favor of reducing the fees sought in the Furr Application.

### Conclusion

22.    For the foregoing reasons, FCF respectfully requests that the Court disallow a substantial amount of the fees sought in the Fee Applications. At a minimum, FCF requests that the Court direct the applicants to increase the holdback on any award from the proposed 25% to 50% to ensure that a final award can be properly analyzed against the final amounts recovered for the estate.

### Certificate of Conferral

23.    Undersigned counsel conferred with counsel to the applicants, Alan Crane, via email on May 4, 5, and 11, 2026, and by telephone on May 4, 2026. No resolution was reached.

### Certificate of Service

24.    Undersigned counsel certifies that he caused a copy of this document to be served on all parties listed on the electronic service list via notice of electronic filing on the date indicated below including to Nicole Mehdipour, Nicole.Mehdipour@ntmlawfirm.com, Michael Foster, michael@youngfoster.com, karin@youngfoster.com, and Alan Crane, acrane@furrcohen.com

Date: May 11, 2026

By: /s/ *Theodore Sandler*
Theodore Sandler, Esq.

11

Fla. Bar No. 1015927
tsandler@sandlerlawpa.com
**SANDLER LAW**
1728 NE Miami Gardens Dr. #1224
North Miami Beach, FL 33179
T/F: (305) 570-0534

*Counsel for Franklin Capital Funding, LLC and
Franklin Capital Group, LLC*

12